James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs*
*and the proposed Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID ZIMAND, DENA STOCKALPER, DAWN STANTON BLANCHARD, JAY MELMAN, CHRIS DRAKE, ANOUSHIRVAN NADIRI, JENNIFER PIUMARTA, WILLIAM R. SWIHART, HANNAH LeMOINE, RAFAEL SERBIA, LUIS F. LOPEZ, SHIMELESSE MEKBEB, ROBBY SMITH, KATRINA CALIHAN, ERIKA SENSNOVIS, GARRETT JOHNSON, NEEL MODY, JASON HOSIER, DEBRA ANN HAGGERTY, DEBRA J. OLES, DAVID ZHAO, SUZANNE NOYES, HAMZA DEIB, ROSARIO PANEPINTO, JAMES I. SCOTT IV, JEFFERY PIPE, MICHAEL A. BORCHINO, JOHN SCHAFFRANEK, PAMELA K. KANE, ZACHARIAH GOSSMAN, KARL MOLWITZ, ALLAN GAUDET, UMAR ELLAHIE, ALLISON FLECK, WILLIAM FLECK and BARTOSZ ZIELEZINSKI on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AKTIENGESELLSCHAFT and AUDI OF AMERICA, INC.,<br><br>                    Defendants. | Civil Action No. 16-2765 (JLL)(JAD)<br><br><br><br>**FIRST CONSOLIDATED**<br>**CLASS ACTION COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     JURISDICTION AND VENUE .............................................................................. 7

III.    PARTIES ................................................................................................................. 8

IV.     FACTUAL ALLEGATIONS ................................................................................ 23

        A.      The EA888 Engine ................................................................................... 23

        B.      Timing Chain Systems ............................................................................. 25

        C.      The Defective Timing Chain System ....................................................... 28

        D.      Defendants' Knowledge of the Timing Chain System Defect ................. 34

                1.      Technical Service Bulletins .......................................................... 36

                2.      National Highway Traffic Safety Administration Complaints ................. 39

                3.      The Chain Tensioner Redesign ..................................................... 45

V.      FURTHER ALLEGATIONS ................................................................................ 49

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ............................................ 64

VII.    CLASS ACTION ALLEGATIONS ...................................................................... 65

VIII.   CLAIMS FOR RELIEF ........................................................................................ 74

IX.     PRAYER FOR RELIEF ..................................................................................... 198

X.      DEMAND FOR JURY TRIAL ........................................................................... 199

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.      INTRODUCTION

1.      Plaintiffs David Zimand ("Zimand"), Dena Stockalper ("Stockalper"), Dawn Stanton Blanchard ("Blanchard"), Jay Melman ("Melman"), Chris Drake ("Drake"), Anoushirvan Nadiri ("Nadiri"), Jennifer Piumarta ("Piumarta"), William R. Swihart ("Swihart"), Hannah LeMoine ("LeMoine'), Rafael Serbia ("Serbia"), Luis F. Lopez ("Lopez"), Shimelesse Mekbeb ("Mekbeb"), Robby Smith ("Smith"), Katrina Calihan ("Calihan"), Erika Sensnovis ("Sensnovis"), Garrett Johnson ("Johnson"), Neel Mody ("Mody"), Jason Hosier ("Hosier"), Debra Ann Haggerty ("Haggerty"), Debra J. Oles ("Oles"), David Zhao ("Zhao"), Suzanne Noyes ("Noyes"), Hamza Deib ("Deib"), Rosario Panepinto ("Panepinto"), James I. Scott, IV ("Scott"), Jeffery Pipe ("Pipe"), Michael A. Borchino ("Borchino"), John Schaffranek ("Schaffranek"), Pamela K. Kane ("Kane"), Zachariah Gossman ("Gossman"), Karl Molwitz ("Molwitz"), Allan Gaudet ("Gaudet"), Umar Ellahie ("Ellahie"), Allison Fleck ("A. Fleck"), William Fleck ("W. Fleck") and Bartosz Zielezinski ("Zielezinski") (collectively, "Plaintiffs") bring this class action against Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VW America") (together, "VW"), Audi Aktiengesellschaft ("Audi AG"), and Audi of America, Inc. ("Audi America") (together, "Audi") (collectively, "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease or leased a 2008 through 2013 model year 2.0L TSI or 2.0L TFSI VW or Audi vehicle

---

[1] Counsel's investigation includes an analysis of publicly available information, including Defendant's Technical Service Bulletins, National Highway Traffic Safety Administration documents and consumer complaints, as well as expert analysis of the defective and redesigned timing chain tensioners and timing chains, field investigations conducted by counsel, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

containing the defective Timing Chain System as defined below (the "Class Vehicles"), for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

2. Defendants wrongfully and intentionally concealed a defect in the timing chain system (the "Timing Chain System") of the Class Vehicles, which can fail at any time, forcing Plaintiffs and members of the Classes (defined below) to incur out of pocket costs to repair or replace the damaged engine parts or their entire engine.[2]   At a minimum, repairs will exceed $1,000.00.  In some cases, repairs can cost thousands of dollars.

3. The Timing Chain System is comprised, *inter alia*, of the camshaft sprockets, camshaft chain, camshaft chain hydraulic tensioner, timing gear-tensioning rail and timing gear chain rails. The system is depicted in the figure at paragraph 78, *infra*. Class engines use a hydraulic timing chain tensioner actuated by engine oil pressure to regulate tension on the timing chain tensioning rail that applies tension to the timing chain.  This tension keeps the timing chain from jumping the teeth on the sprockets that are attached to the camshafts and crankshaft and maintains synchronization between rotating engine components including the cylinder valves and pistons. Without proper timing chain tension and synchronization, the engine will run very poorly (if at all) and/or, if sufficient chain skip and mis-synchronization occur, its failure to function properly will cause cylinder valves and pistons to collide, resulting in severe internal damage to the engine.

---

[2] The Timing Chain System contains a device known as a "hydraulic chain tensioner" that is designed to keep the camshaft and crankshaft sprockets properly engaged and synchronized by taking up chain slack and applying a certain level of force on the tensioning rail.  The Timing Chain System is comprised of the hydraulic chain tensioner, timing chain, chain sprockets, guide rails and tensioning rail, *inter alia*.  *See* the figure at paragraph 78, *infra*.  As explained in detail below, the Timing Chain System fails before the end of the useful life of the engine as the result of a defect in design, material, manufacturing and/or workmanship (the "Timing Chain System defect").

4.     The Timing Chain System defect also presents a significant safety risk for Plaintiffs and members of the Classes because when the Timing Chain System suddenly and unexpectedly fails, Class Vehicles lose engine power, which causes a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes.  Thus, drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents as a result of Defendants' failure to disclose the existence of the Timing Chain System defect and corresponding safety risk.

5.     Despite Defendants' knowledge of the Timing Chain System defect, Defendants have never disclosed to Plaintiffs and members of the Classes that the defect exists or that drivers and occupants of the Class Vehicles are at risk.  Notwithstanding the fact that the Timing Chain System should operate normally in vehicles for at least 120,000 driven miles, on information and belief, Defendants have refused to repair or replace the Timing Chain System outside of the time periods covered by the manufacturer's warranties.  Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes by fraudulently concealing the existence of the defect, which Defendants know will typically occur after the expiration of the warranties.  Repairs can range in cost from approximately $1,200.00 (to replace the tensioner and timing chain) up to approximately $10,000.00 (to replace the entire engine).

6.     The Class Vehicles are equipped with engines, known as EA888 engines, that contain the defective Timing Chain System.  As a result of the defect, the EA888 engines are prone to premature failure before the end of the useful life of the engine and before 120,000 driven miles—the lowest number of miles Defendants recommend for regularly scheduled maintenance.  Defendants designed, manufactured, imported, distributed, marketed and/or sold

Class Vehicles with the defective Timing Chain System.  On information and belief, the EA888 engine with the defective Timing Chain System is contained in at least the following VW and Audi Class Vehicles: 2008-2010 and 2012 VW Beetle; 2009-2013 VW CC; 2008-2012 VW EOS; 2008-2012 VW Golf; 2008-2012 VW GTI; 2008-2012 VW Jetta; 2008-2012 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2012 VW Routan; 2008-2012 VW Tiguan; 2008-2013 VW Touareg; 2011 VW Touareg Hybrid; 2008-2012 Audi A3; 2008-2012 Audi A4; 2008-2012 Audi A5; 2010-2012 Audi A6; 2012 Audi A7; 2008-2012 Audi TT; 2010-2012 Audi Q3; 2009-2012 Audi Q5; and 2012 Audi Q7.

7.     The Audi A3 and VW Class Vehicles are equipped with EA888 2.0L TSI engines designated with engine codes CCTA or CBFA.  These engines were introduced in the United States in the 2008 model year.  The remaining Audi Class Vehicles are equipped with EA888 2.0L TFSI engines designated with engine codes CAEB, CAEA, or CDNC.  The engines designated with these five codes are all versions of the EA888 engine and all use the same Timing Chain System.

8.     Based on Defendants' representations in the USA Warranty and Maintenance schedules for the Class Vehicles, the Timing Chain System is expected to last for the useful life of the engine or at least 120,000 miles without the need for maintenance, repair or replacement. For example, owners and lessees of Class Vehicles were provided owner's manuals and USA Warranty and Maintenance schedules that do not show any Timing Chain System inspection or maintenance within the first 120,000 miles.[3]  Indeed, the Timing Chain System is omitted from the maintenance schedules.

---

[3] *See* Exhibit A (summarizing maintenance schedule and not showing any scheduled Timing Chain System maintenance for 120,000 miles); *see also* Exhibit B (not showing any scheduled Timing Chain System maintenance for 130,000 miles); Exhibit C (excerpts of pages 28-42 from

9.     Defendants provide warranty coverage for Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts."  Under warranties provided to members of the Classes, Defendants promised to repair or replace defective Class Vehicle engine components arising out of defects in materials and/or workmanship, such as the Timing Chain System defect, at no cost to owners or lessees of the Class Vehicles.  These warranties were provided in Class Vehicle window labels, owner's manuals and brochures, and advertised on Defendants' websites.

10.    Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Timing Chain System.  Because the Timing Chain System defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Timing Chain System under the terms of the warranties.  Further, given the latent nature of the Timing Chain System defect, Defendants knew or should have known that the majority of Timing Chain System failures likely would occur outside of the warranty periods and have wrongfully transferred the costs of repair or replacement to Plaintiffs and members of the Classes through Defendants' fraudulent concealment of the defect.  These costs are significant and range in the thousands of dollars, and

---

VW USA Warranty and Maintenance, CC, EOS, GTI, Golf, Tiguan, Touareg, Model Year 2011, showing no scheduled Timing Chain System maintenance within the first 130,000 miles).

no reasonable consumer expects to incur such costs during the useful life of the engine given Defendants' representations in the USA Warranty and Maintenance schedules.

11.     Knowledge and information regarding the Timing Chain System defect was in the exclusive and superior possession of Defendants and their dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.   Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers, *inter alia*, Defendants were aware of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Classes.

12.     Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Timing Chain System defect to increase profits and decrease costs by selling additional Class Vehicles and transferring the costs of repair or replacement of the Timing Chain System to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes.   On information and belief, Defendants have acknowledged the Timing Chain System defect by releasing several Technical Service Bulletins ("TSBs") describing the issue to their exclusive network of dealerships beginning in or around June 2010.

13.     Plaintiffs and members of the Classes assert claims against Defendants for fraud, breach of express and implied contractual duties, negligent misrepresentation, breach of express and implied warranties, violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, unjust enrichment, and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New

Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington.

14.     Defendants knowingly omitted, concealed and suppressed material facts regarding the defective Timing Chain System and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes. As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiffs and members of the Classes are entitled to damages and injunctive and declaratory relief.

15.     As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair or replacement of the Timing Chain System, other engine parts, or the entire engine; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

## II.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendant is a citizen.  This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

17.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VW America is incorporated in New Jersey, and Defendants have marketed, advertised,

sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District.  Defendants' actions have caused harm to Plaintiff Drake, a New Jersey resident, as well as hundreds of members of the Classes residing in New Jersey.  VW America and Audi America maintain the following offices and/or facilities in New Jersey: (1) the "VW/Audi VCI Eastern Region" in Woodcliff, New Jersey; (2) the "EEO, Audi Test Fleet" in Allendale, New Jersey; (3) the "Product Liaison Group" in Ridgefield, Edgewater and Allendale, New Jersey; (4) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[4] Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

III.   PARTIES

**Plaintiffs**

18.     Plaintiff Zimand is a citizen of the State of New Jersey and resides in Englewood, New Jersey. On or around April 13, 2009, Plaintiff Zimand leased a 2009 VW Jetta Wolfsburg Edition with a 2.0L TSI engine from a VW and Audi authorized dealer, Jack Daniels Motors Inc., in Fairlawn, New Jersey for personal or household use. In 2012, Plaintiff Zimand purchased the vehicle from the same dealer for personal or household use.

19.     Unbeknownst to Plaintiff Zimand at the time of lease in 2009 and purchase in 2012, Plaintiff Zimand's vehicle contained the Timing Chain System defect.

20.     On or around March 5, 2014, Plaintiff Zimand's 2009 VW Jetta experienced the Timing Chain System defect, which caused catastrophic failure of the vehicle's engine. The vehicle was brought to the dealer for service, and Plaintiff Zimand informed the dealer that the

---

[4] *See* About Us, Locations, Volkswagen Group America, http://www.volkswagengroup america.com/locations.html (last visited May 3, 2016).

vehicle cranks but will not start. The dealer noted: "Compression Found Ok. Check Fuel Pressure Found Ok. Check Engine Timing Found Off Marks. Found Chain Stretched and Tensioned Collapsed. Replace Cam Chain, Tensioned, Guide, Bridge. Reset DTC. Road Test."

21.     As a result of the Timing Chain System defect, Plaintiff Zimand was forced to replace the camshaft, chain, chain tensioner, brackets, valves, and numerous other engine parts. Plaintiff Zimand was forced to incur certain out of pocket expenses for these repairs, and did not have use of his vehicle for two weeks.

22.     Plaintiff Stockalper is a citizen of the State of Arkansas and resides in Fayetteville, Arkansas.  On December 11, 2012, Plaintiff Stockalper purchased a 2012 VW EOS Lux equipped with a 2.0L TSI EA888 engine in Springdale, Arkansas.  One or more Defendants provided the following manufacturer's warranties on Plaintiff Stockalper's vehicle: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" and (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts."  Under these warranties, Defendants promised to repair or replace defective engine components arising out of defects in materials and/or workmanship, such as the Timing Chain System defect, at no cost to Plaintiff Stockalper.

23.     Unbeknownst to Plaintiff Stockalper, at the time of purchase through present, Plaintiff Stockalper's vehicle contained the defective Timing Chain System.  Given this latent defect, Plaintiff Stockalper's vehicle is subject to sudden, unexpected failure of the Timing Chain System at any time.  Defendants have never informed Plaintiff Stockalper of the Timing Chain System defect and corresponding safety risk associated with her vehicle.

24.     Plaintiff Melman is a citizen of the State of New York and resides in Lindenhurst, New York.  On or around November 18, 2009, Plaintiff Melman bought a 2010 VW Tiguan equipped with a 2.0L TSI engine in New York for personal or household use.

25.     Unbeknownst to Plaintiff Melman, at the time of purchase through present, Plaintiff Melman's vehicle contained the defective Timing Chain System.  Given this latent defect, Plaintiff Melman's vehicle is subject to sudden, unexpected failure of the Timing Chain System at any time.  Defendants have never informed Plaintiff Melman of the Timing Chain System defect and corresponding safety risk associated with his vehicle.

26.     Plaintiff Drake is a citizen of the State of New Jersey and resides in Lake Hopatcong, New Jersey.  Plaintiff Drake purchased a 2010 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Drake's vehicle sustained severe engine damage related to the Timing Chain System failure in April 2016.  Plaintiff Drake incurred considerable expense repairing his vehicle's engine.  Plaintiff Drake lost the use of his Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

27.     Plaintiff Nadiri is a citizen of the State of California and resides in Garden Grove, California.  In late 2011, Plaintiff Nadiri purchased a new 2011 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer that was covered under an existing warranty.  Plaintiff Nadiri's vehicle sustained severe engine damage related to the Timing Chain System failure in 2016.  Plaintiff Nadiri incurred considerable expense repairing his vehicle's engine.  Plaintiff Nadiri lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

28.     Plaintiff Piumarta is a citizen of the State of California and resides in San Francisco, California.  In 2014, Plaintiff Piumarta purchased a certified pre-owned 2010 Audi A3

equipped with a 2.0L TFSI engine from an authorized Audi dealer.  In May 2016, Plaintiff Piumarta's vehicle sustained engine damage related to the Timing Chain System failure. Plaintiff Piumarta incurred considerable expense repairing her vehicle's engine.  Plaintiff Piumarta lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

29.     Plaintiff Swihart is a Citizen of the State of California and resides in Escondido, California.  In late 2011, Plaintiff Swihart purchased a 2009 Audi A4 Avant equipped with a 2.0L TSI engine from an authorized Audi dealer that was covered under an existing warranty. Plaintiff Swihart's vehicle sustained severe engine damage related to the Timing Chain System failure in February 2016.  Plaintiff Swihart incurred considerable expense repairing his vehicle's engine.  Plaintiff Swihart lost the use of his vehicle during substantial periods of time.

30.     Plaintiff LeMoine is a citizen of the State of Colorado and resides in Fort Collins, Colorado.  Plaintiff LeMoine purchased a 2010 Audi A3 equipped with a 2.0L TSI engine. Plaintiff LeMoine's vehicle sustained severe engine damage related to the Timing Chain System failure in March 2016.  Plaintiff LeMoine incurred considerable expense repairing her vehicle's engine.  Plaintiff LeMoine lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

31.     Plaintiff Serbia is a citizen of the state of Connecticut and resides in Milford, Connecticut.  Plaintiff Serbia purchased a new 2011 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Serbia's vehicle sustained severe engine damage related to the Timing Chain System failure in July 2015.  Plaintiff Serbia incurred considerable expense repairing his vehicle's engine.  Plaintiff Serbia lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

32.     Plaintiff Blanchard is a citizen of the State of Florida and resides in Miami, Florida.  On or around August 20, 2010, Plaintiff Blanchard leased a 2011 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer, South Motors Volkswagen,[5] in Miami, Florida for personal or household use.  On or around August 5, 2013, Plaintiff Blanchard purchased the vehicle from the same dealer for personal or household use.

33.     Unbeknownst to Plaintiff Blanchard at the time of lease in 2010 and purchase in 2013, Plaintiff's vehicle contained the defective Timing Chain System.  In late 2014 to early 2015, a check engine light began appearing on the dashboard of Plaintiff Blanchard's VW CC. Plaintiff Blanchard brought her vehicle to the authorized VW dealer at least three times for service to address the check engine light issue.  At each service, the dealer refused to check the Timing Chain System, misdiagnosed the issue, and charged Plaintiff Blanchard for repairs unrelated to the Timing Chain System.

34.     On or around April 23, 2016, Plaintiff Blanchard's VW CC experienced the Timing Chain System failure.  The driver of the vehicle stopped for gas and was unable to restart the vehicle.  The VW CC was towed to a local automotive service center for repair.  At that time, Plaintiff Blanchard's 2011 VW CC had approximately 63,895 miles, and was outside of the periods for the manufacturer's warranties.

35.     The Timing Chain System failure caused catastrophic damage to the engine in Plaintiff Blanchard's vehicle.  Plaintiff Blanchard was forced to replace the crankshaft, pistons, cylinder head, timing chain, and numerous other engine parts.  Because the Timing Chain System failure occurred outside of the periods for the manufacturer's warranties, Plaintiff

---

[5] South Motors Volkswagen is an "Authorized Volkswagen Sales and Service Center."  About Us, South Motors Volkswagen, http://www.southvw.com/about-south-motors-volkswagen-in-miami-fl (last visited May 6, 2016).

Blanchard was forced to pay out of pocket for all of the repairs. In addition to towing expenses and expenses related to previous repairs, Plaintiff Blanchard paid $3,873.74 on April 23, 2016 for repairs associated with the Timing Chain System failure.

36. Plaintiff Lopez is a citizen of the State of Florida and resides in Lutz, Florida. Plaintiff Lopez purchased a 2009 A4 Quattro equipped with a 2.0L TFSI engine. Plaintiff Lopez's vehicle sustained severe engine damage related to the Timing Chain System failure in December 2015. Plaintiff Lopez incurred considerable expense repairing his vehicle's engine. Plaintiff Lopez lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

37. Plaintiff Mekbeb is a citizen of the State of Florida and resides in Orlando, Florida. Plaintiff Mekbeb purchased a 2009 VW Jetta with a 2.0L TSI engine. Plaintiff Mekbeb's vehicle sustained severe engine damage related to the Timing Chain System failure in early 2016. Plaintiff Mekbeb incurred considerable expense repairing his vehicle's engine. Plaintiff Mekbeb lost the use of his Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation

38. Plaintiff Smith is a citizen of the State of Georgia and resides in Duluth, Georgia. Plaintiff Smith purchased a certified pre-owned 2010 A4 equipped with a 2.0L TFSI engine in February 2013 from an authorized Audi dealer. Plaintiff Smith's Timing Chain System failed in May 2016 at approximately 80,000 miles. Smith incurred considerable expense repairing his vehicle's engine. Plaintiff Smith lost the use of his Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

39. Plaintiff Sensnovis is a citizen of the State of Illinois and resides in Chicago, Illinois. Plaintiff Sensnovis purchased a certified pre-owned 2011 Tiguan equipped with a 2.0L

TSI engine in March 2014 from an authorized VW dealer.  Plaintiff Sensnovis' vehicle sustained severe engine damage related to the Timing Chain System failure in June 2016 at 77,500 miles. Sensnovis incurred considerable expense repairing her vehicle's engine.  Plaintiff Sensnovis lost the use of her Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

40.     Plaintiff Calihan is a citizen of the State of Illinois and resides in Chicago, Illinois.  Plaintiff Calihan purchased a certified pre-owned 2010 Tiguan equipped with a 2.0L TSI engine in December 2012 from an authorized VW dealer.  Plaintiff Calihan's vehicle sustained severe damage related to a Timing Chain System failure in June 2016 at 50,800 miles. Calihan incurred considerable expense repairing her vehicle's engine.  Plaintiff Calihan lost the use of her Class Vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

41.     Plaintiff Johnson is a citizen of the State of Indiana and resides in Martinsville, Indiana.  Plaintiff Johnson purchased a 2009 Audi A4 equipped with a 2.0L TFSI engine. Plaintiff Johnson's vehicle sustained severe engine damage related to the Timing Chain System failure in July 2016 at approximately 81,000 miles.  Plaintiff Johnson incurred considerable expense repairing his vehicle's engine.  Plaintiff Johnson lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

42.     Plaintiff Mody is a citizen of the State of Kansas and resides in Overland Park, Kansas.  Plaintiff Mody purchased a new 2012 VW Tiguan equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Mody's vehicle sustained severe engine damage related to the Timing Chain System failure in April 2016 at approximately 74,000 miles.  Plaintiff Mody incurred considerable expense repairing his vehicle's engine.  Plaintiff Mody lost the use of his

vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

43.     Plaintiff Haggerty is a citizen of the State of Michigan and resides in Detroit, Michigan.  Plaintiff Haggerty purchased a new 2012 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Haggerty's vehicle sustained severe engine damage related to the Timing Chain System failure in February 2016.  Plaintiff Haggerty incurred considerable expense repairing her vehicle's engine.  Plaintiff Haggerty lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

44.     Plaintiff Zhao is a citizen of the State of Minnesota and resides in Bloomington, Minnesota. Plaintiff Zhao purchased a new 2012 Audi Q5 equipped with a 2.0L TFSI engine from an authorized Audi dealer.  Plaintiff Zhao's vehicle sustained severe engine damage related to the Timing Chain System failure in May 2016.  Plaintiff Zhao incurred considerable expense repairing his vehicle's engine.

45.     Plaintiff Noyes is a citizen of the State of New Hampshire and resides in Manchester, New Hampshire.  Plaintiff Noyes purchased a 2012 VW Tiguan equipped with a 2.0L TSI engine.  Plaintiff Noyes' vehicle sustained severe engine damage related to the Timing Chain System failure in March 2016.  Plaintiff Noyes incurred considerable expense repairing her vehicle's engine.  Plaintiff Noyes lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

46.     Plaintiff Deib is a citizen of the State of New York and resides in Bay Shore, New York.  Plaintiff Deib purchased a 2010 Audi A4 equipped with a 2.0L TFSI engine.  Plaintiff Deib's vehicle sustained severe engine damage related to the Timing Chain System failure in

2016.  Plaintiff Deib incurred considerable expense repairing his vehicle's engine.  Plaintiff Deib lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

47.     Plaintiff Hosier is a citizen of the State of Maryland and resides in Sparrows Point, Maryland.  In August 2012, Plaintiff Hosier purchased a 2010 VW Tiguan equipped with a 2.0L TSI engine and with a certified pre-owned warranty from an authorized VW dealer. Plaintiff Hosier's vehicle sustained severe engine damage related to the Timing Chain System failure in January 2016.  Plaintiff Hosier incurred considerable expense repairing his vehicle's engine.  Plaintiff Hosier lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

48.     Plaintiff Panepinto is a citizen of the State of New York and resides in Bayside, New York.  Plaintiff Panepinto purchased a 2009 VW Jetta equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Panepinto's vehicle sustained severe engine damage related to the Timing Chain System failure in March 2016.   Plaintiff Panepinto incurred considerable expense repairing his vehicle's engine.   Plaintiff Panepinto lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

49.     Plaintiff Oles is a citizen of the State of North Carolina and resides in Jacksonville, North Carolina.  Plaintiff Oles purchased a 2008 VW Passat equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Oles' vehicle sustained severe engine damage related to the Timing Chain System failure in 2012.  Plaintiff Oles incurred considerable expense repairing her vehicle's engine.  Plaintiff Oles lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

50.     Plaintiff Scott is a citizen of the State of Ohio and resides in Columbus, Ohio. Plaintiff Scott purchased a 2011 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Scott's vehicle sustained severe engine damage related to the Timing Chain System failure in January 2016.   Plaintiff Scott incurred considerable expense repairing his vehicle's engine.  Plaintiff Scott lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

51.     Plaintiff Pipe is a citizen of the State of Pennsylvania and resides in Homestead, Pennsylvania.  Plaintiff Pipe purchased a new 2009 Audi A4 equipped with a 2.0L TFSI engine from an authorized Audi dealer.  Plaintiff Pipe's vehicle sustained severe engine damage related to the Timing Chain System failure in April 2016.  Plaintiff Pipe incurred considerable expense repairing his vehicle's engine.  Plaintiff Pipe lost the use of his vehicle during substantial periods of time and incurred towing expenses.

52.     Plaintiff Borchino is a citizen of the State of South Carolina and resides in Traveler Rest, South Carolina.  Plaintiff Borchino purchased a new 2012 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer.  Plaintiff Borchino's vehicle sustained severe engine damage related to the Timing Chain System failure in June 2016.   Plaintiff Borchino incurred considerable expense repairing his vehicle's engine.  Plaintiff Borchino lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

53.     Plaintiff Schaffranek is a citizen of Pennsylvania and resides in Pittsburgh, Pennsylvania.  Plaintiff Schaffranek purchased a 2010 VW CC in October 2013.  Plaintiff Schaffranek's vehicle suffered severe engine damage related to the Timing Chain System failure

on or about June 2016.  Plaintiff Schaffranek incurred significant economic damage in repairing his vehicle's engine and lost the use of his vehicle during the repair period.

54.     Plaintiff Kane is a citizen of the State of Texas and resides in San Antonio, Texas. In 2009, Plaintiff Kane purchased a new 2010 Audi A4 equipped with a 2.0L TFSI engine from an authorized Audi dealer in 2009.  Plaintiff Kane's vehicle sustained severe engine damage related to the Timing Chain System failure in June 2016.  Plaintiff Kane incurred considerable expense repairing her vehicle's engine.  Plaintiff Kane lost the use of her vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

55.     Plaintiff Gossman is a citizen of the State of Washington and resides in Seattle, Washington.  In December 2014, Plaintiff Gossman purchased a 2009 Audi A4 equipped with a 2.0L TFSI engine.  Plaintiff Gossman's vehicle sustained severe engine damage related to the Timing Chain System failure in June 2016.  Plaintiff Gossman incurred considerable expense repairing his vehicle's engine.  Plaintiff Gossman lost the use of his vehicle during substantial periods of time and incurred expenses in obtaining alternative transportation.

56.     Plaintiff Molwitz is a citizen of the State of Connecticut and resides in Ridgefield, Connecticut.  On or about November 6, 2009, Molwitz purchased a pre-owned 2009 Volkswagen Tiguan from Danbury Volkswagen in Danbury, Connecticut.  Molwitz purchased the vehicle primarily for his personal, family, and/or household purposes.

57.     In or about September 2015, Plaintiff Molwitz was driving his Tiguan when the timing chain tensioner failed resulting in engine shut down.  Fortunately, Plaintiff Molwitz was able to bring his vehicle to a safe stop without sustaining any injuries, but the results of this incident could have been deadly.

58.     Plaintiff Molwitz's Tiguan was diagnosed as having suffered from the Timing Chain System defect.  Molwitz contacted VW America and requested that the repair be covered under warranty free of charge.  However, VW America denied his request for warranty and/or goodwill coverage.  As a result, Plaintiff Molwitz brought his vehicle to a third-party repair facility and had the repairs done at a cost of approximately $8,000.

59.     Plaintiff Gaudet is a citizen of the State of Connecticut and resides in Bristol. Plaintiff Gaudet entered into a contract for a 2011 Volkswagen GTI from Crowley Volkswagen in Plainville, Connecticut on January 1, 2011.

60.     On May 5, 2016, Plaintiff Gaudet was driving near his home in Connecticut when his vehicle catastrophically failed.  Plaintiff pulled over to the side of the road, connected a diagnostic tool, and ran a diagnostic check on his vehicle and received error code P0016 that corresponds with a camshaft/crankshaft correlation failure.  Plaintiff then had his vehicle towed to back to the dealership.

61.     The dealership informed Plaintiff Gaudet that the timing chain tensioner in his vehicle failed and that the timing chain tensioner, timing chain, the camshaft, and the crankshaft needed to be replaced. The dealership declined warranty repairs and informed Plaintiff Gaudet it would cost approximately $3,650.00 in parts and labors to repair Plaintiff's vehicle.   The dealership offered to pay for a portion of the repair as a goodwill gesture, resulting in Plaintiff paying $813.00 to have his vehicle repaired.

62.     Plaintiff Ellahie is a citizen of California and resides in Los Gatos.  Plaintiff Ellahie entered into a contract for a 2010 Volkswagen CC from Sunnyvale Volkswagen in Sunnyvale, California in or about April 2013.  Plaintiff's vehicle came with a certified pre-owned warranty.

63.     On or about July 6, 2015, Plaintiff Ellahie was driving near his home in Los Gatos when his vehicle catastrophically failed.  Plaintiff Ellahie pulled over to the side of the road and had his vehicle towed to back to the dealership.  The dealership informed Plaintiff Ellahie that the timing chain tensioner in his vehicle failed and that the timing chain tensioner, timing chain, and the cylinder head assembly needed to be replaced.

64.      Plaintiff informed the dealership that he kept his vehicle properly maintained and asked the dealership to repair his vehicle under warranty.  The dealership declined warranty repairs and informed Plaintiff it would cost $7,856.45 in parts and labors to repair Plaintiff's vehicle.  The dealership offered to pay for a portion of the repair as a goodwill gesture, resulting in Plaintiff paying approximately $2,000.00 to have his vehicle repaired.

65.     Plaintiffs A. Fleck and W. Fleck (the "Fleck Plaintiffs") are citizens of the State of Florida, currently residing in Florida.  In February of 2015, the Fleck Plaintiffs purchased a 2012 Volkswagen EOS, which, up to that point, they had been leasing, from Volkswagen of Freehold, in Freehold, New Jersey.  The Fleck Plaintiffs purchased the car in February of 2015 for approximately $20,000.  Unbeknownst to the Fleck Plaintiffs, at the time of purchase in 2015, their vehicle contained the defective Timing Chain System.

66.     In May of 2016, the Fleck Plaintiffs' 2012 Volkswagen EOS experienced a Timing Chain System failure, which caused a catastrophic failure of the vehicle's engine. As a result of the Timing Chain System defect, the Fleck Plaintiffs were forced to incur approximately $7,000 in out of pocket expenses.

67.     Plaintiff Zielezinski is a citizen of the State of Nevada and resides in Las Vegas, Nevada.  In April of 2014, Plaintiff Zielezinski purchased a 2012 Audi A5 from AutoNation Volkswagen in Las Vegas, Nevada, for approximately $40,000.  Unbeknownst to Plaintiff

Zielezinksi, at the time of purchase in 2014, Plaintiff's vehicle contained the Timing Chain System defect.

68.    In May of 2016, Plaintiff Zielezinski's 2012 Audi A5 experienced a Timing Chain System failure, which caused a catastrophic failure of the vehicle's engine.  As a result of the Timing Chain System defect, Plaintiff Zielezinski was forced to incur approximately $6,000 in out of pocket expenses.

69.    None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the defect or premature failure of the Timing Chain System in the Class Vehicles.  Had Defendants disclosed that defects in the Timing Chain System would require Plaintiffs to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the engine, Plaintiffs would not have purchased their vehicles, or would have paid less for their respective vehicles.

70.    When Plaintiffs and members of the Classes purchased and/or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk.  Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs and Members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs and members of the Classes would have demanded repair or replacement during the warranty periods at no cost to Plaintiffs and members of the Classes—as provided for in Defendants' warranties.  Defendants represented that the class engine timing chain and

associated components such as the chain tensioner and rails would be maintenance free up to and including 120,000 miles.

71.     The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used.  Plaintiffs and members of the Classes have suffered an ascertainable loss as a result of Defendants' deceptive conduct, breach of contractual, common law and statutory duties, and omissions and/or misrepresentations associated with the Timing Chain System defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their respective vehicles.

72.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs and members of the Classes of the premature failure of the Timing Chain System and/or the defective nature of the Timing Chain System prior to the purchase or lease of the Class Vehicles.

**Defendants**

73.     Defendant VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is one of the largest automobile manufacturers in the world, and is in the business of designing, developing, manufacturing, and selling automobiles.  VWAG is the parent corporation of VW America and Audi AG.

74.     Defendant VW America is a New Jersey corporation doing business throughout the United States.  VW America's corporate headquarters is located in Herndon, Virginia.  VW America is a wholly-owned U.S. subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of VW automobiles nationwide.

75.     Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany and is a wholly-owned subsidiary of VW AG.  Audi AG is the parent of

22

Audi America and the Audi Group.  Audi AG designs, develops, manufactures and sells luxury automobiles under the Audi brand name.

76.    Audi America is a Delaware corporation with its principal place of business located in Herndon, Virginia.  Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engages in business, including the advertising, marketing and sale of Audi automobiles nationwide.

77.    At all relevant times, VW America and Audi America acted as authorized agents, representatives, servants, employees and/or alter egos of VW AG and Audi AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of VW and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction.

78.    At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW and Audi brand names throughout the United States.  Defendants and/or their agents designed, manufactured, and/or installed the Timing Chain System in the Class Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

## IV.    FACTUAL ALLEGATIONS

### A.    The EA888 Engine

79.    Defendants are major manufacturers of vehicles sold under the VW and Audi brands throughout the United States.  Defendants designed, manufactured, imported, distributed, marketed, and/or sold the Class Vehicles in the United States.  Defendants also provide service

and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

80.     Plaintiffs and members of the Classes purchased, leased, and/or own Class Vehicles.

81.     The Class Vehicles are equipped with 2.0L TSI or 2.0L TFSI EA888 engines which were first introduced by Defendants for the 2008 model year.  The EA888 engine contains the defective Timing Chain System which is prone to premature failure, creating a safety risk and forcing Plaintiffs and members of the Classes to pay thousands of dollars to repair or replace the damaged engine parts or entire engine.  The Audi A3 and VW Class Vehicles are equipped with EA888 2.0L TSI engines designated with engine codes CCTA or CBFA.  The remaining Audi Class Vehicles are equipped with EA888 2.0L TFSI engines designated with engine codes CAEB, CAEA or CDNC.

82.     Among other updates from earlier engines, the EA888 engine is equipped with the defective Timing Chain System as alleged herein.  Prior to the introduction of the chain-driven EA888 engine, VW and Audi used timing belts to synchronize the crankshaft and the camshafts.  According to the 2.0L TFSI Engine Self-Study, the "EA888 family of engines is replacing the belt-driven camshaft engines within the Volkswagen Group world wide."  *See* Exhibit D at 1 (Audi self-study program of the TFSI Engine (the "TFSI Engine Self-Study")).  Thus, beginning for model year 2008, VW and Audi exclusively used timing chains to synchronize the operation of the crankshaft with the camshafts in 2.0L TSI and 2.0L TFSI engines.

83.     Generally, a timing chain and a timing belt perform the same function, synchronizing the crankshaft with the camshaft(s).  However, noise level, cost-savings, and maintenance considerations, among others, influence a vehicle manufacturer's decision to use a

timing chain or timing belt system.  Timing chains usually last considerably longer than timing belts.  For example, Defendants' maintenance schedules require replacement of timing belts after a certain number of miles but do not require maintenance or replacement of the chain-driven Timing Chain System.  *See* Exhibits A and E.

84.     According to Audi, the EA888 engine is the base model for both the 2.0L TSI and the 2.0L TFSI.  *See* Exhibit D at 1.  According to the TFSI Engine Self-Study,

> The turbocharged 2.0L 4V chain-driven AVS engine (CAEB) [the TFSI Engine] described in this Self-Study Program is a development of the 1.8L chain-driven engine (EA 888 family) introduced in Europe in 2006.  The 1.8L engine, known as the Stage 0 engine, was the basis for the chain-driven 2.0L 4 cylinder engine (CCTA/CBFA) [the TSI Engine] introduced in North America during the 2008 model year.

Exhibit D at 1.

85.     A comparison of the "Technical Description" sections of the TFSI Engine Self-Study and the TSI Engine Self-Study (Exhibit F) demonstrates that both the 2.0L TFSI and the 2.0L TSI are "chain-driven" engines that utilize the same Timing Chain System.

86.     The TFSI Engine Self-Study and the TSI Engine Self-Study include the same terms in the Technical Description sections regarding the Timing Chain System, including that the "Engine Block" features include: (1) "Cast iron crankcase"; (2) "Balancer shafts in crankcase"; (3) "Forged steel crankshaft"; (4) "Sump-mounted oil pump—chain-driven by crankshaft"; (5) "Timing gear chain—front end of engine"; and (6) "Balancer—chain-driven at front end of engine."  *Compare* Exhibit D at 2 *with* Exhibit F at 1.

**B.     Timing Chain Systems**

87.     In order for a conventional four stroke internal combustion engine to function, fuel and air must be mixed in a cylinder.  The resulting "combustion" causes the piston(s) to reciprocate and the crankshaft to rotate.  Waste products of the combustion process are then

removed to permit further combustion to occur.  In a conventional gasoline powered automobile, the combustion occurs in an engine cylinder.  The addition of fuel and air and the removal of combustion products must occur in a carefully regulated sequence to permit the engine to operate.

88.     To regulate the addition of fuel and air and removal of byproducts, all Class Vehicles contain a timing system that controls the timing of the opening and closing of the engine's intake valves (responsible for releasing fuel and air into the engine cylinder) and exhaust valves (responsible for clearing the byproducts of combusted fuel and air).  A timing chain connects the crankshaft (connected to the pistons) to the camshaft—which opens and closes the cylinder valves.  The camshaft is designed to open and close the intake valves and exhaust valves in specifically timed intervals synchronized to the pistons.

89.     The 2.0L TSI and the 2.0L TFSI, both EA888 four cylinder turbocharged gasoline engines, use a double overhead camshaft ("DOHC") configuration with two camshafts connected to the crankshaft by a timing chain to ensure that the operating cycle is timed correctly.  The EA888 engine is an interference engine, which is a type of four-stroke engine in which one or more of the intake valves or the exhaust valves, in the fully open position, extend into the area into which the piston also travels.  Thus, if the camshaft timing is sufficiently off due to a stretched, broken, or dislocated timing chain, catastrophic engine failure occurs because the pistons will slam into the valves, leading to damaged pistons or valves (or both) and requiring expensive repair or replacement of the engine.  Figure 1, below, is a diagram of the labeled components of a DOHC engine with one dedicated camshaft to regulate the intake valves and one dedicated camshaft to regulate the exhaust valves.



**E**: the exhaust camshaft

**I**: the intake camshaft

**S**: the spark plug

**V**: the valves

**P**: the piston

**R**: the Piston connecting rod

**C**: the crankshaft

**W**: water jacket for coolant flow

**FIGURE 1**

90.     The four-stroke cycle is demonstrated by Figures 2 through 5 below.

**FIGURE 2**         **FIGURE 3**         **FIGURE 4**         **FIGURE 5**



91.     Figure 2 shows the intake camshaft depressing the intake valve so that the fuel and air mixture can enter into the piston combustion chamber.  Figure 3 shows the intake valve

camshaft and the exhaust valve camshaft disengaged from their respective valves so that the piston chamber is closed and the rising piston can compress the air and fuel right below the spark plug for optimal combustion.  Figure 4 shows the spark plug combusting the compressed air and fuel mixture in the now sealed chamber to drive the piston down.  And finally, Figure 5 shows the exhaust camshaft depressing the exhaust valve to open the valve so that the rising piston can expel the combusted air and fuel mixture.  The same process repeats itself for all of a vehicle's pistons in a synchronized fashion.

92.     For this four-stroke cycle to operate as designed, the crankshaft and the camshafts have to be connected so that piston movement and opening and closing of valves are fully synchronized.  A physical connection between the crankshaft and camshaft is typically maintained through the use of a timing belt or a timing chain.  The Class Vehicles use a timing chain to make the connection between the crankshaft and the camshaft.  When the timing system fails, synchronization is lost and the four-stroke cycle will be disrupted causing an inability to start, accelerate or maintain speed, immediate power loss and/or catastrophic engine failure.  When a piston drives into open valves, massive damage can be caused to the engine and it will suddenly fail.  Numerous dangerous conditions occur when the engine suddenly fails, including that the power assisted brakes and power steering system may cease operating.  Thus, additional force is required to steer and stop the vehicle.

93.     Thus, a properly functioning Timing Chain System is crucial to the safe and reliable operation of the Class Vehicles.

### C.     The Defective Timing Chain System

94.     Based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles, a Timing Chain System is intended and reasonably expected to last for the useful life of the engine and at least 120,000 miles without the need for

repair or replacement.   According to the Class Vehicles' maintenance schedules, the Timing Chain System in the Class Vehicles is expected to last beyond the warranty periods and should not require maintenance during the useful life of the engine.   For example, the Volkswagen 2009 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within 130,000 miles (the highest number of miles shown in the maintenance schedule) and the 2010 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within 120,000 miles (the highest number of miles shown in the maintenance schedule). *See* Exhibits A and B.   Similarly, the Audi 2010 maintenance schedule (for all models) does not require maintenance of the Timing Chain System within 125,000 miles (the highest number of miles shown in the maintenance schedule) and 2011 maintenance schedule (for all models) do not require maintenance of the Timing Chain System within 135,000 miles (the highest number of miles shown in the maintenance schedule).  *See* Exhibits E and G.   Thus, the failure of the Timing Chain System in the Class Vehicles occurs prematurely and before any reasonable consumer would expect the failure to occur.

95. The figure below depicts the Timing Chain System in the 2.0L TSI and the 2.0L TFSI:



**FIGURE 6**

96.     One part that has been identified as the source of the defect in the Timing Chain System is labeled the "Hydraulic Tensioner, Camshaft Chain Drive" (the "Chain Tensioner") in the above illustration.  The Chain Tensioner is an internal engine component that automatically controls tension on the timing chain and prevents it from skipping.  The Chain Tensioner is critical because if tension is not maintained on the timing chain, the chain can "jump a tooth" on a camshaft drive sprocket and set off a chain reaction—causing bent valves, extensive damage to engine parts, and, ultimately, catastrophic failure of the engine.

97.     The Chain Tensioner controls tension by utilizing oil pressure augmented by an internal spring to push an integrated piston with a controlled force against a timing chain tensioning rail that presses against the chain and keeps it in proper tension.  There is only oil pressure, however, when the vehicle is turned on and the engine is running.  When the vehicle is

turned off and during startup, when there is no oil pressure or oil pressure is low, the Chain Tensioner uses a mechanical mechanism to keep the piston from collapsing and releasing the tension in order to keep the chain tight.   The following photographs of the defective Chain Tensioner (part number 06H 109 467 N)[6] obtained from a Class Vehicle highlight the main parts of the Chain Tensioner:

**FIGURE 7**



**FIGURE 8**



**FIGURE 9**



**FIGURE 10**



---

[6] Other versions of the chain tensioner have been identified by the following part numbers: 06H 109 467 AB and 06H 109 467 T.

98.     As shown in Figures 7, 8 and 9, the mechanical mechanism incorporates a steel retainer clip, piston retainer pin, ratchet pawl, and piston teeth to keep the piston in place when the vehicle is off and there is no oil pressure.

99.     Plaintiffs retained a consultant with a Ph.D. in mechanical engineering and an extensive engineering mechanical design background to conduct a preliminary analysis of the Timing Chain System, including the Chain Tensioner.  Plaintiffs' consultant analyzed a defective Chain Tensioner that was taken from a Class Vehicle that experienced engine failure as a result of the defective Timing Chain System.  Plaintiffs' consultant determined that the ratchet pawl failed and caused the tension on the timing chain to be lost when the engine was off, allowing the timing chain to "jump a tooth" during startup, leading to bent intake valves and catastrophic engine failure.

100.    According to Plaintiffs' consultant, the Chain Tensioner uses a ratchet pawl mechanism to prevent the tensioner piston from collapsing inward into the tensioner body when the engine is shut off and oil pressure is not pushing the piston out.  The design is such that the integrated piston incorporates ratchet teeth on its top side [Figure 9], and a detached pawl is held in a slot above the piston by a retaining clip [Figure 8 and Figure 9].  Thus, if the small teeth on the pawl are broken or worn, or if the retaining clip fails to adequately hold the pawl in position, the piston does not hold the proper tension on the chain when the engine is off and during engine startup during the short time before engine oil pressure is built up to its normal level.  As a result, the low tension on the chain can allow the chain to "jump a tooth" on a camshaft drive sprocket, causing the camshaft to be "out of time" with the crankshaft and pistons.

101.    Thus, when the engine is "out of time," valves will open and close at the wrong time, allowing the pistons to hit and bend the valves when the pistons come up on the

32

compression stroke.  This can lead to destruction of the timing chain and/or other engine parts, or catastrophic engine failure.

102.    Figure 11 below, demonstrates how the valves bend after being struck by the piston:



**FIGURE 11**

103.    According to Plaintiffs' consultant, bent valves, as shown in Figure 11, are a very significant repair item on an engine and cost thousands of dollars to repair.

104.    No reasonable consumer expects to spend thousands of dollars to repair or replace essential engine components (or the entire engine) during the useful life of the engine.  Further, Plaintiffs and members of the Classes do not reasonably expect their Timing Chain System to fail before the end of the useful life of the engine (*see supra*, ¶8 & n.3) or to pay to repair or replace their Timing Chain System or engine in the event of a Timing Chain System failure.  As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have been or will be forced to pay thousands of dollars to replace or repair the Timing Chain System, other parts affected by the system's failure, and/or the entire engine.

105.    As detailed herein, Plaintiffs and members of the Classes also suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a

direct result of Defendants' material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Timing Chain System defect. The fact that the Timing Chain System is prone to premature failure is material to Plaintiffs and members of the Classes both because it subjects Plaintiffs and members of the Classes to unexpected costs of repair or replacement ranging in the thousands of dollars, and because the sudden failure of the Timing Chain System presents a risk of injury and/or death to drivers and passengers of the Class Vehicles.  The Timing Chain System is an integral component of the 2.0L TSI and 2.0L TFSI engines in the Class Vehicles and its failure can lead to the inability to accelerate or maintain speed and/or catastrophic engine failure.  These types of failures subject drivers and passengers of the Class Vehicles to safety risks, including the potential for rear-end collisions and other accidents.  As a result of Defendants' material misrepresentations and omissions, including the failure to disclose that the Class Vehicles are prone to premature Timing Chain System failure, Defendants have recklessly placed Plaintiffs and members of the Classes and the occupants of the Class Vehicles at risk.

> **D.     Defendants' Knowledge of the Timing Chain System Defect**

106.    Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs and members of the Classes the defects in the Class Vehicles even though Defendants knew or should have known of design and manufacturing defects in Class Vehicles if Defendants had adequately tested the Timing Chain Systems and engines in the vehicles.

107.    Knowledge and information regarding the Timing Chain System defect were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and members of the Classes.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data

compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and members of the Classes.  Defendants knew, or should have known, that the Timing Chain System defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

108.    Defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in the Timing Chain Systems shortly after production of the Class Vehicles commenced. Defendants engaged in extensive field research and quality investigations and analysis before redesigning the specifications for the defective part, rebidding the new part and manufacturing and distributing the new part.  In addition, Defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

109.    As recognized in the Class Vehicles' owner's manuals, Defendants knew that any defect that can potentially lead to engine failure, such as the Timing Chain System defect, presents a serious safety risk.  Numerous dangerous conditions occur when the engine suddenly fails, including that the power assisted brakes may cease operating and the power steering system

fails.  Thus, additional force is required to steer and stop the vehicle, and drivers and occupants are at risk for accidents.

110.    Notwithstanding Defendants' exclusive and superior knowledge of the Timing Chain System defect, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the defect through and including the 2013 model year.  Defendants have intentionally concealed that the Timing Chain System is defective, prone to premature failure and presents a safety risk rather than disclosing this risk to consumers, including Plaintiffs and members of the Classes, and the public.

### 1.    Technical Service Bulletins

111.    On information and belief, as a result of their exclusive and superior knowledge regarding the defective Timing Chain System, Defendants released several TSBs describing the issue to their exclusive network of dealerships beginning in or around June 2010.

112.    On or around June 8, 2010, Defendants released a TSB (TSB-15-10-04) describing timing chain issues with the following 2009 model year Audi Class Vehicles: Audi A3; Audi A4; Audi TT.  NHTSA summarized the TSB as follows: "AUDI: MIL ON; **NOISE FROM TIMING CHAIN** (DTC P001600). MIL ON; **ENGINE DIFFICULT TO START**; SOMETIMES RATTLE IN ENGINE COMPARTMENT; BANK 1, CAMSHAFT POSITION G40/CRANKSHAFT POSITION SENSOR G28, WRONG ASSIGNMENT STORED IN ENGINE CONTROL UNIT, POSSIBLE DAMAGE TO CAMSHAFT OR CAMSHAFT BEAR SURFACES. *PE."  Exhibit H (emphasis added).

113.    On or around April 15, 2011, Defendants released a second TSB (TSB-15-11-21) describing timing chain issues with the following 2009 model year Audi vehicles: Audi A3; Audi A4; Audi TT.  NHTSA summarized the TSB as follows: "VOLKSWAGEN: MALFUNCTION

LIGHT IS ON AND **THERE IS NOISE FROM THE TIMING CHAIN**. **ENGINE IS DIFFICULT TO START** AND THERE ARE TWO POSSIBLE TROUBLE CODES STORED. THERE IS POSSIBLE DAMAGE TO THE CAMSHAFT. *RM."   Exhibit I (emphasis added).

114.    On or around July 23, 2012, VW released a TSB describing problems associated with the defective Timing Chain System in 2008-2013 model year vehicles with 2.0L CCTA and CBFA engines.  The TSB warned that owners or lessees of vehicles with the defective Timing Chain System may experience: "**Engine Rattling Noises after Start, Engine Doesn't Start, Timing Chain Slipped**."  Exhibit J at 1 (the "2012 TSB").

115.    The 2012 TSB applied to the following VW vehicles: 2008-2010 and 2012 VW Beetle; 2009-2013 VW CC; 2008-2012 VW EOS; 2008-2012 VW Golf; 2008-2012 VW GTI; 2008-2012 VW Jetta; 2008-2012 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2012 VW Routan; 2008-2012 VW Tiguan; 2008-2013 VW Touareg; and 2011 VW Touareg Hybrid.

116.    Under Technical Background, the 2012 TSB states: "[t]iming chain tension may be incorrect due to tensioner" and "[a]s a result, the timing chain can skip and causing [sic] contact between the pistons and valves."  *Id.* at 1 (emphasis added).

117.    At the time the 2012 TSB was released, dealers were instructed to repair the defective Timing Chain System when customers complained of (1) "[r]attling noises after engine start from front of vehicle or engine compartment"; (2) "[e]ngine does not start"; or (3) "MIL ON."  *Id.* at 1.

118.    The 2012 TSB included the two images below depicting the correct and incorrect position of the piston within the Chain Tensioner body.  *See id.* at 3.  In Figure 12, the Chain

Tensioner piston is in the wrong position because it is retracted and incapable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner incorrect." *Id.* In Figure 13, the Chain Tensioner piston is in the correct position because it is extended and capable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner correct." *Id.*

 

**FIGURE 12**            **FIGURE 13**

119.    The 2012 TSB superseded a previous TSB relating to the Timing Chain System defect which was issued to VW dealerships on or around December 22, 2011 (T.B. V151104). Minimal changes were made to the revised TSB, which simply removed "European exhaust warning light reference in text" and added "additional model year applicability." *Id.* Although the 2011 TSB is not publically available, NHTSA summarized the TSB as follows: "**VOLKSWAGEN: CERTAIN MODELS ARE EXPERIENCING ENGINE NOT STARTING, MAKING A RATTLING NOISE WHEN ENGINE HAS STARTED, TIMING CHAIN KEEPS SLIPPING AND EXHAUST LIGHT COMES ON. \*PE**." Exhibit K (the "2011 TSB").

120.    According to NHTSA, the 2011 TSB applied to the following vehicles with 2.0L TSI engines: 2008-2010 VW Beetle; 2009-2011 VW CC; 2008-2011 VW EOS; 2008-2011 VW

Golf; 2008-2011 VW GTI; 2008-2011 VW Jetta; 2008-2010 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2011 VW Routan; 2008-2011 VW Tiguan; 2008-2011 VW Touareg; and 2011 VW Touareg Hybrid.

121.    Plaintiffs were never provided with copies of or information about the TSBs described above.  Further, on information and belief, the TSBs were not directly communicated to consumers.  Thus, despite the safety risk associated with the defective Timing Chain System, which Defendants recognized was in the majority of VW and Audi's 2008-2013 2.0L TSI and TFSI models, Defendants failed to disclose the defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes, and, instead, intentionally concealed the defect.

122.    The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers,  repair order and parts data received from the dealers, and testing performed in response to consumer complaints, evidence that since as early as 2008, Defendants have had exclusive and superior knowledge regarding the Timing Chain System defect.  Further, Defendants gained their knowledge of the defect through sources not available to Plaintiffs and members of the Classes.

### 2.      National Highway Traffic Safety Administration Complaints

123.    In addition to the TSBs and other evidence of Defendants' knowledge of the Timing Chain System defect, Defendants have knowledge of the defect due to consumer complaints such as those made to the NHTSA, which Defendants should monitor as part of a continuous obligation to identify potential defects in their vehicles.[7]

---

[7] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information

124.    Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the Timing Chain System defect and its safety risk.  Defendants' deceptive acts, misrepresentations and/or omissions regarding the Timing Chain System defect create a safety risk for drivers and occupants of the Class Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience a Timing Chain System failure while they are being driven.  When the Timing Chain System fails, the Class Vehicles can experience an inability to accelerate or maintain speed, or catastrophic engine failure causing the vehicle to come to a complete stop while driving, and increasing the risk of rear-end collisions and other accidents.  The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiffs and members of the Classes at all relevant times.

125.    Below is a small sample of consumer complaints made to NHTSA regarding failures of the Timing Chain System:

- **Date Complaint Filed:** 11/12/2014
  **Date of Incident:** 10/21/2014
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10654587
  **Consumer Location:** NEW LENOX, IL
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2009
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGAV75N29W...

  **SUMMARY:**

---

from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

I BROUGHT MY TIGUAN IN DUE TO AN ENGINE LEAK AND TO HAVE AN ENGINE DIAGNOSTIC. THEY INDICATED THE MAIN REAR MAIN SEAL WAS LEAKING. 700 PLUS DOLLARS. REPAIRED THE SEAL THE LEAK STOPPED BUT THE LOW ENGINE PRESSURE LIGHT WOULD NOT GO OFF. THE THEN INDICATED THAT THE TENSIONER ARM WAS BAD AND THAT NEEDED TO BE REPLACED. I RECEIVED A CALL THE NEXT DAY THAT THE TENSIONER WAS BAD BUT THE TENSIONER CHAIN HAD WALKED OFF THE ROCKER ARM AND THAT THE ENGINE NEEDS TO BE REPLACED. I CALLED MULTIPLE TIMES TO VOLKSWAGEN CUSTOMER CARE MULTIPLE TIMES AND THEY RESPONDED THAT THEY CANT HELP WITH ANYTHING. I HAVE RESEARCHED THE TENSIONER ARM THROUGH GOOGLE AND FOUND PAGES AND PAGES OF BLOGS WITH PEOPLE THAT HAVE EXPERIENCED THE SAME ISSUE WITH THE TENSIONER ARM FAILING RESULTING IN ENGINE FAILURE. *TR

- **Date Complaint Filed**: 07/13/2015
  **Date of Incident**: 07/07/2015
  **Component(s):** ENGINE , UNKNOWN OR OTHER NHTSA ID Number: 10733776
  **Consumer Location**: PFLUGERVILLE, TX
  **Vehicle Make Model Model Year(s**)
  AUDI A4 2009
  Manufacturer: Volkswagen Group of America, Inc.
  Vehicle Identification No. (VIN): WAUCF78K59N...
  Crash: No Fire:
  No Number of Injuries: 0
  Number of Deaths: 0

**SUMMARY:**

THE TIMING CHAIN TENSIONER FAILED CAUSING THE AUDI INTERFERENCE ENGINE TO BECOME OUT OF SYNC RESULTING IN THE ENGINE BECOMING TOTALED. THIS HAS BECOME A COMMON OCCURRENCE AND IS WIDELY REPORTED ON 2009 AND NEWER MODELS. BELOW IS AN ARTICLE WITH THEIR ASSESSMENT OF THE SITUATION. THE CAR HAD BEEN TAKEN IN 2X FOR MISFIRES AND WAS DIAGNOSED AS AN ISSUE WITH THE SPARK PLUGS, IT IS NOW CLEAR THAT THIS WAS THE TIMING CHAIN BEING OUT OF ALIGNMENT AND MISSED. UPON THE ENGINE LIGHT COMING ON THE CAR WAS LEFT PARKED UNTIL THE DAY BEFORE THE SERVICE APPOINTMENT WHEN IT WAS TO BE DROPPED OFF AT THE SERVICE LOCATION, AT THAT TIME, UPON STARTING THE VEHICLE THE TIMING CHAIN TENSIONER FAILED AND CAUSED THE ENGINE TO FIRE OUT OF ALIGNMENT DAMAGING THE ENGINE. WHEN SPEAKING TO A MEMBER OF THE AUDI DEALERSHIP IT WAS SHARED THAT ANOTHER VEHICLE IS IN FOR THE SAME ISSUE AND THAT THEY ARE SEEING THIS OCCUR MORE AND MORE IN THEIR VEHICLES. THIS FAILURE IS ALSO REMINISCENT OF THE 2007 CLASS ACTION LAW SUIT

WHICH PROMPTED AUDI TO MOVE FROM A TIMING BELT TO THE FOR THE SAME OUTCOME OCCURRING. HTTP://REDLINESPEEDWORX.COM/20TTSITIMINGCHAINFAILURE/
IF AUDI HAD PLACED OUT UPDATED PARTS, I WOULD LIKE TO KNOW WHY THERE WAS NO RECALL TO REPLACE THE PART OR ANYTHING MENTIONED BY THE MANUFACTURE INDICATING THE RELEASE OF UPDATED HARDWARE TO ADDRESS A "POTENTIAL ISSUE

- **Date Complaint Filed:** 11/08/2015
  **Date of Incident:** 10/31/2015
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10789083
  **Consumer Location:** PORTLAND, ME
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2010
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGBV7AX6AW...

  **SUMMARY:**

  WHILE DRIVING 25-30 MPH ON A CITY STREET, VEHICLE STOPPED ACCELERATING (MUCH LIKE RUNNING OUT OF GAS...) DEALER STATES TIMING CHAIN TENSIONER FAILED DESTROYING ENGINE-I UNDERSTAND VW HAS A TSB OUT ON THIS FOR YEARS AND THOUGH I SERVICED MY VEHICLE AT DEALER, NEVER KNEW OF THIS POTENTIAL PROBLEM

- **Date Complaint Filed:** 12/11/2015
  **Date of Incident:** 12/05/2015
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10809622
  **Consumer Location:** NEWNAN, GA
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENEOS2010
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVWFA7AH2AV...

  **SUMMARY:**

TL* THE CONTACT OWNS A 2010 VOLKSWAGEN EOS. WHILE ATTEMPTING TO TURN ON THE ENGINE, THE KEY FAILED TO START THE VEHICLE. THE VEHICLE HAD TO BE TOWED TO THE LOCAL MECHANIC WHO STATED THAT THE TIMING CHAIN FRACTURED AND THAT THERE WAS NO COMPRESSION. THE MECHANIC DIAGNOSED THAT THE TIMING CHAIN, VALVES, AND ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 61,000.

- **Date Complaint Filed:** 12/19/2015
  **Date of Incident:** 07/06/2015
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10811243
  **Consumer Location:** HOUSTON, TX
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2009
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGAV75N69W...

  **SUMMARY:**

  WHILE DRIVING WITH MY FOUR YEAR OLD IN THE BACKSEAT OF THE CAR, THE CAR SUDDENLY MISFIRED AND THE ENGINE ROUGH IDLED. THE CAR STALLED AT INTERSECTIONS AND IN THE MIDDLE OF THE ROAD. WE ALMOST GOT INTO AN ACCIDENT AS WE WERE DRIVING DOWN A CITY STREET, AS CARS BEHIND US HAD TO SWERVE OUT THE WAY WHEN OUR ENGINE STALLED. WE TOOK IT TO THE MECHANIC IMMEDIATELY, AS IT WAS CLEARLY HAZARDOUS TO HAVE ON THE ROAD, AND FOUND THAT A PISTON HAD MISFIRED AND STRETCHED THE TIMING CHAIN. THE CAR, A VW TIGUAN FROM 2009, WAS ONLY 6 YEARS OLD WHEN THIS EVENT OCCURRED.

- **Date Complaint Filed:** 02/03/2016
  **Date of Incident:** 01/31/2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10823939
  **Consumer Location:** BALTIMORE, MD
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGENTIGUAN2010
  Crash: No
  Fire: No
  Number of Injuries: 0

Number of Deaths: 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

TL* THE CONTACT OWNS A 2010 VOLKSWAGON TIGUAN. WHILE DRIVING AT VARIOUS SPEEDS, THE VEHICLE BECAME UNRESPONSIVE AND THE ENGINE WOULD NOT OPERATE AS NORMAL. THE CHECK ENGINE LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TIMING CHAIN TENSIONER BELT FAILED AND THE ENGINE WOULD NEED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 83,000

- **Date Complaint Filed:** 8/28/2015
  **Date of Incident:** 8/21/2015
  **NHTSA ID Number:** 10760009
  **Vehicle MakeModelYear(s)**
  VOLKSWAGENTIGUAN2009
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVGBV95N29W…

  SUMMARY:

  WHILE DRIVING ON ROAD APROX. 40MPH THE VEHICLE SUDDENLY STOPPED RUNNING-HAD TO COAST TO SIDE AND TOW IT.WHEN TOWED TO VW DEALER -THEY SAID TIMING CHAIN TENSIONER FAILED AND IT'S COMMON PROBLEM.THEY EVEN HAD TSB FOR THAT.WHY THEY DON'T RECALL THIS SINCE THEY ARE AWARE OF IT.IF I WAS AT HIGHER SPEED ON INTERSTATE, I WOULD BE IN BIG TROUBLE.

- **Date Complaint Filed:** 1/22/2015
  **Date of Incident:** 12/9/2014
  **Components:** Engine
  **NHTSA ID Number:** 10678414
  **Consumer Location:** Arvada, CO
  **Vehicle MakeModelYear(s)**
  VOLKSWAGENTIGUAN2010
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0

**Manufacturer:**  Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):**  VWGBV7AX5AW…

SUMMARY:

DRIVING ON FREEWAY AT 70 MPH AND EXPERIENCED FAILURE OF TIMING CHAIN TENSIONER. CAM SKIPPED CHAIN AND CAUSED PISTONS TO IMPACT VALVES. TOTAL AND COMPLETE ENGINE FAILURE THAT WAS SUDDEN AND UNEXPECTED AT HIGHWAY SPEED. MY RESEARCH FINDS THAT VW IS AWARE OF THIS PROBLEM BUT WILL NOT ISSUE A RECALL. *TR

### 3.     The Chain Tensioner Redesign

126.   With the exclusive and superior knowledge that the Chain Tensioner exhibited defects that caused the timing chain to skip a sprocket thereby disrupting the engine timing, Defendants redesigned the Chain Tensioner in or around 2012.  The redesigned chain tensioner (the "Redesigned Tensioner"), part number 06K 109 467 K, is substantially different from the original defective Chain Tensioner.  Figure 14 below, is a side by side comparison of the defective Chain Tensioner and the Redesigned Tensioner:

| Part Exhibiting Failures:<br>06H 109 467 N | Revised Design:<br>06K 109 467 K |
|---|---|
|  |  |
|  |  |
|  |  |

**FIGURE 14**

46

127.    According to Plaintiffs' consultant, the two designs have substantial differences. Most notably, in the defective Chain Tensioner, the ratchet pawl is accessible from the outside of the part, and it is retained in its position in the slot by the external steel retainer clip.   In the Redesigned Tensioner, the grooved tensioner piston and internal clip are contained inside the structure of the part and the external retainer clip has been eliminated.   The piston is now covered by an end closure where it comes out of the housing, exhibiting a substantially different design configuration.

128.    In the original design, the approximately 8 mm length ratchet pawl—used to engage teeth cut into the top of the Chain Tensioner piston to maintain minimum tensioner force on the timing chain tensioning rail when the engine is shut off and pressurized engine oil is no longer forcing the tensioner piston outward—is made of sintered metal.   Sintered metal is a type of metal that has undergone a sintering process, in which powdered metal is directly turned into forged metal by being heated beyond its melting point until the particles form a molecular bond, as opposed to use of liquid metal in the forging process.   Metals such as iron, copper, and aluminum are commonly turned into sintered metal.

129.    The sintered ratchet pawl in the defective Chain Tensioner is weaker than other forged metal and likely prematurely fails.   After as little as 50,000 miles, the teeth of the sintered metal pawl become sufficiently worn and/or distorted and are no longer capable of properly engaging the Chain Tensioner piston thus allowing the piston to retract into the tensioner housing.   *See* Figure 15 (tensioner pawl removed from failed 2.0L TSI Tensioner System).



**FIGURE 15**

130.   The defective Timing Chain System also incorporated a timing chain constructed with alternating rows of link plate thicknesses, which likely allows the chain to stretch excessively and introduce unanticipated slack into the Timing Chain System possibly contributing to the failure in the Class Vehicles.   As shown below, Defendants subsequently redesigned this timing chain.  *See* Figure 16 (new chain design on the left, old design on the right).



**FIGURE 16**

48

131.    Based on a preliminary analysis of the defective Chain Tensioner and the Redesigned Tensioner, Plaintiffs' consultant determined that it is likely that a materially significant  number of vehicles with the Chain Tensioner will experience early failures before the design life of the Chain Tensioner is attained.  Given that the Chain Tensioner is integral to the engine and is time-consuming and expensive to replace, the design life of the Chain Tensioner is co-extensive with the design life of the engine.  Based on his extensive experience, Plaintiffs' consultant expects a properly designed chain tensioner and timing chain to last for a minimum of 150,000 miles before requiring replacement.

132.    There are multiple blogs and websites maintained by automotive enthusiasts who have shared their class engine timing chain failure with other Class Vehicle owners and individuals.  These sites have hundreds of entries and thousands of viewings concerning failed timing chain systems in class engines.[8]  Independent Volkswagen and Audi vehicle repair shops also have posted a description of the Timing Chain System failures on their websites.[9]

## V.    FURTHER ALLEGATIONS

133.    Defendants failed to inform Class Vehicle owners and lessees prior to purchase or lease of the Class Vehicles during the express warranty period that the Timing Chain System was defective and would fail shortly after the express warranty period expired.  Defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Timing Chain System defect in the Class Vehicles.

---

[8]  *See, e.g.,*  http://www.golfmk6.com/forums/showthread.php?t=47128 (last visited June 24, 2016).

[9]  *See, e.g.,* http://www.minhsautocare.com/tsi-timing-chain/ (last visited June 24, 2016).

134.    Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase or lease that the Timing Chain System in their Class Vehicles had been inadequately tested prior to placing the car in production and the time of vehicle sale or lease.

135.    Defendants also failed to inform Class Vehicle owners that there had been several significant subsequent Chain Tensioner and chain design improvements as described in this complaint that reduced and/or eliminated premature Timing Chain System failure while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service."[10]   Specifically, this powertrain limited warranty covered "all internal [engine] parts" including the Timing Chain System.   This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

136.    By as early as 2008 but no later than 2010, Defendants knew that Class Vehicles were experiencing premature Timing Chain System failures.   Despite this knowledge, Defendants continued to sell Class Vehicles with a defective Timing Chain System.   This knowledge is imputed to all Defendants because VW America was monitoring warranty claims and Class Vehicle performance in the United States, and reporting back to its affiliated and parent companies located in Germany and the United States.

137.    Certain Plaintiffs were informed by representatives of VW America that it would not provide assistance in repairing Timing Chain Systems or engines because the Timing Chain System failure occurred outside of the express warranty period.

---

[10] Audi vehicles were covered by a general vehicle warranty of "4 years or 50,000 miles, whichever occurs first."

138.     Defendants refused to fully reimburse or compensate certain Plaintiffs for vehicle repair expenses or provide a suitable substitute or replacement vehicles.

139.     Although their vehicles' Timing Chain System failure occurred outside the unilateral express warranty period (which was neither seen nor bargained for prior to purchase), certain Plaintiffs' Class Vehicles exhibited unmistakable symptoms (known only by Defendants) of degradation and impending premature failure within the express warranty period.

140.     Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, Defendants failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

141.     Through no fault of their own, Plaintiffs and members of the Classes did not possess sufficient technical expertise to recognize symptoms of impending Timing Chain System failure.  This information, however, was well known to Defendants, but not revealed.

142.     Plaintiffs and members of the Classes relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of Defendants at the time of purchase or lease, including but not limited to the useful and expected life of Class Vehicles and the recommended Class Vehicle maintenance program.

143.     Defendants' misrepresentations and fraudulent statements were received by Plaintiffs and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in the owner's manual and the USA Warranty and Maintenance pamphlets.  The representations created a reasonable belief that the useful life expectancy of Class Vehicles without a major engine failure was in excess of 120,000 miles. These representations specifically related that the Timing Chain System was a non-maintenance engine component.

144.    Defendants actively concealed the true reasonably expected duration of Class Vehicle components, including but not limited to the Timing Chain System, from the Plaintiffs and all Class Vehicle purchasers and lessees.  Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a defective and/or improperly tested Timing Chain System that would prematurely fail within the reasonably expected useful life of the vehicle.

145.    Defendants intentionally failed to inform Class Vehicle purchasers and lessees that the Timing Chain System incorporated in Class Vehicles results in higher operational costs than alternative conventional timing chain systems or other competitive technology because the Timing Chain System prematurely fails within the reasonably expected useful life of the vehicle.

146.    Defendants actively and fraudulently concealed the existence of Class Vehicle design and manufacture defects (including defects covered under Class Vehicle warranties concerning materials and workmanship) and that the owner's manual accompanying Class Vehicles incorporated improper maintenance recommendations and maintenance intervals.

147.    Plaintiffs and members of the Classes did not learn that their respective Class Vehicle was defectively designed and manufactured until after their Timing Chain System failed.

148.    Certain Plaintiffs made calls to customer service telephone representatives employed by Defendants and Defendants had notice of the Timing Chain System defect.

149.    Authorized Volkswagen and Audi dealers did not have knowledge of and/or were counseled not to admit that any defects existed in Class Vehicles or that improper maintenance recommendations were incorporated in the owner's manual. Volkswagen and Audi dealers  (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicle failures) improperly blamed Class Vehicle failures on certain conditions for which

Defendants would not be responsible and/or denied the existence of defects in the Timing Chain System.

150.    Defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to their Timing Chain System, suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including Plaintiffs and members of the Classes.  Plaintiffs and members of the Classes were ignorant of this technical information through no fault of their own.

151.    Defendants acted to conceal the Timing Chain System defects during the warranty period so that repair costs would be shifted to Plaintiffs and members of the Classes once the warranty expired and the Timing Chain System failed.

152.    Although Defendants knew defects in Class Vehicles caused premature failure of the Timing Chain System, Defendants knowingly and actively concealed material information from prospective and actual purchasers and lessees with the intent to deceive purchasers and lessees and promote Class Vehicle sales.

153.    Defendants' knowledge of Class Vehicle defects was derived from warranty claims, claims supervisors, customer complaints and monitoring of performance of Class Vehicles by VW America quality assurance employees.  Additionally, the number of replacement components and subsequent component revisions would have placed Defendants on notice of Timing Chain System defects in Class Vehicles.  Knowledge of Class Vehicle defects is further imputed to Defendants prior to sale or lease of certain model year Class Vehicles

because predecessor models using identical Timing Chain System components were also prematurely failing within their reasonably expected life.  Defendants elected to place into the stream of commerce Class Vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the Timing Chain System.

154.    Additional information supporting allegations of fraud and fraudulent conduct is in the control of Defendants.  This information includes but is not limited to technical root cause analyses, communications with Class Vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' timing chain tensioner was defective.

155.    Material information fraudulently concealed and/or actively suppressed by Defendants includes but is not limited to Class Vehicle defects described in the preceding paragraphs.

156.    Material information was fraudulently concealed and/or actively suppressed in order to sell Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.  Class Vehicles incorporated a known Timing Chain System defect that would severely affect the useful life of the vehicle.

157.    Defendants (and particularly the sales and marketing executives at VW America) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that Class Vehicles would last over 120,000 miles or ten years before experiencing Timing Chain System failure.  Material information was fraudulently concealed and/or actively suppressed in order to protect

Defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit VW and Audi's brand disparagement.

158.    Defendants had a duty to disclose to Class Vehicle owners and lessees that there were materials and manufacture defects in Class Vehicles and that the owner's manuals set forth the wrong maintenance recommendations and maintenance intervals.

159.    This duty arose because Defendants knew that there were defects in the Class Vehicles and inaccuracies in the owner's manuals that affected vehicle operation and safety while Class Vehicle owners and lessees were not, and could not reasonably be, cognizant of these defects and dangers.

160.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from Plaintiffs and other purchasers and lessees.  Defendants breached their affirmative duty of disclosure to Class Vehicle owners and lessees.[11]

161.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in Class Vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

162.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase durational warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty

---

[11] Since unexpected engine failure is a serious safety issue, Defendants had an affirmative duty to disclose the vehicle defects together with associated risks.

(including but not limited to durational warranties that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when Class Vehicles prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models identical to Class Vehicle except for an engine with a belt driven valve train rather than the 2.0L TSI / TFSI chain driven valve train.

163.   Purchasers and lessees of Class Vehicles reasonably expect vehicles to function well in excess of the Class Vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers and lessees of Class Vehicles were led to believe by Defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection or maintenance for the timing chain system within this period.

164.   Given the conduct of Defendants and the design, manufacture, materials and workmanship defects in Class Vehicles (that Defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representative and proposed members of the Classes were neither knowing nor voluntary.

165.   The contractual terms were unreasonably favorable to Defendants since Defendants were fully aware of defects in the Class Vehicles that substantially reduced the expected useful life of the vehicle. Plaintiffs and members of the Classes were unaware of defects in the Class Vehicles at the time of purchase or lease.

166.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers and lessees, including Plaintiffs and members of the Classes.  This is because Defendants knew there were defects in Class Vehicles affecting the durational operation.

167.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous and had been inadequately tested.

168.    Defendants knew defects in Class Vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle.  Defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

169.    Defendants unconscionably sold and leased defective Class Vehicles to Plaintiffs and members of the Classes without informing these purchasers and lessees that the Class Vehicles were defective.   In the alternative, Defendants failed to notify the Plaintiffs and members of the Classes after the time of sale or lease that the Timing Chain System had been redesigned and that the system in their respective vehicles should be replaced prior to the expiration of the warranty.

170.    Defendants' conduct renders the vehicle purchase and/or lease contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

171.    The durational limitation of the express warranties accompanying the Class Vehicles is unreasonable and unconscionable since Defendants actively concealed known vehicle

defects and issued incorrect maintenance recommendations and maintenance intervals. Plaintiffs and members of the Classes had no notice of or ability to detect the defects.

172.    Defendants restricted the limited power train warranty (including the class engine) duration to 5 years or 60,000 miles (whichever occurs first) for Class Vehicles in an effort to avoid the cost of repairs because they were cognizant of Class Vehicle defects that existed at the time of sale.

173.    Engines in competitive vehicles manufactured and sold or leased at the time the Class Vehicles were manufactured and sold or leased ordinarily last longer than warranted by the limited power train warranty accompanying Class Vehicles.

174.    Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal Class Vehicle materials defects, workmanship defects, manufacturing defects, design defects and improperly recommended maintenance.

175.    Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

176.    Defendants failed to adequately test Class Vehicles in appropriate consumer environments prior to marketing, distribution and sale.

177.    Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. Defendants' upper level management orchestrated this wrongful conduct.

178.    Even if Class Vehicles do not fail entirely, Class Vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for Timing Chain System inspections and/or premature replacement of the Timing Chain System

and/or substantially reduced engine performance, as well as diminution of the resale value of their Class Vehicles.

179.    The proposed class representatives and proposed members of the Classes have not received the benefit of their bargain concerning their respective purchase of Class Vehicles.

180.    Defendants are persons within the context of the consumer protection laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington, respectively, and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to Plaintiffs and members of the Classes.

181.    Defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that Class Vehicles incorporated defective Timing Chain Systems and were accompanied an owner's manual and USA Warranty and Maintenance pamphlet that incorporated incorrect engine service and maintenance recommendations.  Plaintiffs and members of the Classes were deceived by Defendants' conduct as described in this complaint with respect to their purchase or lease of Class Vehicles.

182.    Defendants violated the consumer protection laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to Plaintiffs and members of the Classes.

183.     Defendants were under a duty to disclose defects in Class Vehicles and associated safety risks as described in this complaint but failed to disclose to Plaintiffs and members of the Classes the characteristics of Class Vehicles with respect to defects in violation of the consumer protection laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington.   Defendants' omissions (that Timing Chain Systems were defective and that this defect constituted a safety risk) deceived purchasers and lessees (including but not limited to Plaintiffs and members of the Classes).  Those disclosure omissions include the fact that Class Vehicle defects had a significant impact on the value, durability and future care of Class Vehicles.  This failure to disclose additional information concerning Class Vehicle defects had the capacity to, and in fact did, deceive purchasers and lessees (including Plaintiffs and members of the Classes) in a material respect.

184.     If Plaintiffs and members of the Classes had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased or leased the Class Vehicles or would have paid less for their vehicles since members of the Classes were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of Class Vehicles.

185.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs and members of the Classes defects in Class Vehicles even though Defendants knew or should have known that information concerning these defects was material and central

to the marketing and sale or lease of Class Vehicles to prospective purchasers and lessees including Plaintiffs and members of the Classes.

186.    Defendants violated the consumer protection laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington by failing to inform Class Vehicle owners and lessees at the time of purchase or lease that Class Vehicles had known defects, that the vehicles would prematurely require major engine repairs and/or prematurely fail with resulting catastrophic failure and/or would have a significant effect on the vehicle's value.

187.    As a direct result of these omissions, Plaintiffs and members of the Classes purchased or leased Class Vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented, with an increased cost of vehicle ownership and an increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase or lease.

188.    The wrongful conduct of Defendants in violation of the consumer protection laws of New Jersey, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by Defendants' conduct.

**What the Omissions Were:**

189.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information concerning

Timing Chain System defects, in an effort to deceive purchasers and lessees as described in this complaint.  At the time of purchase or lease, Defendants fraudulently omitted to disclose material matter regarding the defects in Class Vehicles, including their impact on future repairs, costs and vehicle reliability.   Defendants fraudulently concealed from Plaintiffs and members of the Classes defects in Class Vehicles even though Defendants knew or should have known that information concerning these defects was material and central to the marketing, sale and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Classes.  Defendants concealed from Plaintiffs and members of the Classes during their warranty periods that a defect existed with the Timing Chain System which could have and should have been fixed during the warranty period, particularly as it was a safety issue, and Defendants' withholding of this material information deprived Plaintiffs and members of the Classes of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

190.     Plaintiffs and members of the Classes are entitled to the reasonable inference that Defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.  This is particularly true given Defendants' recent conduct involving compliance certification and pollution control defeat devices involved in the sale of diesel powered passenger vehicles around the world and particularly in the United States.

**The Context of the Omissions and the Manner in which they Misled:**

191.     Material information was fraudulently concealed and/or actively suppressed in order to sell or lease Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations as described in this complaint.

192.    If Plaintiffs and members of the Classes had been informed of defects in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or would have paid substantially less.  If Plaintiffs and members of the Classes had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of Class Vehicles.  If Plaintiffs and members of the Classes had been informed of the Timing Chain System defect during the warranty period, they would have had the defective part replaced under warranty. Defendants' conduct that violated the consumer fraud statutes alleged herein deprived Plaintiffs and members of the Classes of that remedy.

**What Defendants Obtained through the Fraud:**

193.    Material information concerning Class Vehicles was concealed and/or actively suppressed in order to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement.  Purchasers believed they were obtaining vehicles as having different attributes than described and purchased or leased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles.  Defendants had a uniform policy of not properly disclosing Class Vehicle defects in order to promote sales and increase profits as described in this complaint.

194.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Classes purchased or leased Class Vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

195.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Timing Chain System defect and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Timing Chain System defect and could not reasonably discover the latent nature of the defect.

196.    Plaintiffs and members of the Classes could not reasonably discover Defendants' deception with respect to the Timing Chain System defect in the Class Vehicles prior to experiencing a failure and being informed of the reason for the failure.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Timing Chain System defect.

197.    Class Vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for Class Vehicles.

198.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained a Timing Chain System prone to premature failure or safety risk.  As alleged herein, the existence of the Timing Chain System defect and safety risk were material to Plaintiffs and members of the Classes at all relevant times.

199.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles

and to disclose the Timing Chain System defect and potential safety risk associated with the premature failure of the system.

200.   Defendants knowingly, actively and affirmatively concealed the facts alleged herein including the Timing Chain System defect.   Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active and affirmative concealment.

201.   Defendants fraudulently attributed the Timing Chain System failures to other factors and/or exculpating conditions for which Defendants had no responsibility when, in reality, Timing Chain Systems were failing due to design, manufacture, materials and/or workmanship defects.

202.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ACTION ALLEGATIONS

203.   Plaintiffs bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed Class and Sub-Classes (or any other class authorized by the court) defined as follows:

**Nationwide Class**: All persons or entities in the United States that purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class").

**New Jersey Class:** All persons or entities that purchased or leased a Class Vehicle in the State of New Jersey and all persons or entities in the State of New Jersey that purchased, leased or own a Class Vehicle (the "New Jersey Sub-Class").

**Arkansas Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Arkansas and all persons or entities in the State of Arkansas that purchased, leased or own a Class Vehicle (the "Arkansas Sub-Class").

**California Class:** All persons or entities that purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California that purchased, leased or own a Class Vehicle (the "California Sub-Class").

**Colorado Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Colorado and all persons or entities in the State of Colorado that purchased, leased or own a Class Vehicle (the "Colorado Sub-Class").

**Connecticut Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Connecticut and all persons or entities in the State of Connecticut that purchased, leased or own a Class Vehicle (the "Connecticut Sub-Class").

**Florida Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Florida and all persons or entities in the State of Florida that purchased, leased or own a Class Vehicle (the "Florida Sub-Class").

**Georgia Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Georgia and all persons or entities in the State of Georgia that purchased, leased or own a Class Vehicle (the "Georgia Sub-Class").

**Illinois Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Illinois and all persons or entities in the State of Illinois that purchased, leased or own a Class Vehicle (the "Illinois Sub-Class").

**Indiana Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Indiana and all persons or entities in the State of Indiana that purchased, leased or own a Class Vehicle (the "Indiana Sub-Class").

**Kansas Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Kansas and all persons or entities in the State of Kansas that purchased, leased or own a Class Vehicle (the "Kansas Sub-Class").

**Maryland Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Maryland and all persons or entities in the State of Maryland that purchased, leased or own a Class Vehicle (the "Maryland Sub-Class").

**Michigan Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Michigan and all persons or entities in the State of Michigan that purchased, leased or own a Class Vehicle (the "Michigan Sub-Class").

**Minnesota Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Minnesota and all persons or entities in the State of Minnesota that purchased, leased or own a Class Vehicle (the "Minnesota Sub-Class").

**Nevada Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Nevada and all persons or entities in the State of Nevada that purchased, leased or own a Class Vehicle (the "Nevada Sub-Class").

**New Hampshire Class:** All persons or entities that purchased or leased a Class Vehicle in the State of New Hampshire and all persons or entities in the State of New Hampshire that purchased, leased or own a Class Vehicle (the "New Hampshire Sub-Class").

**New York Class:** All persons or entities that purchased or leased a Class Vehicle in the State of New York and all persons or entities in the State of New York that purchased, leased or own a Class Vehicle (the "New York Sub-Class").

**North Carolina Class:** All persons or entities that purchased or leased a Class Vehicle in the State of North Carolina and all persons or entities in the State of North Carolina that purchased, leased or own a Class Vehicle (the "North Carolina Sub-Class").

**Ohio Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Ohio and all persons or entities in the State of Ohio that purchased, leased or own a Class Vehicle (the "Ohio Sub-Class").

**Pennsylvania Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Pennsylvania and all persons or entities in the State of Pennsylvania that purchased, leased or own a Class Vehicle (the "Pennsylvania Sub-Class").

**South Carolina:** All persons or entities that purchased or leased a Class Vehicle in the State of South Carolina and all persons or entities in the State of South Carolina that purchased, leased or own a Class Vehicle (the "South Carolina Sub-Class").

**Texas Class**: All persons or entities that purchased or leased a Class Vehicle in the State of Texas and all persons or entities in the State of Texas that purchased, leased or own a Class Vehicle (the "Texas Sub-Class").

**Washington Class**: All persons or entities that purchased or leased a Class Vehicle in the State of Washington and all persons or entities in the State of Washington that purchased, leased or own a Class Vehicle (the "Washington Sub-Class") (together with the New Jersey Sub-Class, Arkansas Sub-Class, California Sub-Class, Colorado Sub-Class, Connecticut Sub-Class, Florida Sub-Class, Georgia Sub-Class; Illinois Sub-Class, Indiana Sub-Class; Kansas Sub-Class; Maryland Sub-Class, Michigan Sub-Class, Minnesota Sub-Class, Nevada Sub-Class; New Hampshire Sub-Class, New York Sub-Class; North Carolina Sub-Class, Ohio Sub-Class, Pennsylvania Sub-Class, South Carolina Sub-Class; and the Texas Sub-Class (the "Sub-Classes").

204.    Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates, officers, directors, employees, assigns, and successors, the

court, court staff, Defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the Class and Sub-Classes are any and all claims involving personal injury. Plaintiffs reserve the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserve the right to establish additional sub-classes where appropriate. The Class and Sub-Classes are collectively referred to herein as the "Classes."

**Numerosity of the Class: Fed. R. Civ. P 23(a)(1).**

205. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 250,000 class vehicles imported into and/or manufactured in the United States. Although the number, location and identity of all proposed members of the Classes cannot be presently ascertained, this information is obtainable through discovery from the Defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

206. Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

(a) Whether the Timing Chain System installed in the Class Vehicles is prone to premature failure;

(b) Whether the Timing Chain System installed in the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the Timing Chain System installed in the Class Vehicles presents a safety risk;

(d) Whether Defendants knew or should have known that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(e) Whether Defendants had a duty to disclose that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(f) Whether Defendants breached their duty to disclose that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(h) Whether Defendants negligently or falsely misrepresented or omitted material facts including the fact that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Timing Chain System defect;

(j) Whether Class Vehicles were sold with an owner's manual and/or USA Warranty and Maintenance manual that incorporated incorrect inspection and service intervals for the Timing Chain System;

(k) Whether Defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that Class Vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(l) Whether Defendants breached their implied warranties in that Class Vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(m) Whether Defendants violated The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and/or any other statutory duties under state laws;

(n) Whether one or more Defendants breached their express and/or implied contractual duties to Plaintiffs and members of the Classes;

(o) Whether Defendants were unjustly enriched by the conduct alleged herein;

(p) Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

(q) Whether members of the Classes would have purchased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

(r) Whether members of the Classes would have had the Timing Chain System repaired or replaced if Defendants had disclosed, prior to the expiration of the warranty periods, that the Timing Chain System was defective and/or prone to premature failure during the useful life of the engine;

(s) Whether Defendants actively concealed or omitted material facts from Plaintiffs and members of the Classes in order to, *inter alia,* sell more Class Vehicles and/or transfer

the costs associated with repair or replacement of the Timing Chain System to Plaintiffs and the Classes;

(t) Whether Defendants committed unfair and deceptive business act practices by failing to inform owners and lessees of Class Vehicles prior to purchase and/or lease and/or during the post-sale express warranty period that the Timing Chain System was defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety risk;

(u) Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

(v) Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

207.     Plaintiffs' claims and defenses are typical of the claims and defenses of proposed Members of the Classes.  Class claims arise out of ownership or lease of Class Vehicles as defined in ¶ 1.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendants.   Defendants have no claims or defenses unique to Plaintiffs or different from the proposed Members of the Classes.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

208.     Plaintiffs currently own their respective class vehicles and have no conflicting interests with any other proposed Class member.  Plaintiffs will fairly and adequately protect the interests of members of the Classes.  The claims of Plaintiffs and members of the Classes are so interrelated that the interests of members of the Classes will be fairly and adequately protected in their absence.

209.     Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

**Superiority of a Class Action and Predominance of Common Questions: Fed. R. Civ. P. 23(b)(3).**

210.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

211.     Maintenance of a class action in one court is the most economical procedural device to litigate the Class Vehicle and class engine claims for Class Vehicle owners and the Defendants.  Prosecution of separate actions by individual members of the Classes could create risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the party opposing the Classes as recognized by Fed. R. Civ. P. 23(b)(1)(A).

212.     Prosecution of separate actions by individual members of the Classes could create risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

213.     There is a substantial likelihood that the Defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the Classes, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

214.    Questions of law and fact common to members of the Classes predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

215.    The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

216.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

217.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VIII.   CLAIMS FOR RELIEF

### COUNT I

### FRAUD
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE SUB-CLASSES)

218.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

219.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

220.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiffs and members of the Classes rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

221.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and

because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

222.   The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

223.   Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System defect would sell more Class Vehicles and would discourage Plaintiffs and members of the Classes from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further, Defendants intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or

replacement from Defendants to Plaintiffs and members of the Classes, in order to decrease costs and increase profits.

224.     Defendants acted with malice, oppression and fraud.

225.     Plaintiffs and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System defect, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II

## BREACH OF CONTRACT
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE SUB-CLASSES)

226.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

227.     This count is brought on behalf of Plaintiffs and members of the Classes who have established sufficient direct dealings, including but not limited to Class Vehicle purchase or lease, with Defendants or their agents, including authorized dealerships, to establish privity of contract with Defendants.

228.      Every purchase or lease of a Class Vehicle from an authorized dealer of the Class Vehicles constitutes a contract between Defendants and the purchaser or lessee.  Defendants materially breached these contracts by selling or leasing defective Class Vehicles to Plaintiffs and members of the Classes and by misrepresenting the standard, quality or grade of the Class Vehicles and/or failing to disclose the existence of the Timing Chain System defect.  The existence of the Timing Chain System defect at the time of lease or sale rendered the Class

Vehicles substantially less valuable than the vehicles Defendants advertised and promised to deliver to Plaintiffs and members of the Classes.

229.    Defendants' misrepresentations and omissions and failure to disclose the existence of the Timing Chain System defect (*see supra*, ¶8 & n.3) caused Plaintiffs and members of the Classes to enter into agreements to purchase or lease their Class Vehicles. Plaintiffs and members of the Classes would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles, but for Defendants' misrepresentations and omissions.  Plaintiffs and members of the Classes overpaid for their Class Vehicles and did not receive the benefit of their bargain.

230.    Defendants also breached the implied covenant of good faith and fair dealing implied in their contracts with Plaintiffs and members of the Classes by providing Class Vehicles that contain an undisclosed Timing Chain System defect that is prone to premature failure and presents a safety risk to drivers and occupants of the Class Vehicles. Defendants further breached the implied covenant of good faith and fair dealing by providing limited warranties on Class Vehicles that contain a known latent defect in the Timing Chain System that Defendants knew or should have known would fail beyond the warranty periods.  Defendants acted in bad faith in order to sell additional Class Vehicles and/or transfer the cost of repair or replacement of the defective Timing Chain System to Plaintiffs and members of the Classes.

231.    As a direct and proximate result of Defendants' breach of their express and implied duties, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## NEGLIGENT MISREPRESENTATION
## (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF
## OF THE SUB-CLASSES)

232.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

233.     Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

234.     Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs and members of the Classes because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.

235.     Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiffs and members of the Classes have suffered actual damages.

236.     As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to Plaintiffs and members of the Classes the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that

he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

237.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

238.    Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts.  As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System defect, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

239.    As a direct and proximate result of Defendants' breach of their express and implied duties, Plaintiffs and members of the Classes have been damaged in an amount to be

proven at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE SUB-CLASSES)**

240.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

241.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

242.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles.  Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase or lease the Class Vehicles.

243.    Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

244.    With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

245.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

246.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a

80

Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.   Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the defective Timing Chain System, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

247.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

248.   Plaintiffs and the members of the Classes experienced the existence of the Timing Chain System defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiffs and members of the Classes that the Class Vehicles contained the Timing Chain System defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes.

249.   Because of the Timing Chain System defect, Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

250.   Plaintiffs and members of the Classes could not have reasonably discovered the Timing Chain System defect prior to failure.

251.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

252.    On information and belief, Defendants have not repaired or replaced the Timing Chain System free of charge for Plaintiffs and members of the Classes despite the Timing Chain System defect in the Class Vehicles at the time of sale or lease.

253.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or USA Warranty and Maintenance pamphlet that incorporated no inspection and service intervals for the Timing Chain System although Defendants knew these components were defective and required periodic inspection and service.

254.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and manufacture defects which cause engine failure and/or failure to perform as warranted.

255.    Defendants were provided notice of the Timing Chain System defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System defect and, on information and belief, have refused to repair or replace the Timing Chain System free of charge outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

256.    Defendants' attempt to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty

limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and the members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

257.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other members of the Classes whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

258.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs and members of the Classes were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

259.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Classes have been damaged in an amount to be determined at trial.

260.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT V

## BREACH OF IMPLIED WARRANTY
## (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF
## OF THE SUB-CLASSES)

261.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

262.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

263.    Plaintiffs and members of the Classes purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

264.    Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

265.    With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

266.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

267.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

268.    Defendants failed to provide legally binding written notice to proposed class representatives and other Class Vehicle purchasers of implied warranty exclusions at time of

purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of Uniform Commercial Code § 2-316 and therefore ineffective by law.

269.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherently defective Timing Chain System (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

270.    Under normal circumstances, a properly designed and manufactured Timing Chain System should last for the life of the engine or at least 120,000 miles without the need for repair or replacement. Defendants cannot disclaim this implied warranty as they knowingly sold or leased a defective product.

271.    Defendants were provided notice of the Timing Chain System defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System defect and, on information and belief, have refused to repair or replace the Timing Chain System free of charge outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

272.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

273.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

274.     Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

275.     Plaintiffs and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Classes, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

276.    Plaintiffs and members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

277.    Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Timing Chain System in Class Vehicles.

278.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

**COUNT VI**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),
15 U.S.C. § 2301 *ET SEQ*.
(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF
OF THE SUB-CLASSES)**

279.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

280.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

281.    Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

282.    Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

283.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

284.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

285.     The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

286.     Defendants provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the defective Timing Chain System, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

287.     Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in

bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

288.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

289.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System defect.  Without limitation, the Class Vehicles share a common Timing Chain System defect in design, material, manufacturing and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System defect.

290.    Plaintiffs and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Classes, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

291.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle

and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

292.    Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

293.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

294.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT VII

### UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE SUB-CLASSES)

295.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

296.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Sub-Classes.

297.    Plaintiffs and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System defect.

298.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System defect in the Class Vehicles.

299.    As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

300.    Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

301.    Plaintiffs and members of the Classes seek an order requiring Defendants to disgorge their gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VIII

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA"),**
**N.J.S.A. § 56:8-2** *ET SEQ.*
**(ON BEHALF OF PLAINTIFFS DRAKE, ZIMAND**
**AND THE NEW JERSEY SUB-CLASS)**

302.   Plaintiffs Drake and Zimand incorporate and reallege each preceding paragraph as though fully set forth herein.

303.   Plaintiffs Drake and Zimand bring this claim on behalf of themselves and the members of the New Jersey Sub-Class.

304.   The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . " N.J.S.A. § 56:8-2.

305.   Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

306.   In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Timing Chain System defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Timing Chain System defect and corresponding safety risk in violation of the NJCFA.

307.   Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class. When Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk. Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class would have demanded repair or replacement during the warranty periods at no cost to Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class—as provided for in Defendants' warranties.

308.   Defendants knowingly concealed, suppressed and/or omitted the existence of the Timing Chain System defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

309.   Defendants knew that the Timing Chain System defect would cause the Timing Chain System to fail before the useful life of the engine and unconscionably limited the manufacturer's warranty coverage so that the Timing Chain System would fail beyond the warranty periods, thereby unlawfully transferring the costs of repair of the Timing Chain System to Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize

profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

310.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure. Rather than disclose the defect, Defendants intentionally concealed the defect with the intent to mislead Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System or failed engine to Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class.

311.    Defendants knew, or should have known, that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating. Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

312.    Had Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class known about the Timing Chain System defect at the time of purchase, including the safety hazard posed by the defect and the monetary cost of repair, they would not have bought the Class Vehicles or would have paid much less for them.

313.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class have suffered and continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System,

essential engine parts or the entire engine, and damages to be determined at trial. Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

314.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J.S.A. § 56:8-19.  Plaintiffs Drake, Zimand and members of the New Jersey Sub-Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. § 56:8-19.

## COUNT IX

**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICE ACT ("ADTPA"), ARK. CODE. ANN. § 4-88-101** *ET SEQ*.
**(ON BEHALF OF PLAINTIFF STOCKALPER AND THE ARKANSAS SUB-CLASS)**

315.    Plaintiff Stockalper incorporates and realleges each preceding paragraph as though fully set forth herein.

316.    Plaintiff Stockalper brings this count on behalf of herself and members of the Arkansas Sub-Class.

317.    Defendants, Plaintiff Stockalper and members of the Arkansas Sub-Class are "persons" within the meaning of the ADTPA.  *See* Ark. Code Ann. § 4-88-102(5).

318.    The Class Vehicles are "goods" within the meaning of the ADTPA.  *See* Ark. Code Ann. § 4-88-102(4).

319.   The ADTPA prohibits "[d]eceptive and unconscionable trade practices," including, inter alia, engaging in any "unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).

320.   The ADTPA also prohibits the following in connection with the sale or advertisement of any goods: "(1) [t]he act, use, or employment by any person of any deception, fraud, or false pretense; or (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

321.   In violation of the ADTPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendants knowingly concealed, suppressed and/or omitted material facts regarding the defective Timing Chain System and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Stockalper and members of the Arkansas Sub-Class.

322.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Timing Chain System defect with the intent to mislead Plaintiff Stockalper and members of the Arkansas Sub-Class.  Defendants knew, or should have known, that the Timing Chain System defect was a latent defect and that the Timing Chain System was likely to fail outside of the periods of the manufacturer's warranties.  Defendants also knew, or should have known, that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles

to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

323.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiff Stockalper and members of the Arkansas Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.  Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiff Stockalper and members of the Arkansas Sub-Class.

324.    Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect were intended to mislead consumers and misled Plaintiff Stockalper and members of the Arkansas Sub-Class.

325.    At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Timing Chain System defect and its corresponding safety risk were material to Plaintiff Stockalper and members of the Arkansas Sub-Class.  When Plaintiff Stockalper and members of the Arkansas Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.  Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or presented an unavoidable safety risk, Plaintiff Stockalper and members of the Arkansas Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.  Further, had Defendants

disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiff Stockalper and members of the Arkansas Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

326.    Defendants had a continuous duty to Plaintiff Stockalper members of the Arkansas Sub-Class to refrain from unfair and deceptive practices under the ADTPA and to disclose the Timing Chain System defect.   Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect and corresponding safety risk are substantially injurious to consumers.   As a result of Defendants' knowing, intentional concealment and/or omission of the Timing Chain System defect in violation of the ADTPA, Plaintiff Stockalper and members of the Arkansas Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of their business.

327.    Defendants' unlawful acts and practices occurred in the conduct of business, commerce, or trade in commerce.

328.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

329.    Defendants' unlawful acts and practices affect the public interest and present a continuing safety risk to Plaintiff Stockalper and members of the Arkansas Sub-Class as well as the public.

330.    As a direct and proximate result of Defendants' violations of the ADTPA, Plaintiff Stockalper and members of the Arkansas Sub-Class have suffered actual damages and/or injury in fact.

331.    Plaintiff Stockalper and members of the Arkansas Sub-Class seek actual damages against Defendants in an amount to be determined at trial and punitive damages because Defendants acted wantonly or with such conscious indifference to the consequences that malice may be inferred.

332.    Plaintiff Stockalper and members of the Arkansas Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, awarding costs and attorneys' fees, and any other just and proper relief available under the ADTPA.

## COUNT X

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**CAL. BUS. AND PROFESSIONS CODE. ANN. § 17200 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS SWIHART, PIUMARTA, NADIRI, ELLAHIE AND**
**THE CALIFORNIA SUB-CLASS)**

333.    Plaintiffs Swihart, Piumarta, Nadiri and Ellahie incorporate and reallege each preceding paragraph as though fully set forth herein.

334.    Plaintiffs Swihart, Piumarta, Nadiri and Ellahie assert this count on behalf of themselves and members of the California Sub-Class.

335.    The UCL prohibits all unlawful, unfair or deceptive business practices. Defendants' conduct as alleged herein constitutes unlawful, unfair and deceptive business practices.

336.   Defendants' breach of their express and implied warranties as described herein violates § 2313 of California's Commercial Code and Cal. Civ. Code §§ 1792 *et seq.* of the Song-Beverly Consumer Warranty Act.  Defendants' conduct as described herein further violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq.*   These violations are independent and unlawful unfair and deceptive business practices.

337.   Defendants' sale of Class Vehicles without disclosing the existence of the Timing Chain System defect while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful unfair and deceptive business practice within the context of the UCL.  This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class. Had Defendants disclosed to Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class that Class Vehicles incorporated a defective Timing Chain System or that the system had been inadequately tested, they would not have purchased their respective vehicles or paid less for their respective Class Vehicle.

338.   Defendants knew that if the defects in the Timing Chain System or inadequate testing were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect not to purchase or lease Class Vehicles, or would pay substantially less for them.  As a result, Defendants intentionally concealed their knowledge of the Timing Chain System and their inadequate testing.

339.   As a direct, proximate and foreseeable result of Defendants' unlawful, unfair and deceptive business practices, Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class sustained an ascertainable loss and actual damages in that they expended thousands of dollars to purchase the defective Class Vehicles, and then more to have the

defective engines repaired or replaced. Moreover, because of the undisclosed defects, Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class sustained a loss or diminution in the value of their vehicles. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class have or will incur incidental damages attributable to the loss of use of their Class Vehicles while the vehicles were or will be repaired.

340. Defendants' unlawful, unfair and/or deceptive business practices caused Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class to convey money and benefits to Defendants including but not limited to the purchase price or lease payments for their Class Vehicles and/or repair costs.

341. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class request an order of restitution forcing Defendants to restore to them the benefits and monies they conveyed in connection with their purchase of Class Vehicles and repair costs related to the defective Timing Chain System.

342. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT XI

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.* (ON BEHALF OF PLAINTIFFS SWIHART, PIUMARTA, NADIRI AND ELLAHIE AND THE CALIFORNIA SUB-CLASS)

343. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie incorporate and reallege each preceding paragraph as though fully set forth herein.

344. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie assert this count on behalf of themselves and members of the California Sub-Class.

345.    Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that Class Vehicles have characteristics, uses, benefits and/or qualities which they do not possess.

346.    Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that Class Vehicles are of a particular standard, quality, or grade, when they are not, and in particular, by supplying vehicles which contain a defect which involves a safety issue.

347.    Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising Class Vehicles with the intent not to sell them as advertised.

348.    Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

349.    Defendants conducted the above-described acts or practices in transactions intended to result, or which did result, in the sale of Class Vehicles to customers for personal, family, or household use.

350.    Defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code § 1770 *et seq*. and committed other unfair and deceptive business practices as described in this complaint. Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class request equitable and injunctive relief authorized by the Consumers Legal Remedies Act and for such additional relief as necessary.

351.    Plaintiffs Swihart, Piumarta, Nadiri and Ellahie and members of the California Sub-Class request judgment against Defendants, including monetary and compensatory damages and injunctive relief as set out in this complaint, together with costs and attorneys' fees.

352.    More than 30 days ago Plaintiffs Swihart, Piumarta, Nadiri and Ellahie sent Defendants a pre-suit demand letter and have received no communications within the thirty day response period.

**COUNT XII**

**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT,
COL. REV. STAT. §§ 6-1-101 *ET SEQ.*
(ON BEHALF OF PLAINTIFF LEMOINE AND THE COLORADO SUB-CLASS)**

353.    Plaintiff LeMoine incorporates and realleges each preceding paragraph as though fully set forth herein.

354.    Plaintiff LeMoine asserts this count on behalf of herself and members of the Colorado Sub-Class.

355.    Plaintiff LeMoine and members of the Colorado Sub-Class are persons within the context of the Colorado Consumer Protection Act (hereinafter "CCPA"), Col. Rev. Stat.§§ 6-1-101 *et seq*. and specifically § 6-1-102(6).

356.    Defendants are persons within the context of the CCPA, Col. Rev. Stat. §§ 6-1-101 *et seq*. and specifically § 6-1-102(6).

357.    Defendants are engaged in deceptive trade practices within the context of the CCPA, Col. Rev. Stat. § 6-1-105(1)(e), (g) and (u), *inter alia*.

358.    Plaintiff LeMoine and members of the Colorado Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

359.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the CCPA as described in this complaint.

360.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff LeMoine and members of the Colorado Sub-Class would

rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

361.    Defendants    fraudulently,    intentionally,    negligently,    and/or    recklessly misrepresented to Plaintiff LeMoine and members of the Colorado Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

362.    Defendants    fraudulently,    intentionally,    negligently    and/or    recklessly misrepresented to Plaintiff LeMoine and members of the Colorado Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

363.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

364.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

365.    Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

366.    One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the CCPA.

367.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff LeMoine and members of the Colorado Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff LeMoine and members of the Colorado Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

368.    If Defendants had not concealed class engine defects from Plaintiff LeMoine and members of the Colorado Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

369.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

370.     Defendants violated the CCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

371.     Defendants violated the CCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

372.     Defendants further violated the CCPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

373.     Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the CCPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by LeMoine and members of the Colorado Sub-Class.

374.     The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of CCPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

375.     As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff LeMoine and members of the Colorado Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

376.   Plaintiff LeMoine and members of the Colorado Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

377.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

378.   Plaintiff LeMoine and members of the Colorado Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XIII

**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT,
CONN. GEN. STAT. ANN. §§ 42-110A *ET SEQ.*
(ON BEHALF OF PLAINTIFFS SERBIA, MOLWITZ, GAUDET AND THE
CONNECTICUT SUB-CLASS)**

379.   Plaintiffs Serbia, Molwitz and Gaudet incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

380.   Plaintiffs Serbia, Molwitz and Gaudet assert this count on behalf of themselves and members of the Connecticut Sub-Class.

381.   Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class are persons within the context of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a *et seq.* (hereinafter "CUTPA") and specifically § 42-110a(3).

382.    Defendants are persons within the context of CUTPA, § 42-110a(3) and were engaged in trade and commence under CUTPA, § 42-110a(4).

383.    Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of CUTPA, § 42-110b(a).

384.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class the required maintenance and/or maintenance intervals of Class Vehicles including but not limited to the Timing Chain System.

385.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class the characteristics of Class Vehicles with respect to design, manufacture, durability, longevity, maintenance and operating costs.

386.    Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class the defects in the Class Vehicles even though Defendants knew or should have known of design and manufacturing defects shortly after production of the Class Vehicles commenced.

387.    Defendants had actual knowledge that design and manufacturing defects as described in this complaint were causing extensive irreversible premature performance degradation in Class Vehicles shortly after production of the Class Vehicles commenced.

388.    Defendants actively suppressed the fact that the 2.0L TSI and TFSI engines were prematurely failing because of design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

389.    Defendants secretly repaired some Class Vehicles to prevent dissemination of defects.

390.    Defendants intended or should have known that Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class would rely upon misrepresented characteristics of Class Vehicles with respect to design and manufacture and information in the owner's manual and USA Warranty and Maintenance pamphlet.

391.    Although Defendants knew defects in 2.0L TSI and TFSI engines and misinformation in the owner's manual and USA Warranty and Maintenance pamphlet were causing premature class engine failures, Defendants attempted to shift the responsibility and cost for repairs to individual Class Vehicle owners.

392.    These schemes included blaming Class Vehicle engine failures on owners for poor or improper maintenance, improper engine oil, improper gasoline and other conditions for which Defendants were not responsible.

393.    Rather than conduct an open and fair inspection and repair procedure for the Timing Chain System in class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements.

394.    If Defendants had not concealed Class Vehicles defects from Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class within the express warranty period, Class Vehicles would have repaired without cost under the original warranty.

395.    Defendants fraudulently concealed unmistakable manifestations of impending class engine Timing Chain System failures within the express warranty period without inspecting, repairing or replacing damaged 2.0L TSI and TFSI engine Timing Chain System components.

396.    Defendants failed to inform members of the Connecticut Sub-Class prior to purchase or lease that Class Vehicles were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

397.    Defendants violated CUTPA by failing to inform members of the Connecticut Sub-Class prior to purchase or lease that Class Vehicles would require premature replacement of class engine Timing Chain System components. Defendants further violated CUTPA by failing to inform prospective Class Vehicles purchasers and lessees that Defendants had not properly tested the vehicles including but not limited to the 2.0L TSI and TFSI engine Timing Chain System components.

398.    Defendants repeatedly violated CUTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of 2.0L TSI and TFSI engine Timing Chain System failures.

399.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants that violates the proscribed conduct of CUTPA occurred within the three-year limitations period set out in the statute.

400.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class purchased or leased Class Vehicles and sustained financial harm.

401.    Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class experienced premature 2.0L TSI and TFSI engine failure, diminution of vehicles resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience as recognized by CUTPA, § 42-110g(a).

402.     Pursuant to Conn. Gen. Stat. § 42-110g(c), a copy of this complaint is being contemporaneously mailed to the Attorney General and the Commissioner of Consumer Protection with the filing of this document.

403.     The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous; and, caused unavoidable substantial injury to Class Vehicles owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

404.     Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class demand judgment against Defendants together with damages, interest, costs, attorneys' fees and injunctive relief.

## COUNT XIV

**VIOLATION OF THE CONNECTICUT PRODUCT LIABILITY ACT,
CONN. GEN. STAT., §§ 52-572M TO 52-572Q
(ON BEHALF OF PLAINTIFFS SERBIA, MOLWITZ, GAUDET AND THE
CONNECTICUT SUB-CLASS)**

405.     Plaintiffs Serbia, Molwitz and Gaudet incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

406.     Plaintiffs Serbia, Molwitz and Gaudet assert this count on behalf of themselves and members of the Connecticut Sub-Class.

407.     Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class are claimants within the context of Conn. Gen. Stat., §§ 52-572m to 52-572q (hereinafter "Connecticut Product Liability Act"), specifically § 52-572m(c).

408.     Defendants are product sellers and manufacturers and within the context of the Connecticut Product Liability Act, § 52-572m(a) and (e).

409.     Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

410.     Defendants breached their express and implied warranties as described in this complaint.

411.     As a result of Defendants' warranty breaches as described in this complaint, Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class suffered harm as described in this complaint and recognized in Conn. Gen. Stat., § 52-572n(a).

412.     Defendants are liable under the Connecticut Product Liability Act for their defective and unreasonably dangerous Class Vehicles and other conduct described in this complaint.

413.     Plaintiffs Serbia, Molwitz and Gaudet and members of the Connecticut Sub-Class demand judgment against Defendants including restitution, disgorgement, statutory and actual monetary damages, multiple damages, interest, costs and attorneys' fees.

## COUNT XV

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201 *ET SEQ*. (ON BEHALF OF PLAINTIFFS BLANCHARD, LOPEZ, MEKBEB, A. FLECK, W. FLECK AND THE FLORIDA SUB-CLASS)**

414.     Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck incorporate and reallege each preceding paragraph as though fully set forth herein.

415.     Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck bring this claim on behalf of themselves and members of the Florida Sub-Class.

416.     The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

417.    Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class are "consumers" and "interested parties or persons" under the FDUTPA.  Fla. Stat. § 501.203(6) and (7).

418.    Defendants are engaged in the conduct of "trade or commerce" as defined by the FDUTPA.  Fla. Stat. § 501.203(8).

419.    One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

420.    Defendants committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA.  Defendants intentionally and knowingly misrepresented the standard, quality or grade of the Class Vehicles and intentionally and knowingly failed to disclose and concealed the Timing Chain System defect.  Defendants' misrepresentation of the standard, quality or grade of the Class Vehicles and failure to disclose the Timing Chain System defect constitute unfair acts or practices in violation of the FDUTPA because they offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial injury to consumers.

421.    Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System would fail before the useful life of the engine.  Given the latent nature of the defect, Defendants knew, or should have known, that the majority of Timing Chain System failures would occur outside of the coverage periods of the manufacturer's warranties.

422.    Defendants knew, or should have known, that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power

while the vehicle was operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

423.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.  Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class.

424.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

425.    Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect were likely to mislead a reasonable consumer and misled Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class.  When Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.  Had Defendants disclosed that the Timing Chain

System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

426.    Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect and corresponding safety risk are substantially injurious to consumers.  As a direct and proximate result of Defendants knowing, intentional concealment of the Timing Chain System defect in violation of the FDUTPA, Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial. Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

427.    As a result of Defendants' FDUTPA violation, Plaintiffs Blanchard, Lopez, Mekbeb, A. Fleck and W. Fleck and members of the Florida Sub-Class are entitled to, *inter alia*, injunctive and declaratory relief, actual damages, costs and attorneys' fees.  *See* Fla. Stat. § 501.211.

## COUNT XVI

## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT, GA. CODE ANN. §§ 10-1-370 *ET SEQ.* (ON BEHALF OF PLAINTIFF SMITH AND THE GEORGIA SUB-CLASS)

428.    Plaintiff Smith incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

429.    Plaintiff Smith asserts this count on behalf of himself and members of the Georgia Sub-Class.

430.    Plaintiff Smith and members of the Georgia Sub-Class are persons within the context of the Georgia Uniform Deceptive Trade Practices Act (hereinafter "GUDTPA"), Ga. Code Ann. §§ 10-1-370 *et seq*. and specifically § 10-1-371(5).

431.    Plaintiff Smith and members of the Georgia Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

432.    Defendants are persons within the context of GUDTPA, Ga. Code Ann. §§ 10-1-370 *et seq*. and specifically § 10-1-371(5).

433.    Defendants are engaged in deceptive trade practices in Georgia within the context of GUDTPA, Ga. Code Ann. § 10-1-372(5), (7), (9) and (12) as described in this complaint.

434.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the GUDTPA as described in this complaint.

435.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Smith and members of the Georgia Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

116

436.   Defendants   fraudulently,   intentionally,   negligently,   and/or   recklessly misrepresented to Plaintiff Smith and members of the Georgia Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

437.   Defendants   fraudulently,   intentionally,   negligently   and/or   recklessly misrepresented to Plaintiff Smith and members of the Georgia Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

438.   Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

439.   Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

440.   Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

441.    One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the GUDTPA.

442.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Smith and members of the Georgia Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Smith and members of the Georgia Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

443.    If Defendants had not concealed class engine defects from Plaintiff Smith and members of the Georgia Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

444.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

445.    Defendants violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in

materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

446.    Defendants violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

447.    Defendants further violated the GUDTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

448.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the GUDTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by Smith and members of the Georgia Sub-Class.

449.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of GUDTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

450.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Smith and members of the Georgia Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

451.    Plaintiff Smith and members of the Georgia Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

452.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

453.    Plaintiff Smith and members of the Georgia Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XVII

## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT OF 1975, GA. CODE ANN. §§ 10-1-390 *ET SEQ.* (ON BEHALF OF PLAINTIFF SMITH AND THE GEORGIA SUB-CLASS)

454.    Plaintiff Smith incorporates and realleges each preceding paragraph as though fully set forth herein.

455.    Plaintiff Smith asserts this count on behalf of himself and members of the Georgia Sub-Class.

456.    Plaintiff Smith and members of the Georgia Sub-Class are consumers within the context of the Georgia Fair Business Practices Act Of 1975 (hereinafter "GFBPA"), Ga. Code Ann. §§ 10-1-390 *et seq.* and specifically Ga. Code Ann. § 10-1-392(6).

457.    Plaintiff Smith and members of the Georgia Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

458.    Defendants are engaged in consumer transactions in Georgia within the context of GFBPA, Ga. Code Ann. §§ 10-1-392(10).

459.    Defendants are engaged in unfair and deceptive consumer transactions practices within the context of GFBPA, Ga. Code Ann. §§ 10-1-393(b)(2), (b)(7) and (b)(9) *inter alia*, as described in this complaint.

460.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of GFBPA as described in this complaint.

461.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Smith and members of the Georgia Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

462.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Smith and members of the Georgia Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

463.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Smith and members of the Georgia Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

464.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

465.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

466.    Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

467.    One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the GFBPA.

468.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Smith and members of the Georgia Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Smith and members of the Georgia Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

469.   If Defendants had not concealed class engine defects from Plaintiff Smith and members of the Georgia Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

470.   Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

471.   Defendants violated the GFBPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

472.   Defendants violated the GFBPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

473.   Defendants further violated the GFBPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

474.   Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the GFBPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by Smith and members of the Georgia Sub-Class.

475.   The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of GFBPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

476.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Smith and members of the Georgia Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

477.   Plaintiff Smith and members of the Georgia Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

478.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

479.   Plaintiff Smith and members of the Georgia Sub-Class fully complied with the pre-litigation written notice requirements of GFBPA, Ga. Code Ann. § 10-1-399(b). The Defendants failed to file a timely response to the written demand of Plaintiff Smith and members of the Georgia Sub-Class.  When the Defendants finally responded to the written demand, they declined to provide any assistance to Plaintiff Smith and members of the Georgia Sub-Class with respect to repair of their Class Vehicles' Timing Chain System.  The Defendants' conduct in responding to the written demand was unreasonable in relation to the injuries suffered by Plaintiff Smith and members of the Georgia Sub-Class.

480.   Plaintiff Smith and members of the Georgia Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including

multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XVIII

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*
### (ON BEHALF OF PLAINTIFFS CALIHAN, SENSNOVIS AND THE ILLINOIS SUB-CLASS)

481.   Plaintiffs Calihan and Sensnovis incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

482.   Plaintiffs Calihan and Sensnovis assert this count on behalf of themselves and members of the Illinois Sub-Class.

483.   Defendants' practices, acts, policies and course of conduct, as described above, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that consumers, including Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class, rely upon such concealment, suppression, omission in connection with the sale or advertisement of merchandise of Class Vehicles in violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA), 815 ILCS 505/1 *et seq.* (the "Consumer Fraud Act"), when purchasing and/or leasing their respective Class Vehicles with the defective Timing Chain System.

484.   Defendants intentionally concealed, suppressed and omitted to Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class at the time of purchase or lease, that the Class Vehicles contained manufacturing, materials and/or workmanship defects, with the intent that

Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class rely upon such concealment, suppression, failure to disclose or omission.

485.   Defendants knew and intentionally concealed, suppressed and omitted to consumers who purchased or leased the Class Vehicles, including Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class, the existence of defects and problems in the Timing Chain System, despite the fact that Defendants possessed prior knowledge of the inherent defects to the Class Vehicles' Timing Chain Systems.

486.   Defendants actively concealed from Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class the fact that the Timing Chain System was defective, despite the fact that Defendants learned of such defects in as early as 2008.

487.   Defendants represented to Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class that the Class Vehicles were of merchantable quality, in proper working order, and fit for the ordinary purposes for which passenger vehicles are used when in fact the Class Vehicles were not of merchantable quality, were not in proper working order, and/or were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacture defects which cause premature Timing Chain System failure, engine failure, and/or failed performance.

488.   Defendants' acts of commission and omission were done with knowledge and intent to induce Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class to rely upon Defendants' deceptive misrepresentations and decide to purchase and/or lease a Class Vehicle.

489.   Defendants' deceptive acts of commission and omission were material and in regard to facts material to a consumer's decision to purchase and/or lease a Class Vehicle.

490.    Defendants' conduct was in the course of conduct involving trade or commerce in the sale and/or lease of the Class Vehicles and/or related activities.

491.    Defendants' acts of commission and omission caused Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class to suffer ascertainable losses of money and property in that they were forced to expend sums of money at its dealerships and elsewhere to repair and/or replace the Timing Chain System and/or Timing Chain System components of their Class Vehicles, despite the fact that Defendants had prior knowledge of the defects at the time of placing Class Vehicles into the stream of commerce.

492.    In addition to direct monetary losses, Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class suffered an ascertainable loss by paying for the repair out of pocket and by receiving less value than what was promised to them at the time of purchase and/or lease. Specifically, Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class paid for a vehicle that is now worth significantly less because of the existence of the defective Timing Chain System, because of the damage it causes to the Class Vehicles, and because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in materials or workmanship that occurred during the warranty period, but instead were deprived of the value of this warranty due to Defendants' knowing concealment.

493.    A causal relationship exists between Defendants' deceptive and unlawful conduct and the ascertainable losses suffered by Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class.  Consumers, including Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class, relied upon Defendants' misrepresentations, concealments, and omissions in deciding to purchase and/or lease their Class Vehicles.  Had the defective Timing Chain System in the Class Vehicles been disclosed, they would not have purchased them, would have paid less for the Class

Vehicles had they decided to purchase them, or taken affirmative steps to prevent the catastrophic damage to their Class Vehicles' Timing Chain System and engine during the warranty period.

494.    Plaintiffs Calihan, Sensnovis and members of the Illinois Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XIX

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT, IND. CODE §§ 24-5-0.5-1 *ET SEQ.* (ON BEHALF OF PLAINTIFF JOHNSON AND THE INDIANA SUB-CLASS)

495.    Plaintiff Johnson incorporates and realleges each preceding paragraph as though fully set forth herein.

496.    Plaintiff Johnson asserts this count on behalf of himself and members of the Indiana Sub-Class.

497.    Plaintiff Johnson and members of the Indiana Sub-Class are persons within the context of the Indiana Deceptive Consumer Sales Act (hereinafter "IDCSA"), Ind. Code §§ 24-5-0.5-1 *et seq*. and specifically § 24-5-0.5-2(a)(2).

498.    Plaintiff Johnson and members of the Indiana Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

499.    Defendants are persons within the context of the IDCSA, § 24-5-0.5-2(a)(2) and are engaged in consumer transactions in Indiana within the context of § 24-5-0.5-2(a)(1).

500.     Defendants are engaged in unfair, abusive and deceptive acts and practices within the context of Ind. Code §§ 24-5-0.5-3(b)(1), (2), (3), (5) and (8) as described in this complaint.

501.     Defendants committed deceptive and unconscionable acts in the course of consumer transactions within the context of IDCSA, § 24-5-0.5-10(b) as described in this complaint.

502.     Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Johnson and members of the Indiana Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

503.     Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Johnson and members of the Indiana Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

504.     Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Johnson and members of the Indiana Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles

contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

505.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

506.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

507.    Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

508.    One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the IDCSA.

509.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Johnson and members of the Indiana Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Johnson and members of the Indiana Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed

the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

510.    If Defendants had not concealed class engine defects from Plaintiff Johnson and members of the Indiana Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

511.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

512.    Defendants violated the IDCSA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

513.    Defendants violated the IDCSA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

514.    Defendants further violated the IDCSA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

515.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the IDCSA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations

concerning *inter alia,* the causes of the failures of Class Vehicles owned by Johnson and members of the Indiana Sub-Class.

516.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of IDCSA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

517.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Johnson and members of the Indiana Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

518.    Plaintiff Johnson and members of the Indiana Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

519.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

520.    Plaintiff Johnson and members of the Indiana Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XX

## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT, KAN. STAT. ANN. §§ 50-623 *ET SEQ.* (ON BEHALF OF PLAINTIFF MODY AND THE KANSAS SUB-CLASS)

521.    Plaintiff Mody incorporates and realleges each preceding paragraph as though fully set forth herein.

522.    Plaintiff Mody asserts this count on behalf of himself and members of the Kansas Sub-Class.

523.    Plaintiff Mody and members of the Kansas Sub-Class are consumers and persons within the context of the Kansas Consumer Protection Act (hereinafter "KCPA"), Kan. Stat. Ann. §§ 50-623 *et seq*. and specifically §§ 50-624(b) and (i).

524.    Plaintiff Mody and members of the Kansas Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

525.    Defendants are persons within the context of the KCPA, Kan. Stat. Ann. §§ 50-623 *et seq*. and specifically § 50-624(i).

526.    Defendants are engaged in consumer transactions within Kansas with the context of KCPA, Kan. Stat. Ann., § 50-624(c).

527.    Defendants committed deceptive and unfair acts within the context of KCPA, Kan. Stat. Ann., §§ 50-626(1)(A), (D), (F), (G)(2) and (G)(3) as described in this complaint.

528.    Defendants committed unconscionable acts and practices within the context of KCPA, Kan. Stat. Ann., § 50-627 and §§ 50-675 *et seq*. as described in this complaint.

529.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and

the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Mody and members of the Kansas Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

530.   Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Mody and members of the Kansas Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

531.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Mody and members of the Kansas Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

532.   Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

533.   Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

534.     Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

535.     One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the KCPA.

536.     Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Mody and members of the Kansas Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Mody and members of the Kansas Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.   Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

537.     If Defendants had not concealed class engine defects from Plaintiff Mody and members of the Kansas Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

538.     Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

539.   Defendants violated the KCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

540.   Defendants violated the KCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

541.   Defendants further violated the KCPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

542.   Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the KCPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by Mody and members of the Kansas Sub-Class.

543.   The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of KCPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

544.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Mody and members of the Kansas Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

545.    Plaintiff Mody and members of the Kansas Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

546.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

547.    Plaintiff Mody and members of the Kansas Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXI

### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT, MD. CODE ANN., COM. LAW §§ 13-101 *ET SEQ.* (ON BEHALF OF PLAINTIFF HOSIER AND THE MARYLAND SUB-CLASS)

548.    Plaintiff Hosier incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

549.    Plaintiff Hosier asserts this count on behalf of himself and members of the Maryland Sub-Class.

550.    Plaintiff Hosier and members of the Maryland Sub-Class are consumers within the context of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq.* (hereinafter "MCPA") who purchased and/or leased Class Vehicles for personal, family or household use.

551.    Defendants are persons and merchants within the context of the MCPA.

552.    The sale of Class Vehicles in Maryland constitutes trade and commerce of consumer goods within the context of the MCPA.

553.    Defendants violated MCPA § 13-301(1) and (2) by representing Class Vehicles have characteristics, uses, benefits and/or qualities they do not possess.

554.    Defendants violated MCPA § 13-301(2) by representing Class Vehicles are of a particular standard, quality, or grade, when they are not.

555.    Defendants violated MCPA § 13-301(3) by failing to state a material fact that deceives or tends to deceive.

556.    Defendants violated MCPA § 13-301(5)(i) by advertising Class Vehicles without intent to sell or lease as advertised.

557.    Defendants violated MCPA § 13-301(7) by selling Class Vehicles knowing that a service, replacement or repair was needed.

558.    Defendants violated MCPA § 13-301(9)(i) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning Class Vehicles with the intent to deceive Plaintiff Hosier and members of the Maryland Sub-Class.

559.    At the time Hosier purchased his certified pre-owned Class Vehicle in August of 2012, Defendants knew that the Timing Chain System in the vehicle was defective and would prematurely fail because Defendants had previously redesigned the 2.0L TSI tensioner and timing chain for new vehicle models more than a year and a half earlier in an effort to correct deficiencies in the system.  Defendants failed to inform Hosier of the defective Timing Chain System in his Class Vehicle at the time of purchase and Hosier had no independent knowledge of

the defects.  Commencing in approximately January 2012, the majority of 2.0L TSI / TFSI engines incorporated the newly designed tensioner and timing chain described in this complaint.

560.    Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the MCPA as described in this complaint.

561.    Defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's Timing Chain System in connection with the sale and/or advertisement of Class Vehicles to Plaintiff Hosier and members of the Maryland Sub-Class.

562.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Hosier and members of the Maryland Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

563.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Hosier and members of the Maryland Sub-Class the characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.  In fact, Class Vehicles contained a known defect as described in this complaint that caused class engines to prematurely fail.

564.    Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

565.    Defendants secretly repaired some Class Vehicles in an effort to prevent dissemination of knowledge concerning Timing Chain System defects.

566.    Defendants intended that Hosier and members of the Maryland Sub-Class would, in the course of their decision to expend monies in purchasing and repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet, as well as any potential defects inherent in the engine components, including the Timing Chain System.

567.    Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature Timing Chain System and engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

568.    One scheme included blaming Timing Chain System and engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  In fact, it was the concealed defects in the Timing Chain System that caused the Class Vehicle failures.

569.    Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the MCPA.

570.    Information regarding a vehicle's defective Timing Chain System as described in this complaint is important to consumers in that the defect causes engine failures and necessitates expensive repairs, and, hence, is likely to affect a consumer's choice of vehicle to purchase or lease.  Consumers typically will reasonably rely upon the manufacturers and sellers to provide accurate information as to quality and character of the vehicle they are considering purchasing or leasing.

571.    If Defendants had not concealed class engine defects from Plaintiff Hosier and members of the Maryland Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

572.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

573.    Defendants violated the MCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

574.    Defendants violated the MCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive engine components such as the Timing Chain System.

575.    Defendants further violated the MCPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines, including but not limited to the Timing Chain System.

576.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the MCPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of the Timing Chain Systems and/or engines in Class Vehicles owned by Plaintiff Hosier and members of the Maryland Sub-Class.

577.    The secret warranty programs for class engines initiated by Defendants along with other wrongful conduct of Defendants in violation of the MCPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

578.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Hosier and members of the Maryland Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

579.    Plaintiff Hosier and members of the Maryland Sub-Class experienced premature class Timing Chain System and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

580.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

581.    Plaintiff Hosier and members of the Maryland Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an

appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXII

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT, ("MCPA"), MICH. COMP. LAWS § 445.901, *ET SEQ*. (ON BEHALF OF PLAINTIFF HAGGERTY AND THE MICHIGAN SUB-CLASS)

582.    Plaintiff Haggerty incorporates and realleges each preceding paragraph as though fully set forth herein.

583.    Plaintiff Haggerty brings this count on behalf of herself and members of the Michigan Sub-Class.

584.    Plaintiff Haggerty and members of the Michigan Sub-Class are "persons" within the meaning of the MCPA.  *See* Mich. Comp. Laws § 445.902(1)(d).

585.    Plaintiff Haggerty and members of the Michigan Sub-Class are permitted to bring this action for injunctive relief and actual damages under the MCPA.  *See* Mich. Comp. Laws § 445.911.

586.    Defendants are "persons" engaged in "trade or commerce" within the meaning of the MCPA.  *See* Mich. Comp. Laws § 445.902(1)(d) and (g).

587.    The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . "  Mich. Comp. Laws § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the MCPA, including, inter alia: "[r]epresenting that goods or services have . . . characteristics . . . that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known

by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

588.    Defendants violated the MCPA by employing unfair, unconscionable, or deceptive acts or practices, and/or by engaging in fraud, misrepresentations, concealment, suppression and/or omissions of material facts with the intent that others rely upon such concealment, suppression and/or omissions, in connection with the sale and/or lease of Class Vehicles.

589.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the defective Timing Chain System and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Haggerty and members of the Michigan Sub-Class.  Plaintiff Haggerty and members of the Michigan Sub-Class could not reasonably have known about the Timing Chain System defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

590.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Timing Chain System defect with the intent to mislead Plaintiff Haggerty and members of the Michigan Sub-Class.  Defendants knew, or should have known, that the Timing Chain System defect was a latent defect and that the Timing Chain System was likely to fail outside of the periods of the manufacturer's warranties. Defendants also knew, or should have known, that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the

vehicle was operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

591.   Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiff Haggerty and members of the Michigan Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System.  Rather than disclose the defect, Defendants engaged in unfair, unconscionable and deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiff Haggerty and members of the Michigan Sub-Class.

592.   Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect were intended to mislead consumers and misled Plaintiff Haggerty and members of the Michigan Sub-Class.

593.   At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Timing Chain System defect and its corresponding safety risk were material to Plaintiff Haggerty and members of the Michigan Sub-Class.  When Plaintiff Haggerty and members of the Michigan Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems were free from latent defects and would last beyond the periods of the manufacturer's warranties.  Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiff Haggerty and members of the Michigan Sub-Class would not have purchased or leased the Class Vehicles, or would have

paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiff Haggerty and members of the Michigan Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

594.   Defendants had a continuous duty to Plaintiff Haggerty and members of the Michigan Sub-Class to refrain from unfair and deceptive practices under the MCPA and to disclose the Timing Chain System defect.  Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect and corresponding safety risk are substantially injurious to consumers.  As a result of Defendants knowing, intentional concealment, suppression and/or omission of the Timing Chain System defect in violation of the MCPA, Plaintiff Haggerty and members of the Michigan Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' unfair, unconscionable and deceptive acts and practices in the course of their business.

595.   Defendants' unfair, unconscionable and deceptive acts and practices occurred in the conduct of trade or commerce.

596.   Defendants have knowingly and willfully engaged in the unfair, unconscionable and deceptive acts and practices alleged herein.  Further, Defendants unconscionably marketed

146

the Class Vehicles to uninformed consumers in order to maximize profits by selling additional

Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

597.     Defendants' unfair, unconscionable and deceptive acts and practices affect the

public interest and present a continuing safety risk to Plaintiff Haggerty and members of the

Michigan Sub-Class as well as the public.

598.      As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff

Haggerty and members of the Michigan Sub-Class have suffered actual damages and/or injury in

fact.

599.     As a result of Defendants' unlawful conduct, Plaintiff Haggerty and members of

the Michigan Sub-Class are entitled to actual damages, costs of litigation, attorneys' fees,

injunctive and other equitable relief.  *See* Mich. Comp. Laws § 445.911.

## COUNT XXIII

**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT,
MINN. STAT., §§ 325F.68 *ET SEQ.*
(ON BEHALF OF PLAINTIFF ZHAO AND THE MINNESOTA SUB-CLASS)**

600.     Plaintiff Zhao incorporates by reference all allegations in the above preceding

paragraphs as if set forth fully in this count.

601.     Plaintiff Zhao asserts this count on behalf of himself and members of the

Minnesota Sub-Class.

602.     Plaintiff Zhao and members of the Minnesota Sub-Class are persons within the

context of the Minnesota Prevention of Consumer Fraud Act (hereinafter "MPCFA"), § 325F.68

subd. 3.

603.     Defendants are persons within the context of the MPCFA, § 325F.68 subd. 3.

604.    Defendants are engaged in deceptive trade practices within the context of the MPCFA, § 325F.69 subd. 1.

605.    Plaintiff Zhao and members of the Minnesota Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

606.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the MPCFA as described in this complaint.

607.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Class Vehicles' Timing Chain System with intent that Plaintiff Zhao and members of the Minnesota Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

608.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Zhao and members of the Minnesota Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

609.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Zhao and members of the Minnesota Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and

also included an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

610.    Defendants actively suppressed the fact that Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

611.    Defendants secretly repaired some Timing Chain Systems to prevent dissemination of knowledge concerning class engine defects.

612.    Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature Timing Chain System and/or engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

613.    One scheme included blaming Class Vehicle failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.

614.    Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the MPCFA.

615.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Zhao and members of the Minnesota Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Zhao and members of the Minnesota Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed

the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

616.    If Defendants had not concealed class engine defects from Plaintiff Zhao and members of the Minnesota Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

617.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

618.    Defendants violated the MPCFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

619.    Defendants violated the MPCFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

620.    Defendants further violated the MPCFA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

621.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the MPCFA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations

concerning *inter alia,* the causes of the failures of class engines owned by Zhao and members of the Minnesota Sub-Class.

622.    The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of MPCFA occurred within the limitations period set out in the statute and/or is tolled by Defendants' conduct.

623.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Zhao and members of the Minnesota Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

624.    Plaintiff Zhao and members of the Minnesota Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

625.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

626.    Plaintiff Zhao and members of the Minnesota Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXIV

## VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT, MINN. STAT., §§ 325D.43 *ET SEQ.* (ON BEHALF OF PLAINTIFF ZHAO AND THE MINNESOTA SUBCLASS)

627.     Plaintiff Zhao incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

628.     Plaintiff Zhao asserts this count on behalf of himself and members of the Minnesota Sub-Class.

629.     Plaintiff Zhao and members of the Minnesota Sub-Class are persons within the context of the Minnesota Uniform Deceptive Trade Practices Act (hereinafter "MUDTPA"), §§ 325D.43, *et seq.*

630.     Defendants are persons within the context of the MUDTPA, §§ 325D.43, *et seq.*

631.     Defendants are engaged in deceptive trade practices within the context of the MUDTPA, § 325D.44(5), (7) and (9).

632.     Plaintiff Zhao and members of the Minnesota Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

633.     Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the MUDTPA as described in this complaint.

634.     Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's Timing Chain System with intent that Plaintiff Zhao and members of the Minnesota Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

635. Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Zhao and members of the Minnesota Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the timing chain system.

636. Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Zhao and members of the Minnesota Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles. In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

637. Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

638. Defendants secretly repaired some class engines to prevent dissemination of knowledge concerning class engine defects.

639. Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

640. One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. In fact, Plaintiff Zhao and members of the Minnesota Sub-Class complied with use and

maintenance recommendations for their respective class engines, and the class engine failures were on account of the Class Vehicles' defective Timing Chain System.

641.    Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the MUDTPA.

642.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Zhao and members of the Minnesota Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Zhao and members of the Minnesota Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

643.    If Defendants had not concealed class engine defects from Plaintiff Zhao and members of the Minnesota Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

644.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

645.    Defendants violated the MUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in

materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

646.    Defendants violated the MUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

647.    Defendants further violated the MUDTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

648.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the MUDTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Plaintiff Zhao and members of the Minnesota Sub-Class.

649.    The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of MUDTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

650.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Zhao and members of the Minnesota Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

651.    Plaintiff Zhao and members of the Minnesota Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of Class Vehicle resale value, increased

repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

652.     The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

653.     Plaintiff Zhao and members of the Minnesota Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

**COUNT XXV**

**VIOLATION OF MINNESOTA'S PRIVATE ATTORNEY GENERAL STATUTE,
MINN. STAT. § 8.31
(ON BEHALF OF PLAINTIFF ZHAO AND THE MINNESOTA SUBCLASS)**

654.     Plaintiff Zhao incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

655.     Plaintiff Zhao asserts this count on behalf of himself and members of the Minnesota Sub-Class.

656.     Plaintiff Zhao and members of the Minnesota Sub-Class are consumers.

657.     Plaintiff Zhao and members of the Minnesota Sub-Class were injured by Defendants' sale of Class Vehicles.

658.     Plaintiff Zhao and members of the Minnesota Sub-Class have been injured by Defendants' violation of the Minnesota Consumer Fraud Act as described in this complaint.

659.     Plaintiff Zhao and members of the Minnesota Sub-Class have suffered damages with a causal nexus to Defendants' misrepresentations and deceptive practices described in this complaint.

660.     This action will benefit the public interest and therefore meets the requirements of Minnesota's Private Attorney General Statute.

## COUNT XXVI

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT,**
**NRS 41.600 AND 598.0903 *ET SEQ*.**
**(ON BEHALF OF PLAINTIFF ZIELEZINSKI AND THE NEVADA SUB-CLASS)**

661.     Plaintiff Zielezinski incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

662.     Plaintiff Zielezinski asserts this count on behalf of himself and members of the Nevada Sub-Class.

663.     Defendants' aforementioned acts constitute Deceptive Trade Practices under Nevada Revised Statutes ("NRS") §§ 41.600 and 598.0915.

664.     Pursuant to the Deceptive Trade Practices Act ("DTPA") the following acts or practices are prohibited: (2) knowingly making a false representation as to the source, sponsorship, approval or certification of goods or services; (3) knowingly making a false representation as to the affiliation, connection, or association with, of certification by, another; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; (7) representing that goods or services are of a particular standard, quality, grade, or that goods are of a particular style or model, if they are of another; (9) advertising goods or services with the intent not to sell them as

advertised; (15) knowingly making any other false representation in a transaction.   NRS § 598.0915.

665.    By engaging in the aforementioned acts, Defendants knew or should have known that their conduct was unfair and deceptive.

666.    Defendants are therefore in violation of NRS §§ 41.600 and 598.0903 *et seq*.

667.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

668.    Plaintiff Zielezinski and members of the Nevada Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXVII

### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT, N.H. REV. STAT. ANN. §§ 358-A:1 *ET SEQ.* (ON BEHALF OF PLAINTIFF NOYES AND THE NEW HAMPSHIRE SUB-CLASS)

669.    Plaintiff Noyes incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

670.    Plaintiff Noyes asserts this count on behalf of himself and members of the New Hampshire Sub-Class.

*671.* Plaintiff Noyes and members of the New Hampshire Sub-Class are persons within the context of the New Hampshire Consumer Protection Act, §§ 358-A:1 *et seq.* (hereinafter "NHCPA"), specifically § 358-A:1I.

672. Defendants are persons within the context of the NHCPA, § 358-A:1I.

673. Defendants are engaged in trade and commerce within the context of the NHCPA, § 358-A:1II.

674. Plaintiff Noyes and members of the New Hampshire Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

675. Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of NHCPA § 358-A:2V, VII and IX, *inter alia.*

676. Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Class Vehicle's Timing Chain System with intent that Plaintiff Noyes and members of the New Hampshire Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

677. Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Noyes and members of the New Hampshire Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

678. Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Noyes and members of the New Hampshire Sub-Class the

characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.   Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.   In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

679.   Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

680.   Defendants secretly repaired some class engines to prevent dissemination of knowledge concerning class engine defects.

681.   Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

682.   One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the NHCPA.

683.   Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Noyes and members of the New Hampshire Sub-Class were caused to expend sums of money in purchasing and later repairing their Class

Vehicles.  As reasonable consumers, Plaintiff Noyes and members of the New-Hampshire Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

684.    If Defendants had not concealed class engine defects from Plaintiff Noyes and members of the New Hampshire Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

685.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

686.    Defendants violated the NHCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

687.    Defendants violated the NHCPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

688.    Defendants further violated the NHCPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

689.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the NHCPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Noyes and members of the New Hampshire Sub-Class.

690.    The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of NHCPA occurred within the limitations period set out in the statute and/or is tolled by Defendants' conduct.

691.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Noyes and members of the New Hampshire Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

692.    Plaintiff Noyes and members of the New Hampshire Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

693.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

694.    Plaintiff Noyes and members of the New Hampshire Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a

declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXVIII

### VIOLATIONS OF THE NEW YORK CONSUMER PROTECTION ACT, ("NYCPA"), N.Y. GEN. BUS. LAW § 349 (ON BEHALF OF PLAINTIFFS MELMAN, DEIB, PANEPINTO AND THE NEW YORK SUB-CLASS)

695.    Plaintiffs Melman, Deib and Panepinto incorporate and reallege each preceding paragraph as though fully set forth herein.

696.    Plaintiffs Melman, Deib and Panepinto bring this count on behalf of themselves and members of the New York Sub-Class.

697.    Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class purchased or leased their Class Vehicles for personal or household use.

698.    Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the NYCPA. *See* N.Y. Gen. Bus. Law § 349(h).

699.    Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYCPA. *See* N.Y. Gen. Bus. Law § 349(a).

700.    The NYCPA prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *See* N.Y. Gen. Bus. Law § 349(a).

701.    Defendants violated the NYCPA by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

702.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the defective Timing Chain System and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm

to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class.  Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class could not reasonably have known about the Timing Chain System defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

703.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Timing Chain System defect with the intent to mislead Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class. Defendants knew, or should have known, that the Timing Chain System defect was a latent defect and that the Timing Chain System was likely to fail outside of the periods of the manufacturer's warranties.  Defendants also knew, or should have known, that the Timing Chain System defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.   Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

704.    Defendants owed a duty to disclose the Timing Chain System defect and its corresponding safety risk to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the Timing Chain System's failure.  Rather than disclose the defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class.

705.    Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class.

706.    At all relevant times, Defendants' deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Timing Chain System defect and its corresponding safety risk were material to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class.  When Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems were free from latent defects and would last beyond the periods of the manufacturer's warranties.  Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

707.    Defendants had a continuous duty to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class to refrain from unfair and deceptive practices under the NYCPA and to disclose the Timing Chain System defect.  Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain

System defect and corresponding safety risk are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Timing Chain System defect in violation of the NYCPA, Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

708.    Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

709.    Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

710.    Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class as well as the public.

711.     As a direct and proximate result of Defendants' violations of the NYCPA, Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

712.    As a result of Defendants' unlawful conduct, Plaintiffs Melman, Deib and Panepinto and members of the New York Sub-Class are entitled to actual damages, treble

166

damages, costs of litigation, attorneys' fees, injunctive and other equitable relief.  *See* N.Y. Gen. Bus. Law § 349(h).

## COUNT XXIX

### VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT,  N.C. GEN. LAWS §§ 75-1.1 *ET SEQ.* (ON BEHALF OF PLAINTIFF OLES AND THE NORTH CAROLINA SUB-CLASS)

713.    Plaintiff Oles incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

714.    Plaintiff Oles asserts this count on behalf of herself and members of the North Carolina Sub-Class.

715.    Defendants are engaged in designing, manufacturing, marketing, supplying and selling vehicles, business and/or commerce within the context of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Laws §§ 75-1.1, *et seq.* (hereinafter "NCUDTPA"), and committed unfair and deceptive acts and practices in the course of their business within the context of the NCUDTPA as described in this complaint.

716.    Defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts.  The misrepresentations and material omissions concerned the class engine's Timing Chain System and were made by defendants with intent that Plaintiff Oles and members of the North Carolina Sub-Class would rely upon the deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts in connection with the sale and/or advertisement of Class Vehicles.

717.    Defendants    fraudulently,    intentionally,    negligently,    and/or    recklessly misrepresented to Plaintiff Oles and members of the North Carolina Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines including but not limited to the Timing Chain System.

718.    Defendants    fraudulently,    intentionally,    negligently    and/or    recklessly misrepresented to Plaintiff Oles and members of the North Carolina Sub-Class the quality and characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.   Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, design, manufacture, safety, durability, reliability and performance, including an engine life exceeding 120,000 miles.   In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

719.    Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

720.    Plaintiff Oles and members of the North Carolina Sub-Class observed, heard, saw, read or otherwise received Defendants' misrepresentations and were subjected to material omissions by Defendants regarding the quality and characteristics of Class Vehicle engines, required maintenance and/or maintenance intervals of Class Vehicle engines and/or premature engine failings, and relied upon the misrepresentations and/or omissions in choosing to purchase their Class Vehicles over other market vehicles.

721.    Defendants secretly repaired some Timing Chain Systems to prevent dissemination of knowledge concerning class engine defects.

722.    Defendants intended or should have known that Oles and members of the North Carolina Sub-Class would rely upon their misrepresentations regarding class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet.

723.    Plaintiff Oles and members of the North Carolina Sub-Class complied with the warranty requirements for their respective class engines.

724.    Although Defendants were aware that defects in class engines and misinformation and poor guidance in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

725.    One scheme perpetrated by Defendants included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.   In fact, the respective owners had properly maintained their Class Vehicles in accordance with the Maintenance manual, and the engine failures were due to the inherent defects in the materials of the Timing Chain System.

726.    Rather than conduct an open and fair inspection into the Class Vehicles' engine defect and failing, and then devise and provide a repair procedure for all class engines, Defendants employed unfair and deceptive trade practices including advising members of the North Carolina Sub-Class that their engine failures were on account of other reasons in order to deceive members of the North Carolina Sub-Class as to the basis of their engine failures and deny them repairs or repair reimbursements covered under the warranty in violation of NCUDTPA.

727.     Oles and members of the North Carolina Sub-Class observed, heard, saw, read or otherwise received Defendants' misrepresentations and were subjected to material omissions by Defendants regarding their vehicles' premature engine failures, denial of liability and shifting of responsibility for the cost of repairs to individual vehicle owners and relied upon the misrepresentations and/or omissions in individually incurring the costs of their vehicle's repair. If Defendants had not concealed class engine defects from Plaintiff Oles and members of the North Carolina Sub-Class within the express warranty period, class engines would have repaired by Defendants without cost to purchasers as so required under the original warranty.

728.     Oles and members of the North Carolina Sub-Class incorporated Defendants' misrepresentations into their respective decision-making process to purchase Class Vehicles and pay for their repairs.  If it were not for the misrepresentations, Oles and members of the North Carolina Sub-Class would likely have avoided the injury altogether by initially purchasing or leasing other vehicles and later by holding Defendants responsible for their repairs under the outstanding warranty. Oles' and members of the North Carolina Sub-Class' reliance upon Defendants' misrepresentations were reasonable as they, like typical consumers in such a commercial context of a vehicle purchase, could not have discovered the truth of the Class Vehicles' quality and/or defects through reasonable diligence and investigation.

729.     Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

730.     Defendants violated NCUDTPA by failing to inform Class Vehicle owners prior to purchase and/or after the time of their purchase during the warranty period that class engines

contained were defective in materials, workmanship, design and/or manufacture, and were accompanied by incorrect maintenance recommendations and suggested maintenance intervals.

731.   Defendants violated NCUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

732.   Defendants further violated NCUDTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines, including but not limited to the Timing Chain System.

733.   Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated NCUDTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Oles and members of the North Carolina Sub-Class.

734.   The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of NCUDTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

735.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Oles and members of the North Carolina Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

736.   Plaintiff Oles and members of the North Carolina Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of Class Vehicle resale value,

increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

737.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

738.   Plaintiff Oles and members of the North Carolina Sub-Class demand judgment against defendants including statutory and actual monetary damages, multiple damages, interest, costs, attorneys' fees and injunctive relief.

**COUNT XXX**

**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT,
OHIO REV. CODE ANN §§ 1345.01 *ET SEQ*.
(ON BEHALF OF PLAINTIFF SCOTT AND THE OHIO SUB-CLASS)**

739.   Plaintiff Scott incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

740.   Plaintiff Scott asserts this count on behalf of himself and members of the Ohio Sub-Class.

741.   Plaintiff Scott and members of the Ohio Sub-Class are "consumers" within context of the Ohio Consumer Sales Practices Act §§ 1345.01 to 1345.13 (hereinafter "OCSPA") in having purchased or leased Class Vehicles.

742.   Defendants are persons and suppliers within the context of the OCSPA at § 1345.01(C).

743.   The sale of Class Vehicles in Ohio constitutes a consumer transaction within the context of the OCSPA at § 1345.01(A).

744.    Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the OCSPA as described in this complaint in violation of OCSPA § 1345.02(A)-(B).

745.    Defendants committed unconscionable commercial practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's Timing Chain System with intent that Plaintiff Scott and other members of the Ohio Sub-Class would rely upon such concealment, suppression and/or omission in connection with the sale and/or advertisement of Class Vehicles as described in this complaint in violation of OCSPA § 1345.03(A)-(B).

746.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Scott and members of the Ohio Sub-Class the required maintenance and/or maintenance intervals of Class Vehicles including but not limited to regular replacement of expensive components including but not limited to the Timing Chain System as described in this complaint in violation of OCSPA § 1345.03(A)-(B).  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles including superior design and manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

747.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Scott and members of the Ohio Sub-Class the characteristics of Class Vehicle engines with respect to materials, workmanship, manufacture, durability, design,

longevity, maintenance and operating costs as described in this complaint in violation of OCSPA § 1345.03(A)-(B).

748.    Defendants actively suppressed the fact that class engines were failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

749.    Plaintiff Scott and members of the Ohio Sub-Class observed, heard, saw, read or otherwise received Defendants' misrepresentations and were subjected to material omissions by Defendants regarding the quality and characteristics of Class Vehicle engines, required maintenance and/or maintenance intervals of Class Vehicle engines and/or premature engine failings and relied upon the misrepresentations and/or omissions in choosing to purchase their Class Vehicles over other market vehicles.

750.    Plaintiff Scott and members of the Ohio Sub-Class observed, heard, saw, read or otherwise received Defendants' misrepresentations and were subjected to material omissions by Defendants regarding their vehicles' premature engine failings, denial of liability and shifting of responsibility for the cost of repairs to individual vehicle owners and relied upon the misrepresentations and/or omissions in individually incurring the costs of their vehicle's repair. If Defendants had not concealed class engine defects from Plaintiff Scott and members of the Ohio Sub-Class within the express warranty period, class engines would have been repaired by Defendants without cost to purchasers as so required under the original warranty.  Defendants secretly repaired some Class Vehicles to prevent dissemination of knowledge concerning vehicle defects.

751.    Defendants intended or should have known that Plaintiff Scott and members of the Ohio Sub-Class would rely upon misrepresented characteristics of Class Vehicles with

respect to design, materials, workmanship, manufacture and information in the owner's manual and the USA Warranty and Maintenance pamphlet.

752.   Although Defendants were aware that defects in class engines and misinformation and improper guidance in the owner's manual and the USA Warranty and Maintenance pamphlet were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

753.   One scheme Defendants employed entailed blaming class engine failures on individual owners for poor or improper maintenance or other conditions for which Defendants were not responsible.  In fact, their vehicles were properly maintained and the engine failures were due to the inherently defective Timing Chain Systems.

754.   Rather than conduct an open and fair inspection of the engine failings and make available a proper repair procedure for all Class Vehicles, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the OCSPA.

755.   If Defendants had not concealed Class Vehicle defects from Plaintiff Scott and members of the Ohio Sub-Class within the express warranty period, Class Vehicles would have been repaired without cost to purchasers as so required under the original warranty.

756.   Defendants fraudulently concealed unmistakable manifestations of impending Class Vehicle engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

757.   Defendants violated OCSPA by failing to inform Class Vehicle owners prior to purchase and/or after the time of purchase during the warranty period that class engines were defectively designed, manufactured, and materially constituted and were accompanied by incorrect maintenance recommendations and maintenance intervals.

758.    Defendants violated OCSPA by failing to inform Class Vehicle owners prior to purchase and/or after the time of purchase during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components, including the timing chain system.

759.    Defendants further violated OCSPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the vehicles, including but not limited to the Timing Chain System.

760.    Defendants committed unfair and deceptive trade practices as described in this count.  Defendants repeatedly violated OCSPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Plaintiff Scott and members of the Ohio Sub-Class.

761.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants that violates OCSPA occurred within the limitations period set out in the statute and/or is tolled by Defendants' conduct.

762.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Scott and members of the Ohio Sub-Class purchased or leased Class Vehicles and sustained ascertainable loss and financial harm.

763.    Plaintiff Scott and members of the Ohio Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of vehicle resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

764.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable

substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

765. Plaintiff Scott and members of the Ohio Sub-Class demand judgment against defendants including statutory and actual monetary damages, multiple damages, interest, costs, attorneys' fees and injunctive relief.

## COUNT XXXI

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 *ET SEQ.* (ON BEHALF OF PLAINTIFFS PIPE, SCHAFFRANEK AND THE PENNSYLVANIA SUB-CLASS)

766. Plaintiffs Pipe and Schaffranek incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

767. Plaintiffs Pipe and Schaffranek assert this count on behalf of themselves and members of the Pennsylvania Sub-Class.

768. Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* (hereinafter "PUTPCPL"), specifically § 201-2(2).

769. Defendants are persons within the context of PUTPCPL, § 201-2(2).

770. Defendants are engaged in trade and commerce within the context of PUTPCPL, § 201-2(3).

771. Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

772. Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of PUTPCPL, § 201-2(4)(v), (vii), (ix) and (xxi), *inter alia*.

177

773.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's Timing Chain System with intent that Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

774.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

775.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

776.    Defendants actively suppressed the fact that Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

777.    Defendants secretly repaired some Timing Chain Systems to prevent dissemination of knowledge concerning class engine defects.

778.    Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

779.    One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. Rather than conduct an open and fair inspection and repair procedure for all Class Vehicles, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the PUTPCPL.

780.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

781.    If Defendants had not concealed class engine defects from Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class within the express warranty period,

class engines would have been repaired without cost to purchasers as promised under the original warranty.

782.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

783.    Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

784.    Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

785.    Defendants further violated the PUTPCPL by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

786.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the PUTPCPL on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class.

787. The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of PUTPCPL occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

788. As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

789. Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class experienced premature class engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

790. The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

791. Plaintiffs Pipe and Schaffranek and members of the Pennsylvania Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXXII

## VIOLATION OF THE SOUTH CAROLINA CONSUMER UNFAIR TRADE PRACTICES ACT, S.C. CODE §§ 39-5-10 *ET SEQ*. (ON BEHALF OF PLAINTIFF BORCHINO AND THE SOUTH CAROLINA SUB-CLASS)

792.    Plaintiff Borchino incorporates and realleges each preceding paragraph as though fully set forth herein.

793.    Plaintiff Borchino asserts this count on behalf of himself and members of the South Carolina Sub-Class.

794.    Plaintiff Borchino and members of the South Carolina Sub-Class are persons within the context of the South Carolina Unfair Trade Practices Act (hereinafter "SCUTPA"), S.C. Code § 39-5-10 *et al*. and specifically § 39-5-10(a).

795.    Plaintiff Borchino and members of the South Carolina Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

796.    Defendants are persons within the context of the SCUTPA, S.C. Code § 39-5-10(a) and are engaged in trade and commerce in South Carolina as described in S.C. Code § 39-5-10(b).

797.    Defendants are engaged in unconscionable, unlawful, deceptive and unfair trade practices within the context of the SCUTPA, S.C. Code § 39-5-20 as described in this complaint,

798.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Borchino and members of the South Carolina Sub-Class

would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

799.    Defendants    fraudulently,    intentionally,    negligently,    and/or    recklessly misrepresented to Plaintiff Borchino and members of the South Carolina Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

800.    Defendants    fraudulently,    intentionally,    negligently    and/or    recklessly misrepresented to Plaintiff Borchino and members of the South Carolina Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.   Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

801.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

802.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning Timing Chain System defects.

803.   Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

804.   One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of SCUTPA.

805.   Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Borchino and members of the South Carolina Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles.  As reasonable consumers, Plaintiff Borchino and members of the South Carolina Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.   Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

806.   If Defendants had not concealed class engine defects from Plaintiff Borchino and members of the South Carolina Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

807.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

808.    Defendants violated the SCUTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

809.    Defendants violated the SCUTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

810.    Defendants further violated the SCUTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

811.    Defendants committed unfair and deceptive trade practices as described in this complaint.    Defendants repeatedly violated the SCUTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by Borchino and members of the South Carolina Sub-Class.

812.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of SCUTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

813. As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Borchino and members of the South Carolina Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

814. Plaintiff Borchino and members of the South Carolina Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

815. The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

816. Plaintiff Borchino and members of the South Carolina Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXXIII

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT,**
**TEX. BUS. AND COMM. CODE §§ 17.41 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF KANE AND THE TEXAS SUB-CLASS)**

817. Plaintiff Kane incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

818. Plaintiff Kane asserts this count on behalf of herself and members of the Texas Sub-Class.

819.   Plaintiff Kane and members of the Texas Sub-Class are persons and consumers within the context of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. and Comm. Code §§ 17.41 *et seq.* (hereinafter "TDTPA") who purchased and/or leased Class Vehicles for personal, family or household use, specifically § 17.45(3) and (4).

820.   Defendants are persons within the context of TDTPA § 17.45(3) who sell goods within the context of TDTPA § 17.45(1).

821.   The sale of Class Vehicles in Texas constitutes trade and commerce of consumer goods affecting the people of the state of Texas within the context of TDTPA § 17.45(6).

822.   Defendants knowingly and intentionally violated TDTPA § 17.46(b)(5) by representing Class Vehicles have characteristics, uses, benefits and/or qualities which they do not possess.

823.   Defendants violated TDTPA § 17.46(b)(7) by representing Class Vehicles are of a particular standard, quality, or grade, when they are not.

824.   Defendants violated TDTPA § 17.46(b)(24) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning Class Vehicles with the intent to deceive Plaintiff Kane and members of the Texas Sub-Class.

825.   At the time Kane purchased her Class Vehicle, Defendants knew or should have known that the Timing Chain System in the vehicle was defective and would prematurely fail and/or had not been properly tested to ascertain its durational limitations.  Defendants failed to inform Plaintiff Kane of the defective Timing Chain System in her Class Vehicle at the time of purchase and Plaintiff Kane had no independent knowledge of the defects.  Commencing in

approximately January of 2012, the majority of 2.0L TSI / TFSI engines incorporated the newly designed tensioner and timing chain described in this complaint.

826.    Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the TDTPA as described in this complaint in violation of TDTPA § 17.46.

827.    Defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System in connection with the sale and/or advertisement of Class Vehicles to the Plaintiff Kane and members of the Texas Sub-Class.

828.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Kane and members of the Texas Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

829.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Kane and members of the Texas Sub-Class the characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused the Timing Chain Systems and/or engines to prematurely fail.

830.    Defendants actively suppressed the fact that Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

831.    Defendants secretly repaired some Timing Chain Systems in an effort to prevent dissemination of knowledge concerning class engine defects.

832.    Defendants intended that Plaintiff Kane and members of the Texas Sub-Class would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet, as well as any potential defects inherent in the engine components, including the Timing Chain System.

833.    Although Defendants knew that defects in Class Vehicles and misinformation in the owner's manuals were causing premature Timing Chain System and/or engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

834.    One scheme included blaming Class Vehicle failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. In fact, it was the concealed defects in the Timing Chain System that caused the Class Vehicle failures.

835.    Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the TDTPA.

836.    Information regarding a vehicle's defective Timing Chain System as described in this complaint is important to consumers in that the defect may cause engine failures and necessitates expensive repairs, and, hence, is likely to affect a consumer's choice of vehicle to purchase or lease.  Consumers typically will reasonably rely upon the manufacturers and sellers to provide accurate information as to quality and character of the vehicle they are considering purchasing or leasing.

837.    If Defendants had not concealed class engine defects from Plaintiff Kane and members of the Texas Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

838.    Defendants fraudulently concealed unmistakable manifestations of impending Class Vehicle failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

839.    Defendants violated the TDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

840.    Defendants violated the TDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

841.    Defendants further violated the TDTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines, including but not limited to the Timing Chain System.

842.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the TDTPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning *inter alia*, the causes of the failures of class engines owned by Kane and members of the Texas Sub-Class.

843.    The secret warranty programs for Class Vehicles initiated by Defendants along with other wrongful conduct of Defendants in violation of the TDTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

844.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Kane and members of the Texas Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

845.    Plaintiff Kane and members of the Texas Sub-Class experienced premature Timing Chain System and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

846.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

847.    Plaintiff Kane and members of the Texas Sub-Class provided notice pursuant to TDTPA § 17.505 to Defendants via certified mail, return receipt requested on April 28, 2016. No offer of settlement was received at the expiration of the 60-day notice period.

848.    Plaintiff Kane and members of the Texas Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT XXXIV

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE §§ 19.86.010 *ET SEQ*. (ON BEHALF OF PLAINTIFF GOSSMAN AND THE WASHINGTON SUB-CLASS)

849.    Plaintiff Gossman incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

850.    Plaintiff Gossman asserts this count on behalf of himself and members of the Washington Sub-Class.

851.    Plaintiff Gossman and members of the Washington Sub-Class are persons within the context of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq.* (hereinafter "WCPA") who purchased and/or leased class vehicles for personal, family or household use, specifically § 19.86.010(1).

852.    Defendants are persons within the context of WCPA § 19.86.010(1).

853.    The sale of Class Vehicles in Washington constitutes trade and commerce of consumer goods affecting the people of the state of Washington within the context of WCPA § 19.86.010(2).

854.    Defendants violated WCPA § 19.86.020 and § 19.86.093 by representing that Class Vehicles have characteristics, uses, benefits and/or qualities they do not possess.  This

conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

855. Defendants violated WCPA § 19.86.020 and § 19.86.093 by representing that Class Vehicles are of a particular standard, quality, or grade, when they are not. This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

856. Defendants violated WCPA § 19.86.020 and § 19.86.093 by failing to state a material fact that deceives or tends to deceive. This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

857. Defendants violated WCPA § 19.86.020 and § 19.86.093 by advertising Class Vehicles without intent to sell or lease as advertised. This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

858. Defendants violated WCPA § 19.86.020 and § 19.86.093 by selling class vehicles knowing that a service, replacement or repair was needed. This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

859. Defendants violated WCPA § 19.86.020 and § 19.86.093 by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning class vehicles with the intent to deceive Plaintiff Gossman and members of the Washington Sub-Class. This conduct is injurious to the public interest

because it injured other persons, had the capacity to injure other persons and/or has the capacity to injure other persons.

860. At the time Plaintiff Gossman purchased his pre-owned class vehicle in December of 2014, Defendants knew that the Chain Tensioner in the vehicle was defective and would prematurely fail because the Defendants had previously redesigned the 2.0L TSI tensioner and timing chain for new vehicle models more than three years earlier in an effort to correct deficiencies in the system. Defendants failed to inform Plaintiff Gossman of the defective timing chain system in his class vehicle at the time of purchase and Plaintiff Gossman had no independent knowledge of the defects. Commencing in approximately January 2012, the majority of 2.0L TSI/TFSI engines incorporated the newly designed tensioner and timing chain described in this complaint.

861. Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the WCPA as described in this complaint in violation of WCPA § 19.86.020 and § 19.86.093.

862. Defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Class Vehicles' Timing Chain Systems in connection with the sale and/or advertisement of Class Vehicles to the Plaintiff Gossman and members of the Washington Sub-Class.

863. Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Gossman and members of the Washington Sub-Class the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the Timing Chain System.

864.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Gossman and members of the Washington Sub-Class the characteristics of class vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.   Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of Class Vehicles including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.   In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

865.    Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

866.    Defendants secretly repaired some class engines in an effort to prevent dissemination of knowledge concerning class engine defects.

867.    Defendants intended that Plaintiff Gossman and members of the Washington Sub-Class would, in the course of their decision to expend monies in purchasing, leasing and/or repairing class vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet, as well as any potential defects inherent in the engine components, including the Timing Chain System.

868.    Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

869.    One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. In fact, it was the concealed defects in the Timing Chain System that caused the class engine failures.

870.    Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the WCPA.

871.    Information regarding a vehicle's defective Timing Chain System as described in this complaint is important to consumers in that the defect causes engine failures and necessitates expensive repairs, and, hence, is likely to affect a consumer's choice of vehicle to purchase or lease.  Consumers typically will reasonably rely upon the manufacturers and sellers to provide accurate information as to quality and character of the vehicle they are considering purchasing or leasing.

872.    If Defendants had not concealed class engine defects from Plaintiff Gossman and members of the Washington Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

873.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

874.    Defendants violated the WCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

875.    Defendants violated the WCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

876.    Defendants further violated the WCPA by failing to inform prospective class vehicle purchasers that the Defendants had not properly tested the engines, including but not limited to the timing chain system.

877.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the WCPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning *inter alia*, the causes of the failures of class engines owned by Plaintiff Gossman and members of the Washington Sub-Class.

878.    The secret warranty programs for class engines initiated by the Defendants along with other wrongful conduct of the Defendants in violation of the WCPA occurred within the limitations period set out in the statute and/or is tolled by Defendants' conduct.

879.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Gossman and members of the Washington Sub-Class purchased or leased class vehicles and sustained an ascertainable loss and financial harm.

880.   Plaintiff Gossman and members of the Washington Sub-Class experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

881.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

882.   Plaintiff Gossman and members of the Washington Sub-Class demand judgment against the Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Sub-Classes, and award the following relief:

A.   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

B.   An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.   Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Timing Chain System in all Class Vehicles, and/or buyback all

Class Vehicles, and to fully reimburse and make whole all members of the Classes for all costs and economic losses;

D.      A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.      An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.      An order awarding any applicable statutory and civil penalties;

G.      A declaration that Defendants are required to engage in corrective advertising;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.      An award of costs, expenses and attorneys' fees as permitted by law; and

J.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.      DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


DATED: August 22, 2016                  Respectfully submitted,

                                        /s/ James E. Cecchi
                                        James E. Cecchi
                                        Lindsey H. Taylor
                                        **CARELLA, BYRNE, CECCHI,**
                                        **OLSTEIN, BRODY & AGNELLO, P.C.**
                                        5 Becker Farm Road
                                        Roseland, New Jersey 07068

Telephone: (973)-994-1700
Facsimile: (973)-994-1744

Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000

Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner (*Pro Hac Vice to be filed*)
Ethan Barlieb
**KESSLER TOPAZ
MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Thomas P. Sobran, Esq. (*Pro Hac Vice to be filed*)
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

Matthew Mendelsohn
David A. Mazie
Adam M. Slater
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**MCCUNEWRIGHT LLP**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (909) 557-1250

Christopher A. Seeger
David R. Buchanan

200

Scott Alan George
**SEEGER WEISS LLP**
550 Broad Street
Newark, NJ 07102
Telephone:(973) 639-9100

Roland Tellis (*Pro Hac Vice to be filed*)
Mark Pifko (*Pro Hac Vice to be filed*))
Peter Klausner (*Pro Hac Vice to be filed*)
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:     (818) 839-2333

*Attorneys for Plaintiffs and the proposed Classes*