# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VOLKSWAGEN TIMING CHAIN PRODUCT LIABILITY LITIGATION | Civil Action No. 16-2765 (JLL)(JAD) |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

---

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

[Additional Attorneys on Signature Page]

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................... 1

FACTUAL BACKGROUND ............................................................. 2

ARGUMENT .................................................................................. 5

I.   LEGAL STANDARD ............................................................. 5

II.  DEFENDANT CANNOT COMPEL ARBITRATION .............................. 6

    A.   Defendant is Not a Party to the Purchase Agreements ..................... 7

    B.   Defendant Cannot Rely on Equitable Estoppel............................... 11

III. DEFENDANT'S CHOICE OF LAW ARGUMENT FAILS ................... 15

    A.   Defendant's Choice of Law Analysis Is Procedurally Premature ... 15

    B.   A Choice-of-Law Analysis Favors Application of New Jersey Law ........................................................................... 16

IV.  DEFENDANT'S "LUMPING" ARGUMENT IS MERITLESS.............. 17

V.   PLAINTIFFS PLEAD VIABLE EXPRESS WARRANTY CLAIMS...... 20

    A.   Defendant's Warranty Limitations Are Unconscionable................ 21

    B.   Complete Failure During the Warranty Period is Not Required...... 24

    C.   The Timing Chain System Defect is Covered Under Defendant's Warranties................................................ 25

    D.   Defendant's Arguments Regarding Pre-Suit Notice Are Unavailing ............................................................. 29

        1.   Plaintiffs are not Required to Provide Notice to Defendant ................................................... 29

        2.   Though Not Required, Plaintiffs Provided Pre-Suit Notice ...................................................... 31

    E.   Plaintiffs Sufficiently Allege Reliance On Defendant's Express Warranties ....................................................... 32

i

F.     Plaintiffs' Express Warranty Claims Are Timely ............................ 33

VI.   THE IMPLIED WARRANTY OF MERCHANTABILITY WAS BREACHED .............................................................................................. 35

A.     Lack of Privity Does Not Preclude Plaintiffs' Implied Warranty Claims ........................................................................................ 38

VII.  PLAINTIFFS PROPERLY PLED THEIR MAGNUSON-MOSS WARRANTY ACT CLAIMS .................................................................... 40

VIII. BREACH OF CONTRACT CLAIM ........................................................ 41

IX.   PLAINTIFFS HAVE STANDING TO BRING COMMON-LAW FRAUD, STATUTORY FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS ............................................................ 41

A.     Plaintiffs Adequately Plead an Injury In Fact .................................. 41

B.     Plaintiffs Adequately Plead Causation .............................................. 43

X.    PLAINTIFFS SUFFICIENTLY PLEAD COMMON-LAW FRAUD ...... 43

A.     Plaintiffs Plausibly Allege Fraudulent Omission ............................. 43

1.     Defendant Owed Duty to Disclose in Light of Its Exclusive and Superior Knowledge of the Timing Chain System Defect ....................................................................... 46

2.     Defendant Owed a Duty to Disclose Safety Defects ............. 49

3.     Defendant's Partial Disclosures Created a Duty to Disclose ................................................................................ 50

B.     Plaintiffs Plead an Actionable Misrepresentation ............................ 51

C.     All Class Vehicles Contain Defective Timing Chain Systems Regardless of Whether They Outlasted Time/Mileage Durations of the Express Warranty ..................................................... 53

D.     The Economic Loss Doctrine Does Not Apply................................. 56

XI.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE SUSTAINED......................................................................... 59

XII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS SHOULD NOT
       BE DISMISSED ........................................................................ 61

XIII.  PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS
       SHOULD PROCEED ................................................................ 64

       A.   Plaintiffs Satisfy the Particularity Requirements of Rule 9(b),
            Where Applicable, for the Consumer Fraud Claims ...................... 64

       B.   Plaintiffs Have Adequately Alleged Reliance and Deceptive
            Acts by Defendant ............................................................. 67

       C.   Plaintiffs Sufficiently Plead an Injury Under The New York and
            Arkansas Consumer Fraud Statutes ................................... 70

       D.   The Georgia and Indiana Consumer Fraud Claims Are Well-
            Pled .............................................................................. 71

       E.   At a Minimum, the Colorado, Georgia, South Carolina and
            Ohio Consumer Fraud Claims Can Proceed on an Individual
            Basis ............................................................................. 72

       F.   The Consumer Fraud Claims Seeking Equitable Relief Should
            Proceed .......................................................................... 74

       G.   The Economic Loss Doctrine Does Not Bar Plaintiffs'
            Michigan, New Jersey, North Carolina, or Pennsylvania
            Consumer Fraud Claims ................................................... 75

       H.   Plaintiffs Have Adequately Stated a Consumer Fraud Claim
            Under Connecticut Law .................................................... 76

       I.   Warranty Coverage Does Not Negate Plaintiffs' New Jersey
            and California Consumer Fraud Claims ......................... 77

       J.   The New York, Connecticut, and Ohio Consumer Fraud
            Claims Are Timely ........................................................... 79

CONCLUSION ........................................................................ 80

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ............................................................................23

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 2, 2010) ....................68, 70

*Agnew v. Honda Motor Co.*,
   No 08-cv-01433, 2009 WL 1813783 (S.D. Ind. May 20, 2009) .......................13

*Alban v. BMW of North America, LLC*,
   No. 09-cv-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011)........................24, 48

*Alin v. Am. Honda Motor Co.*,
   No. 08-cv-4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010)............................28

*Anderson v. Gulf Stream Coach, Inc.*,
   662 F.3d 775 (7th Cir. 2011) ...........................................................................31

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009)...................................................................15

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011)...................................................................35

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5, 6

*Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*,
   776 F.2d 1174 (3d Cir. 1985) ...........................................................................62

*Berger v. Accounting Fulfillment Servs. LLC*,
   No. 16-cv-744, 2016 WL 3655347 (M.D. Fla. July 8, 2016)............................13

*Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*,
   801 F.3d 347 (3d Cir. 2015) .............................................................................61

*Brantley v. Republic Mortg. Ins. Co.*,
424 F.3d 392 (4th Cir. 2005) ...................................................................12, 14

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*¸155 F.
Supp. 2d 1069, 1099-1100 (S.D. Ind. 2001)..........................................30

*Burns v. Toyota Motor Sales, U.S.A., Inc.*,
No. 14-cv-02208, 2016 WL 128544 (W.D. Ark. Jan. 12, 2016).......................71

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2005) ..............................................24

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000) ..............................................62

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) ..............................................53

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*
2015 WL 4591236, at *35 (D.N.J. July 29, 2015) ............................................56

*Cats v. Monaco RV, LLC*,
No. 15-cv-1585, 2016 WL 5253204 (W.D. Wash. Sept. 22, 2016).................30

*CBP Res., Inc. v. SGS Control Servs., Inc.*,
394 F. Supp. 2d 733 (M.D.N.C. 2005) ............................................64

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1200 (C.D. Cal. 2011) ............................................36

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ......................................42, 78

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..............................................40

*Coba v. Ford Motor Co.*,
No. 12-cv-1622, 2013 WL 244687 (D.N.J. Jan. 22, 2013) ................................55

*Cole v. General Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) ......................................42, 43

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ............................................................. 8

*Connelly Co. v. Primo Water Corp.*,
    No. 14-cv-00340, 2016 WL 225663 (E.D. Wash. Jan. 19, 2016) ..................... 64

*Cox v. Chrysler Grp., LLC*,
    No. 14-cv-7573, 2015 WL 5771400 (D.N.J. Sept. 30, 2015) ........................... 28

*Craftmatic Sec. Litig. v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989) .............................................................. 18

*CSL Silicones Inc. v. Midsun Grp. Inc.*,
    170 F. Supp. 3d 304, 312 (D. Conn. 2016) ............................................. 80

*Cty. of El Paso, Tex. v. Jones*,
    No. 09-cv-00119, 2009 WL 4730343 (W.D. Tex. Dec. 4, 2009) ........................ 64

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    423 F.3d 268 (3d Cir. 2005) .............................................................. 42

*Davisson v. Ford Motor Co.*,
    No. 13-cv-00456, 2014 WL 4377792 (S.D. Ohio Sept. 3, 2014) ....................... 48

*De Sole v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 387, 428 (S.D.N.Y. 2015) ............................................. 34

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008) ........................................... 23, 34, 45

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010) ...................................................... 20

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ...................................................... 37

*Duffy v. Samsung Electronics. America, Inc.*,
    No. 06-cv-5259, 2007 WL 703197 (D.N.J. Mar. 2, 2007) ........................... 54, 55

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995) .............................................................. 23

vi

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F. Supp. 2d 265 (S.D.N.Y. 2004) ...............................................................57

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ...............................................................78

*Elder v. BMO Harris Bank*,
   No. 13-cv-3043, 2014 WL 1429334 (D. Md. Apr. 11, 2014) ...........................13

*In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods.*
   *Liab. Litig.*,
   No. 15-cv-18-JLL, 2015 WL 6467730 (D.N.J. Oct. 26, 2015)
   (Linares, J.) ....................................................................................................58, 64

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-cv-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .......................57

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ............................................................................................40

*Falco v. Nissan North America Inc.*,
   No. 13-cv-00686, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) .......2, 46, 48, 78

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................44, 50, 56

*Feldman v. Mercedes-Benz USA, LLC*,
   No. 11-cv-00984, 2012 WL 6596830 (D.N.J. Dec. 18, 2012) ..............45, 48, 67

*Ferron v. Search Cactus, L.L.C.*,
   No. 06-cv-327, 2007 WL 1792332 (S.D. Ohio June 19, 2007) ........................64

*Fisher v. Pelstring*,
   817 F. Supp. 2d 791 (D.S.C. 2011) ...................................................................49

*Force v. ITT Hartford Life & Annuity Ins. Co.*,
   4 F. Supp. 2d 843 (D. Minn. 1998).....................................................................74

*In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*,
   No. 03-cv-4558, slip op. (D.N.J. Sept. 3, 2008)..................................................21

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
   No. 03-cv-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ........................34, 75

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    No. 96-cv-3125, 2001 WL 1266317 (D.N.J. Sept. 30, 1997) ...........................36

*Ford Motor Co. v. Ables*,
    207 F. App'x 443 (5th Cir. 2006) .......................................................13

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 ...................................................................................5, 6

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ..............................................................43

*Galicki v. New Jersey*,
    No. 14-cv-169-JLL, 2015 WL 3970297 (D.N.J. June 29, 2015)
    (Linares, J.) ......................................................................................19

*Galoski v. Stanley Black & Decker, Inc.*,
    No. 14-cv-553, 2015 WL 5093443 (N.D. Ohio Aug. 28, 2015) .......................58

*Galstaldi v. Sunvest Cmtys. USA, LLC*,
    637 F. Supp. 2d 1045 (S.D. Fla. 2009) ...............................................64

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 11-cv-4429-JLL, 2012 WL 1574301 (D.N.J. May 3, 2012)
    (Linares, J.), *affd*, 525 F. App'x 94 (3d Cir. 2013).............................66

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010).............................................................................7

*Gray v. BMW of N. Am., LLC*,
    22 F. Supp. 3d 373, 385 (D.N.J. 2014)........................................44, 46

*Great N. Ins. Co. v. Cornerstone Custom Home Builders, LLC*,
    No. 16-cv-71, 2016 U.S. Dist. LEXIS 94344 (M.D. Ga. July 20,
    2016) .................................................................................................13

*Greene v. BMW of North Am.*,
    No. 11-cv-04220, 2013 WL 5287314 (D.N.J. Sept. 17, 2013) .........................36

*Griswold v. Coventry First LLC*,
    762 F.3d 264 (3d Cir. 2014) .................................................................8

*Haag v. Hyundai Motor Am.*,
    969 F. Supp. 2d 313 (W.D.N.Y. 2013) ........................................................28, 35

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) ............................................................12

*Henderson v. Volvo Cars of North America, LLC*,
    No. 09-cv-4146, 2010 WL 2925913 (D.N.J. Jul. 21, 2010) ..................21, 22, 23

*Heyman v. Citimortgage, Inc.*,
    No. 14-cv-1680, 2014 WL 4637034, . (D.N.J. Sep 15, 2014) ...........................65

*Hornberger v. Gen. Motors Corp.*,
    929 F. Supp. 884 (E.D. Pa. 1996) ....................................................................37

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*,
    590 F. Supp. 2d 677 (D.N.J. 2008) ..................................................................56

*In re Hydroxycut Marketing and Sales Practices Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2014) ......................................................................73

*Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*,
    472 F. Supp. 2d 183 (D. Conn. 2007) ...............................................................79

*J.D. Fields & Co. v. Nucor-Yamato Steel*,
    976 F. Supp. 2d 1051 (E.D. Ark. 2013) ............................................................59

*John Wiley & Sons, Inc. v Palisade Corp.*,
    No. 04-cv-3359, 2005 WL 2739267 (S.D.N.Y. Oct. 21, 2005) ........................65

*Johnson v. Capital Offset Co.*,
    No. 11-cv-459, 2013 WL 5406613 (D.N.H. Sept. 25, 2013) ............................61

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2010) .............................................................15, 62

*Kantor v. Hiko Energy, LLC*,
    100 F. Supp. 3d 421, 429 (E.D. Pa. 2015) ........................................................76

*Katz v. Household Int'l, Inc.*,
    91 F.3d 1036 (7th Cir. 1996) ............................................................................19

*Keegan v. Am. Honda Motor Co., Inc.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ..........................................................39, 79

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 496 (1941)...................................................................................16

*Koulajian v. Trek Bicycle Corp.*,
   No. 90-cv-3156, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992) ............................25

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2012) ..........................................................................12

*Lawson v. Life of the South Insurance Company*,
   648 F.3d 1166 (11th Cir. 2011) ...................................................................10, 14

*Lee v. Mylan, Inc.*,
   806 F. Supp. 2d 1320 (M.D. Ga. 2011) .............................................................39

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
   865 F. Supp. 2d 529 (D.N.J. 2011)....................................................................53

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ...............................................................................50

*Lisk v. Lumber One Wood Preserving, LLC*,
   792 F.3d 1331 (11th Cir. 2015) ...................................................................73, 74

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................41

*Luppino v. Mercedes-Benz USA, LLC*,
   No. 09-cv-5582, 2011 WL 2470625 (D.N.J. June 20, 2011) ............................32

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
   No. 12-cv-07849, 2013 WL 5574626 (D.N.J. Oct. 9, 2013)..............................47

*Majdipour v. Jaguar Land Rover North Am., LLC*,
   No. 12-cv-07849, 2015 WL 1270958 (D.N.J. Mar. 18, 2015)...........................46

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011) ...............................................................................5

*Mance v. Mercedes-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012) ............................................................14

*Maniscalco v. Brother Int'l (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013) ...............................................................15

*Marshall v. Hyundai Motor America*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...............................................................79

*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013) .......................................................45, 49

*MDNet, Inc. v. Pharmacia Corp.*,
147 F. App'x 239 (3d Cir. 2005) .......................................................20

*In re Mercedes-Benz Tele Aid Contract Litig.*,
257 F.R.D. 46 (D.N.J. 2009) ...........................................................15, 16, 61, 62

*Mickens v. Ford Motor Company*,
900 F. Supp. 2d 427 (D.N.J. 2012) .......................................................54, 55, 77

*Montgomery v. Kraft Foods Glob., Inc.*,
822 F.3d 304 (6th Cir. 2016) (Mich. law) .......................................................38

*Montich v. Miele USA, Inc.*,
849 F. Supp. 2d 439 (D.N.J. 2012) ...............................................................67

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ...............................................................11, 14

*Murphy v. Proctor & Gamble Company*,
695 F. Supp. 2d 600 (E.D. Mich. 2010) .......................................................58

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) ...........................................*passim*

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-3072, 2015 WL 5118308 (N.D. Cal. Aug. 31, 2015)........................39

*Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*,
No. 02-cv-1288, 2007 WL 894833 (S.D. Ohio Mar. 22, 2007) ........................61

*Nelson v. Mead Johnson Nutrition Co.*,
270 F.R.D. 689 (S.D. Fla. 2010)........................................................................68

*Nelson v. Nissan N. Am., Inc.*,
894 F. Supp. 2d 558 (D.N.J. 2012)....................................................................24

*Nguyen v. Am. Family Mut. Ins. Co.*,
15-cv-0639, 2015 WL 5867266 (D. Colo. Oct. 8, 2015) ..................................68

*Nobile v. Ford Motor Co.*,
No. 10-cv-1890, 2011 WL 900119 (D.N.J. Mar. 14, 2011) ..............................54

*Noble v. Porsche Cars North America, Inc.*,
694 F. Supp. 2d 333 (D.N.J. 2010)...............................................................54, 55

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008), *affd*, 322 F. App'x 489 (9th
Cir. 2009) ...........................................................................................................77

*Omega Eng'g, Inc. v. Eastman Kodak Co.*,
908 F. Supp. 1084 (D. Conn. 1995)...................................................................64

*Orlando v. Novurania of America, Inc.*,
162 F. Supp. 2d 220 (S.D.N.Y. 2001) ...............................................................57

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) (Mich. law) ........................................................38

*Pauly v. Houlihan's Rests., Inc.*,
No. 12-cv-0025, 2012 WL 6652754 (D.N.J. Dec. 20, 2012) ...........................62

*Payne v. Fujifilm U.S.A., Inc.*,
No. 07-cv-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) ..............................23

*Pension Trust Fund for Operating Engineers v. Mortgage Asset
Securitization Transactions, Inc.*,
730 F.3d 263 (3d Cir. 2013) ................................................................................5

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ................................................................................5

*Phillips v. Dignified Transition Sols.*,
No. 13-cv-02237, 2014 WL 4294972 (D. Nev. Aug. 28, 2014) .......................61

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ..............................................................49

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*,
    No. 12-cv-6590, 2013 WL 1431680 (D.N.J. Apr. 9, 2013) ...............................15

*Republic Ins. Co. v. Broan Mfg. Co., Inc.*,
    960 F. Supp. 1247 (E.D. Mich. 1997) ................................................................58

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab.*
    *Litig.*,
    155 F. Supp. 3d 772, 799-800 (N.D. Ill. 2016) (Ill. law) ..................................31

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*,
    625 F. Supp. 2d 508 (E.D. Mich. 2008) ............................................................76

*In re Samsung DLP Television Class Action Litig.*,
    No. 07-cv-2141, 2009 WL 3584352 (D.N.J. Oct. 27, 2009).......................15, 23

*Sanchez-Knutson v. Ford Motor Co.*,
    52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014).................................................39

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
    MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008)......................*passim*

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974), *overruled on other grounds*, *Davis v.*
    *Scherer*, 468 U.S. 183 (1984) ..............................................................................6

*Se. Fin. Corp. v. United Merchants & Mfrs., Inc.*,
    701 F.2d 565 (5th Cir. 1983) .............................................................................50

*Sears Roebuck & Co. v. Tyco Fire Products. LP*,
    833 F. Supp. 2d 892 (N.D. Ill. 2011)..................................................................65

*Servedio v. State Farm Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012), *affd*, 531 F. App'x 110 (2d
    Cir. 2013) ...........................................................................................................70

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)............................................................................................73

*Sheet Metal Workers Local 441 Health & Welfare Plan v.*
*GlaxoSmithKline, PLC*,
737 F. Supp. 2d 380 (E.D. Pa. 2010)....................................................................62

*Silicon Knights, Inc. v. Epic Games, Inc.*,
No. 07-cv-275, 2011 WL 1134453 (E.D.N.C. Jan. 25, 2011)...........................61

*Simons v. Wal-Mart Stores E., L.P.*,
No. 11-cv-03180, 2013 WL 393998 (D.S.C. Jan. 31, 2013)..............................57

*Skeen v. BMW of N. Am., LLC*,
No. 13-cv-1531, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ...............2, 21, 23, 45

*Smith v. Citimortgage, Inc.*,
No. 15-cv-7629-JLL, 2015 WL 12734793 (D.N.J. Dec. 22, 2015)
(Linares, J.) ........................................................................................................57

*Soto v. Am. Honda Motor Co.*,
No. 12-cv-01377, 2012 WL 5877476 (N.D. Cal. Nov. 20, 2012).....................14

*Soto v. American Honda Motor Co., Inc.*,
946 F. Supp. 2d 949 (N.D. Cal. 2012)...............................................................11

*Statler v. Dell, Inc.*,
775 F. Supp. 2d 474 (E.D.N.Y. 2011) ...............................................................80

*Stein v. Fenestra Am., L.L.C.*,
No. 09-cv-5038, 2010 WL 816346 (E.D. Pa. Mar. 9, 2010).............................57

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
877 F. Supp. 2d 192 (D.N.J. 2012)....................................................................63

*Stewart v. Smart Balance, Inc.*,
No. 11-cv-6174-JLL, 2012 WL 4168584 (D.N.J. June 26, 2012)
(Linares, J.) ........................................................................................................65

*Stonebridge Collection, Inc. v. Carmichael*,
791 F.3d 811 (8th Cir. 2015) .............................................................................68

*Strzakowlski v. Gen. Motors Corp.*,
No. 04-cv-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005)............................30

*Thomas v. Ford Motor Co.*,
No. 13-cv-01417, 2014 WL 1315014 (D.S.C. Mar. 31, 2014) ........................35

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices &
Prods. Liab. Litig.*,
828 F. Supp. 2d 1150 (C.D. Cal. 2011) .....................................................7, 8, 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices & Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................30

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices, & Prods. Liab. Litig.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................................................42

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices, & Prods. Liab. Litig.*,
838 F. Supp. 2d 967 (C.D. Cal. 2012) .......................................................13, 14

*Tzung v. State Farm Fire & Cas. Co.*,
873 F.2d 1338 (9th Cir. 1989) .........................................................................26

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
210 F.3d 1207 (10th Cir. 2000) .......................................................................60

*Vassalotti v. Wells Fargo Bank, N.A.*,
732 F. Supp. 2d 503 (E.D. Pa. 2010).................................................................64

*Viking Yacht Co., Inc. v. Composite One, LLC*,
385 F. App'x 195 (3d Cir. 2010) ......................................................................28

*Weingarten Realty Inv'rs v. Miller*,
495 F. App'x. 418 (5th Cir. 2012) ....................................................................10

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283, 297-98 (S.D.N.Y. 2015)...................................................57

*Weisblum v. Prophase Labs, Inc.*,
No. 14-cv-3587, 2015 WL 738112 (S.D.N.Y. Feb.20, 2015)..........................56

*Weske v. Samsung Elecs., Am., Inc.*,
934 F. Supp. 2d 698 (D.N.J. 2013).............................................................18, 58

xv

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    No. 08-cv-65000, 2010 WL 3655954 (N.D. Ohio Sept. 15, 2010) ...................50

*Wiatt v. Winston & Strawn LLP*,
    838 F. Supp. 2d 296 (D.N.J. 2012) (Linares, J.).................................................44

*Wiegel v. Stork Craft Mfg., Inc.*,
    946 F. Supp. 2d 804 (N.D. Ill. 2013)..................................................................68

*Wiseberg v. Toyota Motor Corp.*,
    No. 11-cv-3776-JLL, 2012 WL 1108542 (D.N.J. Mar. 30, 2012)
    (Linares, J.) ........................................................................................................48

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..............................................................68

**State Cases**

*80 S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc.*,
    486 N.W.2d 393 (Minn. 1992) ...........................................................................61

*Against Gravity Apparel, Inc. v. Quarterdeck Corp.*,
    267 A.D.2d 44 (N.Y. App. Div. 1999) ...............................................................56

*Ahlers v. Ryland Homes Nev. LLC*,
    367 P.3d 743 (2010)............................................................................................13

*Amato v. Gen. Motors Corp.*,
    463 N.E.2d 625 (Ohio Ct. App. 1982).................................................................72

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    219 N.J. 430 (2014) ..............................................................................................8

*Bilinsco Inc. v. Harris Cty. Appraisal Dist.*,
    321 S.W.3d 648 (Tex. App. 2010).......................................................................34

*Blackward v. Simplex Prods. Div.*,
    No. 221066, 2001 WL 1255924 (Mich. Ct. App. Oct. 19, 2001) .......................58

*Brand v. Hyundai Motor Am.*,
    226 Cal. App. 4th 1538 (Cal. App. 4th Dist. 2014).............................................36

*In re Chi. Flood Litig.*,
680 N.E.2d 265 (Ill. 1997)..................................................................61

*Church of the Nativity of Our Lord v. Watpro, Inc.*,
491 N.W.2d 1 (Minn. 1992) ........................................................31, 32

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (Cal. Ct. App. 3rd Dist. 2011)........................78

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. 2012)............................................................79

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (Cal. App. 2nd Dist. 2006)................55, 56, 78

*Davis v. Forest River, Inc.*,
774 N.W.2d 327 (2009) ....................................................................58

*Dekelaita v. Nissan Motor Corp. USA*,
799 N.E. 2d 367 (Ill. App. 1st. Dist. 2003) ......................................40

*Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*,
603 N.W.2d 336 (Minn. Ct. App. 1999)............................................75

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
429 415 N.W.2d 206 (Mich. 1987)....................................................68

*In re Ford Motor Co., Spark Plug & 3-Valve Engine Prods. Liab.
Litig.*,
No. 12-md-2316, 2014 WL 3778592 (N.D. Ohio. July 30, 2014) ....55

*Gaiolini v. Hewitt*,
No. 085016792, 2009 WL 2782217 (Conn. Super. Ct. July 24,
2009) ................................................................................................34

*Gennari v. Weichert Co. Realtors*,
148 N.J. 582 (1997) ....................................................................44, 68

*Gerrity v. R.J. Reynolds Tobacco Company*,
818 A.2d 769 (Conn. 2003) ........................................................76, 77

*Gomez-Jimenez v. N.Y. Law Sch.*,
103 A.D.3d 13 (N.Y. App. Div. 2012) ..............................................59

*HECI Expl. Co. v. Neel*,
    982 S.W.2d 881 (Tex. 1998) .............................................................................63

*Hiles Co. v. Johnston Pump of Pasadena, Cal.*,
    560 P.2d 154 (Nev. 1977)..................................................................................38

*Hinchliffe v. Am. Motors Corp.*,
    440 A.2d 810 (Conn. 1981) ..............................................................................68

*Hirsch v. Amper Fin. Servs., LLC*,
    215 N.J. 174 (2013) .........................................................................11, 12, 14

*Holloman v. D.R. Horton, Inc.*,
    241 Ga. App. 141 (Ga. Ct. App. 1999)..............................................................61

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*,
    685 So. 2d 1238 (Fla. 1996) .............................................................................60

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
    192 N.J. 372 (2007) ..........................................................................................68

*Islip v. Mercedes-Benz USA LLC*,
    155 Cal. App. 4th 19 (Cal. App. 2nd Dist 2007)...............................................36

*Jackson v. City of Seattle*,
    244 P.3d 425 (Wash. Ct. App. 2010)................................................................61

*Karu v. Feldman*,
    119 N.J. 135 (1990) ..........................................................................................59

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003)....................................................................................74

*Lee v. Carter-Reed LLC*,
    203 N.J. 496 (2010) ..........................................................................................63

*Lloyd v. Gen. Motors Corp.*,
    916 A.2d 257 (Md. Ct. App. 2007)...................................................................61

*McCarrell v. Hoffmann–La Roche, Inc.*,
    No. 076524, 2017 WL 344449 (N.J. Jan. 24, 2017)..........................................33

*Mocek v. Alfa Leisure, Inc.*,
  114 Cal. App. 4th 402 (Cal. App. 4th Dist. 2003)...............................................35

*Moore v. Microsoft Corp.*,
  293 A.D.2d 587 (N.Y. App. Div. 2002) ............................................................56

*Mowbray v. Avery*,
  76 S.W.3d 663 (Tex. Ct. App. 2002)..................................................................64

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
  865 N.E.2d 334 (Ill. App. 1st Dist. 2007) ........................................................35

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ..........................................................................................68

*Pearson v. DaimlerChrysler Corp.*,
  813 N.E.2d 230 (Ill. App. 1st Dist. 2004) ........................................................35

*Pepi Corp. v. Galliford*,
  254 S.W.3d 457 (Tex. App. 2007)......................................................................63

*Perkins v. DaimlerChrysler Corp.*,
  383 N.J. Super. 99 (App. Div. 2006).............................................................54, 55

*Robinson Helicopter Co. v. Dana Corp.*,
  102 P.3d 268 (Cal. 2004)....................................................................................61

*Rothe v. Maloney Cadillac, Inc.*,
  518 N.E.2d 1028 (Ill. 1988)................................................................................40

*Rucker v. Huffman*,
  99 N.C. App. 137 (N.C. Ct. App. 1990).............................................................68

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (Cal. Ct. App. 6th Dist. 2015).....................................78

*Schnall v. AT & T Wireless Servs., Inc.*,
  259 P.3d 129 (Wash. 2011) ................................................................................68

*Simpson v. Widger*,
  311 N.J. Super. 379 (App. Div. 1998)................................................................34

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) ......................................................................................70

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (N.Y. Ct. App. 2000) ..............................................................68

*Szajna v. Gen. Motors Corp.*,
   503 N.E.2d 760 (Ill. 1986) ............................................................................40

*P.V. ex rel. T.V. v. Camp Jaycee*,
   197 N.J. 132 (2008) ......................................................................................16

*In re Takata Airbags Prods. Liability Litig.*,
   No. 15-md-2599 (S.D. Fla. Oct. 14, 2016) ....................................................49

*In re Takata Airbags Prods. Liability Litig.*,
   No. 15-md-2599 (S.D. Fla. Sept. 21, 2016)....................................................49

*Tellinghuisen v. Chrysler Grp.*,
   No. 13-cv-2194, 2014 WL 4289014 (Minn. Ct. App. Sept. 2, 2014) ...............35

*TRG Night Hawk Ltd. v. Registry Dev. Corp.*,
   17 So. 3d 782 (Fla. Dist. Ct. App. 2009).........................................................56

*U.S. Bank, N.A. v. Integrity Land Title Corp.*,
   929 N.E.2d 742 (Ind. 2010) ..........................................................................60

*Ulbrich v. Groth*,
   310 Conn. 375 (Conn. 2013) ..........................................................................60

*Wallis v. Ford Motor Company*,
   208 S.W.3d 153 (Ark. 2005) ..........................................................................71

*Williams v. Polgar*,
   215 N.W.2d 149 (Mich. 1974)........................................................................59

*Wyle v. Lees*,
   162 N.H. 406 (2011) .....................................................................................57

## Federal Statutes

28 U.S.C. § 1332....................................................................................................16

28 U.S.C. § 2072(b) ...............................................................................................73

**Rules**

FED. R. CIV. P. 8 ................................................................................17, 62

FED. R. CIV. P. 8(a)(3) ............................................................................62

FED. R. CIV. P. 9(b) ........................................................................*passim*

FED. R. CIV. P. 12(b)(6).............................................................................5

FED. R. CIV. P. 23 ....................................................................................73

## PRELIMINARY STATEMENT

For nearly a decade, Defendant, Volkswagen Group of America ("Defendant" or "VWGoA") has known that the timing chain system installed in its Class Vehicles[1] (the "Timing Chain System") is defective and likely to fail catastrophically well before any service or maintenance should even be necessary. This defect puts consumers' safety at risk and exposes them to substantial financial harm. Defendant at all times concealed this information and represented that the Class Vehicles were safe, reliable, and fully protected by an extensive warranty should there be any defects.

Plaintiffs bring this action seeking compensation for the substantial costs and expenses associated with the defective Timing Chain System in their vehicles, asserting claims on behalf of a class for breach of warranty, statutory consumer fraud, common law fraud and unjust enrichment.[2] In an attempt to escape liability for its wrongful actions, Defendant asserts any and all conceivable arguments – regardless of merit, and despite the fact that most have been squarely rejected by numerous courts. As explained in detail below, Plaintiffs' claims are well-pled. As several other courts have done when considering nearly identical claims

---

[1] The First Consolidated Class Action Complaint ("Compl.") (ECF No. 6) defines "Class Vehicles" as all 2008 through 2013 model year 2.0L TSI or 2.0L TFSI VW or Audi vehicles containing the defective Timing Chain System. Compl. ¶ 1.

[2] Plaintiffs will stipulate to the dismissal of Count II of their Complaint for breach of contract.

involving defective timing chain systems in other automobiles, *see , e.g., Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531, 2014 WL 283628 (D.N.J. Jan. 24, 2014); *Falco v. Nissan North America Inc.*, No. 13-cv-00686, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013); *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008), this Court should deny Defendant's Motion and allow Plaintiffs to pursue recovery for the wrongs they have suffered.

## FACTUAL BACKGROUND

A properly functioning timing chain system is essential because it maintains synchronization between rotating engine components, such as cylinder valves and pistons. Without proper timing chain tension, and resulting synchronization, cylinder valves and pistons can collide, resulting in catastrophic engine failure. This poses a significant safety risk – when the Timing Chain System suddenly and unexpectedly fails, the engines in Class Vehicles shut down with resultant loss of power steering and power brakes. Compl. ¶¶ 4, 92. Thus, drivers and occupants of the Class Vehicles are at risk for collisions and other accidents. *Id*.

While unknown and undisclosed to Plaintiffs and Class members, Defendant has long known that the Timing Chain System in the Class Vehicles is defective. Pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, aggregate warranty data, repair order and parts data,

2

consumer complaints and testing all gave Defendant early warning of the problem. Compl. ¶¶ 107-08.  In fact, as early as June 2010, Defendant began issuing several Technical Service Bulletins ("TSBs") to its exclusive network of dealerships describing the problems with the Timing Chain System, but Defendant did not disclose any information about the defect to Plaintiffs or Class members. *Id.* ¶¶ 111-22.  Multiple consumer complaints about the defective Timing Chain System were also lodged with the National Highway Traffic Safety Administration ("NHTSA").  *Id.* ¶¶ 123-25.

Significantly, in or around 2012, and no doubt in response to substantial problems being reported, Defendant completely redesigned the timing chain tensioner and timing chain (the major components of the Timing Chain System) and stopped installing the defective Timing Chain System in its vehicles – events which certainly followed extensive field research, investigation and analysis of the defect, and rebidding of components.  *Id.* ¶¶ 108, 126-31.  Despite all of this, Defendant still refuses to notify consumers of this defect or to accept responsibility for repairs under warranty.  Instead, Defendant is allowing Class members to unknowingly operate vehicles that could fail catastrophically at any moment.

The defective Timing Chain System creates substantial expense for Plaintiffs and the Classes, with necessary repairs and replacement running from $1,200 for the chain tensioner and Timing Chain System to $10,000 to replace the entire

engine after failure.  *Id.* ¶ 5.  Rather than repair or replace the defective part, as Defendant was required to do under warranty, Defendant has wrongfully and intentionally transferred the cost to Plaintiffs and Class members by fraudulently concealing the existence of the defect, knowing that it typically results in catastrophic engine failure after the expiration of the warranties.  *Id.*  Defendant also disseminated false and misleading information about the reliability, quality and expected life of the Class Vehicles.  This false and misleading information served to conceal the defective Timing Chain System, in order to sell Class Vehicles to uninformed consumers.  *Id*. ¶ 156.

As a direct result, all 36 Plaintiffs and all Class members purchased or leased Class Vehicles that are unreasonably dangerous, are worth considerably less than represented, and carry an increased cost of vehicle ownership and an increased risk of injury that was not disclosed or reasonably anticipated at the time of purchase or lease.  All but two Plaintiffs' vehicles experienced engine failure caused by the defective Timing Chain System and incurred additional expenses that Defendant was obligated to cover.  None of the Plaintiffs would have purchased their vehicles, or would have paid as much for their vehicles, had they known that the defective Timing Chain System would expose them to significant safety risks or require them to spend thousands of dollars in repairs.  Compl. ¶¶ 184, 187, 221.

4

## ARGUMENT

## I.   LEGAL STANDARD

In deciding a motion to dismiss, the court must assume that all factual allegations set forth in the complaint are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and it must draw all reasonable inferences from the pleaded factual allegations in favor of the non-moving party.   *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Courts conduct a three-pronged analysis when deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6).   *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).   "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'"   *Malleus*, 641 F.3d at 563 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).   Second, the court must accept all of the plaintiff's well-pleaded factual allegations as true and must interpret the Complaint in the light most favorable to the plaintiff.   *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009. In addition to considering the well-pleaded allegations in the complaint, the Court may rely upon exhibits attached to the complaint, documents integral to or relied upon in the pleadings, and matters of public record. *Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263, 271 (3d Cir. 2013).   Only legal conclusions or unsupported conclusory factual allegations (of the kind that merely state "the-

defendant-unlawfully-harmed-me") need not be accepted as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

The determination of whether a plaintiff's claim for relief is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.[3] Plausibility "is not akin to a 'probability requirement,' . . . it [merely] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. The Court should not consider whether it believes the plaintiff ultimately will prevail, but only whether the plaintiff is entitled to offer evidence to support the claims in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).

## II.   DEFENDANT CANNOT COMPEL ARBITRATION

Defendant cannot rely on the arbitration provisions in "purchase agreements," between some Plaintiffs and the dealerships where they purchased

---

[3] Unless otherwise indicated, all emphasis is added and internal quotation marks and citations are omitted.

their Class Vehicles, to compel arbitration.[4]   Defendant is not a party to the purchase agreements and Plaintiffs never agreed to arbitrate their claims with Defendant.   Moreover, the doctrine of equitable estoppel is inapplicable because Plaintiffs' claims are not based on the terms of the purchase agreements and do not allege concerted misconduct by Defendant and the dealerships.

Initially, this Court (and not an arbitrator) has jurisdiction to decide whether a valid arbitration contract exists between Plaintiffs and Defendant.   *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ("It is [ ] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").   Thus, the threshold issue – of whether a party has the ability to compel arbitration – must be decided by the Court.   *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, 828 F. Supp. 2d 1150, 1159, n.5 (C.D. Cal. 2011) (defendant "cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether [the defendant], as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court").

_____

[4] Defendant attaches purchase agreements purportedly entered into by 9 out of 36 Plaintiffs. *See* Mot., Exs. A-I to Declaration of Robert Cameron dated December 8, 2016 ("Cameron Decl."). Two of the agreements are between Plaintiffs and non-Volkswagen/Audi dealerships. *See* Cameron Decl., Exs. C (Nissan Agreement) and H (Suzuki Agreement). Defendant has not offered any agreements for the remaining 27 Plaintiffs.

### A.      Defendant is Not a Party to the Purchase Agreements

As a general rule, non-signatories cannot enforce an arbitration provision in an agreement to which it is not a party.  *See Atalese v. U.S. Legal Servs. Grp., L.P.,* 219 N.J. 430, 442-45 (2014) ("An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'"); *Toyota Hybrid Brake Litig.*, 828 F. Supp. 2d at 1158-59 ("Generally, the right to compel arbitration derives from a contractual right, and '[t]hat contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'"). "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Atalese*, 219 N.J. at 442-43.  While a non-party may compel arbitration in limited circumstances, there is no presumption in favor of arbitrability where the party seeking to compel arbitration is not a signatory to the agreement.  *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) ("The presumption in favor of arbitration does not extend [ ] to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause."); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009)

8

("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . .").

It is undisputed that Defendant was not a party to the purchase agreements. Defendant plainly states that it did not enter into contracts with Plaintiffs, and that the purchase agreements with the dealerships do *not* establish privity or agency. *See, e.g.*, Mot. at 31. ("Plaintiffs . . . did not purchase their vehicles from—and therefore were not in privity with—VWGoA."); *id.* at 37 ("[T]here is no basis for the legal conclusion that the purchase of a vehicle from a dealer constitutes a contract between each Plaintiff and VWGoA. . . . there can be no contract between a consumer and a remote manufacturer or distributor in the absence of privity. This is true even where a purchase is made from an authorized dealer.").  Moreover, Plaintiffs are not pursuing their breach of contract claim and disavow that privity of contract existed between Plaintiffs and Defendant.  *See infra* at Section VIII.

Additionally, the plain language of the purchase agreements demonstrates that the agreements apply to Plaintiffs and the dealerships **only**, and do not allow non-signatories like Defendant to elect arbitration.  For example, Plaintiff Hosier entered into a purchase agreement (the "Cook VW Dealership Agreement") with Cook VWGoA LLC ("Cook VW")—not Defendant.  *See* Cameron Decl., Ex. B. Cook VW describes itself in the Cook VW Dealership Agreement as "Creditor-Seller (sometimes "we" or "us" in this contract)."  *Id.*  The Cook VW Dealership

9

Agreement provides *only* Plaintiff Hosier and Cook VW with the *choice* to arbitrate claims, stating that "*either you or we may choose* to have any dispute *between us* decided by arbitration and not in court or by jury trial." *Id.* The agreement further provides that disputes can be arbitrated at "*your or our election*." *Id.* This is not a mandatory arbitration clause between Plaintiffs and Defendant; rather, it provides Plaintiff Hosier and Cook VW with the choice to arbitrate disputes between *themselves*. *See Lawson v. Life of the South Insurance Company*, 648 F.3d 1166, 1171 (11th Cir. 2011) (non-signatory not permitted to compel arbitration where agreements provided that "you or we" may elect arbitration).

Plaintiff Ellahie's purchase agreement is even further removed from Defendant. Plaintiff Ellahie did not enter into a contract with a Volkswagen/Audi dealership but rather a Nissan dealership. *See* Cameron Decl., Ex. C. Like the Cook VW Dealership Agreement, this contract provides that "*either you or we may choose*" to arbitrate disputes at "*your or our election*." *Id.* Defendant cannot credibly argue that it can invoke a Nissan dealership's right to arbitrate, or that by entering into an agreement with a Nissan dealership, Plaintiff Ellahie understood that it was agreeing to arbitrate potential claims against Defendant. *See Weingarten Realty Inv'rs v. Miller*, 495 F. App'x. 418, 420 (5th Cir. 2012) (affirming denial of motion to compel arbitration where arbitration agreement

expressly stated only parties to the underlying contract could elect arbitration). The remaining purchase agreements, attached by Defendant, contain substantially similar language, limiting the arbitration clause to those Plaintiffs and the dealerships.[5]  Defendant cannot compel arbitration under any of these agreements.[6]

### B.    Defendant Cannot Rely on Equitable Estoppel

Defendant also cannot compel arbitration under the principle of equitable estoppel.  "Equitable estoppel is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration."  *Hirsch v. Amper Fin. Servs., LLC,* 215 N.J. 174, 180 (2013); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.").  This equitable theory, which courts have found "should be

---

[5] *See* Cameron Decl., Ex. A ("Dealer and Purchaser are the sole parties to this Order . . ."); Ex. D. ("Either you or we may choose to have any dispute between us decided by arbitration . . . ."); Exs. E, G, I (same); Ex F. ("You and the dealership agree that arbitration will be the sole method of resolving any claim . . . that arises out of the Customer(s)/Dealership Dealings."); Ex. H ("Purchaser/Lessee and Dealer [South Motors Suzuki] understand that they are knowingly and voluntarily agreeing to resolve all disputes between them by arbitration . . . .").

[6] Defendant claims that language in certain of the arbitration clauses directly incorporates third parties.  *See* Mot. at 11 (asserting the clause covers any dispute which arises out of "any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)").   In *Soto v. American Honda Motor Co., Inc.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012), the court analyzed nearly identical language and rejected the same argument made by the vehicle manufacturer, finding Honda's relationship with plaintiff began at the moment he bought his Accord, and thus could not be a 'resulting' relationship that occurred afterward.  *Id*. at 955.

used sparingly to compel arbitration," does not weigh in favor of compelling arbitration in this case. *Hirsch,* 215 N.J. at 179.

Courts have permitted equitable estoppel to be invoked by a non-signatory ***only*** where: (1) a signatory must "rely on the terms of the written agreement in asserting [its] claims against the nonsignatory" (*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005)); or (2) a signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006); *see also Hirsch*, 215 N.J. at 179 (denying motion to compel arbitration where there was no express inclusion of the claims involving non-signatories in the arbitration provision and there was no evidence that non-signatories detrimentally relied on plaintiffs' conduct). Neither exception applies here.

First, Plaintiffs are not pursuing claims for breach of contract. *See infra* at Section VIII. Rather, Plaintiffs' claims are based on Defendant's breach of express and implied warranties and Defendant's misrepresentations and omissions regarding the defective Timing Chain System. *See* Compl. ¶¶ 5, 9, 10, 12, 69, 70, 83, 135-37, 142-43, 149, 156-57, 187, 189, 200, 225, 362. Because Plaintiffs' claims are not based on the purchase agreements, equitable estoppel does not require arbitration of those claims. *See Kramer v. Toyota Motor Corp.,* 705 F.3d

12

1122, 1130-31 (9th Cir. 2012) (affirming denial of automobile manufacturer's motion to compel arbitration under equitable estoppel where claims did not rely on the terms of the agreements between plaintiffs and automobile dealers); *Toyota Hybrid Brake Litig.,* 828 F. Supp. 2d at 1161 (breach of implied warranty of merchantability and statutory consumer fraud claims are not intertwined with contractual obligations in purchase agreements); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 991 (C.D. Cal. 2012) (same).

In addition, Plaintiffs have not sued the dealerships and do not allege a conspiracy or "concerted misconduct" between the dealerships and Defendant. As such, there is no basis to allow Defendant to compel arbitration of Plaintiffs' claims.[7] *See Mundi*, 555 F.3d at 1047 (equitable estoppel does not apply where

---

[7] For this reason, Defendant's cases are distinguishable. *See, e.g.*, *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) (finding arbitrability where signatory and non-signatory both engaged in "substantially interdependent and concerted misconduct")*; Berger v. Accounting Fulfillment Servs. LLC*, No. 16-cv-744, 2016 WL 3655347, at *4 (M.D. Fla. July 8, 2016) (alleging "substantially interdependent and concerted misconduct" between signatories and non-signatories); *Great N. Ins. Co. v. Cornerstone Custom Home Builders, LLC*, No. 16-cv-71, 2016 U.S. Dist. LEXIS 94344, at *2 (M.D. Ga. July 20, 2016) (party seeking to enforce clause was signatory to contract); *Elder v. BMO Harris Bank*, No. 13-cv-3043, 2014 WL 1429334, at *1, n.5 (D. Md. Apr. 11, 2014) (allowing equitable estoppel where plaintiff alleged interdependent and concerted misconduct between signatories and non-signatories); *Ahlers v. Ryland Homes Nev. LLC*, 367 P.3d 743 (2010) (finding equitable estoppel where plaintiff sought to enforce specific rights rooted in option agreement containing arbitration provision); *Agnew v. Honda Motor Co.*, No 08-cv-01433, 2009 WL 1813783, at

there are "no allegations of collusion or misconduct" between the non-signatory and signatory).  Further, Defendant has not relied to its detriment on the purchase agreements that Plaintiffs entered into with the dealerships, and there is simply no equitable reason to allow Defendant to enforce the arbitration clauses in those agreements.  *See Hirsch*, 215 N.J. at 196 (application of equitable estoppel "unwarranted" where non-signatory did not show detrimental reliance).

Lastly, Defendant's argument that equitable estoppel applies because Plaintiffs would not have claims against Defendant "but for" their purchase of the Class Vehicles has been repeatedly rejected by courts.[8]  Defendant's request to compel arbitration should be denied.

---

*4-5 (S.D. Ind. May 20, 2009) (finding equitable estoppel under Indiana law where plaintiff alleged concerted misconduct with manufacturer).  In addition, as recognized by *Soto v. Am. Honda Motor Co.*, No. 12-cv-01377, 2012 WL 5877476, at *2-3 (N.D. Cal. Nov. 20, 2012), *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147 (N.D. Cal. 2012) is an outlier that failed to examine similar, more persuasive cases.

[8] *See, e.g.*, *Toyota Unintended Acceleration Litig.*, 838 F. Supp. 2d at 993 ("A mere 'but for' test does not supply the 'intimately . . . intertwined' relationship upon which equitable estoppel is dependent."); *Brantley,* 424 F.3d at 396 (holding equitable estoppel did not apply because "the mere existence of a loan transaction requiring plaintiffs to obtain [credit] insurance cannot be the basis for finding their . . . claims, which are wholly unrelated to the underlying [credit] agreement, to be intertwined with that contract"); *Lawson*, 648 F.3d at 1174 (same).

14

## III.   DEFENDANT'S CHOICE OF LAW ARGUMENT FAILS

### A.   Defendant's Choice of Law Analysis Is Procedurally Premature

Defendant makes the conclusory and unsupported assertion that "variations and conflicts among common law doctrines and warranty laws as well as consumer fraud statutes exist among the various states" which necessitates that each Plaintiff's home state law governs each Plaintiff's claims.  Mot. at 16.  Choice of law analyses have routinely been found to be premature at the motion to dismiss phase in class cases, particularly where discovery is needed to further develop facts relevant to the analysis.  *See*, *e.g.*, *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-cv-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis at motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07-cv-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009) (same).[9]  Here, Defendant fails to cite any authority for the proposition that a choice of law analysis is proper at this early stage and fails to conduct any analysis showing which state's laws should apply to the different claims.  For this reason

---

[9] *See also*, *e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206-07 (3d Cir. 2013) (undertaking a choice of law analysis at the summary judgment stage); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 295 (D.N.J. 2009) (the "most significant relationship" test requires a fact-sensitive analysis that cannot be undertaken on the record consisting solely of a complaint and motion to dismiss); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2010) (choice of law analysis on motion to dismiss premature).

alone, Defendant's argument that the laws of each Plaintiff's home state should govern is premature. *Id.*

### B.    A Choice-of-Law Analysis Favors Application of New Jersey Law

"A federal court exercising jurisdiction pursuant to 28 U.S.C. § 1332 must apply the choice of law rules of the forum state to determine the law that will govern the substantive issues of a case." *Id.* at 55 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 496 (1941)).   Here, New Jersey uses the "most significant relationship" test. *Id.* at 58.   Under the terms of the "most significant relationship" test, the first step is to determine whether a conflict exists between the laws of the various states.   If no conflicts exist, the court will apply the law of the forum state, in this case New Jersey. *Id.*   If a conflict does exist, the court must weigh the factors contained in the Restatements and determine which state has "the most significant relationship" to each issue in the case. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008).

Notably, Defendant provides no explanation for how the Plaintiffs' common-law claims[10] conflict among their home states, but summarily concludes that "variations and conflicts among common law doctrines and warranty laws as well as the consumer fraud statutes exist among the various states."   Mot. at 16. Absent any proof of a real conflict among states, particularly with respect to

---

[10] Plaintiffs plead the statutory consumer fraud claims only for their home states.

Plaintiffs' common law claims, the law of New Jersey should govern. Nevertheless, to the extent that Defendant advances arguments based on individual state laws, Plaintiffs address such arguments below.

## IV. DEFENDANT'S "LUMPING" ARGUMENT IS MERITLESS

Defendant argues that Plaintiffs' complaint "requires" dismissal under Rules 8 and 9(b) because Plaintiffs' use of the collective term "Defendants" fails to put Defendant on notice of its wrongdoing. Mot. at 17. To the contrary, the Complaint carefully distinguishes between the various Defendants, leaving no confusion as to their respective roles and functions. As set forth in the Complaint, Defendant VWGoA is headquartered in the United States, where it "engages in . . . the advertising, marketing and sale of VW automobiles nationwide." Compl. ¶ 74. Audi America, headquartered in the United States, likewise "engages in . . . the advertising, marketing and sale of Audi Automobiles nationwide." *Id*. ¶ 76. Audi AG, headquartered in Germany, designs and manufactures Audi automobiles, and is the parent company of Audi America. *Id*. ¶ 75. VW AG, which is the parent corporation to VWGoA and Audi AG, is headquartered in Wolfsburg, Germany, where it designs, develops and manufactures VW automobiles. *Id*. ¶ 73. Importantly, as the Complaint notes, "at all relevant times, [VWGoA] and Audi America acted as authorized agents, representatives, servants, employees and/or alter egos of VW AG and Audi AG while performing activities including but not

17

limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of VW and Audi vehicles in the United States." Compl. ¶ 77. Thus, the notion that Plaintiffs' Complaint fails to differentiate between Defendants is false.

Further, to the extent Plaintiffs assert common allegations as to the Volkswagen and Audi Defendants, this is because these entities are joined through the same corporate structure and act as agents and/or alter egos of each other. *Id.* Volkswagen itself refers to its companies and its brands as one, using the "Volkswagen Group" name.[11]  Courts recognize that allegations of corporate fraud, such as those at issue here, "require[ ] . . . a relaxed pleading standard when 'specific information . . . is exclusively within a defendant's knowledge or control.'" *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 708 (D.N.J. 2013) (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)). Matters such as "which" of the related Defendants knew about the defect, and "when" a Defendant acquired such knowledge, "may be alleged generally," even under Rule 9(b)'s heightened pleading standards. *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To avoid rewarding successfully concealed fraudulent

---

[11] For example, on its website, Volkswagen AG states, "[t]he Group comprises twelve brands from seven European Countries: [including] Volkswagen [and] Audi." *See* Volkswagen AG website, http://www.volkswagenag.com/en/group.html (last visited Feb. 6, 2017).

activity, this principle is especially applicable where, as here, information is under the exclusive control of the defendant. *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996) ("Rule 9(b) does not require plaintiffs to plead facts to which they lack access prior to discovery.").

Finally, the two cases upon which Defendant relies are inapplicable to the facts presented here. In *Galicki v. New Jersey*, No. 14-cv-169-JLL, 2015 WL 3970297 (D.N.J. June 29, 2015) (Linares, J.), certain claims were dismissed for "failing to put the [d]efendants on notice of their own alleged wrongdoing" but the dismissal was based in large part on the plaintiffs' "conclusory and … formulaic recitation of the elements of [p]laintiffs' various claims." *Id.* at *2-3. Here, Defendant offers no explanation of how the use of the term "Defendants" creates any confusion or leaves any doubt as to the nature of the allegations, and instead asserts that "lumping" alone warrants dismissal.

Further, in *Galicki*, the "lumping" of the defendants was exacerbated by the fact that the defendants were a diverse group, including "a not-for-profit, two governmental entities and several individuals." *Id.* Given the dissimilarities among those defendants, greater specificity was required to put them on notice. In contrast, the four Defendants here are affiliated entities, consisting of the North American sellers of specific automobiles and their parent corporations (for whom

the sellers act as agents).   Their roles are specifically defined in the Complaint.
Compl. ¶¶ 73-78.

Defendant's reliance on *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239
(3d Cir. 2005) is similarly unavailing.   While the court in *MDNet* noted that the
plaintiff had "failed to specify the defendant or agent making the alleged
fraudulent statement[,]" the plaintiff's fraudulent misrepresentation claim was not
dismissed on that ground.   *Id.* at 243-45.[12]   Rather, the court based its dismissal of
the fraud claim on plaintiff's failure to allege justifiable reliance.   *Id.   MDNet*
simply does not support dismissal based on Defendant's "lumping" argument.
Defendant makes no showing how Plaintiffs' allegations leave it unable to defend
against the alleged misconduct or prepare an adequate answer to the allegations.

## V.   PLAINTIFFS PLEAD VIABLE EXPRESS WARRANTY CLAIMS

Plaintiffs plead sufficient facts to establish that Defendant's warranty covers
the defect at issue, that the defect manifests during the warranty period, that the
warranty period is unconscionable, and that Defendant has long known of the
defect.   Contrary to what Defendant suggests, Plaintiffs need not allege complete
breakdown or total engine failure during the warranty period to recover.[13]

---

[12] In contrast to *MDNet*, Plaintiffs identify with particularity the sources of the
affirmative misrepresentations alleged in the Complaint. *See, e.g.*, Compl. ¶¶ 8-10,
83, 94, 135-37, 142-43, 149, 156-57.
[13] Express warranty laws are similar nationwide and therefore New Jersey law
should apply.  *See, e.g.*, *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 569

### A.    Defendant's Warranty Limitations Are Unconscionable

One way Plaintiffs may avoid durational limits on Defendant's warranty is by alleging facts sufficient to show that the warranty is unconscionable. *Skeen v. BMW of N. Am., LLC,* 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014) (listing cases). Unconscionability may be either "substantive" or "procedural." *Id.* "[C]ourts will find a contract term to be substantively unconscionable if the term is excessively disproportionate, involving an exchange of obligations so one-sided as to shock the court's conscience." *Id.* "[P]rocedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities of the negotiators." *Id.* Courts find procedural unconscionability where the plaintiffs had "no meaningful choice" in a warranty negotiation characterized by "a gross disparity in bargaining power." *Id.* (quoting *Henderson v. Volvo Cars of North America, LLC*, No. 09-cv-4146, 2010 WL 2925913, *9 n.6 (D.N.J. Jul. 21, 2010). "[U[nconscionability is highly fact dependent and so is not appropriate for determination on a motion to dismiss." *Id.* at *15.

Unlike the cases cited by Defendant, Plaintiffs do not simply allege that Defendant knew that a part would ultimately fail after the expiration of a warranty

---

(D.N.J. 2010) (citing *In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II),* No. 03-cv-4558, slip op. at 10 (D.N.J. Sept. 3, 2008)).

period; rather, Plaintiffs also allege that they had no meaningful choice in the warranty negotiation and that there existed a gross disparity in bargaining power:

- Defendants were well aware of the existence of the defective Timing Chain System—both prior to putting the vehicles on the market and shortly thereafter—but failed to disclose it. *See, e.g.*, Compl. ¶¶ 2, 5, 11, 110, 256.

- The defective Timing Chain System manifests during and shortly after the warranty period—and well before the end of the Class Vehicles' useful lives. *See, e.g.*, *id*. ¶¶ 5, 33, 94, 110, 139-41, 144, 150, 248.

- Defendants possessed superior knowledge of the defect. *See, e.g.*, *id*. ¶¶ 11, 107, 110, 122.

- Plaintiffs and Class members had no meaningful choice in determining the time and mileage limitations in the warranties. *See, e.g.*, *id*. ¶ 162.

- The warranties were drafted by Defendants without input from Plaintiffs, the terms unreasonably favored Defendants, a gross disparity in bargaining power existed, and Defendants knew that the Class Vehicles were defective at the time of sale. *See, e.g.*, *id*. ¶¶ 162, 165-72, 256.

Accordingly, Plaintiffs have alleged both substantive and procedural unconscionably.

The Court's decision in *Henderson v. Volvo Cars of North America, LLC*, No. 09-cv-4146, 2010 WL 2925913 (D.N.J. Jul. 21, 2010) is directly on point. In *Henderson*, the plaintiffs alleged that defective transmissions in certain Volvo vehicles did not become apparent until shortly after Volvo's 4 year/50,000-mile express warranty period had elapsed. *Id.* at *2-3. Although the Court recognized the general rule that limited warranties do not cover repairs made after the

22

warranty period,[14] the Court upheld the plaintiffs' breach of warranty claims where the plaintiff's allegations of Defendant's knowledge about the defect were buttressed by allegations that the plaintiffs had "no meaningful choice" in a warranty negotiation characterized by "a gross disparity in bargaining power." *Id.,* at *9 n. 6. *See also Skeen*, 2014 WL 283628, at *14 (recognizing split, but finding "*Henderson* has the better argument" because "[i]t is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty"); *In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *4-6 (D.N.J. Oct. 27, 2009) (finding warranty unconscionable); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-cv-385, 2007 WL 4591281, at *3-4 (D.N.J. Dec. 28, 2007) (same). Tellingly, Defendant ignores this Court's decisions in *Henderson, Skeen, In re Samsung DLP,* and *Payne.*

The cases that Defendant does cite fail to support its position. For example, the courts in *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604 (3d Cir. 1995) and *Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238 (2d Cir. 1986) did not expressly address an argument that the applicable warranties in those cases were unconscionable and do not stand for the principle that a breach of warranty

---

[14] Citing *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604 (3d Cir. 1995); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519 (D.N.J. 2008).

claim could never be viable where the defect manifests beyond the warranty period.[15]  Similarly, in *Alban v. BMW of North America, LLC,* No. 09-cv-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011), the plaintiff summarily alleged that the vehicle's 4 year/50,000-mile warranty was "an unconscionably brief period." *Id.* at *9.  The Court found such "bare-bones allegations" insufficient to establish that the warranty was unconscionable.

### B.      Complete Failure During the Warranty Period is Not Required

Additionally, as the Court recognized in *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 564-65 (D.N.J. 2012), automobile owners can assert breach of warranty claims after the expiration of the warranty period where their vehicles exhibit signs of the defect during the warranty period and the seller allegedly knew of the defect but failed to disclose it.  In *Nelson*, the Court upheld the plaintiffs' express warranty claims after the warranty period had elapsed because the plaintiffs alleged that defendant Nissan knew of the defect at the time of sale and the plaintiffs "allegedly experienced symptoms of the defect during the warranty period." *Nelson,* 894 F. Supp. 2d at 56.  Like the plaintiffs in *Nelson*, Plaintiffs here allege that their vehicles began to exhibit symptoms of the defective Timing Chain System during the warranty period (*see*, *e.g.*, Compl. ¶¶ 139, 248) and that

---

[15] *See Bussian v. DaimlerChrysler Corp*., 411 F. Supp. 2d 614, 621 (M.D.N.C. 2005) ("Plaintiff has framed his express warranty claim in the more narrow theory that the durational limitation in his Durango's express warranty is *unconscionable*, ***an issue which was not addressed in Abraham.***").

Defendant had knowledge of the defect prior to and during that time.  *Id.* ¶¶ 2, 5, 11, 33, 110, 140-41, 150, 256.   Accordingly, Plaintiffs have sufficiently pled express warranty claims.

### C.   The Timing Chain System Defect is Covered Under Defendant's Warranties

Defendant also tries to evade liability for the Timing Chain System Defect by arguing that Plaintiffs have only alleged a *design* defect not covered under Defendant's warranties, as opposed to a defect in *material* and *workmanship*. Defendant's argument is unavailing for several reasons.

First, several courts have held that there is no distinction between a design defect and a defect in workmanship.  For example, in *Koulajian v. Trek Bicycle Corp.*, No. 90-cv-3156, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992), moved for summary judgment on the warranty claim, arguing that the express warranty applies only to manufacturing defects, not design defects.  *Id.*  The court rejected the argument, reasoning that "the warranty's reference to 'workmanship' could refer to [ ] design as well as implementation of those designs in the manufacturing process."  *Id.*  Thus, the Court held that "[a]bsent binding authority limiting an express 'workmanship' warranty to manufacturing defects alone, we do not find as a matter of law that such warranty language cannot apply to design defects."  *Id* at *2.

Similarly, in *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604, at *14 (D. Neb. Nov. 7, 2008), the court found that "a defect related to materials and workmanship" and a "design defect" involving the timing chain system are substantially the same.   The court reasoned that a "design is integrated into each step of the manufacturing process and affects both materials and workmanship," such that distinguishing a design defect from a defect in materials or workmanship "would defy logic."   *Id.* at *15.   The Court concluded:

> [I]t would be absurd to interpret a car company's written warranty as *not* covering any defect in 'materials and workmanship' if the defect could simultaneously be attributable to a design implemented by the company in the manufacturing of the car.

*Id.* (emphasis in original).   *See also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) ("[w]e believe [] that an unstrained interpretation of the exclusion for 'faulty workmanship' includes losses caused by defects in the design and construction of a building.").[16]   Similarly, permitting Defendant to take such a position would be illogical and simply allow Defendant, and every other product manufacturer, to link any defect to the "design" of the product, thereby rendering unenforceable any express warranty that covers defects in material and workmanship.

---

[16] Plaintiffs acknowledge that certain cases have held that a design defect is not covered under a warranty limited to defects in material and/or workmanship. Respectfully, Plaintiffs believe the reasoning in those cases is unpersuasive and would lead to warranties that would, in effect, not cover anything.

Second, even if design defects and material and/or workmanship defects are considered distinct, Plaintiffs have adequately alleged that the defect in the Timing Chain System is a defect in material and/or workmanship and therefore covered under applicable warranties. *See, e.g.*, Compl. ¶¶ 108, 201, 251-53. In fact, Plaintiffs describe the defective Timing Chain System in great detail, including how the internal spring and ratchet pawl (materials) within the tensioner break and/or fail, causing the piston to stop exerting the necessary pressure on the timing chain. *Id.* ¶¶ 94-100. Plaintiffs also explain how the material used in the ratchet pawl—sintered metal—is defective and fails over time. *Id.* ¶¶ 126-29. These allegations are more than sufficient at the pleading stage to allege a defect in material and/or workmanship covered under the applicable warranties.

Third, whether or not the defective Timing Chain System should be covered under warranty is a question of fact that cannot be decided at the pleading stage. In fact, faced with the same argument made by another vehicle manufacturer, Judge Hayden determined that a distinction between defects in design and materials/workmanship could not be decided on the pleadings:

> At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.

27

*Alin v. Am. Honda Motor Co.*, No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010); *see also Cox v. Chrysler Grp., LLC*, No. 14-cv-7573, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015) (same); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013) (same).

Fourth, assuming *arguendo* that the defective Timing Chain System is a design defect which would not be covered by the warranty, Defendant's limitation of its warranty to defects of material or workmanship would cause the warranty to fail of its essential purpose. A limited contractual remedy fails of its essential purpose if it fails to give the aggrieved party the benefit of their bargain. *Viking Yacht Co., Inc. v. Composite One, LLC*, 385 F. App'x 195, 208 (3d Cir. 2010). If a limited remedy fails of its essential purpose, then the aggrieved party may have any appropriate remedies available under the UCC. *See* UCC § 2-719(2).

Consumers purchasing an automobile from Defendant reasonably expect that the vehicle be free of material defects—whether of materials, workmanship or design. The purpose of Defendant's warranty is to give consumers what they paid for – if a vehicle fails, Defendant will repair it under the warranty. However, if Defendant's warranty is read to exclude design defects, then it fails of its essential purpose because consumers do not get what they paid for, *i.e.,* a defect-free automobile. If Defendant deems the defect in the Timing Chain System to be a "design defect" not covered under warranty, then consumers are left with defective

28

automobiles and no remedy. In that scenario, Defendant's limited warranty fails to give consumers the benefit of their bargain. That is the exact situation that Section 2-719(2) was intended to address: "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedies of this Article." UCC 2-719 Official Comment 1. Thus, if Defendant's written warranty can be construed as it proposes, to exclude design defects, then it fails of its essential purpose, and Plaintiffs and other Class members are entitled to their remedies under UCC Sections 2-714 and 2-715.

### D. Defendant's Arguments Regarding Pre-Suit Notice Are Unavailing

Defendant asserts that Plaintiffs have failed to comply with the alleged requirement that Defendant be placed on notice of the breach of warranty prior to Plaintiffs filing suit. In making this argument, Defendant misstates the law and conceals relevant facts from the Court.

#### 1. Plaintiffs are not Required to Provide Notice to Defendant

Defendant contends that all of the Plaintiffs' breach of warranty claims, except for plaintiff Mody who resides in Kansas, must be dismissed because the remaining Plaintiffs from twenty (20) states failed to give the requisite notice under the UCC. Defendant is misstating the law. UCC Section 2-607 requires that a buyer give notice to the seller within a reasonable time after the buyer discovered

29

a breach of warranty or "be barred from any remedy." This rule, however, is applied differently, if at all, with respect to claims against a remote manufacturer, such as Defendant, as opposed to a direct seller.

Plaintiffs are not required to provide any pre-suit notice to *remote* manufacturers/sellers. In *Strzakowlski v. Gen. Motors Corp.*, No. 04-cv-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005), the court observed that "[t]his Court has previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product." *Id.* at *3, n.6. Further, "even if section 2-607(3)(a) requires notice to a remote manufacturer, such a requirement could be satisfied by the filing of a complaint." *Id.* at *3. California, Florida, Georgia, Michigan, New Jersey, New York, Ohio, Pennsylvania, and Washington apply the same rule, that either no notice to a manufacturer is required or, alternatively, the filing of the complaint satisfies the notice requirement.[17] Under

---

[17] *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (under California law, pre-suit notice excused with respect to remote manufacturer with whom consumer did not deal); *Strzakowlski v. Gen. Motors Corp.*, No. 04-cv-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (New Jersey does not require notice to remote manufacturer and, if it did, filing complaint would satisfy notice); *In re MyFord Touch Consumer Litig.*¸46 F. Supp. 3d at 974-979 (surveying states: in Florida, notice not required to manufacturer; in Ohio and Pennsylvania, complaint satisfies notice); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*¸155 F. Supp. 2d 1069, 1099-1100 (S.D. Ind. 2001) (surveying cases: in Pennsylvania, Michigan, New York, and Georgia, complaint satisfies notice requirement); *Cats v.*

the laws of Illinois, Indiana, and Minnesota, the notice requirement is satisfied if, as here, the manufacturer is aware of the problem with the goods. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799-800 (N.D. Ill. 2016) (Ill. law); *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 782 (7th Cir. 2011) (Ind. law); *Church of the Nativity of Our Lord v. Watpro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992).

### 2.    Though Not Required, Plaintiffs Provided Pre-Suit Notice

Moreover, to the extent any notice requirement applies, Plaintiffs have satisfied it.  Defendant knows full well that at least three pre-suit notice letters were sent to Defendant (dated April 25, 2016, June 24, 2016 and August 29, 2016) on behalf of all "residents of the United States who are owners, former owners or lessees or former lessees of the referenced class vehicles who may be consolidated in a class action residing in states requiring pre-suit demand letters prior to commencing litigation for warranty breaches or deceptive and unfair business practices." *See* Exhibits A, B, C to the Declaration of James E. Cecchi ("Cecchi Decl.") filed contemporaneously with this brief.  These letters explained the defective Timing Chain System and alleged that "Volkswagen of Group America, Inc. ('VWGoA') and its divisions, including Audi of America, Inc. and

---

*Monaco RV, LLC*, No. 15-cv-1585, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016) (Washington does not require notice to remote sellers, and, if required, taking vehicle to dealer for repair satisfied notice).

Volkswagen of America, Inc., together with Volkswagenwerk Aktiengesellschaft (hereinafter 'VW AG'), Audi Aktiengesellschaft (hereinafter 'Audi AG') breached express and implied warranties of merchantability and fitness for a particular purpose with respect to class vehicles." *Id*.  The letters demanded that Defendant repair the defective Timing Chain System on all Class Vehicles free of charge (and provide other relief) "within thirty (30) days (60 days in Texas) of receipt of the notice," or Plaintiffs would "seek monetary and remedial damages, as well as such other remedies afforded to consumers by statutes applicable here." *Id*.  Despite having been served with multiple pre-suit notices, Defendant failed to cure its breach of warranty.[18]

### E.    Plaintiffs Sufficiently Allege Reliance On Defendant's Express Warranties

Defendant next argues that 10 of the 36 Plaintiffs fail to allege that they purchased their vehicles from authorized dealers and therefore have not properly pled that Defendant's express warranties were part of the "basis of the bargain." Defendant is incorrect.

Plaintiffs have specifically pled that under the warranties provided to members of the Classes, Defendant promised to repair or replace covered defective

---

[18] Several courts also have held that even where pre-suit notice is required, such notice is satisfied by presenting a vehicle to an authorized dealer for repair.  *See, e.g.*, *Luppino v. Mercedes-Benz USA, LLC*, No. 09-cv-5582, 2011 WL 2470625, at *3 (D.N.J. June 20, 2011).  Plaintiffs have complied with that requirement.  *See, e.g.*, Compl. ¶¶ 20, 33, 58, 61, 64.

engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.   Compl. ¶ 246.   Plaintiffs also allege that "Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles."  *Id.* ¶ 247.   In other words, Plaintiffs expected that if Defendant discovered a defect in material or workmanship in the Class Vehicles during the warranty period – and Plaintiffs have demonstrated that Defendant was aware of this defect before these vehicles were sold – the defect would be repaired free of charge.  *Id.*  That is all that is required at the pleading stage.

### F.    Plaintiffs' Express Warranty Claims Are Timely

Defendant asserts that the express warranty claims of certain Plaintiffs are time barred because Connecticut, New York, Ohio and Texas impose a four-year statute of limitations on warranty claims, running from the date of delivery. However, New Jersey's statute of limitations should apply to all Plaintiffs' breach of warranty claims.  *See McCarrell v. Hoffmann–La Roche, Inc.*, No. 076524, 2017 WL 344449, at *13 (N.J. Jan. 24, 2017) (relying on Restatement (Second) of Conflicts of Laws § 142 and holding that New Jersey's statute of limitations and

tolling rules should apply to claims against New Jersey-based manufacturer in defective products case).[19]

Further, Plaintiffs' warranty claims are not time-barred as they properly allege grounds for equitable tolling. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-cv-4558, 2008 WL 4126264, at *17 (D.N.J. Sept. 2, 2008); *Simpson v. Widger*, 311 N.J. Super. 379, 390 (App. Div. 1998) ("[T]he presence of fraud may toll the running of the statute" for breach of warranty claims). To plead fraudulent concealment three elements must be alleged: (1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his or her cause of action during the limitations period (3) despite the exercise of due diligence. *Dewey*, 558 F. Supp. 2d at 523. Here, Plaintiffs plainly plead all three elements of fraudulent concealment. *See, e.g.*, Compl. ¶¶ 2, 5, 10-12, 14, 106-10, 144-60, 195-202. Such allegations are sufficient to toll the statute of limitations. *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 WL 4126264, at *18.

---

[19] In any event, Connecticut, New York, Ohio and Texas provide for tolling based on Plaintiffs' allegations. *See Gaiolini v. Hewitt*, No. 085016792, 2009 WL 2782217, at *1 (Conn. Super. Ct. July 24, 2009); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 428 (S.D.N.Y. 2015); Ohio Rev. Code § 1302.98; *Bilinsco Inc. v. Harris Cty. Appraisal Dist.*, 321 S.W.3d 648, 654 (Tex. App. 2010).

## VI.   THE   IMPLIED   WARRANTY   OF   MERCHANTABILITY   WAS BREACHED

The implied warranty of merchantability arises by operation of law and provides that "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. App. 4th Dist. 2003) ("a breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness of ordinary use."); *see also Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 238-39 (Ill. App. 1st Dist. 2004).   In the case of automobiles, the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects.   *See, e.g.*, *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340-41 (Ill. App. 1st Dist. 2007) (citing *Pearson, id.*); *Tellinghuisen v. Chrysler Grp.*, No. 13-cv-2194, 2014 WL 4289014, at *3 (Minn. Ct. App. Sept. 2, 2014) ("a vehicle is merchantable if it provides safe, reliable transportation."); *Thomas v. Ford Motor Co.*, No. 13-cv-01417, 2014 WL 1315014, at *4 (D.S.C. Mar. 31, 2014) ("In the vehicle context, the implied warranty of merchantability a guarantee that vehicles will operate in a safe condition and substantially free of defects"); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (holding that where "plaintiff makes no allegation that her brakes posed any danger," plaintiff may not recover for breach

35

of implied warranty of merchantability); *Greene v. BMW of North Am.,* No. 11-cv-04220, 2013 WL 5287314, at *2 (D.N.J. Sept. 17, 2013)  ("In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation.").

The implied warranty of merchantability requires more than simply that the car can drive. *Islip v. Mercedes-Benz USA LLC*, 155 Cal. App. 4th 19, 27 (Cal. App. 2nd Dist 2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.").

A defect that can cause the car to cease to function or create a safety hazard will breach the implied warranty of merchantability.  *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1200, 1243-44 (C.D. Cal. 2011) (water leak that could cause catastrophic engine or electrical system failure breached implied warranty of merchantability); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547-48 (Cal. App. 4th Dist. 2014) (sunroofs that opened on its own breached warranty of merchantability because they created safety hazard); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, No. 96-cv-3125, 2001 WL 1266317, at *11 (D.N.J. Sept. 30, 1997).

In the instant case, if the Class Vehicles contain a defective Timing Chain System, as Plaintiffs allege, then the Defendant has breached the implied warranty of merchantability.  When the timing chain tensioner fails, it affects the timing of the opening and closing of the engine valves, causing the pistons to bend or break the valves, which causes the engine to not run. Compl. ¶¶ 4, 92.  In simple terms, if the engine will not run, the vehicle will not provide basic transportation; it ceases to function and will not function until and unless the valves or the entire engine is replaced at a cost of thousands of dollars.

The fact that the defect took some amount of time to manifest and that Plaintiffs were able to use their vehicles during that time does not *ipso facto* mean that the Class Vehicles were merchantable.  *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011) (finding that plaintiffs adequately stated claim that vehicles were unmerchantable where torque converter and transmission failed after 98,000 miles); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) (questions of fact as to whether transmission failure after 40,000 miles made car unmerchantable).  Although a consumer might reasonably expect to perform some repair to a vehicle's engine over the life of the vehicle, the consumer would not expect the entire engine to fail and have to be replaced, particularly for a part, such as a Timing Chain System, where Defendant represents that it will *not* need service.  *See In re Saturn L-Series Timing Chain Prods. Liab.*

*Litig.*, 2008 WL 4866604, at *9-13 (denying motion to dismiss breach of implied warranty claim where plaintiffs alleged defective timing chain system).

**A.    Lack of Privity Does Not Preclude Plaintiffs' Implied Warranty Claims**

Volkswagen contends that the claims of Plaintiffs from California, Connecticut, Florida, Georgia, Illinois, Michigan, Nevada, New York, North Carolina, Ohio and Washington should be dismissed because those states require vertical privity to assert claims for breach of implied warranty and, since the Plaintiffs from those states did not purchase their cars directly from Defendant, no vertical privity exists.

First, Defendant is incorrect that Michigan and Nevada require privity to assert an implied warranty of merchantability claim.  Neither requires privity.  *See Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) (Mich. law); *Pack v. Damon Corp.*, 434 F.3d 810, 818-20 (6th Cir. 2006) (Mich. law);[20] *Hiles Co. v. Johnston Pump of Pasadena, Cal.*, 560 P.2d 154, 157 (Nev. 1977) ("[W]e believe that lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties.").

---

[20] In *Pack*, the Sixth Circuit noted that a number of district court cases from Michigan had required privity for implied warranty claims, however the court determined that those decisions "do not have the substantial weight of the decisions of the Michigan Supreme Court and the Michigan Court of Appeals on an issue of Michigan law."  *Pack*, 434 F.3d at 819-20.

While the remaining states do require vertical privity, they also recognize exceptions to the vertical privity requirement.  One such exception, applicable to the California, North Carolina, Florida and Washington claims asserted here, is where the consumer is the third-party beneficiary (since the consumer, not the dealer, is the ultimate user).  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) (recognizing third-party beneficiary exception under California and North Carolina law);  *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (Under California law, automobile purchaser may maintain implied warranty claim against manufacturer when vehicle is purchased from authorized dealership); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (recognizing third-party beneficiary exception under Florida law); *In re MyFord Touch Consumer Litig.*, No. 13-cv-3072, 2015 WL 5118308, at *7 (N.D. Cal. Aug. 31, 2015) (recognizing third-party beneficiary exception under Washington law).   Under Georgia law, the privity requirement is satisfied where the manufacturer provides an express warranty to the ultimate consumer.  *Lee v. Mylan, Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011).   Likewise, under Illinois law, the privity requirement is satisfied if a manufacturer provides a written warranty that satisfies the Magnuson-Moss

Warranty Act.  *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030-31 (Ill. 1988); *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 770 (Ill. 1986).[21]

Based upon the foregoing, Plaintiffs' claims should not be dismissed for lack of privity.  Either there is no privity requirement as between a consumer and manufacturer or the privity requirement is satisfied under the highlighted exceptions.

## VII.  PLAINTIFFS PROPERLY PLEAD THEIR MAGNUSON-MOSS WARRANTY ACT CLAIMS

To state a claim under the Magnuson-Moss Warranty Act ("MMWA"), Plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.  For this reason, claims under the MMWA "stand or fall" with "express and implied warranty claims under state law."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

As discussed in Sections V and VI *supra*, Plaintiffs' Complaint adequately alleges express and implied warranty claims; the Court should therefore uphold the Plaintiffs' MMWA claims.

---

[21] Some federal cases have disagreed with this interpretation of the interaction of the UCC and Magnuson-Moss.  *See Dekelaita v. Nissan Motor Corp. USA*, 799 N.E. 2d 367, 375-76 (Ill. App. 1st. Dist. 2003).  However, this Court is bound by the Illinois Supreme Court's interpretation of the privity requirement set forth in *Rothe* and *Szana*.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) ("The authority and only authority is the State, and if that be so, the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word.").

## VIII.  BREACH OF CONTRACT CLAIM

Plaintiffs stipulate to the dismissal of the breach of contract claim (Count II).

## IX.  PLAINTIFFS HAVE STANDING TO BRING COMMON-LAW FRAUD, STATUTORY FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

To establish Article III standing, a plaintiff must allege: (1) an injury in fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   Plaintiffs have alleged an injury in fact, causation and redressability.[22]  Thus, Plaintiffs have standing to pursue their claims.

### A.  Plaintiffs Adequately Plead an Injury In Fact

Plaintiffs properly plead an economic injury in fact that satisfies Article III's standing requirement.   These injuries include substantial repair and replacement costs that have been incurred by Plaintiffs, overpayment for defective Class Vehicles and the diminished value of the Class Vehicles.  *See, e.g.,* Compl. ¶ 2 (the defective Timing Chain System "forc[ed] Plaintiffs and members of the class to incur out of pocket costs to repair or replace the damaged engine parts or their entire engine"); ¶ 5 ("Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes . . . Repairs can range in cost from approximately $1,200 (to replace the tensioner and timing chain) up to approximately $10,000.00 (to

---

[22]  Defendant does not argue that Plaintiffs cannot meet the "redressability" requirement, and so Plaintiffs will not address it here.

replace entire engine)"); ¶ 192 (Plaintiffs "would not have purchased or leased their respective Class Vehicles or would have paid substantially less"); *see also* Compl. ¶ 15.

The costs borne by Plaintiffs for the repair or replacement undoubtedly qualify as actual injuries.  *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1229 (C.D. Cal. 2011) (out-of-pocket expenses concerning the diagnosis or repair of a defect confer standing in automotive defect case); *see also Danvers Motor Co., Inc. v. Ford Motor Co.*, 423 F.3d 268, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury in fact.  Indeed, it is often assumed without discussion.").  Moreover, courts have routinely held that vehicle owners have standing to pursue their claims against the vehicle manufacturer where they allege injuries based on overpayment for a defective vehicle and/or diminished value of the vehicle due to the defect.  *See, e.g.*, *Cole v. General Motors Corp.,* 484 F.3d 717, 722-23 (5th Cir. 2007) (finding a concrete injury in fact where plaintiffs allege that vehicles were defective at the moment of purchase and "their injury is that there is a difference between what they contracted for and what they actually received"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("overpayment for the defective, unsafe vehicle constitutes the economic-loss

injury that is sufficient to confer standing").  Plaintiffs have alleged an injury in fact under Article III.

### B.    Plaintiffs Adequately Plead Causation

Plaintiffs also allege that Defendant's misrepresentations regarding the quality and useful life of the Class Vehicles and Timing Chain System and Defendant's failure to disclose the defect caused Plaintiffs to suffer the injuries discussed above.  *See Cole*, 484 F.3d at 722-23 (holding that plaintiffs have standing where they allege "economic injury at the moment [they] purchased a DeVille because each DeVille was defective [and] that each plaintiff suffered economic injury arising from GM's unreasonable delay in replacing their defective SISMs").  To the extent that Defendant inserts a Rule 9(b) argument into the standing analysis, Plaintiffs address this issue below.  *See infra* at Section XIII.A. Defendant's assertion that Plaintiffs' claims fail to satisfy the standing requirement under Article III should be wholly rejected.

## X.    PLAINTIFFS SUFFICIENTLY PLEAD COMMON-LAW FRAUD

### A.    Plaintiffs Have Alleged Fraudulent Omission

Plaintiffs have sufficiently alleged fraudulent omission.[23]  To establish fraud, a plaintiff must allege: "(1) a material misrepresentation [or omission] of a

---

[23]  Rule 9(b) requires plaintiffs to "inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  However, intent and other conditions of mind of a person may

presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315-16 (D.N.J. 2012) (Linares, J.) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)) (alteration in original).

Plaintiffs specifically allege that "Defendants concealed from Plaintiffs and members of the Classes during their warranty periods that a defect existed with the Timing Chain System which could have and should have been fixed during the warranty period." Compl. ¶ 189. Among other misstatements and half-truths, Defendant omitted reference to the Timing Chain System from the maintenance schedules, thus falsely representing that the Timing Chain System does not require maintenance or replacement. *See* Compl. ¶ 83. Defendant also internally acknowledged the Timing Chain System defect, releasing several Technical Service Bulletins ("TSBs") to dealerships beginning in or around June 2010 and later redesigning major components of the Timing Chain System, but failed to inform customers of the defect and necessary repairs. Compl. ¶¶ 111-22. Contrary

---

be alleged generally. FED. R. CIV. P. 9(b). "[I]n cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the standard is relaxed." *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 385 (D.N.J. 2014); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) ("a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim").

to Defendant's assertion, Plaintiffs allege that they received and relied on Defendant's representations, and in turn purchased vehicles worth less than they paid and incurred (or were likely to incur) substantial repair costs.[24]  *See, e.g.*, Compl. ¶¶ 5, 69, 70, 142, 187, 189-94, 200, 225.

Several courts have found that consumers had sufficiently alleged fraudulent omissions by automotive manufacturers under consumer fraud statutes, where the manufacturer knowingly concealed defects in the timing chain system.  For example, in *Skeen v. BMW of North America, LLC*, No. 13-cv-1531, 2014 WL 283628, at *10 (D.N.J. Jan. 24, 2014), the court examined fraudulent omissions under the NJCFA and found that the plaintiffs had sufficiently pled fraudulent omissions when the manufacturer's warranty "did not include a conspicuous statement about" a defect in the timing chain tensioner.  In *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604, at *5 (D. Neb. Nov. 7, 2008), the court also found fraudulent omission where plaintiffs

---

[24] Allegations of reliance need only be pled generally.  *See, e.g*, *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) ("general allegations of reliance are sufficient in light of the fact that the specific facts as to the misrepresentations are within Defendants' control, not Plaintiff's"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013) ("Plaintiffs allege that they would never have purchased their vehicles had they known of the defect. Thus, they have alleged 'the content of [the omission] and the manner in which [it] misled [them]'"); *Feldman v. Mercedes-Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) (plaintiffs sufficiently "alleged justifiable reliance in that a reasonable customer would not have purchased the car or would have paid less for it had the defect been disclosed").

45

alleged that "[t]he timing chain is not mentioned in the Maintenance Schedules printed in the Owner's Handbooks for Class Vehicles, which schedules recommend periodic inspection of replacement of parts."   Similarly, in *Falco v. Nissan North America Inc.*, No. 13-cv-00686, 2013 WL 5575065, at *7 (C.D. Cal. Oct. 10, 2013), the court found that plaintiffs had sufficiently pled fraudulent concealment where the automotive manufacturer acknowledged in TSBs that it was necessary to fix the timing chain tensioner but otherwise failed to inform the customers about the necessary repair.[25]   As in those cases, Plaintiffs here have sufficiently alleged that Defendant fraudulently concealed material facts about the Timing Chain System.

> ### 1.   Defendant Owed Duty to Disclose in Light of Its Exclusive and Superior Knowledge of the Timing Chain System Defect

As Defendant acknowledges, the laws of the majority of the Plaintiffs' home states recognize a duty to disclose where the defendant possesses exclusive or

---

[25] Several other courts have upheld fraudulent omission claims where automotive manufacturers fail to disclose known defects to purchasers. *See, e.g.*, *Majdipour v. Jaguar Land Rover North Am., LLC*, No. 12-cv-07849, 2015 WL 1270958, at *8-15 (D.N.J. Mar. 18, 2015) (upholding fraud by omission claim concerning defective electronic air suspension system); *Gray,* 22 F. Supp. 3d at 386 (upholding fraud by omission claims where plaintiffs alleged that defendant "knowingly concealed the defect from purchasing customers in order to place the burden of replacing the convertible tops onto consumers."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (upholding fraud by omission claims).

superior knowledge or actively conceals the omitted information.[26]  *See* Mot. at 49.

Here, Plaintiffs have alleged just such knowledge and concealment.

Specifically, Plaintiffs allege that Defendant had superior or exclusive

knowledge of the Timing Chain System defect based on Defendant's:

> pre-production testing, pre-production design failure mode analysis,
> production design failure mode analysis, early consumer complaints
> made to Defendants' network of exclusive dealers, aggregate warranty
> data compiled from those dealers, repair order and parts data received
> from the dealers, consumer complaints to dealers and [NHTSA], and
> testing performed in response to consumer complaints

Compl. ¶ 107.  Moreover, Plaintiffs allege the presence of multiple TSBs (issued in

2010, 2011 & 2012), specific consumer complaints, and Defendant's decision to

redesign the Timing Chain System in 2012.  *See* Compl. ¶¶ 112-30.  These

allegations are sufficient to establish that Defendant possessed superior and

exclusive knowledge about the defect, such that they had a duty to disclose it to

Plaintiffs.[27]  Plaintiffs also allege that Defendant actively concealed this defect in

---

[26] The states that recognize a duty to disclose where a defendant possesses exclusive or superior knowledge or actively conceals omitted information are: New York, California, Colorado, Connecticut, Florida, Indiana, Kansas, Michigan, Minnesota, New Hampshire, Maryland, North Carolina, Pennsylvania, Washington and Nevada.

[27] *See Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-cv-07849, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (finding duty to disclose where manufacturer had exclusive knowledge of defect through "pre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D.

an effort to shift the repair costs onto the vehicle owners. *See* Compl. ¶¶ 2, 5, 10, 11, 12, 14, 106, 107, 110, 121, 144, 146, 149, 151, 152, 156, 157, 160, 161, 189, 191, 193.

Defendant's attempt to downplay the significance of its redesign of the Timing Chain System is unavailing. To be sure, in *Falco v. Nissan North America, Inc.*, No. 13-cv-00686, 2013 WL 5575065, at *6-7 (C.D. Cal. Oct. 10, 2013), the court rejected this same argument, holding that the defendant's redesign of the timing chain system supported an inference that defendant was aware of the defect.

Defendant's reliance on cases suggesting that the existence of TSBs alone do not establish knowledge on the part of an automotive manufacturer is also unavailing.[28] Here, Plaintiffs allege numerous facts supporting Defendant's knowledge of the defect, the presence of the TSBs being just one. A TSB is

---

Cal. 2014) (manufacturer had exclusive knowledge of a defect based on defendant's release of TSBs and noting that "Plaintiffs would not have had full awareness of the TSBs because the full content of the TSBs was not publicly available on the NHTSA website."); *Feldman v. Mercedes–Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *11 (D.N.J. Dec. 18, 2012) (finding duty to disclose where manufacturer had exclusive knowledge "through pre-release testing data, early consumer complaints about the [] Defect ... testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources").

[28] *See Alban v. BMW of N. Am., LLC*, No. 09-cv-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011); *Wiseberg v. Toyota Motor Corp.*, No. 11-cv-3776-JLL, 2012 WL 1108542 (D.N.J. Mar. 30, 2012) (Linares, J.); *Davisson v. Ford Motor Co.*, No. 13-cv-00456, 2014 WL 4377792 (S.D. Ohio Sept. 3, 2014).

sufficient to support a claim when combined with other allegations of knowledge, such as consumer complaints, aggregate data collected from dealers, pre-and post-release testing data, and evidence of standard industry practice. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 816-17 (S.D. Ohio 2012).

## 2.    Defendant Owed a Duty to Disclose Safety Defects

Defendant also owes a duty to disclose safety defects under Georgia, Illinois, Ohio, South Carolina, and Texas law. *See, e.g.*, *McCabe*, 948 F. Supp. 2d at 1368-70 (sustaining fraud by omission claim under Georgia and Texas law and imposing a duty to disclose where "safety defects with gasoline tanks … could not have been discovered through the exercise of ordinary prudence and caution [by plaintiffs]."); *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599, slip op. at 13-14 (S.D. Fla. Sept. 21, 2016) (ECF No. 1202) (sustaining fraudulent concealment claim under South Carolina law regarding airbag defect because "South Carolina law does not always require a fiduciary relationship for a duty to disclose to exist") (citing *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011)); *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599, slip op. at 11, 15, 21-22 & 31 (S.D. Fla. Oct. 14, 2016) (ECF No. 1256) (sustaining fraudulent concealment claims under Ohio, Georgia and Illinois law).

Notably, in *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, the court recognized that timing chain defects create safety concerns sufficient to give rise to

a duty to disclose.  2008 WL 4866604, at *20 (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096, n.* (N.D. Cal. 2007) (holding that defendants were obliged to disclose the defect in their vehicles because "plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard").[29] Like the plaintiffs in *In re Saturn*, Plaintiffs here plead that the defective Timing Chain System created a safety concern.  *See* Compl. ¶¶ 4, 105 (failure of the Timing Chain System "can lead to the inability to accelerate or maintain speed and/or catastrophic engine failure.  These types of failures subject drivers and passengers [to] the potential for rear-end collisions and other accidents.").  As such, Defendant had a duty to disclose the defective Timing Chain System.

### 3.    Defendant's Partial Disclosures Created a Duty to Disclose

Under the laws of New Jersey, Ohio and Texas, a duty to fully disclose is also imposed where a defendant has made partial disclosures.[30]  Here, Plaintiffs

---

[29] *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (finding allegedly defective in-vehicle communication, navigation, and entertainment system posed sufficient safety issue giving rise to duty to disclose).

[30] *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 08-cv-65000, 2010 WL 3655954, at *2 (N.D. Ohio Sept. 15, 2010) (finding duty to disclose under Ohio law given partial disclosures by defendant); *Se. Fin. Corp. v. United Merchants & Mfrs., Inc.*, 701 F.2d 565, 566-67 (5th Cir. 1983) ("Under Texas law, a duty to speak may arise from partial disclosure, the [speaker] being under a duty to tell the whole truth although he was

allege such a partial disclosure. Specifically, Defendant's maintenance schedules identified numerous engine components that require maintenance within enumerated time periods. *See* Compl. Exs. A, B. Defendant represents in the maintenance schedules that the timing belt, which performs the same function as the Timing Chain System, will need service after a certain time but makes no representation that the Timing Chain System will need maintenance. *See* Compl. ¶ 83. The omission of the Timing Chain System from the maintenance schedules thus constitutes a partial omission, and Defendant had a duty to fully disclose that the defective Timing Chain System will, in fact, require maintenance within the time periods outlined in the maintenance schedules and well before any reasonable consumer would expect.

## B. Plaintiffs Plead an Actionable Misrepresentation

In addition to pleading fraudulent omission, Plaintiffs have also sufficiently alleged actionable misrepresentations. Specifically, Plaintiffs allege that:

- The sales and marketing executives at VWGoA advertised and otherwise misrepresented that Class Vehicles would last over 120,000 miles or ten years without needing servicing of the Timing Chain System. *See, e.g.*, Compl. ¶¶ 8, 142-43, 156-57.

- Defendants misrepresented in the USA Warranty and Maintenance schedules that the Timing Chain System is intended and reasonably expected to last for the useful life of

---

required to say nothing, for one may convey a false impression by the disclosure of some facts and the concealment of others.").

the engine and at least 120,000 miles without the need for repair or replacement.  Compl. ¶¶ 83, 94, Exs. A, B, E, G.

- Defendants misrepresented that their express warranties would cover all defects occurring within the mileage limitations, despite knowing that they planned to deny coverage for anything they unilaterally attributed to a "design defect." Compl. ¶¶ 9-10.

- Defendants misrepresented that the Powertrain Limited Warranty covered "all internal [engine] parts," but knew that the Timing Chain System would likely fail outside the warranty period and therefore refused to cover the Timing Chain System during the warranty period.  Compl. ¶¶ 135-37.

- Defendants misrepresented that the Timing Chain System failures were the result of other conditions not covered under warranty.  Compl. ¶ 149.

Plaintiffs further allege that these "misrepresentations and fraudulent statements were received by Plaintiffs and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in the owner's manual and the USA Warranty and Maintenance pamphlets."[31] Compl. ¶ 143.

These representations are not mere puffery, but instead actionable misstatements of fact.  As the Third Circuit has recognized, claims that are specific

---

[31] The maintenance schedules do not list every part in the automobile; rather, the maintenance schedules only list those parts that require maintenance during the specified timeframes.  Thus, by not identifying the Timing Chain System in the maintenance schedules, Defendant affirmatively represented that maintenance or replacement is *not* necessary before 120,000 miles.

and measurable by comparative research are not puffery.  *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993).[32]  Here, Defendant did not simply tout the general superiority of the Class Vehicles; rather, Defendant affirmatively misrepresented that the expected life of the Class Vehicles, and associated components such as the chain tensioner, chain and rails, would be maintenance free up to and including 120,000 miles.  This is a specific, measurable claim that Defendant knew was false, but propagated nonetheless.

### C.   All Class Vehicles Contain Defective Timing Chain Systems Regardless of Whether They Outlasted Time/Mileage Durations of the Express Warranty

All Class Vehicles contain defective Timing Chain Systems, not just those vehicles that failed to outlast the warranty period.  As alleged, all Class Vehicles have defective Timing Chain Systems containing oil-pressurized sintered ratchet pawls and/or timing chains constructed with alternating rows of link plate thickness.  Compl. ¶¶ 99-101, 127-30.  Throughout the relevant time period, Defendant was or should have been aware that the defective Timing Chain System would allow the timing chain to skip on the camshaft sprockets, resulting in improper camshaft and crankshaft synchronization.  This improper synchronization

---

[32] "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."  *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 540 (D.N.J. 2011).  By contrast, "false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery."  *Id.*

causes the cylinder head valves to open and close at the wrong time, allowing the pistons to strike and bend the valves as the camshafts and crankshaft rotate. *Id.* ¶¶ 89, 101. This results in catastrophic engine failure. *Id.* Plaintiffs are not simply asking the Court to extend the warranty period to cover potential problems that may arise, but instead are asking that the Court require Defendant to correct a defect present in all Class Vehicles that Defendant knew existed during the warranty period but failed to remedy.

Defendant's reliance on *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99 (App. Div. 2006), and other federal cases applying *Perkins* – such as *Duffy v. Samsung Electronics. America, Inc.*, No. 06-cv-5259, 2007 WL 703197, at *7-8 (D.N.J. Mar. 2, 2007), *Noble v. Porsche Cars North America, Inc.*, 694 F. Supp. 2d 333, 337 (D.N.J. 2010), and *Nobile v. Ford Motor Co.*, No. 10-cv-1890, 2011 WL 900119, at *5-6 (D.N.J. Mar. 14, 2011) – for the proposition that Plaintiffs' fraud claims fail because Plaintiffs' vehicles outlasted their warranties is misplaced. As the Court recognized in *Mickens v. Ford Motor Company*, 900 F. Supp. 2d 427, 442 (D.N.J. 2012), "[w]arranty coverage of a particular problem does not, as a matter of law, negate a [Consumer Fraud Act] claim that the manufacturer knowingly omitted information about a design defect."[33] *Id.* at 442. A warranty

---

[33] Notably, the plaintiff in *Perkins* failed to allege that the defective part required repair or replacement, or that the deterioration or failure of the part presented a danger.

does not absolve a manufacturer of liability where "the purported defect manifested itself within the warranty period and . . . the manufacturer knew the product would fail." *Id.* at 443 (distinguishing *Noble*, *Perkins* and *Duffy*).[34]

Here, Plaintiffs have sufficiently alleged that Defendant had actual knowledge that design, manufacturing, material and/or workmanship defects were causing extensive and irreversible performance degradation in the Timing Chain Systems shortly after production of the Class Vehicles commenced. Compl. ¶ 108. Defendant's knowledge of the defect was further confirmed through various TSBs, NHTSA complaints, and eventual redesign of the chain tensioner and timing chain in or around 2012. Compl. ¶¶ 106-32. Defendant cannot be absolved from liability for wrongfully and intentionally concealing the defective Timing Chain System simply because certain Class Vehicles outlasted the warranty period.[35]

---

[34] *See also Coba v. Ford Motor Co.,* No. 12-cv-1622, 2013 WL 244687, at *9-11 (D.N.J. Jan. 22, 2013) (distinguishing *Perkins*, and finding "[t]he notion that a manufacturer would be absolved from liability for knowingly omitting a defect because it acknowledges the possibility of defects in its warranty is both illogical and contrary to the spirit of the NJCFA"); *In re Ford Motor Co., Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, No. 12-md-2316, 2014 WL 3778592, at *26-27 (N.D. Ohio. July 30, 2014) (finding "Plaintiffs do not allege that the defect is breakage, but rather it is the build up of unburned hydrocarbons . . . as a result of the design defect . . . The Court finds that at a minimum, there is a question of fact as to whether the defect about which Plaintiffs are suing actually occurs within the warranty period.").

[35] Defendant's citation to cases from California, Florida and New York is also unavailing. For example, in *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. App. 2nd Dist. 2006), the court recognized claims may be actionable where the "omission [is] contrary to a representation actually

**D.      The Economic Loss Doctrine Does Not Apply**

Defendant's invocation of the economic loss doctrine to dismiss common law fraud claims under Florida, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, and South Carolina also fails.[36]   *See* Mot. at 58-59.   Lost in Defendant's string cite is the fact that these states have recognized exceptions to the economic loss doctrine that apply here.

For example, as the Court recently observed in *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, "the economic loss doctrine [is] inapplicable to claims of misrepresentation and fraud" under New York law.   No. 14-cv-3722, 2015 WL 4591236, at *35 (D.N.J. July 29, 2015) (citing *Weisblum v. Prophase*

---

made by the defendant, or an omission of a fact the defendant was obliged to disclose."   *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) (distinguishing *Daugherty*).   In *TRG Night Hawk Ltd. v. Registry Dev. Corp.,* 17 So. 3d 782, 784 (Fla. Dist. Ct. App. 2009), the court simply dismissed the plaintiff's claims regarding a land sale where the terms of the contract were inconsistent with the alleged misrepresentations.   Defendant's New York authority is also distinguishable, as the defendants there made no representations regarding the operation of their products.   *See Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 267 A.D.2d 44 (N.Y. App. Div. 1999) ("defendant expressly '[did] not warrant that the operation of the Software will be uninterrupted or error free."); *Moore v. Microsoft Corp.*, 293 A.D.2d 587 (N.Y. App. Div. 2002) ("plaintiff failed to allege that the defendant engaged in a materially misleading practice and thus his deceptive trade practice claim fails  . . . Furthermore, there was no warranty given by the defendant that the software product was error-free.").

[36] Defendant lists plaintiff Hosier, a citizen of Maryland, among the plaintiffs whose fraud claims should be dismissed under the economic loss rule, but fail to cite any cases examining Maryland law.   In fact, Maryland does not apply the economic loss rule to fraud claims.   *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc*., 590 F. Supp. 2d 677, 691 (D.N.J. 2008).

*Labs, Inc*., No. 14-cv-3587, 2015 WL 738112, at *12 (S.D.N.Y. Feb.20, 2015)).[37]

*See also Elkind v. Revlon Consumer Prods. Corp*., No. 14-cv-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015).   In other states, such as New Jersey, Florida, North Carolina, Pennsylvania, New Hampshire, and South Carolina, fraud claims are not barred by the economic loss rule where plaintiffs allege fraudulent inducement or situations where the defendant violated an extrinsic duty.[38]

---

[37] Defendant cites *Orlando v. Novurania of America, Inc.*, 162 F. Supp. 2d 220 (S.D.N.Y. 2001) for the proposition that the economic loss doctrine bars fraud claims under New York law.  However, several courts have criticized the *Orlando* court's failure to cite any New York authority to support its conclusion.  *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297-98 (S.D.N.Y. 2015) (*Orlando* "stated, without discussion or citation, that New York courts have not adopted an exception to the economic loss rule for intentional torts. Other courts in this Circuit, however, have disagreed.  In light of those cases, and the absence of any contrary authority from the New York state courts, the Court declines to dismiss Plaintiffs' fraud claims on the basis of the economic loss doctrine"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 277-78 (S.D.N.Y. 2004) (refusing to dismiss fraud claims, observing that "the *Orlando* court failed to identify any New York cases addressing the applicability of the economic loss rule to a fraud claim. Rather, it reasoned that since New York courts had failed to carve out any applicable exceptions to the rule, it must be interpreted to bar a fraud claim for pure economic loss.").

[38] *See Smith v. Citimortgage, Inc.*, No. 15-cv-7629-JLL, 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) (Linares, J.) (under New Jersey law, "fraud claims that are extrinsic to the underlying contract, such as for fraudulent inducement, are not" barred by economic loss doctrine); *In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 965-67 (N.D. Cal. 2014) (economic loss doctrine does not bar fraudulent inducement claims under Florida or North Carolina law); *Stein v. Fenestra Am., L.L.C.*, No. 09-cv-5038, 2010 WL 816346, at *4 (E.D. Pa. Mar. 9, 2010) (economic loss rule does not apply under Pennsylvania law where the fraud is "extraneous to the contract"); *Wyle v. Lees*, 162 N.H. 406, 411 (2011) (economic loss doctrine does not apply to fraudulent inducement); *Simons v. Wal-Mart Stores E., L.P.*, No. 11-cv-03180, 2013 WL 393998, at *5 (D.S.C. Jan. 31, 2013) ("The

Michigan and Ohio do not apply the economic loss doctrine to fraud claims brought by consumers, particularly those who are not in contractual privity with the defendant.[39]  Defendant's authorities do not suggest otherwise.[40]

---

economic loss rule does not bar tort claims where a defendant voluntarily assumes a duty to use due care over and above the duty required by the contract.").

[39] *Republic Ins. Co. v. Broan Mfg. Co., Inc*., 960 F. Supp. 1247, 1249 (E.D. Mich. 1997) (Michigan's economic loss doctrine "has no application outside the commercial realm."); *Blackward v. Simplex Prods. Div.*, No. 221066, 2001 WL 1255924, at *3 (Mich. Ct. App. Oct. 19, 2001) ("The economic loss doctrine as adopted in Michigan clearly distinguishes between transactions involving the sale of goods for commercial purposes, where there are economic expectations attached to the purchases, and those involving the sale of defective products which result in losses traditionally remedied by resort to tort law."); *Weske v. Samsung Elecs., Am., Inc*., 934 F. Supp. 2d 698, 706 (D.N.J. 2013) (economic loss doctrine does not bar negligence claims under Ohio law for claims brought by consumer not in privity with manufacturer); *In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d. 936, 968 (N.D. Cal. 2014) (same).

[40] The Florida, New Jersey, Pennsylvania, North Carolina, and South Carolina authority cited by Defendant recognizes that the economic loss doctrine does not bar claims where the fraud is extraneous to a contract.  In *Murphy v. Proctor & Gamble Company*, 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010), the court inferred from the Michigan Supreme Court's decision in *Davis v. Forest River, Inc*., 774 N.W.2d 327 (2009) that the economic loss doctrine applies to consumer transactions.  However, the *Davis* simply granted "judgment in the plaintiff's favor for different reasons from those stated by the Court of Appeals," further observing that "it is unnecessary to reach the remaining issues argued before this Court."  *Id*. at 328.  In *In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*, No. 15-cv-18-JLL, 2015 WL 6467730, at *22 (D.N.J. Oct. 26, 2015) (Linares, J.), this Court applied the economic loss doctrine to dismiss fraud claims brought under New Hampshire law; however, the plaintiffs there failed to "argue[] that the economic doctrine is inapplicable."  In *Galoski v. Stanley Black & Decker, Inc*., No. 14-cv-553, 2015 WL 5093443, at *7-8 (N.D. Ohio Aug. 28, 2015), the court did not analyze Ohio cases finding that economic loss doctrine does not bar claims brought by a consumer not in privity with a manufacturer.

## XI.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE SUSTAINED

A "cause of action for negligent misrepresentation may exist when a party negligently provides false information." *Karu v. Feldman*, 119 N.J. 135, 146 (1990).   Liability "extend[s] to all reasonably foreseeable recipients." *Id.* Plaintiffs meet these elements. Plaintiffs allege that Defendant provided false information in the form of affirmative misrepresentations (about the useful and expected life of the Class Vehicles and Timing Chain System) and omissions (failing to disclose the defect).  Plaintiffs, and all owners of the Class Vehicles, are reasonably foreseeable recipients of these misrepresentations and omissions. Plaintiffs' claim should proceed.[41]

Defendant argues that certain states do not recognize a claim for negligent misrepresentation based on omissions.  This argument fails for two reasons.  First, omissions are actionable under a claim of negligent misrepresentation in two of the states – New York and Michigan – cited by Defendant.[42]  Second, Defendant has ignored Plaintiffs' allegations of affirmative misstatements.  *See supra* at Section

---

[41] Plaintiffs concede that Arkansas does not recognize the tort of negligent misrepresentation. *See J.D. Fields & Co. v. Nucor-Yamato Steel,* 976 F. Supp. 2d 1051, 1069 (E.D. Ark. 2013).

[42] *Williams v. Polgar*, 215 N.W.2d 149 (Mich. 1974) (Michigan Supreme Court held that an abstracter can be held liable for negligent misrepresentation when he or she *omits* a recorded deed in a title abstract after failing to conduct a reasonable investigation); *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 17-18 (N.Y. App. Div. 2012) ("To state a cause of action for fraudulent misrepresentation, a plaintiff must allege a misrepresentation **or a material omission** of fact").

X.B.; Compl. ¶¶ 9, 10, 12, 135-37, 143, 149, 156, 157, 362.   Accordingly, Plaintiffs negligent misrepresentation claim should remain under the laws of New York, Michigan, California, Colorado, Indiana and North Carolina.

Defendant next argues that the relationship between Defendant and Plaintiffs is not sufficiently close to maintain a negligent misrepresentation claim in several states.   However, as discussed above, affirmative misrepresentation and omission based claims by vehicle purchasers are commonly sustained against vehicle manufacturers, where the manufacturer has exclusive and superior knowledge of the defect or where the defect implicates safety concerns.   *See supra* at Section X.A.

Defendant's argument based on the economic loss rule is similarly unavailing.   Defendant concedes that the economic loss rule does not apply in Kansas and Texas, and Defendant fails to cite any authority in Colorado.   Further, none of the other jurisdictions apply the economic loss rule to bar all tort claims alleging only economic loss.   Rather, those jurisdictions allow for exceptions to the economic loss rule, which are applicable to the present case – where the tort claims are based on conduct independent of a contract or where there is a risk of personal injury.[43]   Here, Defendant's misrepresentations and omissions are independent of

---

[43] *See, e.g.*, *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (considering Colorado law); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Ulbrich v. Groth*, 310 Conn. 375, 406 (Conn. 2013); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929

any contract and the defect poses a serious risk of personal harm. *See* Compl. ¶ 4. Thus, Plaintiffs' claims are not barred by the economic loss rule. *See also supra* at Section X.D.

## XII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS SHOULD NOT BE DISMISSED

The unjust enrichment doctrine requires that plaintiffs show that: (1) they expected remuneration from the defendant at the time they performed or conferred a benefit and (2) the failure of remuneration enriched the defendant beyond its contractual rights. *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 72 (D.N.J. 2009).[44] "In other words, [p]laintiffs must show that they got something less than they paid for, and [defendants] should be required as a matter of equity to

---

N.E.2d 742, 746 (Ind. 2010); *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 147-48 (Ga. Ct. App. 1999); *In re Chi. Flood Litig.*, 680 N.E.2d 265, 274-75 (Ill. 1997); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 265-66 (Md. Ct. App. 2007); *80 S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc.*, 486 N.W.2d 393, 399 (Minn. 1992); *Phillips v. Dignified Transition Sols.*, No. 13-cv-02237, 2014 WL 4294972, at *7 (D. Nev. Aug. 28, 2014); *Johnson v. Capital Offset Co.*, No. 11-cv-459, 2013 WL 5406613, at *3 (D.N.H. Sept. 25, 2013); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 07-cv-275, 2011 WL 1134453, at *6, n.7 (E.D.N.C. Jan. 25, 2011); *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, No. 02-cv-1288, 2007 WL 894833, at *6 (S.D. Ohio Mar. 22, 2007); *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 354 (3d Cir. 2015) (applying Pennsylvania law); *Jackson v. City of Seattle*, 244 P.3d 425, 431 (Wash. Ct. App. 2010); *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004).

[44] There are no material differences in unjust enrichment law among the states, nor does Defendant identify any. *Tele Aid*, 257 F.R.D. at 58 ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict.").

make them whole." *Id*. Here, Plaintiffs have sufficiently alleged that Defendant benefitted, and profited, by concealing and otherwise misrepresenting the nature of the Timing Chain System.

First, Rule 8 specifically allows a party to plead in the alternative.[45] FED. R. CIV. P. 8(a)(3). Thus, it is appropriate to plead both legal claims and an unjust enrichment claim.

Second, plaintiffs need not deal directly with Defendant in order for unjust enrichment claims to succeed; rather, "[t]he critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct." *In re K-Dur*, 338 F. Supp. 2d at 544. Indeed, "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties." *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985).[46]

While there is a split in this District regarding the necessary relationship between a purchaser and a defendant to state a claim for unjust enrichment, with

---

[45] *See, e.g.*, *Pauly v. Houlihan's Rests., Inc*., No. 12-cv-0025, 2012 WL 6652754, at *3 (D.N.J. Dec. 20, 2012) (plaintiff may plead alternative theories under an express contract and under quasi-contract).

[46] *See also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) ("Contrary to Defendants' argument, there is no additional requirement that a benefit flow solely from Plaintiffs"); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 428 (E.D. Pa. 2010) ("a direct relationship between . . . plaintiff and defendant is not necessary to assert an unjust enrichment claim.").

this Court having found that a direct relationship is required, the New Jersey Supreme Court has never included privity as an element of unjust enrichment. *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 198-99 (D.N.J. 2012). In fact, in *Lee v. Carter-Reed LLC*, 203 N.J. 496 (2010), the New Jersey Supreme Court reversed denial of class certification of unjust enrichment claims against the manufacturer of a dietary supplement, even though consumers purchased the supplements from an intermediate retailer.

As Judge Hillman explained in *Stewart*, "[t]he notion that 'some direct relationship' exist between the parties is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims." *Id*. at 200. As in *Stewart*, it would be inequitable to suggest that Defendant can insulate itself from liability on unjust enrichment simply by asserting that the sales by third parties cut off any relationship with consumers.

Third, although there is conflicting authority, Texas courts have recognized unjust enrichment as a viable cause of action. *See Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) ("Unjust enrichment is an independent cause of action.") (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998)).[47]

---

[47] At a minimum, Texas courts recognize unjust enrichment as a theory of recovery, which "can touch 'passively received' benefits, where the nexus is some related third party's acts against the plaintiff, when it would be 'unconscionable for

## XIII. PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS SHOULD PROCEED

### A. Plaintiffs Satisfy the Particularity Requirements of Rule 9(b), Where Applicable, for the Consumer Fraud Claims

Contrary to Defendant's assertion, Plaintiffs' allegations are sufficiently particularized to satisfy the Rule 9(b) pleading standard (even though such a heightened pleading standard is not required for all claims)[48]. The Complaint includes detailed discussions of the misleading provisions in the warranties and maintenance schedules, even attaching key provisions and summaries as exhibits. Plaintiffs allege not only that Defendant made misrepresentations as to the useful life of Class Vehicles and their warranty coverages, but plead precisely what the warranties and maintenance schedules represented about Class Vehicle engine

the receiving party to retain' them." *Cty. of El Paso, Tex. v. Jones*, No. 09-cv-00119, 2009 WL 4730343, at *12 (W.D. Tex. Dec. 4, 2009) (quoting *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. Ct. App. 2002)).

[48] No Georgia or South Carolina court has ever required that consumer fraud claims be pleaded with Rule 9(b) particularity. Further, courts analyzing the consumer fraud claims in Connecticut, Florida, North Carolina, Ohio, New Hampshire, Pennsylvania, and Washington are split or undecided as to whether the Rule 9(b) applies. *See Omega Eng'g, Inc. v. Eastman Kodak Co*., 908 F. Supp. 1084, 1099 (D. Conn. 1995); *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); *CBP Res., Inc. v. SGS Control Servs., Inc*., 394 F. Supp. 2d 733, 739-40 (M.D.N.C. 2005); *Ferron v. Search Cactus, L.L.C*., No. 06-cv-327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007); *In re: Elk Cross Timbers Decking Mktg*., No. 15-cv-18-JLL, 2015 WL 6467730, at *19 (D.N.J. Oct. 26, 2015) (Linares, J.) (considering New Hampshire law); *Vassalotti v. Wells Fargo Bank, N.A*., 732 F. Supp. 2d 503, 511 (E.D. Pa. 2010); *Connelly Co. v. Primo Water Corp*., No. 14-cv-00340, 2016 WL 225663, at *4 (E.D. Wash. Jan. 19, 2016). Nonetheless, even if Rule 9(b) is applied to each state identified by Defendant, Plaintiffs' claims should proceed.

components, their required maintenance and repairs, as well as how Class Vehicle

owners and lessees were thereby misled about the defective Timing Chain

System.[49]   Compl. ¶¶ 8, 9-10, 94, 135-37[50], 143, 149[51], 157[52], 189-94.   This in-

depth explanation of Defendant's alleged fraud and the nature of the defective

Timing Chain System clearly meets Rule 9(b)'s requirements.   *Gotthelf v. Toyota*

---

[49] Defendant also wrongly suggests that the alleged misrepresentations regarding the useful and expected life of a Timing Chain System are non-actionable because they involved an inference – as opposed to expressly stated – from the maintenance tables.   Courts, however, have made clear that implied falsehoods and misleading representations, even if not literally false, are actionable under consumer fraud statutes.   *See, e.g.*, *John Wiley & Sons, Inc. v Palisade Corp.*, No. 04-cv-3359, 2005 WL 2739267 (S.D.N.Y. Oct. 21, 2005); *Stewart v. Smart Balance, Inc.*, No. 11-cv-6174-JLL, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012) (Linares, J.). Unlike the maintenance schedules in the present case, the two cases cited by Defendant, *Sears Roebuck & Co. v. Tyco Fire Products. LP*, 833 F. Supp. 2d 892, 899 (N.D. Ill. 2011) and *Heyman v. Citimortgage, Inc.*, No. 14-cv-1680, 2014 WL 4637034, at *5. (D.N.J. Sep 15, 2014), involve circumstances where no false or misleading message could reasonably be inferred.

[50] Plaintiffs provide that Defendant's misrepresentations regarding the coverage of Class Vehicles' express warranties were presented to owners and lessees of Class Vehicles at or before the time of sale through provisions on Class Vehicle window labels, the provided owner's manuals and brochures, and Defendant's website. Compl. ¶¶ 9-10, 135-37.

[51] Plaintiffs allege that Defendant's misrepresentations regarding the cause of the Timing Chain System failures were made by authorized Volkswagen and Audi dealers at the time of Plaintiffs' Class Vehicle failures.   Compl. ¶ 149.

[52] Plaintiffs allege that Defendant's misrepresentations regarding the useful and expected life and the required maintenance of the engine of the Class Vehicles, and particularly those made by the sales and marketing executives at VWGoA, took place through the USA Warranty and Maintenance Schedules (shown and/or summarized in Exhibits A-C, E, G, etc.) which were provided to owners and lessees of Class Vehicles at the time of sale/lease. Compl. ¶¶ 8, 94, 143, 157.

*Motor Sales, U.S.A., Inc*., No. 11-cv-4429-JLL, 2012 WL 1574301, at *15-18 (D.N.J. May 3, 2012) (Linares, J.), *affd*, 525 F. App'x 94 (3d Cir. 2013) (noting that the purpose of the heightened Rule 9(b) pleading standards is to ensure plaintiffs sufficiently plead circumstances surrounding an alleged fraud to place defendants on notice of the "precise misconduct with which [it is] charged.").

Moreover, contrary to Defendant's assertions, Plaintiffs allege that the defect in the Timing Chain System manifests within the express warranty period prior to total and premature engine failure. *See, e.g*., Compl. ¶¶ 139, 248, 309, 311, 369, 395. Additionally, the Complaint particularly sets forth how and when Defendant attained its knowledge of the defect. *See, e.g.*, Compl. ¶¶ 11, 107, 111-122 153 (alleging Defendant's knowledge of the defective Timing Chain System through pre-production testing, pre and post production failure mode analysis, the issuance of TSBs advising dealers of Timing Chain System problems, aggregate warranty data analysis, repair orders and parts data, consumer complaints, and follow up testing and redesign of the Timing Chain System). These allegations are amply sufficient to satisfy Rule 9(b).

Plaintiffs' allegations also include claims predicated on Defendant's fraudulent omissions. The "heightened standard [under Rule 9(b)] is somewhat relaxed in a case based on a fraudulent omission," as compared to a claim based on an affirmative misrepresentation. *Montich v. Miele USA, Inc*., 849 F. Supp. 2d

439, 451 (D.N.J. 2012).  "[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes–Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012).  Defendant argues that Plaintiffs' claims of fraudulent omission fail Rule 9(b)'s standards as the Complaint does not establish Defendant's duty to disclose.  However, as discussed above (*see supra* at Section X.A.), Plaintiffs' allegations are sufficient to establish that Defendant has a duty to disclose the defect.[53]  Plaintiffs' consumer fraud claims satisfy the Rule 9(b) standard for particularity.

### B.  Plaintiffs Have Adequately Alleged Reliance and Deceptive Acts by Defendant

Defendant contends that the Complaint fails to allege subjective reliance by Plaintiffs or that Defendant committed objectively deceptive acts, as required by the consumer fraud statutes of Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington.  *See* Mot. at 68-70.  Defendant is wrong.

---

[53] Plaintiffs' allegations are substantiated with detailed allegations of Defendant's scheme to shift the blame for the Class Vehicle engine failures onto owners and lessees by blaming them on "poor and improper maintenance" or other conditions outside of Defendant's responsibility. *See, e.g.*, Compl. ¶¶ 365-66.

First, the statutes from New Jersey, New York, California, Florida, Arkansas, Colorado, Connecticut, Illinois, Michigan, and Washington[54] do not contain a formal element of reliance.  To state valid claims under these statutes, Plaintiffs need not allege that individual consumers actually relied upon Defendant's misleading representations or omissions in entering into their purchase.  Rather, it is sufficient to allege that an act or practice possessed the *objective capacity to mislead* or was *likely to deceive* the reasonable consumer.  *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010); *Rucker v. Huffman*, 99 N.C. App. 137, 142 (N.C. Ct. App. 1990); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-08 (1997).  Whether a deceptive act has the capacity to mislead is a question of fact which should not be determined on a motion to dismiss.  *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955 at *17 (E.D.N.Y. July 2, 2010).

---

[54] *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391 (2007); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, (N.Y. Ct. App. 2000); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692-93 (S.D. Fla. 2010); *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (considering Arkansas law); *Nguyen v. Am. Family Mut. Ins. Co.*, 15-cv-0639, 2015 WL 5867266, at *9 (D. Colo. Oct. 8, 2015); *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 815-16 (Conn. 1981); *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013); *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 415 N.W.2d 206, 209-210 (Mich. 1987); *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137-38 (Wash. 2011).

Here, Plaintiffs have clearly alleged actions by Defendant that possessed the objective capacity to mislead or deceive.   Defendant's representations and omissions were likely to mislead purchasers about the expected and useful life of the Class Vehicles, the quality and value of the Class Vehicles, and the costly repairs that would be passed along to them as a result of the defective Timing Chain System.   Compl. ¶¶ 156-57, 168, 193.   Consumers have a right to know before purchasing a vehicle that the vehicle has a defect that could cause catastrophic engine failure, posing a significant risk of physical harm and substantial economic injury.   Consequently, this Court should not dismiss Plaintiffs' consumer fraud claims.

Further, while certain consumer protection statutes require a pleading of reliance – Georgia, Maryland, Ohio, Pennsylvania, and Texas – Plaintiffs' allegations are sufficient.   Plaintiffs allege in no uncertain terms that they relied upon Defendant's representations and, as a result, reasonably expected that the Timing Chain Systems would last for the useful and expected life of the Class Vehicles without the need for costly repair or replacement (or the possibility of a dangerous engine failure).   *See, e.g.*, Compl. ¶ 70.   Moreover, Plaintiffs make clear that had they been made aware of the defective Timing Chain System they would not have purchased or leased their vehicle, would have paid less for their vehicle or

would have avoided substantial repair costs by having the vehicle repaired within the warranty period free of charge.  *Id.*

### C.   Plaintiffs Sufficiently Plead an Injury Under The New York and Arkansas Consumer Fraud Statutes

Defendant argues that the New York and Arkansas consumer fraud claims should be dismissed for failure to plead an actual injury.

New York case law, however, is clear.  "[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement."  *Servedio v. State Farm Ins. Co*., 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012), *affd*, 531 F. App'x 110 (2d Cir. 2013).  Moreover, where a plaintiff specifically claims that he "paid a premium for a product based on defendants' inaccurate representations," injury for a New York consumer fraud claim (NY GBL § 349) has been adequately alleged. *Ackerman,* 2010 WL 2925955, at *23; *Small v. Lorillard Tobacco Co., Inc*., 94 N.Y.2d 43, 56 n.5 (1999) (where a plaintiff contends that the defendant's deception caused an inflated price, "a plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation.").  Plaintiffs' overpayment for defective Class Vehicles which were worth less than their represented worth constitutes "actual damages" under New York law.  *See* Compl. ¶¶ 15, 183-84, 192-93.  Further, Defendant has ignored Plaintiffs' allegations that

they were forced to bear the substantial costs of repair when the defect led to engine failure.  These allegations also support a claim under New York law.

Similarly, Plaintiffs' claim under the Arkansas Deceptive Trade Practices Act ("ADTPA") should proceed.  Defendant bases its argument on the holding in *Wallis v. Ford Motor Company*, 208 S.W.3d 153, 161 (Ark. 2005), but that decision is distinguishable.  In *Wallis*, the court declined to allow the plaintiff's ADTPA claim where the plaintiff only alleged a diminution in value but had not suffered any "*actual damage or injury*."   *Id.* at 328 (emphasis in original).  Notably, however, the court stated that "actual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself."   *Id.* Here, the Complaint clearly alleges that the defect had manifested for all Plaintiffs. *See, e.g.*, Compl. ¶ 248.  Because Plaintiffs allege that the defect had manifested, Defendant's argument fails.  *See Burns v. Toyota Motor Sales, U.S.A., Inc.*, No. 14-cv-02208, 2016 WL 128544, at *3 (W.D. Ark. Jan. 12, 2016) (sustaining ADTPA claim where plaintiff alleged that premature rusting had manifested).

## D.      The Georgia and Indiana Consumer Fraud Claims Are Well-Pled

Defendant argues that Plaintiffs' consumer fraud claims must be dismissed because neither Georgia nor Indiana permit omission-based claims.  Defendant, however, overlooks the myriad of *affirmative misrepresentations* made by Defendant that Plaintiffs set forth in great detail.  *See supra* at Section X.B.;

71

Compl. ¶¶ 9, 10, 12, 135-37, 143, 149, 156, 157, 362.   Such affirmative misrepresentations are actionable under both Georgia's and Indiana's consumer fraud statutes.

### E.   At a Minimum, the Colorado, Georgia, South Carolina and Ohio Consumer Fraud Claims Can Proceed on an Individual Basis

Defendant argues that claims brought under the Colorado Consumer Protection Act ("CCPA"), Georgia Fair Business Practices Act ("GFBPA") and South Carolina Unfair Trade Practices Act ("SCUTPA") cannot be brought in a representative capacity.   Mot. at 71.   Defendant also argues that Plaintiffs' claim under the Ohio Consumer Sales Practices Act ("OCSPA") was not properly pled as a class action.   Mot. at 76.   However, Plaintiffs have not yet moved for class certification and Defendant's arguments regarding Plaintiffs' class allegations are premature.[55]

---

[55] To the extent necessary, Plaintiffs could re-plead their OCSPA claim to cite authority which establishes that Defendant was on notice that its conduct was deceptive.   *See* Ohio Rev. Code § 1345.09(B).   In particular, the Ohio Administrative Code prohibits the use of "any statement . . . in any advertisement or sales presentation which could create in the mind of a reasonable consumer a false impression as to any material aspect of said advertised or offered vehicle" and sets forth that "[i]t shall be a deceptive and unfair act or practice for a dealer [or] manufacturer . . . to:  . . . (14) Fail to disclose . . . any defect . . . [the] retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price . . ."  OAC 109:4-3-16(B)(3) & (14); *see also Amato v. Gen. Motors Corp.,* 463 N.E.2d 625 (Ohio Ct. App. 1982) (concerning car engines advertised and sold as having certain characteristics that they did not possess).

Moreover, Defendant's argument is contrary to Supreme Court precedent. Under the federal Rules Enabling Act, Federal Rule of Civil Procedure 23 governs class actions, not state statutes prohibiting class actions for certain claims, so long as applying Rule 23 does not "abridge, enlarge or modify any substantive right." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 407 (2010) (quoting 28 U.S.C. § 2072(b)).

Following the Supreme Court's decision in *Shady Grove*, multiple courts have held that plaintiffs can assert state consumer protection statutes claims as class actions even where the state statutes prohibit representative claims. *See, e.g., Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (holding claims under the Alabama consumer protection statute may proceed as class action under Rule 23 where statute provide that a private individual "may not bring an action on behalf of a class"); *In re Hydroxycut Marketing and Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (holding that claims under Georgia, South Carolina and other state consumer protection statutes may proceed as class action under Rule 23 where state statutes do not allow class actions).  As the Eleventh Circuit observed in *Lisk*, "Rule 23 alters these substantive rights and obligations not a whit; with or without Rule 23, the parties have the same substantive rights and responsibilities . . . The disputed issue is only whether they may seek redress in one action or must instead bring separate actions."  792 F.3d at

73

1338.  Plaintiffs state valid claims and any class issues can be fully addressed at class certification.

### F.   The Consumer Fraud Claims Seeking Equitable Relief Should Proceed

Defendant argues that Plaintiffs can only seek equitable relief under California's Unfair Competition Law ("UCL"), Georgia's Uniform and Deceptive Trade Practices Act ("GUDTPA") and Minnesota's Uniform Deceptive Trade Practices Act ("MUDTPA").  While such a broad assertion is incorrect,[56] it is irrelevant to the issue of whether Plaintiffs have stated a claim upon which relief can be granted.  *See Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 857 (D. Minn. 1998) (denying motion to dismiss MUDTPA claim despite recognition that only available remedy was injunctive relief).  Because Defendant has not argued that Plaintiffs fail to adequately allege claims under the UCL, GUDTPA and MUDTPA, these claims must proceed.

Defendant asserts that "equitable relief is foreclosed by Plaintiffs' admission that legal remedies are available to them."  Mot. at 72.  But, Defendant misstates the law.  While injunctive relief is generally afforded when other legal remedies are inadequate, legislatures can permit injunctive relief against deceptive trade practices even where damages or other remedies are available at law.  *See, e.g.*,

---

[56] For example, the California Supreme Court has repeatedly held that "prevailing plaintiffs are entitled to both injunctive relief **and restitution**."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003).

*Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336 (Minn. Ct. App. 1999) (holding that Minnesota has legislated that injunctive claims under the MUDTPA can proceed even if there are other legal remedies available).

Lastly, Defendant argues that these injunctive claims should be dismissed because "Plaintiffs face no risk of future harm." Defendant, however, has ignored the clear allegations of the Complaint. While the majority of the Plaintiffs have already sustained engine failure as a result of the defective Timing Chain System, the Classes include purchasers of Class Vehicles that have not yet suffered engine failure. Injunctive relief addresses "future harm" to these Class members by requiring Defendant to provide notice of the defect and to cover any associated repairs free of charge under the warranties.

## G.   The Economic Loss Doctrine Does Not Bar Plaintiffs' Michigan, New Jersey, North Carolina, or Pennsylvania Consumer Fraud Claims

Without analysis, Defendant also broadly concludes that Plaintiffs' Michigan, New Jersey, North Carolina and Pennsylvania consumer fraud claims are barred by the economic loss rule. Mot. at 73. Again, multiple courts have held that consumer fraud claims under the laws of these states are *not* barred by the economic loss doctrine. *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-cv-4558, 2008 WL 4126264, at *29 (D.N.J. Sept. 2, 2008) (listing multiple cases refusing to dismiss NJCFA claims under the economic loss

doctrine); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429 (E.D. Pa. 2015) (holding that the economic loss rule does not bar a Pennsylvania consumer fraud claim and stating that even if *Werwinski* was still good law, it would not bar plaintiff's claims because they arise from representations made prior to his entering into the contract); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 967 (N.D. Cal. 2014) (applying North Carolina law and holding that "the consumer protection statute here gives rise to a duty independent of the contract and therefore should not be barred by the economic loss rule"); *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 520 (E.D. Mich. 2008) (Michigan's economic loss doctrine does not apply to consumer transactions).

## H. Plaintiffs Have Adequately Stated a Consumer Fraud Claim Under Connecticut Law

Defendant argues that Plaintiffs cannot maintain claims under both the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m-q ("CPLA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a *et seq*. ("CUTPA").   Mot. at 74.   Defendant, however, ignores *Gerrity v. R.J. Reynolds Tobacco Company*, 818 A.2d 769 (Conn. 2003), a Connecticut Supreme Court decision, which stands to the contrary.   In *Gerrity*, the court held that a plaintiff's CUTPA claim – based on a financial injury caused by a defective

76

product – may be asserted in conjunction with a CPLA claim.  *Id*. at 775-76.

Accordingly, Plaintiffs' CPLA and CUTPA claims should proceed.[57]

### I.   Warranty Coverage Does Not Negate Plaintiffs' New Jersey and California Consumer Fraud Claims

As previously noted, "[w]arranty coverage of a particular problem does not,

as a matter of law, negate a [New Jersey Consumer Fraud Act] claim that the

manufacturer knowingly omitted information about a design defect."  *Mickens v.*

*Ford Motor Co.*, 900 F. Supp. 2d 427, 438-42 (D.N.J. 2012).  As the Court

recognized in *Mickens*, while New Jersey allows a defense in circumstances where

a warranty exists and the product performs beyond that warranty period, "[t]hat

principle, however, is not without limits" and a "plaintiff may nevertheless state a

claim by alleging that the purported defect manifested itself within the warranty

period and that the manufacturer knew the product would fail."  900 F. Supp. 2d at

443-44.

Meanwhile, California's UCL and CLRA require that manufacturers disclose

defects manifesting even after expiration of the warranty period "if: 1) the

omission is 'contrary to a representation actually made by the defendant'; or 2) the

omission pertains to 'a fact the defendant was obligated to disclose,' *e.g*., facts

relating to product safety."  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964,

---

[57] Defendant also asserts that the CPLA claim should be dismissed because it fails to articulate a viable breach of warranty claim.  As stated in *supra* at Sections V & VI, Plaintiffs' warranty claims are well-pled, and the CPLA claim should proceed.

969 (N.D. Cal. 2008), *affd*, 322 F. App'x 489 (9th Cir. 2009) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835-36 (Cal. Ct. App. 2nd Dist. 2006)).  Additionally, where an undisclosed alleged defect was present in the product at the time of sale or lease, and not the result of a breakage of the product over time because of typical use and wear, a limited warranty does not bar UCL claims.  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 257 (Cal. Ct. App. 3rd Dist. 2011); *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1175 (Cal. Ct. App. 6th Dist. 2015) (expiration of the warranty period does not preclude UCL claim).  Indeed, courts routinely uphold California consumer protection claims in automotive defect cases.  *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, No. 13-cv-00686, 2013 WL 5575065, at *3 (C.D. Cal. Oct. 10, 2013) (finding that although under *Daughetry* "a warranty generally defines a consumer's expectations of a product's performance under California law," California courts have carved out an exception to this rule whereby "[a] manufacturer's duty to consumers is not limited to its warranty obligations where the nondisclosure involves an unreasonable safety risk."); *Ehrlich v. BMW of N. Am.*, *LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (concluding that a safety-based exception to the *Daugherty* rule exists which creates a duty on the manufacturer to disclose a defect posing a safety risk even after the period of an express warranty expires); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236-37 (C.D. Cal. 2011) (finding that courts

considering allegations of a vehicle's unreasonable safety risk, including catastrophic engine failure, have denied motions to dismiss CLRA claims); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 940-44 (C.D. Cal. 2012) ("Because plaintiffs have adequately alleged a safety defect, they have sufficiently pled a material failure to disclose for purposes of the CLRA and UCL.").

### J.   The New York, Connecticut, and Ohio Consumer Fraud Claims Are Timely

Defendant's attempt to dismiss, as untimely, the consumer fraud claims in New York, Ohio, and Connecticut also fails.  The statute of limitations for these claims is triggered not by the date of the sale, as argued by Defendant, but by the occurrence of a violation.[58]  Here, in addition to pre-sale misrepresentations and omissions, Plaintiffs have alleged post-sale deceptive conduct; the post-sale conduct constitutes violations of the consumer fraud statutes and such claims are timely brought.

Courts have held that post-sale deceptive conduct is actionable under the consumer fraud statutes at issue.  Notably, in *Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014), the court rejected the vehicle manufacturer's

---

[58] *See Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 183, 190 (D. Conn. 2007) (the "limitation period for [CUTPA] is triggered upon the occurrence of the alleged violation"); Ohio Rev. Code Ann. § 1345.10 (an action may not be brought "more than two years after the occurrence of the violation"); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (there must be "successful deception of plaintiffs within three years of the time the action was brought").

argument that the NY GBL § 349 claim was time-barred, because the plaintiffs had alleged "post-sale" fraud, specifically its "fail[ure] to disclose information about the defects in the brake system through adequate warnings or recall notices." *Id.* at 459, 465-66; *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484-85 (E.D.N.Y. 2011) (denying motion to dismiss a NY GBL § 349 claim based upon alleged deceptive post-delivery conduct); *CSL Silicones Inc. v. Midsun Grp. Inc.*, 170 F. Supp. 3d 304, 312 (D. Conn. 2016) (agreeing that a "CUTPA claim can accrue separately for each discrete illegal act that forms the basis of a CUTPA claim"). Here, the Complaint alleges post-sale deceptive conduct by Defendant, most notably its failure to disclose the defect to consumers despite long having knowledge of it. *See, e.g.*, Compl. ¶¶ 136, 168-69, 181. The consumer fraud claims under New York, Ohio, and Connecticut law are timely.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated:  February 7, 2017                     Respectfully submitted

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**


s/ James E. Cecchi
James E. Cecchi
Lindsey H. Taylor
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**
Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner (*Pro Hac Vice*)
Ethan Barlieb
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**KANTROWITZ GOLDHAMER &**
**GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran (*Pro Hac Vice*)
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

**MAZIE SEATER KATZ &
FREEMAN, LLC**
Matthew Mendelsohn
David A. Mazie
Adam M. Slater
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898

**MCCUNEWRIGHT LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1055 Westlakes Drive, Suite 300
Berwyn, PA  19312
Telephone: (909) 557-1250

**SEEGER WEISS LLP**
Christopher A. Seeger
David R. Buchanan
Scott Alan George
550 Broad Street
Newark, NJ 07102
Telephone: (973) 639-9100

**BARON & BUDD, P.C.**
Roland Tellis (*Pro Hac Vice* to be filed)
Mark Pifko (*Pro Hac Vice* to be filed)
Peter Klausner (*Pro Hac Vice* to be filed)
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

*Attorneys for Plaintiffs and the proposed
Classes*

2