NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE VOLKSWAGEN TIMING CHAIN PRODUCT LIABILITY LITIGATION | Civil Action No.: 16-2765 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Volkswagen Group of America, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 6 ("Compl.")) and Compel Arbitration pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 36). Plaintiffs have collectively submitted an opposition (ECF No. 40), which Defendant has replied to (ECF No. 42). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion to Dismiss.

## I.     BACKGROUND[1]

### A.     The Parties

Plaintiff David Zimand is a citizen and resident of the State of New Jersey, who leased and later purchased a 2009 Volksagen ("VW") Jetta Wolfsburg Edition equipped with a 2.0L TSI[2]

---

[1] This background is derived from Plaintiffs' First Consolidated Amended Class Action Complaint (ECF No. 6 ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

[2] A full description of the TSI engine is contained herein, *infra*.

engine from a VW and Audi authorized dealer, Jack Daniels Motors Inc., in Fairlawn, New Jersey. (Compl. ¶ 18). Additionally, Plaintiff Chris Drake, who is also a citizen and resident of New Jersey, purchased a 2010 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 26).

Also, Plaintiff Jay Melman, who is a citizen and resident of the State of New York, purchased a 2010 VW Tiguan equipped with a 2.0L TSI engine in New York. (Compl. ¶ 24). Additionally, Plaintiff Hamza Deib, another citizen and resident of New York, purchased a 2010 Audi A4 equipped with a 2.0L TFSI[3] engine. (Compl. ¶ 46). Plaintiff Rosario Panepinto, who is also a New York citizen and resident, purchased a 2009 VW Jetta equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 48).

Next, Plaintiff Anoushirvan Nadiri is a citizen and resident of the State of California, who purchased a new 2011 VW GTI equipped with 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 27). Additionally, Plaintiffs Jennifer Piumarta and William R. Swihart, who are also California citizens and residents, purchased a certified pre-owned 2010 Audi A3 equipped with a 2.0L TFSI engine and a 2009 Audi A4 Avant equipped with a 2.0L TSI engine, respectively, from authorized Audi dealers. (Compl. ¶¶ 28, 29). Furthermore, California citizen and resident Plaintiff Umar Ellahie "entered into a contract for a 2010 Volkswagen CC from Sunnyvale Volkswagen in Sunnyvale, California." (Compl. ¶ 62).

Furthermore, Plaintiff Dawn Stanton Blanchard, who is a Florida citizen and resident, leased a 2011 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer, South Motors Volkswagen, in Miami, Florida. (Compl. ¶ 32). In addition, Plaintiffs Luis F. Lopez and

---

[3] A full description of the TFSI engine is contained herein, *infra*.

Shimelesse Mekbeb, who are also citizens and residents of Florida, purchased a 2009 A4 Quattro equipped with a 2.0L TFSI engine and a 2009 VW Jetta equipped with a 2.0L TSI engine, respectively. (Compl. ¶¶ 36, 37). Also, Florida citizens and residents Plaintiffs Allison Fleck and William Fleck leased and then purchased a 2012 Volkswagen EOS from Volkswagen of Freehold in Freehold, New Jersey. (Compl. ¶ 65).

Further, Plaintiff Rafael Serbia, a citizen and resident of the State of Connecticut, purchased a new 2011 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 31). Another citizen and resident of Connecticut, Plaintiff Karl Molwitz purchased a pre-owned 2009 Volkswagen Tiguan from Danbury Volkswagen in Danbury, Connecticut. (Compl. ¶ 56). Moreover, Plaintiff Allan Gaudet, who is also a citizen and resident of Connecticut, "entered into a contract for a 2011 Volkswagen GTI from Crowley Volkswagen in Plainville, Connecticut." (Compl. ¶ 59).

Illinois citizen and resident Plaintiff Erika Sensnovispurchased a certified pre-owned 2011 Tiguan equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 39). Plaintiff Katrina Calihan, also a citizen and resident of Illinois, purchased a certified pre-owned 2010 Tiguan equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 40).

Next, Plaintiff John Schaffranek, a citizen and resident of the Commonwealth of Pennsylvania, purchased a 2010 VW CC. (Compl. ¶ 53). Also a citizen and resident of Pennsylvania, Plaintiff Jeffery Pipe purchased a new 2009 Audi A4 equipped with a 2.0L TFSI engine from an authorized Audi dealer. (Compl. ¶ 51).

Moreover, Plaintiff Dena Stockalper is a citizen and resident of the State of Arkansas, who purchased a 2012 VW EOS Lux equipped with a 2.0L TSI EA888 engine in Springdale, Arkansas.

(Compl. ¶ 22). Next, Plaintiff Hannah LeMoine, who is a citizen and resident of the State of Colorado, purchased a 2010 Audi A3 equipped with a 2.0L TSI engine. (Compl. ¶ 30). Plaintiff Robby Smith, a citizen and resident of the State of Georgia, purchased a certified pre-owned 2010 Audi A4 equipped with a 2.0L TFSI engine from an authorized Audi dealer. (Compl. ¶ 38). Additionally, Plaintiff Garrett Johnson, who is a citizen and resident of Indiana, purchased a 2009 Audi A4 equipped with a 2.0L TFSI engine. (Compl. ¶ 41).

Furthermore, citizen and resident of the State of Kansas, Plaintiff Neel Mody purchased a new 2012 VW Tiguan equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 42). Plaintiff Debra Ann Haggerty, who is a citizen and resident of the State of Michigan, purchased a new 2012 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 43). In addition, Plaintiff David Zhao, a citizen and resident of the State of Minnesota, purchased a new 2012 Audi Q5 equipped with a 2.0L TFSI engine from an authorized Audi dealer. (Compl. ¶ 44). Additionally, Plaintiff Suzanne Noyes, a citizen and resident of the State of New Hampshire, purchased a 2012 VW Tiguan equipped with a 2.0L TSI engine. (Compl. ¶ 45).

Next, Plaintiff Jason Hosier is a citizen and resident of the State of Maryland, who purchased a 2010 VW Tiguan equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 47). Additionally, citizen and resident of the State of North Carolina, Plaintiff Debra J. Oles purchased a 2008 VW Passat equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 49). Plaintiff James I. Scott, IV, a citizen and resident of the State of Ohio, purchased a 2011 VW GTI equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 50). Additionally, Plaintiff Michael A. Borchino, who is a citizen and resident of the State of South

Carolina, purchased a new 2012 VW CC equipped with a 2.0L TSI engine from an authorized VW dealer. (Compl. ¶ 52).

Moreover, Plaintiff Pamela K. Kane, a citizen and resident of the State of Texas, purchased a new 2010 Audi A4 equipped with a 2.0L TFSI engine from an authorized Audi dealer. (Compl. ¶ 54). Additionally, citizen and resident of the State of Washington, Plaintiff Zachariah Gossman purchased a 2009 Audi A4 equipped with a 2.0L TFSI engine. (Compl. ¶ 55). Next, Plaintiff Bartosz Zielezinski, who is a citizen and resident of the State of Nevada, purchased a 2012 Audi A5 from AutoNation Volkswagen in Las Vegas, Nevada. (Compl. ¶ 67).

Finally, Defendant Volkswagen Aktiengesellschaft ("VWAG") is a German corporation that designs, develops, manufactures, and sells automobiles. (Compl. ¶ 73). VWAG is the parent corporation of Defendants Volkswagen Group of America, Inc. ("VW America") and Audi Aktiengesellschaft ("Audi AG"). (Compl. ¶ 73). Defendant VW America is a New Jersey corporation that acts in the furtherance of the interests of VWAG, which includes the advertising, marketing, and sale of VWAG and VW America (collectively referred to as "VW") automobiles nationwide. (Compl. ¶ 74). Defendant Audi AG is a German corporation that designs, develops, manufactures, and sells luxury automobiles under the Audi brand name. (Compl. ¶ 75). Audi AG is the parent corporation of Audi of America, Inc. ("Audi America"), which is a Delaware corporation that, *inter alia*, advertises, markets, and sells Audi AG and Audi America (collectively referred to as "Audi") automobiles nationwide. (Compl. ¶ 76).

### B. Procedural History

Plaintiff initially brought this putative class action on May 16, 2016. (ECF No. 1). Thereafter, Plaintiffs filed their "First Consolidated Class Action Complaint" on August 22, 2016,

(ECF No. 6), which, as noted above, is currently the operative complaint. Plaintiffs bring this class action against Defendants individually, and on behalf of all persons similarly situated in the United States who purchased, own, owned, lease, or leased a 2008 through 2013 model year 2.0L TSI or 2.0L TFSI VW or Audi vehicle containing the allegedly defective Timing Chain System[4] (the "Class Vehicles"). (*See generally* Compl.). On December 12, 2016, Defendant VW America filed the instant motion to dismiss and compel arbitration of the claims. (ECF No. 36).

### C.     Timing Chain Systems

Each Plaintiff either leased or purchased a Class Vehicle manufactured and/or sold by Defendants. (Compl. ¶¶ 79, 80). The Class Vehicles are equipped with 2.0L TSI or 2.0L TFSI EA888 four-cylinder turbocharged gasoline engines, which contain the allegedly defective Timing Chain System. (Compl. ¶ 81, 89).

#### a.   Engine Mechanics and Components

A "combustion" is required in order for a conventional four-stroke internal combustion engine to function. (Compl. ¶ 87). First, the engine's intake valves open in order to allow fuel and air to enter into the piston combustion chamber. (Compl. ¶¶ 88, 91). The valves then close so that the "rising piston can compress the air and fuel right below the spark plug," which then results in a combustion that drives the piston down. (Compl. ¶ 91). This combustion produces byproducts that must be removed in order for further combustion to occur. (Compl. ¶ 87). Thus, the exhaust valves open so that the "rising piston can expel the combusted air and fuel mixture" resulting from the combustion. (Compl. ¶ 91).

---

[4] A full discussion regarding timing chains and the alleged defect that is the subject matter of this action is contained herein, *infra*.

Crucial to the proper operation of the engine is the synchronization of the piston movements with the opening and closing of the intake and exhaust valves. (Compl. ¶¶ 87, 92). Therefore, a timing chain is added to physically connect the crankshaft, which is connected to the pistons, to the camshaft, which opens and closes the valves. (Compl. ¶ 88). If the timing chain system fails, then "synchronization is lost and the four-stroke cycle will be disrupted," which may result in power loss or engine failure. (Compl. ¶ 92).

### b. The Class Vehicles

Here, the 2.0L TSI and 2.0L TFSI both use a double overhead camshaft ("DOHC") configuration with two camshafts connected to the crankshaft by a timing chain. (Compl. ¶ 89). This engine is specifically an interference engine, such that the intake or exhaust valves, when fully open, extend into the area in which the piston travels. (Compl. ¶ 89). Therefore, a stretched, broken, or dislocated timing chain could severely distort the camshaft timing, which could cause the pistons to collide into the valves, leading to damaged pistons and/or valves. (Compl. ¶ 89). This could cause substantial engine failure, which is expensive to repair or replace. (Compl. ¶ 89).

### D.    The Defective Timing Chain System

### a.    The Chain Tensioner

Plaintiffs claim that the source of the defect in the Timing Chain System is the Hydraulic Tensioner, Camshaft Chain Drive (the "Chain Tensioner"), which keeps the timing chain in proper tension—which is crucial in preventing "jumps"—through oil pressure. (Compl. ¶¶ 96, 97). Since oil pressure is only available when the vehicle is turned on with the engine running, there is little to no oil pressure when the vehicle is turned off or is starting up. (Compl. ¶ 97). Thus, the Chain Tensioner uses a mechanical mechanism during the latter in order to keep the chain tight. (Compl.

¶ 97). This mechanism requires several key components: a steel retainer clip, a piston retainer pin, a ratchet pawl, and piston teeth. (Compl. ¶ 98). According to Plaintiffs, the failure of the ratchet pawl caused the loss of tension on the timing chain, which then allowed the timing chain to "jump a tooth" during start up, causing the bending of intake valves and subsequent engine failure. (Compl. ¶ 99).

Ordinarily, when the engine is running, there is an internal spring that augments oil pressure in order to push a piston against a timing chain tensioning rail, which presses against the timing chain and maintains its tension. (Compl. ¶ 97). When the engine is off and there is no oil pressure to push the piston out, a ratchet pawl is used to prevent the piston from collapsing inward. (Compl. ¶ 100). The piston incorporates ratchet teeth and a retaining clip in order to hold a detached pawl above the piston. (Compl. ¶ 100). If the pawl teeth are broken or worn, or if the retaining clip fails to hold the pawl in position, then the piston will not hold the proper tension on the chain when oil pressure is low. (Compl. ¶ 100). This low tension can cause the chain to "jump a tooth," which may subsequently cause the camshaft to be out of sync with the crankshaft and pistons. (Compl. ¶ 100).

### E. Defendants' Knowledge and Omissions

Plaintiffs claim Defendants knew or should have known of the defect in the Timing Chain Systems and "fraudulently, intentionally, negligently and/or recklessly concealed [the defect] from Plaintiffs and members of the Classes . . . ." (Compl. ¶ 106).

#### a. Knowledge

First, Defendants released several technical service bulletins ("TSB") from 2010 to 2012 regarding the timing chain issues with the Class Vehicles. (Compl. ¶¶ 111–122). They specifically

described noise coming from the timing chains, difficulty starting engines, and possible damage to the camshaft. (Compl. ¶¶ 112–119). In 2012, a TSB stated that the "[t]iming chain tension may be incorrect due to [the] tensioner," causing skips in the timing chain. (Compl. ¶ 116). At this time, dealers were instructed to repair the Timing Chain System when customers complained of rattling noises after the engine started, issues with the engine not starting, or the "check engine" light being on. (Compl. ¶ 117). Such TSBs were not available publicly and were not disclosed to owners or lessees. (Compl. ¶ 121).

Second, consumer complaints were made to the National Highway Traffic Safety Administration ("NHTSA") regarding failures of the Chain Tensioner that were causing problems with the Timing Chain System. (Compl. ¶¶ 123–125). Several of the consumers experienced sudden and complete engine failure. (Compl. ¶ 125). Plaintiffs assert that Defendants have a duty to identify potential defects in their vehicles, and that the monitoring of NHTSA complaints falls within this duty. (Compl. ¶ 123).

Third, Defendants significantly redesigned the Chain Tensioner in 2012. (Compl. ¶¶ 126–127). Specifically, the ratchet pawl of the earlier Chain Tensioner was accessible from outside the part, and needed an external steel retainer clip to keep its position. (Compl. ¶ 127). The "Redesigned Tensioner" no longer needed the external retainer clip because the grooved tensioner piston and internal clip were placed inside the structure. (Compl. ¶ 127). This change is significant because the earlier Chain Tensioner utilized a sintered metal (type of metal forged by being heated beyond its melting point such that its particles formed a molecular bond), which is weaker than other forged metal. (Compl. ¶¶ 128–129). The sintered metal pawl could no longer function

properly after approximately 50,000 miles because its teeth would significantly erode. (Compl. ¶ 129).

Additionally, Defendants redesigned the timing chain incorporated by the Timing Chain System. (Compl. ¶ 130). Specifically, the earlier timing chain had "alternating rows of link plate thickness," which may have allowed the chain to stretch, subsequently affecting the Timing Chain System. (Compl. ¶ 130).

Plaintiffs further assert that even if Defendants did not have actual knowledge, they should have at least been put on notice of the Timing Chain System defects following the number of replacement components and revisions. (Compl. ¶ 153). Additionally, Plaintiffs allege that predecessor models of the Class Vehicles used identical Timing Chain System components that were also experiencing premature failure. (Compl. ¶ 153).

### b. Omissions

Not only do Plaintiffs assert that Defendants had knowledge of the Timing Chain System defect, but they also assert that Defendants intentionally concealed this defect from Plaintiffs and other Class Vehicle purchasers and/or lessees. (Compl. ¶ 151).

First, Plaintiffs' omission claims are based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles that the Timing Chain System is "intended and reasonably expected to last for the useful life of the engine and at least 120,000 miles without the need for repair or replacement." (Compl. ¶ 94). Specifically, several of Defendants' maintenance schedules do not require maintenance of the Timing Chain System within 120,000 to 135,000 miles. (Compl. ¶ 94; *see* Compl. at Exhibits A, B, E, G). Thus, Plaintiffs allege that Defendants set forth incorrect maintenance recommendations in its Class

Vehicle owner manuals and concealed these inaccuracies from Class Vehicle owners and/or lessees. (Compl. ¶¶ 143, 158–161, 181).

Next, Plaintiffs allege that Defendants deceived Plaintiffs and other Class Vehicle purchasers and/or lessees by failing to disclose material information regarding the Timing Chain System defects and the impact this would have on future repairs, costs, and reliability. (Compl. ¶ 189). Further, Plaintiffs allege that Defendants concealed their knowledge during the express warranty period in order to shift the costs of repair and replacement to Plaintiffs once the period expired. (Compl. ¶ 151). Even when several of Plaintiffs' Class Vehicles showed signs of premature failure—that only Defendants could identify or know of—within the express warranty period, Defendants did not disclose the existence of the defect. (Compl. ¶¶ 139, 141). The express warranty included "bumper to bumper coverage for 3 years or 36,000 miles, whichever occur[red] first," and "a Powertrain Limited Warranty for '5 years or 60,000 miles whichever occur[red] first.'" (Compl. ¶ 9). Moreover, Plaintiffs allege Defendants continued to sell the Class Vehicles containing the defect and refused to fully compensate Plaintiffs who experienced Timing Chain System failures after the expiration of the express warranty. (Compl. ¶ 138). Thus, Plaintiffs assert that they were deprived of the "right to have such defective part replaced for free under the warranty." (Compl. ¶ 189).

Plaintiffs further allege that these material omissions concerning the defective Timing Chain System protected Defendants' corporate profits since Plaintiffs and other members of the putative class would not have purchased the vehicles or would have purchased them at a lower price had they been aware of the defects. (Compl. ¶¶ 192, 193).

## II.  LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.  ANALYSIS

Based on the aforementioned allegations, Plaintiffs brought the within suit seeking to recover damages for the following causes of action, individually and on behalf of the putative

class: Count I – Fraud; Count II – Breach of Contract;[5] Count III – Negligent Misrepresentation; Count IV – Breach of Express Warranty; Count V – Breach of Implied Warranty; Count VI – Violation of the Magnuson-Moss Warranty Act; Count VII – Unjust Enrichment. (*See* Compl. at 74–91).

Additionally, each group of Plaintiffs from the various different States have brought putative sub-class actions asserting the following violations of State consumer fraud and/or consumer protection laws: Count VIII – Violation of the New Jersey Consumer Fraud Act; Count IX – Violation of the Arkansas Deceptive Trade Practice Act; Count X – Violation of California's Unfair Competition Law; Count XI – Violation of the California Consumer Legal Remedies Act; Count XII – Violation of the Colorado Consumer Protection Act; Count XIII – Violation of the Connecticut Unfair Trade Practices Act; Count XIV – Violation of the Connecticut Product Liability Act; Count XV – Violation of the Florida Deceptive and Unfair Trade Practices Act; Count XVI – Violation of the Georgia Uniform Deceptive Trade Practices Act; Count XVII – Violation of the Georgia Fair Business Practices Act of 1975; Count XVIII – Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; Count XIX – Violation of the Indiana Deceptive Consumer Sales Act; Count XX – Violation of the Kansas Consumer Protection Act; Count XXI – Violation of the Maryland Consumer Protection Act; Count XXII – Violations of the Michigan Consumer Protection Act; Count XXIII – Violation of the Minnesota Prevention of Consumer Fraud Act; Count XXIV – Violation of the Minnesota Uniform Deceptive Trade Practices Act; Count XXV – Violation of Minnesota's "Private Attorney General Statute"; Count XXVI – Violation of the Nevada Deceptive Trade Practices Act; Count XXVII – Violation of the

---

[5] Plaintiffs have since abandoned their Breach of Contract Claim. (Pl. Opp. Br. at 41).

New Hampshire Consumer Protection Act; Count XXVIII – Violations of the New York Consumer Protection Act; Count XXIX – Violation of the North Carolina Unfair and Deceptive Trade Practices Act; Count XXX – Violation of the Ohio Consumer Sales Practices Act; Count XXXI – Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; Count XXXII – Violation of the South Carolina Consumer Unfair Trade Practices Act; Count XXXIII – Violation of the Texas Deceptive Trade Practices-Consumer Protection Act; Count XXXIV – Violation of the Washington Consumer Protection Act. (*See* Compl. at 92–198). The Court discusses each claim separately.

## A. Breach of Contract

As noted above (*see* n.5, *supra*), Plaintiffs have collectively abandoned their breach of contract claim. (Pl. Opp. Br. at 41). Accordingly, this claim is hereby dismissed.

## B. Motion to Dismiss and Compel Arbitration

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M. Diagnostic Sys., Inc. v. Local 169, Intl Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 812 F.2d 91, 94 (3d Cir. 1987)(quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Federal Arbitration Act ("FAA"), applies to arbitration clauses contained in contracts involving matters of interstate commerce. *See* 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party, whose claims are subject to the FAA, refuses to arbitrate same the district court must decipher whether the claims are arbitrable. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001)(citing *AT&T Technologies, Inc. v. Communications Workers*

*of America*, 475 U.S. 643, 649 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Technologies*, 475 U.S. at 654 (quotations omitted); *see Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

"Federal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic*, 247 F.3d at 55 (citing *Moses H. Cone*, 460 U.S. at 24-25); *Zimmerman*, 783 F. Supp. at 868. The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause. *See Medtronic*, 247 F.3d at 55; *Mutual Ben. Life Ins., Co., v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992)("There is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.")(internal citations and quotations omitted). However, "[i]f there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury." *Par-Knit*, 636 F.2d at 54. In considering a motion to compel arbitration, a court must engage in a two-step analysis: *it must determine first whether there is a valid agreement to arbitrate* and, if so, *whether the specific dispute falls within the scope of said agreement. See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009)(emphasis added); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006).

The Court here finds that, contrary to Defendant VW America's assertion, no agreement to arbitrate exists between the parties. Defendant argues that arbitration must be compelled because the various Plaintiffs entered into purchase and/or lease agreements contained an arbitration clause. (ECF No. 36-1 ("Def. Mov. Br.") at 7-11). Those purchase and/or lease agreements contained the following language:

**"ARBITRATION PROVISION**

**"PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS**

**"1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**"2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS...."**

((Def. Mov. Br. at 7)(quotations and bold in original); *see also* Exhibits A-I annexed to Def. Mov. Br.) This clause, according to Defendant, requires the Court to dismiss the action and compel arbitration consistent with the above law.

However, as Plaintiffs have explained, and as Defendant concedes, Defendant VW America was not a party to these purchase and/or lease agreements. (*See* ECF No. 40 ("Pl. Opp. Br.") at 8-11; ECF No. 42 ("Def. Rep. Br.") at 1-3). Rather, those agreements were entered into by Plaintiffs and the various dealerships from which they purchased and/or leased their vehicles from. (Def. Mov. Br. at 7). Accordingly, Defendant VW America never entered into any agreement with Plaintiffs to arbitrate.

Basic contract law requires parties to be in privity with each other in order for them to enforce the terms of a contract. *See Black's Law Dictionary* (10th ed. 2014), *available at* Westlaw

BLACKS (defining privity of contract as "The relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so."). Since the parties never personally entered into an agreement with each other, no privity of contract between Plaintiffs and Defendant can be established. The parties concede this point. (*See* Def. Mov. Br. at 10, 31, 37; Pl. Opp. Br. at 9). Hence, without privity of contract between the parties, Defendant VW America cannot enforce the arbitration clause contained within the purchase and/or lease agreements signed by Plaintiffs and the various dealerships. Thus, in accordance with *Century Indem. Co.*, *supra*, there is no valid agreement between the parties that this Court can enforce, and the Motion to Compel Arbitration must be denied.

Defendant VW America also attempts to rely on the doctrine of equitable estoppel in support of its Motion to Compel Arbitration. (*See* Def. Mov. Br. at 12). "[I]n certain situations, a non-signatory to an arbitration agreement may compel a signatory to arbitrate." *EPIX Holdings Corp. v. Marsh & McLennan Cos.*, 410 N.J. Super. 453, 982 A.2d 1194, 1200 (N.J. Super. Ct. App. Div. 2009); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001) (noting situations in which non-signatories may be bound by an arbitration clause). The *EPIX* Court noted that "the combination of the requisite nexus of the claim to the contract *together with the integral relationship* between the non-signatory and the other contracting party [is] . . . a sufficient basis to invoke estoppel." 982 A.2d at 1202 (emphasis in original).

Courts have permitted "non-signatory third party beneficiaries to compel arbitration against signatories of arbitration agreements." *E.I. DuPont*, *supra* at 195 (citation omitted). For example, the Third Circuit has "bound a signatory to arbitrate with a non-signatory at the non[-

]signatory's insistence *because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non[-]signatory's obligations and duties in the contract* . . . *and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.*" *E.I. DuPont*, 269 F.3d at 199-200 (internal quotations omitted; alteration in original)(emphasis added). "The distinction between signatories and non-signatories is important to ensure that short of piercing the corporate veil, a court does not ignore the corporate form of a non-signatory based solely on the interrelatedness of the claims alleged." *Id.* at 202.

Here, the doctrine of equitable estoppel does not assist Defendant VW America's assertions that arbitration must be compelled. This is because Defendant VW America can point to no allegations that there was a "close relationship" between the parties. Rather, the allegations in the Complaint indicate the complete opposite. Plaintiffs each purchased and/or leased their vehicle from an authorized car dealership. At the time Plaintiffs acquired their vehicles, they entered into a purchase and/or lease agreement between themselves *and the dealership*. A member of each dealership presented this document. The agreements only contained the dealership's name and the various Plaintiffs' names. Accordingly, there was no relationship, let alone a close one, that supports the application of equitable estoppel in this action. Thus, the Motion to Compel Arbitration must be denied.

## C. Plaintiffs' Complaint Does Not Need to be Dismissed for "Lumping"

Defendant also briefly argues that Plaintiffs' entire complaint should be dismissed for "combin[ing] separate named defendant entities under the name 'Defendants[.]'" (Def. Mov. Br. at 17). Accordingly, Defendant VW America believes the Complaint should be dismissed for failing to meet the pleading standards set forth under Rules 8 and 9(b) of the Federal Rules of Civil

Procedure. (Id.). However, this argument is not persuasive. While Plaintiffs do use the term "Defendants" throughout the Complaint, they also make particularized allegations against each Defendant, including Defendant VW America, separately.

Specifically, as to Defendant VW America, Plaintiffs allege that it is headquartered in the United States and "engages in … the advertising, marketing and sale of VW automobiles nationwide." (Compl. ¶ 74). Plaintiffs clearly distinguish Defendant VW America form Defendant Audi America by stating that Defendant Audi America is also headquartered in the United States and engages is nearly identical activities that Defendant VW America engages in. (Compl. ¶ 76). The Complaint also explains that both Defendants VW America and Audi America are authorized agents, representatives, servants, employees and/or alter egos of the German parent companies. (Compl. ¶ 77).

The allegations against each entity are clear, and, as Plaintiffs explain, "to the extent Plaintiffs assert common allegations as to [Defendants collectively]," it is because the entities are intertwined through a complex corporate structure. (Pl. Opp. Br. at 18). Plaintiffs cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery. *See Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 708 (D.N.J. 2013)(holding that Courts should employ a relaxed pleading standard when "specific information is in the exclusive control of the defendant")(citing *Craftmatic Sec. Litig v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).

Moreover, this Court is satisfied that, with the limited information in Plaintiffs' possession, Plaintiffs have made specific allegations as to Defendant VW America. For example, Plaintiff Molowitz asserts his vehicle was impacted by the timing chain issue, that he contacted Defendant

VW America regarding same, and that Defendant VW America denied his request for repairs. (Compl. ¶ 58). Plaintiffs also allege that Defendant VW America "acted as [an] authorized agent[], representative[], servant[], [and/or] employee[]" of its German parent company, and that Defendant VW America performed activities of "advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of [its] vehicles." (Compl. ¶ 77). Additionally, Plaintiffs make specific allegations regarding Defendant VW America's knowledge of the supposedly faulty timing chain because Defendant "VW America was monitoring warranty claims and Class Vehicle performance in the United States." (Compl. ¶ 136). Moreover, "[c]ertain Plaintiffs were informed by representatives of [Defendant] VW America that" it would not repair the faulty timing chain system because the "failure occurred outside of the express warranty period." (Compl. ¶ 137). Plaintiffs further allege that "Defendants' [collective] knowledge of Class Vehicle defects was derived from warranty claims, claims supervisors, customer complaints *and monitoring of performance of Class Vehicles by [Defendant] VW America quality assurance employees*." (Compl. ¶ 153)(emphasis added). Finally, Plaintiffs have alleged that "Defendant (*and particularly the sales and marketing executives at [Defendant] VW America*) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that Class Vehicles would last over 120,000 miles or ten years before experiencing Timing Chain System failure." (Compl. ¶ 157)(emphasis added).

The Court finds that these allegations are specific to, and targeted at, Defendant VW America. Thus, while Plaintiffs use the generic term of "Defendants" in their Complaint, they also make particularized allegations regarding Defendant VW America's conduct sufficient to satisfy

Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Hence, Defendant VW America's Motion to Dismiss based on "lumping" is hereby denied.

### D. Dismissal for Failure to "Plead Which State's Law Applies" as to Plaintiff's Common Law Counts is Unwarranted

Defendant avers that Plaintiffs' common law claims for fraud, breach of contract,[6] negligent misrepresentation, and unjust enrichment must be dismissed since Plaintiffs have not identified the applicable law for each claim, thereby rendering them "vague." (Def. Mov. Br at 15). Defendant also argues that each Plaintiff's home state has the "most significant relationship," and, according to New Jersey law, each state's laws governing common law claims must be applied to each group of Plaintiffs, based on the state where they reside. (Def. Mov. Br. at 16-17). Indeed, New Jersey's choice of law principles are applicable to this matter since federal courts with diversity jurisdiction must apply the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). However, the Court need not address the choice of law arguments at this juncture.

As Plaintiff correctly notes, the choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action law suit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis. *See, e.g., Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-cv-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis at motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07-cv-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27,

---

[6] As discussed in n. 5, *supra*, this claim has been abandoned by Plaintiffs.

2009) (same); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009) (same); *see also Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 295 (D.N.J. 2009) (finding that New Jersey's most significant relationship test" requires a fact-sensitive analysis that cannot be performed on a record that consists solely of a complaint and motion to dismiss); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (finding that a choice of law analysis is premature at the motion to dismiss phase).

Further, Defendant has failed to explain how Plaintiffs' common law claims conflict among their home states. Rather, Defendant simply concludes that a conflict exists and therefore the Complaint must be dismissed. Yet, as discussed, the most significant relationship test is a fact-sensitive inquiry. Accordingly, the Court declines to engage in a choice of law analysis at this juncture and Defendant VW America's Motion to Dismiss based on same is hereby denied.

### E. Plaintiffs Have Sufficiently Pled *prima facie* Claims for Breach of Express Warranty

Defendant VW America advances five separate arguments as to why Plaintiffs' breach of express warranty claims must be dismissed. First, Defendant VW America argues that no claim can lie for repairs to, or failures of, the Timing Chain System beyond the express warranty period contained in Defendant's New Vehicle Limited Warranty ("NVLW"). (Def. Mov. Br. at 18). Second, Defendant asserts that both the time and mileage terms of the NVLWs were not unconscionable. (Def. Mov. Br. at 19). Third, Defendant avers that the NLVWs do not cover design defects, which, it claims, is the gravamen of Plaintiffs' claims. (Def. Mov. Br. at 22). Fourth, Defendant claims that Plaintiffs have not pled sufficient facts showing they complied with the NLVWs' notice requirements. (Def. Mov. Br. at 23). Finally, Defendant asserts that four Plaintiffs' express warranty claims are barred by the statute of limitations; specifically those

Plaintiffs from Connecticut, New York, Ohio, and Texas. (Def. Mov. Br. at 27). For the following reasons, the Court is unpersuaded by any of these arguments and concludes that Plaintiffs have included sufficient allegations to withstand a motion to dismiss.

First, the Court is satisfied that Plaintiffs have pled sufficient facts to allege that the NVLWs were unconscionable, and therefore the time and mileage limitations argument advanced by Defendant is premature. Indeed, as Plaintiffs note, "[o]ne way Plaintiffs may avoid [the] durational limits of Defendant's warranty is by alleging facts sufficient to show that the warranty is unconscionable." (Pl. Opp. Br. at 21)(citing *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628 *12 (D.N.J. Jan 24, 2014)(compiling cases). The *Skeen* matter is quite similar to this action. There, the Plaintiffs brought a putative class action against BMW asserting that certain MINI Cooper vehicles suffered from "a latent defect in a part of the engine known as the 'timing chain tensioner' which causes the part to fail prematurely." *Skeen, supra* at 1. Those vehicles were subject to "an express warranty of 48 months or 50,000 miles, whichever came first." *Id.* at 1. Plaintiffs there alleged that the warranty period was "not fatal to their warranty claims because Defendants [therein] knew the defects would manifest and manipulated the warranty term to make sure it did not happen until after the warranty term expired." *Id.* at 1.

BMW moved to dismiss the various claims, including the breach of warranty claim asserting that the malfunction occurred after the warranty period expired, and therefore no claim could stand. *Id.* at 1, 4. The Court denied the motion regarding the warranty claim. *Id.* at 4, 15-16. According to the Court, Plaintiffs had sufficiently pled both substantive and procedural unconscionability. *Id.* Specifically, the Court noted that Plaintiffs were in a significantly weaker bargaining position than the manufacturer because the "preprinted" warranty left the purchasers

with no meaningful choice in setting the terms of said warranty," and therefore satisfied the procedural unconscionability requirement. *Id.* at 43 (citing *Delta Funding Corp. v. Harris*, 189 N.J. 28, 55 (N.J. Sup. Ct. 2006)(Zazzali, J., concurring in part and dissenting in part)). Moreover, the Court concluded that substantive unconscionability was also sufficiently pled because plaintiffs alleged that defendant knew the timing chain tensioner would fail and the warranty was manipulated in such a manner so that defendant could avoid paying for it. *Id.* at 41-42. Thus, the Court was satisfied that plaintiffs met the unconscionability pleading standard.

This Court is also satisfied that Plaintiffs have pled both substantive and procedural unconscionability. Substantive unconscionability occurs when "the term is 'excessively disproportionate,' involving an exchange of obligations so one-sided as to shock the court's conscience." *Skeen*, *supra* at 12. "[P]rocedural unconscionability focuses on the circumstances of the negotiation that produced the contested term," and typically is present when a party has "no meaningful choice" in negotiating the term due to "a gross disparity in bargaining power." *Id.* (quoting *Henderson v. Volvo Cars of North America, LLC*, 2010 WL 2925913, *9 n.6 (D.N.J. Jul. 21, 2010)).

Here, both forms of unconscionability have been pled. Just as in *Skeen*, Plaintiffs have pled that Defendant was well aware of the defect in their vehicles' Timing Chain Systems. (Compl. ¶¶ 2, 5, 11, 110, 256). Plaintiffs further pled that said defect manifests during and/or shortly after the warranty period, but prior to the end of the Class Vehicles' useful lives. (Compl. ¶¶ 5, 33, 94, 110, 139-41, 144, 150, 248). Moreover, Plaintiffs allege that Defendant had superior knowledge regarding said defect. (Compl. ¶¶ 11, 107, 110, 122). Additionally, Plaintiffs have pled that they had no meaningful choice in determining the temporal and/or mileage limits of the NLVWs.

(Compl. ¶ 162). Finally, Plaintiffs allege that the NLVWs were drafted by Defendant, without any input, let alone meaningful input, from Plaintiffs, that there was a gross disparity in bargaining power in favor of Defendant, the terms of the NLVWs unreasonably favored Defendant, and Defendant was aware of the defect at the time of sale. (Compl. ¶¶ 162-, 165-72, 256).

Based on the above, Plaintiffs have sufficiently pled that the express warranties were unconscionable. It is important to note that this Court is not declaring the NLVWs unconscionable at this time. Rather, at the Motion to Dismiss stage, the Court is merely satisfied that Plaintiffs have alleged sufficient facts to support the assertion that the NLVWs are unconscionable. Should Plaintiffs be able to, through discovery, elicit sufficient evidence to support the allegations the NLVWs' limitations may not be applicable, and Defendant's defense of this claim based on said limitations would not be viable. Accordingly, and since this is a fact sensitive inquiry, dismissal at this time is inappropriate.

Defendant's next argument in support of dismissal of the express warranty claims is that the NLVWs "cover only repairs to correct 'a manufacturer's defect in material and workmanship.'" (Def. Mov. Br. at 22). In essence, Defendant asserts that the Timing Chain System defect is a "design defect" and therefore is not covered by the NLVWs. (Id.). For this reason, Defendant argues that the express warranty claims must be dismissed.

The Court is not persuaded by this argument either. Courts within this district have refused to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation. *See Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010)(Hayden, J.)(holding that "where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both,

the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); *see also Cox v. Chrysler Grp., LLC*, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015)(same). This Court agrees with the *Alin* and *Cox* opinions. Indeed, Plaintiffs' Complaint contains sufficient factual allegations to assert a breach of the warranty, regardless of whether the defect is in design or in manufacturing and workmanship. (Compl. ¶¶ 94-100, 108, 126-29, 201, 251-53).

Moreover, even if the NLVWs only cover design defects, Plaintiffs' allegations specifically point to defects in the materials and/or the workmanship. The Complaint describes how various materials within the Timing Chain System break and/or fail, and how that failure leads to the motor failing in general. (Compl ¶¶ 94-100). Plaintiffs also make allegations regarding how the material used in the ratchet pawl sintered metal is defective and fails over time. (Compl. ¶¶ 126-29). These allegations were designed to point to specific materials and/or workmanship that contained defects known to Defendant, which by its own admissions and arguments, would be covered by the NLVWs. Accordingly, the Court is satisfied that Plaintiffs have sufficiently pled claims for breach of the NLVWs.

Additionally, Defendant argues that Plaintiffs failed to comply with the notice requirements of the NLVWs, warranting dismissal of their express warranty claims. (Def. Mov. Br. at 23). Defendant asserts that the States of Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, South Carolina, Texas, and Washington, and the Commonwealth of Pennsylvania, all have pre-suit notice requirements for breach of warranty

claims. (Id.). Defendant avers that not a single Plaintiff has complied with said pre-suit notice requirements, and therefore the claims must be dismissed. (Id. at 23-24).

However, this argument also fails. Defendant's reliance on the Uniform Commercial Code ("UCC") § 2-607 is misplaced. That provision requires a buyer of a product that allegedly breaches an express warranty to provide the *seller* of a product with notice within a reasonable time after the breach is discovered or when the buyer should have discovered said breach. *See* UCC § 2-607(3)(a). However, Defendant here is not the direct seller of the vehicles, but rather the remote manufacturer and/or seller.

Pre-suit notice is not reuired when the action is brought against a remote manufacturer and/or seller. *See Strzakowlski v. Gen. Motors Corp.*, 2005 WL 2001912, *3 (D.N.J. Aug. 16, 2005). There, the Court explained that it "has previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a *remote manufacturer who was not the immediate seller of a defective product.*" *Strzakowlski, supra* at *3 (emphasis added). The Court further held that even if notice was required, notice would be satisfied merely by filing the Complaint. *Id.* at *3. Additionally, Plaintiffs need not give a remote manufacturer and/or seller pre-suit notice in California, Florida, Georgia, Michigan, New Jersey, New York, Ohio, Pennsylvania, and Washington. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010)(under California law, pre-suit notice excused with respect to remote manufacturer with whom consumer did not deal); *Strzakowlski v. Gen. Motors Corp.*, 2005 WL 2001912, *3 (D.N.J. Aug. 16, 2005)(New Jersey does not require notice to remote manufacturer and, if it did, filing complaint would satisfy notice); *In re MyFord Touch Consumer Litig.* 46 F. Supp. 3d 936, 975-979 (N.D.

Cal 2014)(surveying states: in Florida, notice not required to manufacturer; in Ohio and Pennsylvania, the filing of a complaint satisfies notice); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109-1110 (S.D. Ind. 2001)(surveying cases: in Pennsylvania, Michigan, New York, and Georgia, the filing of a complaint satisfies notice requirement); *Cats v. Monaco RV, LLC*, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016)(the State of Washington does not require notice to remote sellers, and, if required, taking vehicle to dealer for repair satisfied notice). As for Illinois, Indiana, and Minnesota, the notice requirement is satisfied when, as alleged here, the manufacturer is aware of the defect with the goods. *See In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799-800 (N.D. Ill. 2016) (Ill. law); *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781-82 (7th Cir. 2011) (Ind. law); *Church of the Nativity of Our Lord v. Watpro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992). Accordingly, the Court concludes that Plaintiffs, in certain circumstances, were not required to provide Defendant with any pre-suit notice, and, in cases where pre-suit notice was required, Plaintiffs satisfied said requirement by simply filing their Complaint. Hence, dismissal on this ground is also unwarranted.

Finally, Defendant argues that a four-year statute of limitations bars any express warranty claims by Plaintiffs from Connecticut, New York, Ohio, and Texas. (Def. Mov. Br. at 27; Def Rep. Br. at 28-29). Defendant cites to Conn. Gen. Stat. §42-2-725(1)-(2); N.Y. U.C.C. Law § 2-725; Ohio Rev. Code §1302.98; Tex. Bus & Com. Code Ann. §2.725 in support of this contention. (Def. Mov. Br. at 27). Those statutes impose a four-year statute of limitations for repair and replace warranties, such as the NLVWs. None of these statutes of limitations have a discovery

rule. *See* Conn. Gen. Stat. §42a-2-725(1)-(2); N.Y. U.C.C. Law § 2- 725; Ohio Rev. Code §1302.98; Tex. Bus & Com. Code Ann. §2.725.

Resolving this argument would require the Court to engage in a choice of law analysis. However, as noted above, this Court will not engage in a choice of law analysis at this juncture. Yet, this does not preclude the Court from rendering a determination, since Plaintiffs have properly alleged grounds for equitable tolling of the statute of limitations. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2008 WL 4126264, at \*17 (D.N.J. Sept. 2, 2008); *Simpson v. Widger*, 311 N.J. Super. 379, 391 (N.J. Super. Ct. App. Div. 1998)("[T]he presence of fraud may toll the running of the statute" for breach of warranty claims).

For fraudulent concealment to toll the statute of limitations a plaintiff must plead "(1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 523 (D.N.J. 2008).

The Court is satisfied that Plaintiffs have met all three elements of the above standard. Specifically, Plaintiffs allege that "Defendant[] wrongfully and intentionally concealed a defect in the [Timing Chain System] of the Class Vehicles, which can fail at any time." (Compl. ¶ 2). Plaintiffs further allege that Defendant had knowledge of this defect, and, despite this knowledge, Defendant has "never disclosed to Plaintiffs and members of the Classes that the defect exists or that drivers and/or occupants of the Class Vehicles [were] at risk." (Compl. ¶ 5). Additionally, Plaintiffs assert that the Timing Chain System failed far before its useful life expired. (Id.). Accordingly, Plaintiffs allege that Defendant has "wrongfully and intentionally transferred the cost

of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes by fraudulently concealing the existence of the defect, which Defendant [knew would] typically occur after the expiration of the [NLVWs]." (Id.). Moreover, Plaintiffs assert and allege that despite their due diligence, they were incapable of ascertaining the defect, partly due to Defendant's alleged fraudulent concealment. (Compl. ¶¶ 10-12, 14, 106-10, 144-60, 195-202).

While this Court is not concluding that Defendant did in fact fraudulently conceal the defect in the Timing Chain System, it is satisfied that Plaintiffs have sufficiently pled same. Since Plaintiffs have successfully pled fraudulent concealment, the statute of limitations may be equitably tolled. Accordingly, the Court finds that it is inappropriate to dismiss the express warranty claims at this juncture. Defendant may renew this argument at a later point, should discovery tend to indicate that no fraudulent concealment occurred.

### F. Plaintiffs Have Successfully Pled a *prima facie* Cause of Action for a Breach of the Implied Warranty of Merchantability

Similarly, Defendant argues that Plaintiffs' claims for breach of the implied warranty of merchantability must be dismissed for the following reasons: 1) the implied warranties expired prior to the manifestation of the defect and the Class Vehicles are merchantable; 2) "[m]any of Plaintiff's [i]mplied [w]arranty [c]laims [m]ust [b]e [d]ismissed [b]ecause [p]laintiffs [a]re [n]ot in [p]rivity with Defendant[];" 3) Plaintiffs did not comply with the pre-suit notice requirements; and 4) certain Plaintiffs are barred by the statute of limitations. (Def. Mov. Br. at 29-36). For the reasons below, the Court disagrees with said arguments and denies Defendant's Motion to Dismiss Plaintiffs' breach of the implied warranty of merchanability claims.

Summarily, the Court disposes of arguments three and four, regarding the pre-suit notice and statute of limitations, relatively. This is because the arguments advanced in support of both

the pre-suit notice requirements and the statute of limitations are identical to those advanced by Defendant in support of dismissal of the express warranty claims. (Def. Mov. Br. at 34-35, *cf.* Def. Mov. Br. 23-25, 27-29). Accordingly, the above analysis, *supra* at 26-30, is applicable to these arguments. Hence, these arguments are not persuasive and no further analysis is necessary herein.

The implied warranty of merchantability is designed "to protect buyers from loss where the goods purchased are below commercial standards." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)(citing *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 849 (3d Cir. 1967). "In order to be merchantable, goods must be 'fit for the ordinary purposes for which such goods are used.'" *Id.* (citation omitted). "[T]o establish a breach of this warranty, a plaintiff must show, among other things, that the product at issue was defective." *Am. Atelier, Inc. v. Materials, Inc.*, 2017 U.S. App. LEXIS 851, *3 (3d Cir. Jan. 18, 2017)(citing *Altronics, supra* at 1105). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Greene v. BMW of North Am.*, 2013 WL 5287314, *2 (D.N.J. Sept. 17, 2013).

Here, despite Defendant's assertion that the Class Vehicles were merchantable, Plaintiffs have successfully pled a *prima facie* claim for breach of the implied warranty of merchantability. The Complaint contains more than sufficient factual allegations regarding the failure of the Timing Chain System, which led to failure of the vehicle in general. For example, Plaintiffs allege that when the Timing Chain System's tensioner failed the timing of the motor's valves was no longer in sync causing various internal components to bend and/or break. (Compl. ¶¶ 3,4, 34, 92). The bending and/or breaking of said components causes the motor to cease operation. (Id.). When the

motor ceased working, the vehicle no longer performed its ordinary commercial purpose of driving. (Id.). Hence, Plaintiffs have sufficiently pled that the vehicles were not merchantable.

Moreover, the latency in manifestation is insufficient to support dismissal at this juncture of this litigation. It is true that implied warranties do not extend beyond the time, or other limitations, of a good's express warranty. *See, e.g., Glass v. BMW of N. Am.*, 2011 U.S. Dist. LEXIS 149199, *49 (D.N.J. Dec. 29, 2011); *Suddreth v. Mercedes-Benz, LLC*, 2011 U.S. Dist. LEXIS 126237, *12-13 (D.N.J. Oct. 31, 2011). According to Defendant, the breach of the implied warranty of merchantability claim must be dismissed because the defect manifested itself after the NLVWs expired. However, as this Court explained above, Plaintiffs have sufficiently pled unconscionability of the NLVWs, which may result in the inapplicability of the NLVWs' time and mileage limitations. If said limitations are inapplicable, the express warranty claims may still be viable. If the express warranty claims are viable due to the unsconscionability of the limitation terms, then the implied warranty claims would remain viable as well, since the prior limitations relied on by Defendant no longer bind Plaintiffs. Accordingly, dismissal of the implied warranty claims pursuant to this argument is also inappropriate.

Finally, Defendant argues that Plaintiffs from California, Connecticut, Florida, Georgia, Illinois, New York, North Carolina, Ohio, and Washington cannot maintain an implied warranty claim because they are not in "vertical privity" with Defendant. (Def. Mov. Br. at 31-34). Indeed, those states require the parties to be in vertical privity with each other in order for a breach of implied warranty claim to lie. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *TD Props., LLC, v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991, *21-22 (S.D. Fla. Apr. 30,

2014); *Monticello v. Winnebago Indus.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005); *Ibarolla v.*

*Nutrex Research, Inc.*, 2012 U.S. Dist. LEXIS 155721, *22 (N.D. Ill. Oct. 31, 2012); *In re Scotts*

*EZ Seed Litig.*, 2013 U.S. Dist. LEXIS 73808, *24-25 (S.D.N.Y. May 22, 2013); *Kelly v. Ga.-Pac.*

*LLC*, 671 F. Supp. 2d 785, 769 (E.D.N.C. 2009); *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d

266, 269 (Ohio 2007); *Baughn v. Honda Motor Co.*, 107 Wash.2d 127, 151 (Wash. 1986).[7]

However, each of these states provides various exceptions to the vertical privity requirement; the so-called third-party beneficiary exception.[8] California, North Carolina, Florida and Washington all have exceptions to the vertical privity requirement when, as is the case here, the consumer, rather than the dealer, is the ultimate user. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014)(acknowledging the third-party beneficiary exception under California and North Carolina law); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 947-48 (C.D. Cal. 2012)(stating that in California the purchaser of a vehicle may maintain implied warranty claim against manufacturer when vehicle is purchased from authorized dealership); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014)(acknowledging the third-party beneficiary exception under Florida law); *In re MyFord Touch Consumer Litig.*, 2015 WL 5118308, *7 (N.D. Cal. Aug. 31, 2015)(acknowledging the third-party beneficiary exception under Washington law). In Georgia, the vertical privity requirement is satisfied when the manufacturer provides an express warranty, as is the case with

---

[7] The Court notes that Defendant is incorrect in its assertion that both Michigan and Nevada law require vertical privity for breach of implied warranty claims. *See Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016)(Mich. law); *Pack v. Damon Corp.*, 434 F.3d 810, 818-20 (6th Cir. 2006)(Mich. law); *Hiles Co. v. Johnston Pump of Pasadena, Cal.*, 560 P.2d 154, 157 (Nev. 1977)("[W]e believe that lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties.").

[8] The Court notes that Defendant did not address Plaintiffs' exception arguments in its reply brief. (*See generally* Def. Rep. Br.).

Defendant's NLVWs. *See Lee v. Mylan, Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011).

Finally, and similar to Georgia, Illinois' vertical privity requirement is satisfied if the manufacturer

provides a written warranty that satisfies the Magnuson-Moss Warranty Act, as, once again, is the

case with Defendant's NLVWs. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030-31

(Ill. 1988); *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 770 (Ill. 1986).

Accordingly, while a party may generally be required to be in vertical privity with its

adversary to assert a breach of implied warranty claim in California, Connecticut, Florida, Georgia,

Illinois, New York, North Carolina, Ohio, and Washington, Plaintiffs herein are not required to

meet said requirement. This is because Plaintiffs from California, North Carolina, Florida and

Washington are exempt from said requirement as they were the true consumers of the product, not

the dealer. Moreover, those Plaintiffs from Georgia and Illinois are also exempt from the vertical

privity requirement since Defendant provided express warranties to Plaintiffs hailing from these

states, which absolves Plaintiffs from the vertical privity requirement in those states. Therefore,

dismissal of the breach of the implied warranty of merchantability is inappropriate.

### G. Plaintiffs Have Pled a Claim Under the Magnuson-Moss Warranty Act

Defendant does not attack the sufficiency of Plaintiffs' Magnuson-Moss Warranty Act

("MMWA") claim. Rather, Defendant's sole argument in support of dismiss of Plaintiffs' MMWA

is premised on its anticipated dismissal of Plaintiffs' express and implied warranty claims. (Def.

Mov. Br. at 36). Indeed, a prerequisite to a MMWA claim is adequately pleading a breach of

warranty claim. *See Cooper v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 75810, *18-19

(D.N.J. Sep. 30, 2008). Here, since the Court has determined that Plaintiffs have asserted viable

breach of warranty claims, both express and implied, Plaintiffs satisfy the pleading requirement to assert an MMWA claim. Accordingly, the Court will not dismiss Plaintiffs' MMWA claims.

### H. Plaintiffs Have Article III Standing to Bring Common Law Fraud, Statutory Fraud, and Negligent Misrepresentation Claims

According to Defendant, Plaintiffs lack Article III standing to assert claims for common law fraud, statutory fraud, and negligent misrepresentation. (Def. Mov. Br. at 39). Article III standing requires Plaintiffs to allege: 1) an injury in fact; 2) causation; and 3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 560-61 (1992). Defendant does not challenge that Plaintiffs have pled both an injury in fact and redressability with regards to these claims, nor does it assert that Plaintiffs have insufficiently pled any of the three claims. (*See* Def. Mov. Br. at 39-41). Rather, Defendant focuses its argument strictly on causation and asserts that these causes of action must be dismissed because Plaintiffs' alleged injuries cannot be "traced" to Defendant. (Id.)(citing *Toll Bros., Inc. v. Twsp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009)).

The Court is satisfied that Plaintiffs have more than sufficiently pled causation. Plaintiffs point to Defendant's knowledge of the defects in the Timing Chain System and allege that it concealed same. (*See, e.g.*, Compl. ¶¶ 2, 5, 11). As a matter of fact, Plaintiffs allege Defendant acknowledged the issue in their TSBs. (*See, e.g.*, Compl. ¶¶ 12, 111-25). The concealment of this information, Plaintiffs assert, was fraudulent, negligent and the sole reason they suffered damages in the form of a malfunctioning vehicle and the costs associated with repairing same, as well as higher operation costs due to the inefficiency of the motor. (*See, e.g.*, Compl. ¶¶ 105, 108, 145, 149, 150-58). Hence, the Complaint contains ample allegations of the injury Plaintiffs suffered, and, more importantly, Defendant's role in causing said injury. Therefore, the Court holds that Plaintiffs have Article III standing to bring this action.

## I. Plaintiffs Have Pled Their Common Law Fraud Claims with Particularity

Next, Defendant asserts that, while the 22 different states laws implicated in this action all have different common law fraud pleading standards, they all require that fraud be pled with particularity, and argues that Plaintiffs have failed to meet this heightened pleading standard. (Def. Mov. Br. at 41-42). In making this argument, Defendants advance the following sub-arguments: 1) Plaintiffs failed to plead an actionable misrepresentation; 2) Plaintiffs failed to plead any omission Defendant was under a duty to disclose (based on varying state laws); 3) Plaintiffs cannot maintain a fraud claim because their vehicles outlasted the time and mileage durations in the NLVWs; and 4) certain claims by Plaintiffs are barred by the economic loss doctrine. (Def. Mov. Br at 42-59). For the reasons below, the Court is not persuaded by any of these arguments.

First, the Court disposes of arguments three and four above. Argument three relies on the expiration of the NLVWs. (Def. Mov. Br. at 57). For that argument to succeed, this Court would need to conclude that the time and mileage limitations set forth in the NLVWs are applicable to these Plaintiffs. This is because of the fact that, generally speaking, permitting common law fraud claims beyond the scope of the express warranty would effectively extend the express warranty. *See, e.g., Duffy v. Samsung Elecs. Am., Inc.,* 2007 U.S. Dist. LEXIS 14792, *22-23 (D.N.J. Mar. 2, 2007); *Noble v. Porsche Cars N. Am., Inc.,* 694 F. Supp. 2d 333, 337-38 (D.N.J. 2010); *Nobile v. Ford Motor Co.,* 2011 U.S. Dist. LEXIS 26766, *15-16 (D.N.J. Mar. 14, 2011). However, while the Court has not reached the complete opposite conclusion (*i.e.* that the limitations are not applicable to Plaintiffs), this Court has concluded that Plaintiffs have sufficiently pled that said limitations are potentially unconscionable. Since the Court has reached such a conclusion, the applicability of the NLVWs' limitations remains unknown.

As noted above, should Plaintiffs succeed at proving the alleged unconscionability of the NLVWs' limitations, the warranty period may not be applicable to Plaintiffs. If the limitations are not applicable to Plaintiffs, then their common law fraud claims would no longer be bound to the time and mileage limitations contained therein. Accordingly, the Court will not dismiss said claims based on the time and mileage limitations contained in the NLVWs.

Additionally, the Court will not dismiss the claims pursuant to the economic loss doctrine. Under that doctrine, a plaintiff who is dissatisfied with a product must bring a breach of contract or warranty claim. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 871-72 (1986). Florida, Michigan, New Hampshire, New Jersey, North Carolina, Ohio, Pennsylvania, and South Carolina all extend the economic loss doctrine to fraud based claims, such as those advanced by Plaintiffs here. *See Burns v. Winnebago Indus., Inc.*, 2013 U.S. Dist. LEXIS 116377, *9 (M.D. Fla. Aug. 16, 2013); *Murphy v. P&G*, 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010); *In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 144790, *73-74 (D.N.J. Oct. 26, 2015) (Linares, J.)(applying New Hampshire law); *Park v. Inovio Pharms., Inc.*, 2016 U.S. Dist. LEXIS 24993, *4-6 (D.N.J. Mar. 1, 2016); *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 225-26 (S.D.N.Y. 2001); *Malone v. Tamko Roofing Prods.*, 2013 U.S. Dist. LEXIS 145530, *6 (W.D.N.C. Oct. 8, 2013); *Galoski v. Stanley Black & Decker, Inc.*, 2015 U.S. Dist. LEXIS 114663, *19-21 (N.D. Ohio Aug. 28, 2015); *Sabol v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 92341, *17 (E.D. Pa. July 16, 2015); *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009).

However, each of these states also have exceptions to the general rule that permit all of Plaintiffs' claims to proceed. New York law does not apply the economic loss doctrine to "claims

of misrepresentation and fraud." *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, *35 (D.N.J. Jul. 29, 2015)(citing *Weisblum v. Prophase Labs, Inc.*, 2015 WL 738112, *12 (S.D.N.Y. Feb. 20, 2015)). New Jersey, Florida, North Carolina, Pennsylvania, New Hampshire, and South Carolina law also do not apply the economic loss doctrine to fraud based claims when a plaintiff alleges fraudulent inducement or that the defendant violated an extrinsic duty. *See Smith v. Citimortgage, Inc.*, 2015 WL 12734793, *7 (D.N.J. Dec. 22, 2015)(Linares, J.)(under New Jersey law, "fraud [based] claims that are extrinsic to the underlying contract, such as for fraudulent inducement, are not" barred by economic loss doctrine); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 965-67 (N.D. Cal. 2014)(holding that the economic loss doctrine does not bar fraudulent inducement claims under Florida or North Carolina law); *Stein v. Fenestra Am., L.L.C.*, 2010 WL 816346, *4 (E.D. Pa. Mar. 9, 2010)(finding that the economic loss doctrine does not apply under Pennsylvania law where the fraud is "extraneous to the contract"); *Wyle v. Lees*, 162 N.H. 406, 411 (N.H. 2011)(holding that the economic loss doctrine does not apply to fraudulent inducement); *Simons v. Wal-Mart Stores E., L.P.*, 2013 WL 393998, *5 (D.S.C. Jan. 31, 2013)("The economic loss rule does not bar tort claims where a defendant voluntarily assumes a duty to use due care over and above the duty required by the contract."). Similarly, Michigan and Ohio's economic loss doctrine does not bar fraud claims by consumers who are not in contractual privity with the defendant. *See Republic Ins. Co. v. Broan Mfg. Co., Inc.*, 960 F. Supp. 1247, 1249 (E.D. Mich. 1997) (Michigan's economic loss doctrine "has no application outside the commercial realm."); *Blackward v. Simplex Prods. Div.*, 2001 WL 1255924, *3 (Mich. Ct. App. Oct. 19, 2001) ("The economic loss doctrine as adopted in Michigan clearly distinguishes between transactions involving the sale of goods for commercial purposes, where there are

economic expectations attached to the purchases, and those involving the sale of defective products which result in losses traditionally remedied by resort to tort law."); *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 706 (D.N.J. 2013)(find that the economic loss doctrine does not bar negligence claims under Ohio law for claims brought by consumer not in privity with manufacturer); *n re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d. 936, 968 (N.D. Cal. 2014) (same).

Here, Plaintiffs' common law fraud claims fall into each their home state's exception to the economic loss doctrine. Plaintiffs' fraud claims are simply exempt from New York's economic loss doctrine. As for the Ohio and Michigan Plaintiffs, their claims also survive since, as established above, the parties were never in privity with each other. Finally, the New Jersey, Florida, North Carolina, Pennsylvania, New Hampshire, and South Carolina Plaintiffs' fraud claims also survive because they have adequately pled fraud claims based on fraudulent inducement.

Additionally, Plaintiffs have pled actionable misrepresentation. Defendant asserts that "Plaintiffs never allege that Defendants actually made any affirmative misrepresentations that Plaintiffs relied upon regarding the timing chain system or the useful life of the vehicles in the Warranty Manuals or elsewhere." (Def. Mov. Br. at 43). This is simply not true, as Plaintiffs have done exactly that. Specifically, Plaintiffs allege that Defendant's sale and marketing departments advertised and otherwise misrepresented to Plaintiffs that the Class Vehicles would last over 120,000 miles or ten years without needing to service the Timing Chain System. (Compl. ¶¶ 8, 142-43, 156-57). These misrepresentations were made in the NLVWs and Maintenance schedules. (Compl. ¶¶ 83, 94). Plaintiffs further allege that Defendant misrepresented that the NLVWs would

cover all defects occurring within the mileage limitations despite the fact that they knew it intended to deny coverage for anything that it deemed a "design defect," without actually ever defining that term. (Compl. ¶¶ 9-10). Additionally, Plaintiffs assert that Defendants misrepresented that the NLVWs would cover all engine parts while knowing that the Timing Chain System would likely fail outside the warranty period and refused to cover same during the warranty period. (Comp. ¶¶135-37). Finally, Plaintiffs allege "Defendants misrepresented the that the Timing Chain System failures were the result of other conditions not covered under [the NLVWs]." (Pl. Opp. Br. at 52)(citing Compl. ¶ 149).

These alleged misrepresentations, which, at this point in the litigation the Court must accept as true, were not simply puffery, but actual misstatements of fact. *See Castol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993). Accordingly, Plaintiffs have successfully pled actionable misrepresentations to support their common law fraud claims.

Lastly, Defendant asserts Plaintiffs have failed to plead any omission of information that it had a duty to disclose. (Def. Mov. Br. at 46). According to Defendant, New Jersey, Georgia, Illinois, and South Carolina laws create a duty to disclose only if there is a fiduciary or other special relationship between the parties. (Id.)(citing *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 319 N.J. Super. 435, 446 (N.J. Super. Ct. App. Div. 1998); *Lilliston v. Regions Bank*, 653 S.E.2d 306, 309 (Ga. Ct. App. 2007); *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (applying Illinois law); *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 510 (S.C. Ct. App. 2002)). Defendant further argues that in Arkansas, "plaintiffs and defendants must be in either a fiduciary relationship or in contractual privity for a duty to disclose to attach." (Id.)(citing *Perez v. Volkswagen Grp. of Am.*, 2013 U.S. Dist. LEXIS 54845, *29-30 (W.D. Ark. Apr. 17, 2013)).

Ohio and Texas laws are similar and also only impose a duty to disclose when there is a fiduciary or special relationship, or when a defendant makes a misleading partial disclosure. *See Gator Dev. Corp. v. VHH, Ltd.*, 2009-Ohio- 1802, ¶ 28 (Ohio Ct. App. Apr. 17, 2009); *Yoon v. Yoo*, 2016 U.S. Dist. LEXIS 129268, *8 (N.D. Tex. Feb. 24, 2016). Defendant further asserts that arm's-length transactions between a manufacturer and consumer does not give rise to such a relationship and therefore no duty to disclose existed here. (Def. Mov. Br. at 47)(citing *Stevenson v. Mazda Motor of Am., Inc.*, 2015 U.S. Dist. LEXIS 70945, *27 (D.N.J. June 2, 2015); *Coba v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 8366, *37 (D.N.J. Jan. 22, 2013)). Hence, Defendant concludes that since there is no fiduciary or other special relationship, and, with regards to the Ohio and Texas Plaintiffs, no partial disclosures were made, it had no duty to disclose and the common law fraud claims must be dismissed. (Def Mov. Br. at 47-49).

However, as Defendant acknowledges (*see* Def. Mov. Br. at 49-55), "the laws of the majority of [Plaintiffs'] home states recognize a duty to disclose where the defendant possesses exclusive or superior knowledge or actively conceals the omitted information."[9] (Pl. Mov. Br. at 46-47 (citing Def. Mov. Br. at 49)); *see also Song Fi, Inc. v. Google, Inc.*, 2016 U.S. Dist. LEXIS 45547, *22 (N.D. Cal. Apr. 4, 2016); *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998); *Bac Home Loans Serv. v. Farina*, 2010 Conn. Super. LEXIS 4929, *1-2 (Conn. Super. Ct. June 2, 2010); *Mukamal v. GE Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013); *Fifth Third Bank v. Double Tree Lake Estates, LLC*, 2013 U.S. Dist. LEXIS 20234, *21-22 (N.D. Ind. Feb. 12, 2013); *Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004); *Dean v. Beckley*, 2010 U.S. Dist.

---

[9] Specifically, this is applicable to Plaintiffs from New York, California, Colorado, Connecticut, Florida, Indiana, Kansas, Michigan, Minnesota, New Hampshire, Maryland, North Carolina, Pennsylvania, Washington and Nevada.

LEXIS 105007, *16 (D. Md. Oct. 1, 2010); *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 551, 553 (W.D. Mich. 1998); *Graphic Commc'ns. Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014); *Heldenbrand v. Multipoint Wireless, LLC*, 2012 U.S. Dist. LEXIS 150634, *13- 14 (D. Nev. Oct. 18, 2012); *King v. Philip Morris, Inc.*, 2000 N.H. Super. LEXIS 5, *26 (N.H. Super. Ct. 2000); *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, N.V., 68 F.3d 1478, 1483-84 (2d Cir. 1995) (applying New York law); *McKee v. James, 2013 NCBC 38*, ¶ 51 (N.C. Super. Ct. 2013); *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 586 (W.D. Pa. 2004); *White v. Zhou Pei*, 452 S.W.3d 527, 537-38 (Tex. App. 2014); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 U.S. Dist. LEXIS 112101, *17-18 (W.D. Wash. Mar. 27, 2015) (citation omitted).

Here, Plaintiffs from New York, California, Colorado, Connecticut, Florida, Indiana, Kansas, Michigan, Minnesota, New Hampshire, Maryland, North Carolina, Pennsylvania, Washington and Nevada have all sufficiently pled Defendant's superior knowledge with regards to the defect in the Timing Chain System. Specifically, Plaintiffs point to various pre-production testing, design failure mode analysis, early consumer complaints, warranty data gathered from the various dealerships, consumer complaints to the NHTSA, and Defendant's testing performed in response to consumer complaints in support of the fact that Defendant had superior, and potentially exclusive, knowledge regarding the defect. (Compl. ¶ 107). Plaintiffs have also alleged the presence of various TSBs and Defendant's decision to redesign the Timing Chain System as further proof of its superior knowledge. (Compl. ¶¶ 112-30). Plaintiffs further contend that Defendant took steps in order to conceal the defect in order to shift the cost of repair to Plaintiffs. (Compl. ¶¶ 2, 5, 10, 11-12, 14, 106-07, 110, 121, 144, 146, 149, 151-52, 156-57, 160-61, 189, 191,

193).  Indeed, these allegations are sufficient to impose a duty to disclose on Defendant.  *See, e.g.,*

*Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, *17 (D.N.J. Oct. 9, 2013); *In*

*re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Feldman v.*

*Mercedes–Benz USA, LLC*, 2012 WL 6596830, *11 (D.N.J. Dec. 18, 2012).  Accordingly, the

Court concludes that the New York, California, Colorado, Connecticut, Florida, Indiana, Kansas,

Michigan, Minnesota, New Hampshire, Maryland, North Carolina, Pennsylvania, Washington and

Nevada Plaintiffs have sufficiently pled a duty to disclose and the Court will not dismiss their

common law fraud claims.

 The Court comes to the same conclusion as to the Georgia, Illinois, Ohio, South Carolina,

and Texas Plaintiffs.  In those jurisdictions, Defendant owed a duty to disclose safety defects.  *See,*

*e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368- 70 (N.D. Ga. 2013)(imposing a duty to

disclose where "safety defects with gasoline tanks … could not have been discovered through the

exercise of ordinary prudence and caution [by plaintiffs]" and allowing the fraud by omission

claims under Georgia and Texas law to proceed); *In re Takata Airbags Prods. Liability Litig.*, No.

15-md-2599, slip op. at 13-14 (S.D. Fla. Sept. 21, 2016)("South Carolina law does not always

require a fiduciary relationship for a duty to disclose to exist")(citing *Fisher v. Pelstring*, 817 F.

Supp. 2d 791, 823 (D.S.C. 2011)); *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599,

slip op. at 11, 15, 21-22 & 31 (S.D. Fla. Oct. 14, 2016)(permitting fraudulent concealment claims

to proceed under Ohio, Georgia and Illinois law based on duty to disclose safety defects).  Plaintiffs

here have specifically pled that the defect in the Timing Chain System created safety concerns,

and, despite Defendant's knowledge of the defect and the safety concerns associated with same,

Defendant chose not to disclose the defect to Plaintiffs.  (Compl. ¶¶ 4, 10).  Hence, Defendant had

a duty to disclose the safety defect under Georgia, Illinois, Ohio, South Carolina, and Texas law and Plaintiffs claims pursuant to this theory of liability will not be dismissed.

Finally, New Jersey law imposes a duty to disclose when a defendant has made a partial disclosure. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true"). Here, Plaintiffs have made allegations with respect to Defendant's partial disclosures regarding the Class Vehicles. Plaintiffs rely on the maintenance schedules which, *inter alia*, identify engine parts and components that require routine maintenance and/or replacement at certain points throughout the lifespan of the vehicle. (Compl. at Exs. A, B). According to Plaintiffs' Complaint, "Defendant represents in the maintenance schedules that the timing belt, which performs the same function as the Timing Chain System, will need service after a certain time but makes no representation that the Timing Chain System will need maintenance." (Pl. Opp. Br. at 51 (citing Compl. ¶ 83)). Accordingly, Plaintiffs have pled that Defendant made partial disclosure regarding the Class Vehicles. Since Defendant allegedly made said partial disclosures, it had a duty to fully disclose any and all information regarding the Timing Chain System to Plaintiffs under New Jersey law. Hence, Plaintiffs have pled a viable claim for common law fraud based on Defendant's duty to disclose under New Jersey law, and dismissal would be inappropriate.

### J.  Plaintiffs Have Successfully Pled Claims for Negligent Misrepresentation

First, the parties agree the Arkansas does not recognize negligent misrepresentation claims. (Def. Mov. Br. at 59; Pl. Opp. Br. at n.41). Accordingly, Plaintiffs claim for negligent misrepresentation under Arkansas is hereby dismissed.

Defendant argues that the rest of the negligent misrepresentation claims must be dismissed for three reasons: 1) certain states do not permit a negligent misrepresentation claim to lie absent an express, false statement, and therefore cannot be based on an omission; 2) certain states permit omission claims, but only when there is a special relationship;[10] and 3) aside from Kansas and Texas, the economic loss doctrine bars suit for economic damages based on tort theories. These arguments are unconvincing.

First, negligent misrepresentation may be actionable in New York and Michigan even when the claim is based on an omission. *See Williams v. Polgar*, 215 N.W.2d 149 (Mich. 1974)(permitting a negligent misrepresentation claim against an abstracter when he or she omits a recorded deed in a title abstract after failing to conduct a reasonable investigation); *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 17-18 (N.Y. App. Div. 2012)("To state a cause of action for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact"). Hence, the New York and Michigan Plaintiffs may have an actionable claim under the relevant laws of their forum states and dismissing the claim, at this juncture, would not be proper.

Defendant's argument that the negligent misrepresentation claims must be dismissed because there is no special relationship between the parties is equally unpersuasive. This is because, as discussed above, claims based on affirmative misrepresentations and omissions by a vehicle manufacturer may lie when the manufacturer has exclusive or superior knowledge regarding the defect or if the defect relates to a safety concern. The Court has already concluded that, for purposes of this motion, Defendant, at the very least, had superior knowledge regarding the defect and that the defect here potentially implicates safety concerns. Accordingly, at this point

---

[10] Defendant relies on its pervious arguments regarding the lack of a special relationship.

in the litigation, Plaintiffs' claims for negligent misrepresentation by Defendant is sufficient as no special relationship is necessary.

Finally, the economic loss doctrine does not bar Plaintiffs' negligent misrepresentation claims. First, as Plaintiffs note, Defendant concedes that this argument is inapplicable to the Kansas and Texas Plaintiffs, and therefore dismissal of those claims pursuant to this argument is not warranted.[11] Moreover, the remainder of the jurisdictions all have exceptions to the economic loss doctrine. Specifically, those states allow claims to proceed when the tort claim is based on conduct that is either independent of a contract or where there is a risk of personal injury. *See, e.g., United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (discussing Colorado law and the applicability of the economic loss doctrine); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Ulbrich v. Groth*, 310 Conn. 375, 406 (Conn. 2013); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 746 (Ind. 2010); *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 147-48 (Ga. Ct. App. 1999); *In re Chi. Flood Litig.*, 680 N.E.2d 265, 274-75 (Ill. 1997); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 265-66 (Md. Ct. App. 2007); *80 S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc.*, 486 N.W.2d 393, 399 (Minn. 1992); *Phillips v. Dignified Transition Sols.*, 2014 WL 4294972, *7 (D. Nev. Aug. 28, 2014); *Johnson v. Capital Offset Co.*, 2013 WL 5406613, *3 (D.N.H. Sept. 25, 2013); *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 1134453, *6, n.7 (E.D.N.C. Jan. 25, 2011); *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, 2007 WL 894833, *6 (S.D. Ohio Mar. 22, 2007); *Brand Mktg. Grp. LLC v. Intertek Testing Servs.*, N.A., Inc., 801 F.3d 347, 354 (3d Cir. 2015) (applying Pennsylvania economic loss doctrine); *Jackson v. City of Seattle*, 244 P.3d 425, 431 (Wash. Ct.

---

[11] The Court notes that Defendant did not advance any argument with regards to Colorado's application of the economic loss doctrine to these claims.

App. 2010); *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004). Plaintiffs' negligent misrepresentation claim is independent of any contractual claim. (Compl. ¶ 4; *see also* n.5 *supra*). Plaintiffs have also alleged that potential for personal injury in connection with the allegedly defective Timing Chain System. (Compl. ¶ 4). For these reasons, as well as those set forth in Subsection I *supra*, the Court will not dismiss Plaintiffs' negligent misrepresentations claims as being barred by the economic loss doctrine.

### K. Plaintiffs' Have Sufficiently Pled Claims for Unjust Enrichment

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because they have an adequate remedy at law. (Def. Mov. Br. at 61)(citing *In re Ford Tailgate Litig*, 2014 U.S. Dist. LEXIS 119769, *12-17, n.3 (N.D. Cal. Aug. 8, 2014). Essentially, Defendant asks this Court to dismiss the unjust enrichment claims because Plaintiffs have asserted other viable, legal remedies. (Def. Mov. Br. at 62)(citing *Ebner v. Fresh, Inc.*, 2016 U.S. App. LEXIS 4875, *17-18 (9th Cir. Mar. 17, 2016)(additional citations omitted). This argument is meritless.

To assert a *prima facie* cause of action for unjust enrichment a plaintiff must allege that: "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it." *In re K-Dur*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)(citing Restatement of Restitution § 1 (1937)); *see also VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. Sup. Ct. 1994)(stating that a plaintiff seeking to assert a claim for unjust enrichment must establish that "defendant received a benefit[,] and that retention of that benefit without payment would be unjust[,] … [and plaintiff] expected remuneration from

the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.").[12]

Plaintiffs here have sufficiently pled claims for unjust enrichment. Indeed, they claim that Defendant received a benefit at Plaintiffs' expense. Specifically, they allege that Defendant benefited, at Plaintiffs' expense, when they sold Plaintiffs a vehicle that would not operate properly until the end its purported usual lifespan. (Compl. ¶¶ 1, 2, 5, 9-10). Said differently, Plaintiffs allege that they received a vehicle that was inferior to the vehicle they thought they were purchasing, yet the price they paid was the price for a supposedly better functioning vehicle they thought they were purchasing. Hence, Plaintiffs have pled that Defendant has been unjustly enriched at their expense.

This claim is pled in the alternate to the other claims in the Complaint. (Pl. Opp. Br. at 63). Pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, a party "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2); *see also Verizon N.J., Inc. v. Ntegrity Telecontent Servs., inc.*, 219 F. Supp. 2d 616, 635 (D.N.J. 2002). Therefore, Defendant's argument that Plaintiffs' unjust enrichment claims are duplicative fails. For these reasons, the Court concludes that Plaintiffs have pled an alternate *prima facie* causes of action for unjust enrichment, and therefore does not dismiss said claims.

---

[12] The Court notes that there are no material differences between jurisdictions regarding the law of unjust enrichment. Accordingly, the Court analysis same under New Jersey law. *See Tele Aid*, 257 F.R.D. at 58 ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict.").

### L. Plaintiffs' Have Sufficient Pled Their Statutory Consumer Fraud Claims

As noted above, Plaintiffs have all brought consumer protection claims pursuant to each Plaintiff's local state laws. According to Defendant, the state law consumer protection claims must be dismissed for the following reasons: 1) all of the claims fail to satisfy Fed. R. Civ. P. 9(b) as they lack particularity; 2) eighteen of the state law claims must be dismissed because they fail to allege practices that are likely to deceive ordinary customers; 3) the Arkansas and New York claims must be dismissed because they fail to plead any injury other than diminution of the value of the vehicles; 4) the Georgia and Indiana claims must be dismissed because those states do not recognize omission based claims; 5) Colorado, Georgia, and South Carolina laws do not recognize classwide claims for damages under their consumer protection statutes; 6) Georgia, California and Minnesota's consumer protection statutes do not allow for monetary damages, only equitable relief; 7) the economic loss doctrine bars the Michigan, New Jersey, North Carolina, and Pennsylvania Plaintiffs' claims; 8) the Connecticut claims must be dismissed because Connecticut's Products Liability Act subsumes all other claims; 9) the New Jersey and California claims must be dismissed because those states will not permit a claim when a component has outlasted its warranty period; 10) the Ohio claim must be dismissed because Defendant was not placed on sufficient notice that its conduct was deceptive or unconscionable; and 11) the Connecticut and New York claims are time barred. (Def. Mov. Br. at 64-79). The Court disagrees with each of these arguments, except for the argument addressing the Ohio claims.

First, with regards to the Ohio Consumer Sales Protection Act, Defendant argues that the claim must be dismissed as it was not sufficiently on notice that its conducts was deceptive or otherwise unconscionable as defined by the Act. *See* Ohio Rev. Code § 1345.09(B). Plaintiffs

bringing claims under this act "must demonstrate that either (1) the alleged violation is an act or practice that was declares to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based, or (2) the alleged violation is an act or practice that was determined by a court to violate the [Act] and the court's decision was available for inspection before the transaction took place." *In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012). The Ohio Plaintiffs seemingly concede that they failed to sufficiently plead their claim under the Ohio Consumer Sales Protection Act, and offer to re-plead same. (Pl. Opp. Br. at 72, n.55). Accordingly, the Court dismisses the Ohio Plaintiffs' claims under the Ohio Consumer Sales Protection Act, without prejudice, and with leave to file an amended claim.

Additionally, the Court finds that Defendant is correct that each and every one of the various Plaintiffs' statutory fraud and/or violations of consumer protection laws all sound in fraud and therefore are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). The Court further finds that Plaintiffs have pled *prima facie* claims of statutory fraud and/or violations of consumer protection laws in accordance with each of their home state laws sufficient to satisfy Rule 9(b). Defendant's entire argument relies on its assertion that Plaintiffs' have supposedly failed to plead a misrepresentation by Defendant or that Plaintiffs did not plead facts to support a duty to disclose. The Court disagrees with both of these notions.

As to the duty to disclose, the Court has addressed this argument, *supra*, and has concluded that Plaintiffs' complaint contains sufficient factual allegations to support a duty to disclose claim. Accordingly, the Court adopts the above logic and conclusion. As to the particularity, the Court has discussed, in great detail, how Plaintiffs' Complaint is replete with allegations of both overt

misrepresentations and active concealment with respect to the alleged defect in the Timing Chain System. Indeed, Plaintiffs make very specific allegations about how they were supposedly misled about the defective Timing Chain System, along with misrepresentations by Defendant regarding the warranties, the useful life of the vehicle and its engine components, as well as the necessary maintenance and repairs associated with the Class Vehicles. (Compl. ¶¶ 8, 9-10, 94, 135-37, 143, 149, 157, 189-94). These allegations sufficiently place Defendant on notice regarding the specific misconduct that Plaintiffs' assert was fraudulent and deceptive in connection with the statutory fraud and/or violation of consumer protection laws. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 1574301, *15-18 (D.N.J. May 3, 2012)(Linares, J.), *affd*, 525 F. App'x 94 (3d Cir. 2013)(recognizing that the purpose of the heightened Rule 9(b) pleading standards in connection with fraud based claims is to assure a defendant is provided with notice of the "precise misconduct with which [it is] charged."). Here, the Court is satisfied that the Complaint contains sufficient allegations regarding the statutory fraud and/or consumer protection claims and meets the heightened pleading standard under Rule 9(b).

Additionally, as noted above, the economic loss doctrine does not bar Plaintiffs' fraud based claims. Those exceptions to the doctrine's applicability extend to statutory fraud and/or consumer protection claims as well. *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2008 WL 4126264, *29 (D.N.J. Sept. 2, 2008)(compiling cases that refused to dismiss New Jersey Consumer Fraud Act claims pursuant to the economic loss doctrine); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429 (E.D. Pa. 2015)(holding that the economic loss rule does not bar a Pennsylvania consumer fraud claim); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 967 (N.D. Cal. 2014)(applying North Carolina law and holding that "the consumer

protection statute here gives rise to a duty independent of the contract and therefore should not be barred by the economic loss rule"); *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 520 (E.D. Mich. 2008)(finding that Michigan's economic loss doctrine does not apply to consumer transactions). Accordingly, based on this Court's analysis above, as well as the relevant case law, the Court concludes that the economic loss doctrine does not bar the Michigan, New Jersey, North Carolina, and Pennsylvania Plaintiffs' statutory fraud and/or violation of consumer protection law claims.

Defendant's argument that the Colorado, Georgia, and South Carolina Plaintiffs' claims must be dismissed because those states do not recognize classwide claims for damages is unpersuasive for two reasons. First, as the parties are aware, the application before the Court is to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant does not attack the sufficiency of the class allegations in the Complaint, but rather directs its argument as to whether the action could proceed as a class action in general. Hence, Defendant does not address the sufficiency or insufficiency of the claims it seeks to dismiss.

Moreover, the Supreme Court has addressed this issue and has held that matters may proceed as putative class actions, regardless of whether state statutes prohibit such claims, so long as the application of Fed. R. Civ. P. 23 does not "abridge, enlarge or modify any substantive right." *Shady Grove Othopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010)(quoting 28 U.S.C. § 2072(b)). Circuit Courts applying *Shady Grove* have also held that class actions may proceed despite state statutes prohibiting such actions. *See, e.g., In re Hydroxycut Marketing and Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014)(permitting claims under Georgia, South Carolina and other state consumer protection statutes to proceed as class action under Rule 23

where state statutes do not allow class actions); *see also Lisk v. Lumber One Wood Preserving, LLC*, 792 1331 (11th Cir. 2015)(same application for Alabama consumer protection statutes). Hence, the claim may proceed as a class action and any attacks as to whether class certification is appropriate can be raised at the class certification phase.

Defendant also argues that Plaintiffs from Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas and Washington cannot maintain their claims under the relevant state statutes, because all of those statutes either require a plaintiff to plead subjective reasonable reliance on the alleged deceptive acts or "determine whether a particular practice is deceptive according to its objective tendency to deceive reasonable, ordinary, or average customers." (Def. Mov. Br. at 68)(quotations omitted). Plaintiffs do not disagree with this standard. In support of this argument, Defendant relies on its prior arguments that "Plaintiffs have failed adequately to [*sic*] the existence of, let alone reliance on, misrepresentations, omissions or other deceptive acts by" Defendant. (Def. Mov. Br. at 69).

However, as the Court explained above, Plaintiffs Complaint sufficiently pleads reliance on Defendant's alleged misrepresentations and/or omissions. This is apparent based on Defendant's alleged superior and/or exclusive knowledge of the defective Timing Chain System as well as the allegations that Defendant actively concealed same from Plaintiffs, and those similarly situated. (Compl. ¶¶ 11, 106-07, 110, 122, 143, 151, 158-61, 181). Plaintiffs further contend that these alleged misrepresentations and/or omissions would mislead purchasers, including Plaintiffs, regarding the useful life of the vehicle, the anticipated cost of repair, and the overall value and quality of the Class Vehicles. (Compl. ¶¶ 156-57, 168-, 193). Thus, for these

reasons, as well as those detailed above, the Court is satisfied that Plaintiffs have sufficiently pled that they reasonably relied on Defendant's alleged misrepresentations and/or omissions, and therefore their claims will not be dismissed for this reason.

As to the Arkansas and New York Plaintiffs, Defendant avers that these claims must be dismissed because those Plaintiffs fail to plead any damages other than a diminution of the value of their vehicles. (Def. Mov. Br. at 70). The Court disagrees. Defendant cites to case law from both jurisdictions, yet said law does not support its contention. While the Court in *Wallis v. Ford Motor Company*, 208 S.W.3d 153, 161 (Ark. 2005) did dismiss the claim there, the dismissal was because Plaintiff did not plead any "actual damage or injury," and simply pled an abstract diminution in value. The Arkansas Court noted that "actual damage or injury is sustained when the product has *actually malfunctioned or the defect has manifested itself.*" *Id.* Here, Plaintiffs from Arkansas, as well as the rest of Plaintiffs, have sufficiently pled that the malfunction has already either manifested itself in their vehicles and/or that the vehicles have already malfunctioned. (Compl. ¶ 248). Thus, the Court concludes that the Arkansas Plaintiffs have sufficiently pled their claims under the Arkansas Deceptive Trade Practices Act and the Court declines to dismiss same at this juncture.

Similarly, New York's consumer protection laws are implicated when a "plaintiff [alleges] that a deceptive practice caused him to pay more than the good or service he actually received was worth." *Servedio v. State Farms Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x. 110 (2d Cir. 2013). The *Servedio* Court held that such allegations "may be able to satisfy the injury requirement" under New York law. *Id.* New York Courts have also explained that where a consumer pays an inflated price due to deceptive conduct on behalf of a defendant that

54

"plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation." *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 n.5 (1999). Here, the New York Plaintiffs have sufficiently pled that, based on Defendant's alleged misrepresentations and/or omissions, they were caused to overpay for the supposedly defective Class Vehicles which are purportedly worth less than a defect-free vehicle. (Compl. ¶¶ 15, 183-84, 192-93). Thus, the Court will not dismiss the Arkansas and New York claims based on this argument.

Defendant argues that the Georgia and Indiana claims must be dismissed because those jurisdictions do not recognize omission based claims. (Def. Mov. Br. at 71). This assertion is correct, to the degree that both jurisdictions do not permit statutory consumer fraud claims to proceed merely on allegations of omissions. *See Energy Four, Inc. v. Dornier Med. Systems, Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991)(absent an affirmative representation that is "misleading, partially incorrect, or untrue," the "mere failure to disclose is not actionable."); *Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. Ct. App. 2009)("Indiana Code section 24-5-0.5-3(a)…does not apply to nondisclosures."). The Georgia and Indiana Plaintiffs concede the assertion that omission based claims cannot lie in these jurisdictions, but note that they have made allegations of affirmative misrepresentations, which satisfy the pleading requirements of both jurisdictions. (Pl. Opp. Br. at 71-72). Indeed, as detailed above, Plaintiffs' Complaint contains numerous allegations of affirmative misrepresentations. (Compl. ¶¶ 9, 10, 12, 135-37, 143, 149, 156, 157, 362). Those allegations, for example, include affirmative misrepresentations regarding the coverage afforded by the NLVWs, and the useful life of the vehicle. (Compl. ¶¶ 94, 135-37). Thus, the Court is

satisfied that the Georgia and Indiana Plaintiffs have pled *prima facie* claims under each their forum state's consumer protection laws.

Defendant further asserts that the California, Georgia, and Minnesota Plaintiffs' consumer fraud claims must be dismissed because those statutes allow for injunctive relief, and those Plaintiffs cannot seek injunctive relief when they have an adequate remedy at law. (Def. Mov. Br. at 72). This argument fails for numerous reasons. First, the Court has explained that Plaintiffs may plead causes of actions in the alternate under Rule 8(d)(2) of the Federal Rules of Civil Procedure. Accordingly, at the very least, these Plaintiffs may sustain these claims in the alternate. Moreover, while these Plaintiffs may ultimately be foreclosed from recovering under these statutes due to the injunctive nature of the relief, that does not necessarily preclude an award of injunctive relief for currently unascertained members of the putative class who may later be identified through discovery. For these reasons, the Court declines to dismiss the California, Georgia, and Minnesota Plaintiffs' statutory consumer fraud claims at this juncture.

As to the Connecticut Plaintiffs, Defendant argues that Connecticut's Products Liability Act subsumes any and all other claims stemming from the allegedly defective product. (Def. Mov. Br. at 75)(citing Conn. Gen. Stat. § 52-572m-q). Yet, despite Defendant's assertion that this provision forecloses *all* claims stemming from a defective product, the Connecticut Supreme Court has created exceptions to said blanket rule. *See Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769 (Conn. 2003). In *Gerrity*, the Connecticut Supreme Court found that a plaintiff may sustain both a Connecticut Products Liability Act claim along with a Connecticut Unfair Trade Practices Act claim if the Unfair Trade Practices Claim is based on financial injury caused by the allegedly defective product. *Gerrity*, 818 A.2d at 775-76. Here, Plaintiffs have pled financial injury in the

form of exacerbated costs of maintenance and repair, as well as increased ownership costs due to inefficiency. (Compl. ¶¶ 151, 189). The Court is satisfied that, at this juncture, Plaintiffs have pled a financial injury and therefore may maintain both a Products Liability claim, as well an Unfair Trade Practices Act, under Connecticut law.

Finally, the Court disagrees with Defendant's assertion that the New York, Connecticut, and Ohio statutory consumer fraud claims are time barred. (Def. Mov. Br. at 78-79). The statute of limitations under both New York and Connecticut law for consumer fraud claims is three years. *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184-85 (N.Y. 2013); Conn. Gen. Stat. § 42-110g. In Ohio, the statute of limitations for such claims is two years. *See Ohio Re. Code. Ann.*§ 1345.10(c). All three of these statutes of limitations begin running when the "violation" first occurs. *See Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007)(the "limitation period for [Connecticut Unfair Trade Practices Act] is triggered upon the occurrence of the alleged violation"); *Ohio Rev. Code Ann.* § 1345.10 (an action may not be brought "more than two years after the occurrence of the violation"); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (there must be "successful deception of plaintiffs within three years of the time the action was brought"). Defendant contends that the statute of limitations began each of the Plaintiffs from these forum states purchased their vehicles.

However, as Plaintiffs correctly note, post-sale deceptive conduct is actionable in all three of the venues. *See* Marshall v. Hyundai Motor America, 51 F. Supp. 3d 451 (S.D.N.Y. 2014)(finding that the plaintiff's consumer fraud claims under New York's General Business Law was not time barred due to "post-sale" fraud, specifically, defendant's "fail[ure] to disclose information about the defects in the brake system through adequate warnings or adequate recall

notices"); *CSL Silicones Inc. v. Midsun Grp. Inc.*, 170 F. Supp. 3d 304, 312 (D. Conn. 2016) (findind that a "[Connecticut Unfair Trade Practices Act] claim can accrue separately for each discrete illegal act that forms the basis of a [Connecticut Unfair Trade Practices Act] claim"). Here, Plaintiffs Complaint contains sufficient factual allegations regarding Defendant's supposed ongoing deception and failure to disclose the defect despite having knowledge of same. (Compl. ¶¶ 136, 168-69, 181). Dismissal, without affording Plaintiffs the opportunity to conduct discovery regarding this issue, would be inappropriate. Thus, the Court concludes that Plaintiffs have sufficiently pled these claims at this juncture and declines to dismiss them.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint is hereby granted in part and denied in part. The Court hereby dismisses Count II (Breach of Contract),[13] Count III (Negligent Misrepresentation) *only as to the Arkansas Plaintiffs*,[14] and Count XXX (Violation of the Ohio Sales Practices Act) as to the Ohio Sub-Class.[15] The remainder of Defendant's Motion to Dismiss is hereby denied.

DATED: _____ 8th, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[13] This Count was voluntarily withdrawn by Plaintiffs.
[14] Dismissal of the negligent misrepresentation claims by the Arkansas Plaintiffs was conceded to.
[15] The Ohio Plaintiffs shall be permitted to submit an amended pleading addressing the deficiencies set forth herein.

58