# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VOLKSWAGEN TIMING CHAIN PRODUCT LIABILITY LITIGATION | Civil Action No. 16-2765 (JLL)(JAD) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

James E. Cecchi
Lindsey H. Taylor
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

[Additional Attorneys on Signature Page]

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND..................................................................5

    A.   The Timing Chain System Defect in Settlement Class Vehicles..........5

    B.   The Action ...............................................................................6

    C.   Investigation of Claims and Discovery ................................................8

    D.   Settlement Discussions..................................................................9

II.  SUMMARY OF THE SETTLEMENT .......................................................10

    A.   The Proposed Settlement Class ................................................10

    B.   Monetary Relief.......................................................................11

    C.   Extended Warranty Benefits ...............................................13

    D.   Class Notice Plan....................................................................13

    E.   Claims Process .......................................................................14

    F.   Release of Claims Against Defendants ...............................15

    G.   Opt-Out Rights .......................................................................16

    H.   Class Counsel Fees and Expenses and Named Plaintiff Service Awards..................................................................................16

    I.   Objections and Settlement Approval ................................17

    J.   Proposed Schedule Following Preliminary Approval.......................17

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..........18

    A.   The Standard and Procedures for Granting Preliminary Approval.....18

    B.   There is a Strong Basis to Conclude that the Settlement is Fair, Reasonable, and Adequate ................................................20

        1.   Plaintiffs' Claims Were Thoroughly Investigated Through Discovery .................................................................20

        2.   The Settlement Has No Deficiencies .......................................21

        3.   The Settlement Negotiations Occurred at Arm's-Length.........23

IV. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES..................................................................25

    A.   Rule 23(a) Requirements are Satisfied..............................26

        1.   Rule 23(a)(1) – "Numerosity" ................................26

        2.   Rule 23(a)(2) – "Commonality" ................................27

3.    Rule 23(a)(3) – "Typicality" ....................................................28

4.    Rule 23(a)(4) – Adequacy........................................................29

B.    The Proposed Settlement Class Should be Certified Under Rule
23(b)(3)...............................................................................................31

C.    Proposed LEAD SETTLEMENT Class Counsel Satisfy Rule 23(g) .32

V.    THE FORM AND MANNER OF NOTICE ARE PROPER .......................34

VI.    CONCLUSION...........................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alin v. Honda Motor Co.*,
   No. 08-cv-4825, 2012 WL 8751045 (D.N.J. Apr. 13, 2012) *appeal
   dismissed* (3d Cir. May 18, 2012)...............................................................22, 24

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
   263 F.R.D. 226 (E.D. Pa. 2009)...........................................................................24

*Amchem Prods, Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................26, 32, 33

*Careccio v. BMW of N. Am., LLC*,
   No. 08-cv-2619, 2010 WL 1752347 (D.N.J. Apr. 29, 2010) ......................23, 24

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ...............................................................................19

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ...............................................................................20

*Gray v. BMW of N. Am., LLC*,
   No. 13-cv-3417, 2017 WL 3638771 (D.N.J. Aug. 24, 2017)...............................22

*Henderson v. Volvo Cars of N. Am., LLC*,
   No. 09-cv-4146, 2013 WL 1192479 (D.N.J. Mar. 22, 2013)......................22, 23

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ...............................................................................24

*Lenahan v. Sears, Roebuck & Co.*,
   No. 02-cv-0045, 2006 WL 2085282 (D.N.J. July 24, 2006)...............................19

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ...............................................................................29

*Martinez-Santiago v. Public Storage*,
   312 FRD 380 (D.N.J. 2015)...............................................................................27

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
No. 08-cv-2177, 2012 WL 4482041 (D.N.J., Sept. 25, 2012) ...........................29

*Moore v. Comcast Corp.*,
No. 08-cv-773, 2011 WL 238821 (E.D. Pa. Jan. 24, 2011) ...............................24

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ...............................................................................35

*In re Ocean Power Techs, Inc.*,
No. 14-cv-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)......................34, 35

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .........................................................................28, 32

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ...............................................................................20

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .........................................................................29, 30

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ...............................................................................30

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
No. 06-cv-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007)...........19, 20, 21, 23

*Sullivan v. DB Invs., Inc*,
667 F. 3d 273 (3d Cir. 2011) ..............................................................................28

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)..............................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)........................................................................................28

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...............................................................................28

*Yaeger v. Subaru of Am., Inc.*,
No. 14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016)......................22, 29

**Rules**

FED. R. CIV. P. 23 ................................................................................*passim*

FED. R. CIV. P. 26 ............................................................................................8

# INTRODUCTION

Plaintiffs[1] on behalf of themselves and all others similarly situated, by and through their counsel, respectfully move the Court for preliminary approval of the proposed Settlement set forth in the Settlement Agreement, attached as Exhibit A.[2]  This Settlement encompasses seven class action lawsuits[3] pending

---

[1] Lloyd Artola, Dawn Stanton Blanchard, Katrina Calihan, Hamza Deib, Umar Ellahie, Angel Esquijarosa, Allison Fleck, William Fleck, Allan Gaudet, Zachariah Gossman, Jason Hosier, Demetrie Hylick, Garrett Johnson, Pamela K. Kane, Hannah LeMoine, Shimelesse Mekbeb, Neel Mody, Karl Molwitz, Anoushirvan Nadiri, Suzanne Noyes, Debra J. Oles, Jeffrey Pipe, Jennifer Piumarta, John Schaffranek, Erika Sensnovis, Robby Smith, Michael Spencer, Dena Stockalper, William R. Swihart, David Zhao, Bartosz Zielezinski, and David Zimand (collectively, "Plaintiffs").  All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

[2] Reference herein to Exhibits are to the documents attached to the Declaration of James E. Cecchi in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Cecchi Decl.") filed contemporaneously with this brief.

[3] The cases were originally captioned *Zimand v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 16-cv-02765 (D.N.J) (the "*Zimand* Action"); *Gaudet v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Volkswagen Aktiengesellschaft, Audi Aktiengesellschaft, and Audi Of America, Inc.*, No. 16-cv-02872 (D.N.J) (the "*Gaudet* Action"); *Molwitz v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Audi Of America, Inc., Audi Aktiengesellschaft, and Volkswagen Aktiengesellschaft*, No. 16-cv-03120 (D.N.J.) (the "*Molwitz* Action"); *Fleck v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 16-cv-03296 (D.N.J) (the "*Fleck* Action"); *Ellahie v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Volkswagen Aktiengesellschaft, Audi Aktiengesellschaft, and Audi Of America, Inc.*, No. 16-cv-03319 (D.N.J.) (the "*Ellahie* Action"); *Stockalper v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 16-cv-04346 (D.N.J) (the "*Stockalper* Action"); and

in this District Court (collectively, the "Action"), with all claims now consolidated within the instant action.

Plaintiffs, with the consent of Defendants Volkswagen of America, Inc. ("VWGoA"), Volkswagen AG ("VWAG") and Audi AG (collectively, "Defendants),[4] request that the Court enter an Order:

1)      granting preliminary approval of the proposed Settlement;

2)      preliminarily certifying, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class[5] for the purposes of providing notice to the members of the proposed Settlement Class;

3)      approving the form and content of, and directing the distribution of, the proposed Class Notice and Claim Form, annexed to the Settlement Agreement as Exhibits 1 and 5;

4)      authorizing and directing the Parties to retain Epiq Global as Claims Administrator;

---

*Artola v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 17-cv-21296 (S.D. Fla.) (the "*Artola* Action").

[4] Plaintiffs and Defendants are collectively referred to as the "Parties."

[5] As set forth in Exhibit A, the Settlement Class is defined as "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I(R) of this Agreement, in the United States of America and Puerto Rico."

2

5)       preliminarily appointing Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Kessler Topaz Meltzer & Check, LLP,  and Kantrowitz Goldhamer & Graifman, P.C. as Lead Settlement Class Counsel;

6)       preliminarily appointing named Plaintiffs as Settlement Class representatives; and

7)       scheduling a date for the Final Approval Hearing not earlier than one hundred and fifty-five (155) days after Preliminary Approval is granted.

This Litigation has been vigorously contested for nearly two years.  Lead Settlement Class Counsel[6] have significant experience litigating numerous consumer class actions.   After extensive investigation, exchange of discovery, in-depth analysis of the factual and legal issues presented, consultations with experts, and arm's-length negotiations with Defendants, Plaintiffs are pleased to present this Settlement which will provide substantial monetary relief to the Settlement Class along with equally substantial equitable relief.  Lead Settlement Class Counsel have reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement eminently fair, reasonable, and adequate, especially when compared to similar settlements and in light of the risks of continued litigation.

---

[6] "Lead Settlement Class Counsel" shall refer to James E. Cecchi, Joseph H. Meltzer, and Gary S. Graifman, and their respective firms.

In particular, as set forth in the Settlement Agreement, the Settlement will provide up to full reimbursement for out-of-pocket repair costs for Settlement Class Members who suffered failures of their Timing Chain System[7] in their Settlement Class Vehicles[8] and will provide a generous extended warranty for the timing chain and timing chain tensioner to eligible Settlement Class Members who have not experienced a failure of the Timing Chain System in their vehicles.[9]  In particular, for eligible Settlement Class Members who had repairs to the Timing Chain System performed by an authorized dealer of the Defendants, the Defendants will issue checks reimbursing **100%** of the dealer repair costs paid.   For replacement/repairs to the engine caused by the failure of the Timing Chain System, Defendants will reimburse up to **100%** of the amount paid to Defendants' authorized dealers, depending upon mileage and time in-service of the vehicle.  Likewise, for repairs conducted by an independent service station, Defendants will reimburse Settlement Class Members up to $6,500 for engine repair/replacement, and up to $2,000 for repairs/replacement of the Timing Chain System, or certain components.  Further,

---

[7] The Timing Chain System is materially comprised of the timing chain tensioner, timing chain, chain sprockets, guide rails and tensioning rail.

[8] "Settlement Class Vehicles" refers to the model and model year VW and Audi vehicles designated by VIN on Exhibit 4 of the Settlement Agreement, imported and distributed by Defendant Volkswagen Group of America, Inc. for sale or lease in the United States and Puerto Rico.  *See* Exhibit A, at Exhibit 4.

[9] *See* Exhibit A, at Section II.

Defendants will extend the warranties on the Settlement Class Vehicles to cover Timing Chain System failures for up to one hundred thousand (100,000) miles/10 years from the In-Service Date. This is an outstanding recovery for members of the Settlement Class.

The Settlement is a fair, reasonable, and adequate resolution of the Action and satisfies all the prerequisites for preliminary approval. For these reasons, and those fully articulated below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order filed contemporaneously herewith.

## I.      FACTUAL BACKGROUND

### A.      THE TIMING CHAIN SYSTEM DEFECT IN SETTLEMENT CLASS VEHICLES

Plaintiffs allege that for nearly a decade Defendants have known that the Timing Chain System installed in the Settlement Class Vehicles is defective and likely to fail catastrophically, well before any service or maintenance should even be necessary. Plaintiffs allege that the defect puts consumers' safety at risk, exposes them to significant monetary losses, and that Defendants concealed this information and represented that the Settlement Class Vehicles were safe, reliable, and fully protected by an extensive warranty should there be any defects.

According to Plaintiffs, the defective Timing Chain System creates substantial expense for Plaintiffs and the Classes, with necessary repairs and replacement

components running into the thousands of dollars. Defendants have consistently maintained that the Settlement Class Vehicles are not defective, that the Timing Chain System and its components function safely and properly, and that they were properly designed, manufactured, distributed, marketed, advertised, warranted and sold. Defendants have maintained that no applicable warranties were breached nor applicable statutes or common law duties violated.

### B.    THE ACTION

This Settlement involves seven class action lawsuits, now consolidated, and brought against Defendants in the District of New Jersey, on behalf of nationwide class and state subclasses, comprised of all persons and entities who purchased or leased a Settlement Class Vehicle.

The first action, *Zimand*, was filed on May 16, 2016 by Plaintiff David Zimand, asserting eight counts on behalf of nationwide class and state subclasses. Thereafter, the *Gaudet*, *Molwitz*, *Fleck*, *Ellahie*, and *Stockalper* Actions were also filed in the District, alleging substantially similar facts and causes of action. *See Gaudet*, ECF No. 1; *Molwitz*, ECF No. 1; *Fleck*, ECF No. 1; *Ellahie*, ECF No. 1; *Stockalper*, ECF No. 1.

On August 16, 2016, the above actions were consolidated under the caption *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-cv-02765. ECF No. 5. Thereafter, on August 22, 2016, plaintiffs in the *Zimand, Gaudet, Molwitz, Fleck,*

*Ellahie*, and *Stockalper* Actions, along with additional plaintiffs Garrett Johnson, Neel Mody, John Schaffranek, Michael Borchino, and Robby Smith, filed a First Consolidated Class Action Complaint (the "Complaint") in this Action.  *See* ECF No. 6.  The Complaint asserted thirty-four (34) counts on behalf of nationwide classes and state subclasses for fraud, breaches of contract, breach of express and implied warranties, negligent misrepresentation, unjust enrichment, the Magnuson-Moss Warranty Act, and various violations of state consumer protection statutes. *See* ECF No. 6.

On December 12, 2016, Defendant VWGoA filed a Motion to Dismiss and to Compel Arbitration Pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(6), and 9(b). ECF No. 36.  Plaintiffs' Opposition was filed on February 7, 2017, ECF No. 40, and Defendant VWGoA's Reply in Support was filed on February 28, 2017. ECF No. 42.  The Court issued a ruling on the Motion on May 8, 2017 upholding substantially all of Plaintiffs' claims.  *See* ECF Nos. 48 and 50.   Thereafter, Defendant VWGoA filed its Answer to the Consolidated Complaint on June 1, 2017. ECF No. 57.

The Court issued the operative Pretrial Scheduling Order on July 13, 2017. ECF No. 65. On August 31, 2017, Defendants Audi AG and VWAG filed their Answers to the Consolidated Complaint. ECF Nos. 70-71.  Meanwhile, back on April 6, 2017, the *Artola* Action was filed by Plaintiffs Lloyd Artola, Angel

Esquijarosa, Demetrie Hylick, and Michael Spencer in the Southern District of Florida asserting substantially similar claims. *See Artola*, ECF No. 1. On September 12, 2017, the *Artola* Action was consolidated into the above-captioned action. ECF No. 73. A Stipulated Protective Order regarding discovery was entered on September 18, 2017, and thereafter the Parties commenced discovery efforts in earnest. ECF No. 76.

### C.   INVESTIGATION OF CLAIMS AND DISCOVERY

Prior to filing the Complaints in each of the actions discussed above, Plaintiffs' counsel conducted a thorough investigation into the Plaintiffs' claims and allegations. Likewise, during the course of this Action, the Parties engaged in meaningful discovery, beginning shortly after the Court's ruling on the Motion to Dismiss. In particular, Plaintiffs and Defendants exchanged Initial Disclosures as required by FED. R. CIV. P. 26, negotiated Electronically Stored Information ("ESI") search queries, and exchanged comprehensive sets of Interrogatories, Requests for Admissions and Requests for Production throughout July, August, and September of 2017. Responses to discovery requests began in September 2017.

Plaintiffs and Defendants also negotiated and agreed to a Vehicle Inspection Protocol, and one of the Plaintiffs' vehicles was selected and inspected by Defendants' experts. Plaintiffs also vetted numerous experts and

retained and extensively consulted with multiple experts, including a metallurgist and mechanical engineers, regarding the issues in this Action. In Addition, Plaintiffs procured failed engines/Timing Chain Systems for inspection by their experts to further inform their opinions.

### D.    SETTLEMENT DISCUSSIONS

After the Parties had an opportunity to thoroughly consider the Court's ruling on the Motion to Dismiss, and after the Parties began responding to discovery and reviewing discovery responses, the potential for settlement negotiations was discussed between Lead Settlement Class Counsel and defense counsel. Within the context of these settlement discussions, Defendants produced additional data in order to provide Lead Settlement Class Counsel with more complete information regarding the Settlement Class Vehicles, the composition of the putative Class, and data pertinent to damages and potential forms of relief. This exchange of information enabled the Parties to commence comprehensive settlement negotiations.

The Parties held multiple in-person negotiation sessions, and in between such sessions, communicated via numerous telephonic discussions and email. Over the course of at least six months, terms and conditions of the Settlement were debated and negotiated. Ultimately, after vigorous arm's-length negotiations, the Parties came to agree in late April 2018 upon the terms and conditions set forth in the

Settlement Agreement.  Of significance, there has been no negotiation or discussion of the attorneys' fees beyond the fact that they will be the subject of separate negotiation, and if they cannot be agreed upon, will be the subject of a contested application for fees and expenses to be filed by Plaintiffs.

## II.    SUMMARY OF THE SETTLEMENT

### A.    THE PROPOSED SETTLEMENT CLASS

The Settlement provides relief to all persons and entities who purchased or leased a Settlement Class Vehicle in the United States and Puerto Rico, as defined by Section I(R) of the Settlement Agreement.  Specifically, this includes the owners/lessees of certain 2008 through 2014 model and model year VW and Audi vehicles, as more particularly designated by the Vehicle Identification Numbers ("VIN") listed on Exhibit 4 of the Settlement Agreement.  Excluded from the Class are:  (a) anyone claiming personal injury, property damage, and/or subrogation; (b) all Judges who have presided over the Actions and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class

Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendants or any Released Parties from any Released Claims; and (k) any Settlement Class Member who files a timely and proper Request for Exclusion from the Settlement Class.

**B.    MONETARY RELIEF**

As set forth in detail in the Settlement Agreement, Settlement Class Members will be entitled to reimbursement for unreimbursed out-of-pocket expenses as follows:

1.   **100%** reimbursement of the paid dealer invoice amount for the covered part(s) and labor Repairs or replacement of the Timing-Chain Tensioner at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date.  If repaired at an independent service center, the Settlement Class Member will receive a refund of the paid invoice amount for the covered parts and labor, up to $1,100.

2.   **100%** reimbursement of the paid dealer invoice amount for the covered part(s) and labor repairs or replacement of the Timing Chain at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date.  If repaired at an independent service center, the Settlement Class Member will receive a refund of the paid invoice amount for the covered parts and labor, up to $1,500.  This includes coverage for oil change, oil filter, and cleaning of the oil pan.

3.   **100%** reimbursement of the paid dealer invoice amount for the simultaneous covered part(s) and labor for repairs or replacement of the Timing Chain and the Timing-Chain Tensioner at an authorized Audi

or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an independent service center, the Settlement Class Member will receive a reimbursement of the paid invoice amount for the covered parts and labor, up to $2,000.

4.  **Up to 100%** reimbursement of the invoice amount subject to time/mileage parameters and percentage of reimbursement limits in Table One, below, for the covered parts and labor for the repair or replacement of an engine damaged by a Timing Chain or Timing Chain Tensioner failure at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an independent service center, the Settlement Class Member will received a reimbursement of no more than $6,500, subject to the time/mileage parameters and percentage of reimbursement limits in Table One.

**TABLE 1: REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES FOR DAMAGED OR FAILED ENGINE DUE TO TIMING CHAIN TENSIONER/TIMING CHAIN FAILURE**

| Time from in-service date | Less than 60,000 miles | 60,001 to 75,000 miles | 75,001 to 85,000  miles | 85,001 to 100,000 miles |
|---|---|---|---|---|
| 5 years | 100% | 70% | 60% | 45% |
| 5-7 years | 70% | 60% | 50% | 35% |
| 7-10 years | 60% | 50% | 40% | 25% |

In order to obtain the monetary benefits, the Settlement Class Member need only submit a simple Claim Form (Exhibit 1 to the Settlement Agreement) showing, *inter alia*, the amount paid for the repairs necessitated by a failed timing chain/timing chain tensioner and reasonable adherence to the vehicle's maintenance schedule.

12

## C.    EXTENDED WARRANTY BENEFITS

The Settlement Agreement also provides another valuable benefit to eligible Settlement Class Members by extending the New Vehicle Limited Warranty applicable to the Settlement Class Vehicles to cover Settlement Class Vehicle Timing Chain and Timing Chain Tensioner repairs or replacement by an authorized VW or Audi dealer for a period of ten (10) years or one hundred thousand (100,000) miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle.  The Warranty Extension will include full coverage of the Timing Chain, the Timing Chain Tensioner, and all parts and labor necessary to effectuate the repair, with the Settlement Class Member to show reasonable adherence to the vehicle's maintenance schedule.

The Warranty Extension will apply to all eligible Settlement Class Vehicles irrespective of whether the vehicle has been repaired on or before the Effective Date of the Settlement and is fully transferable to subsequent owners.

## D.    CLASS NOTICE PLAN

The Settlement Agreement provides that the Parties will use their best efforts to ensure that no more than seventy-five (75) days after the entry of the Preliminary Approval Order, the Claims Administrator will mail the individual Class Notice to Settlement Class Members, substantially in the form attached to the Settlement Agreement as Exhibit 5.  This Class Notice will be sent by first-class mail to the

current or last known address of all reasonably identifiable Settlement Class Members.  As further set forth below, *see infra* pp. 35-36, the Claims Administrator will take multiple steps to ensure that Settlement Class Members will receive the individual Class Notice.

The Claims Administrator shall also implement a Settlement website containing: (1) instructions on how to submit a Claim for reimbursement either by mail or online submission; (2) instructions on how to contact the Claims Administrator, Defendants and Lead Settlement Class Counsel for assistance; (3) a copy of the Claim Form, Class Notice, and the Settlement Agreement; and (4) any other relevant information agreed upon by counsel for the Parties.

Additionally, Defendants will advise each of its Volkswagen and Audi Dealers of the material terms of the Settlement relating to the Extended Warranty, so that authorized dealers may effectively communicate with Settlement Class Members and repair Settlement Class Vehicles pursuant to the terms of the Extended Warranty.

### E.    CLAIMS PROCESS

The Extended Warranty shall be applied to any Settlement Class Vehicle without need of a Claim Form.  Settlement Class Members need only take the Settlement Class Vehicle to an authorized dealer in order to receive any Timing

Chain or Timing Chain Tensioner repair prior to 100,000 miles/10 years from the In-Service Date of the vehicle.

To receive a reimbursement for previous repairs, Settlement Class Members will submit a Claim Form, along with Proof of Adherence to the Vehicle's Maintenance Schedule[10] and Proof of Repair Expense. The Settlement Agreement also sets forth a detailed disputed claim procedure, by which Settlement Class Members may cure any defects in their submission and contest a denial of their claim. Exhibit A, Section M.

The Claims Administrator shall mail to the Settlement Class Member a reimbursement check to the address on the Claim Form within seventy-five (75) days of the date of the receipt of the Claim, or within seventy-five (75) days of the Effective Date of the Settlement, whichever is later. All costs of the Notice and Claims process will be borne by Defendants.

## F.    RELEASE OF CLAIMS AGAINST DEFENDANTS

As set forth in full in the Settlement Agreement, including Section I(O) and I(P), Settlement Class Members will release all claims and counterclaims arising out

---

[10] In the event maintenance records cannot be obtained despite a good faith effort, the Settlement Class Member may submit a sworn Declaration detailing what efforts were made to obtain the records, including why the records are not available, and attesting to adherence to the relevant aspects of the Settlement Class Vehicle's maintenance schedule as set forth in the Settlement Agreement.

of the Litigation and the facts or circumstances that were or could have been alleged in the Litigation, during the Settlement Class Period.

### G.    OPT-OUT RIGHTS

A Settlement Class Member who wishes to opt out of the Settlement Class must do so according to the terms in the Settlement Agreement, as set forth in Section V(B).  Any Settlement Class Member who does not opt out of the Settlement in such a manner shall be deemed to be part of the Settlement Class and shall be bound by all subsequent proceedings, orders and judgments.

### H.    CLASS COUNSEL FEES AND EXPENSES AND NAMED PLAINTIFF SERVICE AWARDS

The Parties will attempt to reach agreement on reasonable Class Counsel fees and expenses prior to Plaintiffs filing an application with the Court for fees and expenses.  If the Parties are unable to reach agreement, Lead Settlement Class Counsel will make application for reasonable fees and expenses to the Court, to which Defendants will respond as they deem appropriate.  This will not delay or interfere with the Settlement.

Defendants will not oppose Plaintiffs' request, as a part of any fee and expense Application, to pay service awards of two thousand five hundred dollars ($2,500) to each of the Named Plaintiffs (one award for married couples).

## I.     OBJECTIONS AND SETTLEMENT APPROVAL

Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in the Settlement Agreement, Section V(A).  Written objection must be filed with the Clerk of Court and mailed to Lead Settlement Class Counsel, defense counsel, and the Claims Administrator no later than the objection deadline.  Any Class Member who files and serves a written objection may appear, by counsel, at the Final Approval Hearing held by the Court after filing a Notice of Intention to Appear.

## J.     PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL

Plaintiffs, with the consent of Defendants, propose that along with granting preliminary approval of the Settlement Agreement, the Court adopt the schedule set forth below in its Preliminary Approval Order, to allow the Settling Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement.

| Event | Timing |
|---|---|
| Deadline for Mailing of Class Notice to members of the Settlement Class (the "Notice Date") | Not more than seventy-five (75) days after Preliminary Approval |
| Deadline for establishing Website | Notice Date Deadline |
| Filing of Motion for Final Approval of Settlement and for Attorneys' Fees and Expenses | No later than thirty (30) days after Notice Date |

| Deadline for filing Objections and Requests to Opt Out of Settlement | Postmarked no later than forty-five (45) days after Notice Date |
|---|---|
| Final Fairness Approval Hearing | Not earlier than one-hundred and fifty-five (155) days after Preliminary Approval |
| Deadline for submission of Claims | Within one-hundred and fifty (150) days after Notice Date |

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   THE STANDARD AND PROCEDURES FOR GRANTING PRELIMINARY APPROVAL

Plaintiffs present this Settlement to the Court for its review under FED. R. CIV. P. 23(e) which provides in pertinent part that the Court must direct notice regarding the settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2).

The Third Circuit explicitly recognizes with approval a strong presumption in favor of voluntary settlement agreements. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "This presumption [in favor of settlement] is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see Lenahan v. Sears, Roebuck & Co.*, No. 02-cv-0045, 2006 WL 2085282,

18

at *12 (D.N.J. July 24, 2006) ("[s]ettlement of class action litigation has long been favored and encouraged").

"Judicial review of a proposed class action settlement is a two-step process: preliminary fairness approval and a subsequent fairness hearing." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (citation omitted). Preliminary approval is not binding, and is granted unless a proposed settlement is obviously deficient. *Id.* at *2. The Third Circuit has stated that a court's preliminary approval of class settlement "establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citing *GM Trucks*, 55 F.3d at 785). All of the indicia of fairness are present here.[11]

---

[11] At the final approval stage, courts in the Third Circuit apply a more rigorous nine factor analysis to assess the fairness, adequacy, and reasonableness of the proposed class action settlement. Specifically, the Court would review the settlement in light of the factors established by *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. (citation omitted and quotation omitted). *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

**B.    THERE IS A STRONG BASIS TO CONCLUDE THAT THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

The Settlement was the result of extensive arm's-length negotiations conducted by experienced counsel for all Parties, following meaningful discovery efforts and hard fought litigation.

**1.    Plaintiffs' Claims Were Thoroughly Investigated Through Discovery**

The discovery conducted here more than satisfies the relatively low threshold necessary to grant preliminary approval of the Settlement Agreement. *See, e.g.*, *Smith,* 2007 WL 4191749, at *2 (recognizing that "settlement occurred after plaintiff conducted sufficient discovery to determine that the benefits of the settlement outweighed the cost and risk of continued litigation"). Over the course of the Action, the Parties exchanged formal, comprehensive discovery requests and responses, negotiated ESI search terms and inspection protocols, retained and consulted with multiple experts, negotiated a protocol for Defendants to inspect one of Plaintiffs' vehicles, and further exchanged extensive data and information regarding the Settlement Class Vehicles and damages during the course of arm's-length settlement negotiations. In addition, Plaintiffs' experts inspected exemplar Timing Chain Systems and/or failed engines. As a result, the Parties are sufficiently well-informed as to the factual and legal issues relevant to this action.

20

### 2.    The Settlement Has No Deficiencies

The Settlement compares favorably when compared to similar, recently approved automotive class action defect settlements in this District, by reimbursing most, if not all, of the costs of a documented Timing Chain System repair or replacement, within the agreed-upon time/mileage parameters, and further extending the warranty of Settlement Class Vehicles, such that any future problems with the Timing Chain System occurring within the time/mileage parameters will be repaired **without cost** to Settlement Class Members.  Importantly, the warranty extension will be applied without Settlement Class Members having to fill out any claim form. These factors weigh in favor of granting preliminary approval of the proposed Settlement here.  *See, e.g., Gray v. BMW of N. Am., LLC*, No. 13-cv-3417, 2017 WL 3638771, at *1, (D.N.J. Aug. 24, 2017) (granting final approval of settlement for malfunctioning convertible tops with reimbursement of documented out-of-pocket expenses, extension of warranty to 1 year, unlimited mileage from repair, and installation of a software update); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490, 2016 WL 4541861, at *3-4 (D.N.J. Aug. 31, 2016) (granting final approval of settlement for excessive oil consumption by warranty extension of eight years or 100,000 miles and reimbursement for out-of-pocket repairs subject to proof, as well as up to 6 quarts of oil, two days of car rental, and towing costs); *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146, 2013 WL 1192479, at *2 (D.N.J. Mar. 22,

2013) (granting final approval of settlement for transmission repair or replacements with 50% reimbursement for new and certified pre-owned vehicles with failures prior to 100,000, and 25% reimbursement for used vehicles that were not certified pre-owned); *Alin v. Honda Motor Co.,* No. 08-cv-4825, 2012 WL 8751045, at *2-3 (D.N.J. Apr. 13, 2012) (granting final approval of settlement for air conditioning system defects with a sliding scale of reimbursements for repair costs depending on length of time and/or mileage on the class vehicles) *appeal dismissed* (3d Cir. May 18, 2012); *Careccio v. BMW of N. Am., LLC*, No. 08-cv-2619, 2010 WL 1752347, at *2-3 (D.N.J. Apr. 29, 2010) (granting final approval of settlement for defective tires with a sliding scale of reimbursement for replacement tires and labor).

The Settlement offers each of the named Plaintiffs, subject to the Court's approval, a reasonable Service Award of $2,500 that recognizes the important contribution they made to the prosecution of the action.[12]  Because of their efforts and willingness to become involved in this action, hundreds of thousands of passive

---

[12] Fees for counsel are being negotiated separately from the Settlement Agreement. If agreement between the Parties is reached, Plaintiffs' request for attorneys' fees, reasonable expenses, and Service Awards are subject to the Court's approval at the Final Approval Hearing where any Settlement Class Member who submits a proper objection will have an opportunity to comment on the propriety of these requests. Accordingly, Plaintiffs will submit briefing justifying their request for approval of attorneys' fees, expenses, and Plaintiff Service Awards prior to the Final Approval Hearing, as well as respond to comments from Settlement Class Members as necessary.

class members will potentially receive significant benefits from the Settlement. "[S]ubstantial authority exists for the payment of an incentive award to the named plaintiff." *Smith,* 2007 WL 4191749, at *3 (citing *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)).  In addition, the proposed Service Award is in line with awards that have been approved in this Circuit.  *See, e.g.*, *Henderson,* 2013 WL 1192479, at *19 (approving incentive awards of $6,000 and $5,000); *Alin*, 2012 WL 8751045, at *16-17 (approving incentive awards of $2,500 and $12,500); *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *6 (E.D. Pa. Jan. 24, 2011) (approving an incentive award in the amount of $10,000); *Careccio*, 2010 WL 1752347, at *7 (approving awards of $5,000 and $3,500); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (approving up to $10,500 as enhancements awards).

### 3.    The Settlement Negotiations Occurred at Arm's-Length

It is Lead Settlement Class Counsel's experienced opinion that, given the alternative of long and complex litigation, the risks involved in such litigation, a trial on the merits and preparing for the same, and the possibility of later appellate litigation, the availability of prompt relief under the Settlement is meaningful, timely, and highly beneficial to the Settlement Class Members.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement

that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

Lead Settlement Class Counsel negotiated the Settlement to meet all the requirements of Rule 23, and specifically to provide an administrative process that would assure Class Members equal and sufficient due process.  The Settlement was the result of extensive arm's-length settlement discussions between sophisticated counsel, who consulted with highly qualified experts regarding the claims at issue, and following specific claims-related and class discovery.

Through the course of negotiations, Class Members were represented by a team of attorneys who have considerable experience (and success) in prosecuting (and settling) class actions, have been vigorously prosecuting this Action for several years, and are well-versed in the issues and how to evaluate the claims.  Lead Settlement Class Counsel's approval of the Settlement should weigh in favor of the Settlement's fairness.  *Varacallo,* 226 F.R.D. at 240 ("[T]he Court puts credence in the fact that Class Counsel consider the Proposed Settlement to be fair, reasonable and adequate.")

Moreover, the parties conducted substantial arm's-length settlement discussions.  Six months of contentious negotiations, both in-person and through correspondence, and the exchange of numerous iterations of draft agreements were necessary for the Parties to come to an agreement regarding the Settlement terms.

These terms were further informed with specific discovery regarding costs of repair and labor throughout the country. For example, considerable care was taken with the crafting of the Settlement Agreement, such that the costs of undertaking repairs in the most expensive part of the country were taken into consideration when deciding on any reimbursement limits for repairs at independent service providers.

Accordingly, Plaintiffs have satisfied this Circuit's standards for preliminary approval of the Settlement.  This Court should grant preliminary approval so the proposed class may be certified for settlement purposes, Class Counsel may be appointed, and Class Notices may be mailed.  Once the Class Notice process is complete, the Court can then fully evaluate the fairness and adequacy of the Settlement at a Final Approval hearing.

## IV. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request that the Court preliminarily certify a Settlement Class and direct dissemination of notice concerning the action and the Settlement.  Defendants do not object to certification of the Settlement Class for purposes of settlement only and the Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes.  *See, e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997).  In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives."  *Id.* at 621.  To be certified under Rule 23,

a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three provisions of Rule 23(b).  *See* FED R. CIV. P. 23.

## A.    RULE 23(A) REQUIREMENTS ARE SATISFIED

In order for a class to be certified under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a).  Here, as set forth below, all four elements are satisfied in regard to the proposed Settlement Class.

### 1.    Rule 23(a)(1) – "Numerosity"

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."   FED. R CIV. P. 23(a)(1).   "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met."  *Martinez-Santiago v. Public Storage,* 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583,

595 (3d Cir. 2012)). Here, there are over half a million Settlement Class Members. The numerosity requirement is therefore readily satisfied.

### 2.     Rule 23(a)(2) – "Commonality"

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2550-51 (2011) (citation omitted). The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc*, 667 F. 3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 310 (3d Cir. 1998) ("*Prudential II*"). "For purposes of Rule 23(a)(2), even a single [common] question will do." *Wal-Mart Stores, Inc.,* 131 S.Ct. at 2551 (brackets in original) (citation omitted).

Here, the claims of the Settlement Class raise common questions of law and fact. Plaintiffs allege that a substantially similar defective Timing Chain System is incorporated into all of the Settlement Class Vehicles, which results in premature failure, and not only causes significant monetary losses but also presents a serious

27

safety risk.   The claims of the Settlement Class thus involve common facts surrounding the design and manufacture of the Timing Chain System, its alleged susceptibility to premature failure, and the claimed absence of warnings regarding the need for service.  The common legal issues include whether Defendants breached a duty to disclose the defect in the Timing Chain System and whether Defendants breach(ed) express or implied warranties in forcing the Settlement Class to bear the monetary losses associated with the defective Timing Chain Systems.

### 3.   Rule 23(a)(3) – "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  FED. R CIV. P. 23.  As the Third Circuit has stated, "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'"  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation omitted).  Where it is alleged that the defendant engaged in a behavior common to all members of the class, "there is a strong presumption that the claims of the representative parties will be typical of the absent class members."  *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012) (citation omitted).   Likewise, "[w]hen a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged

misrepresentations or omissions apply uniformly across the different product types."

*Marcus* 687 F.3d at 599; *see also Yaeger*, 2016 WL 4541861, at *6 (finding typicality where "plaintiffs allege that the class claims arise out of the same conduct of the defendants related to their design, manufacture, and sale of the class vehicles that suffered from an alleged oil consumption defect, and defendants' alleged failure to disclose that material fact").

Here, the named Plaintiffs' claims, and those of the Settlement Class, arose from a common course of conduct by Defendants of allegedly providing Settlement Class Vehicles containing defective Timing Chain Systems and failing to honor the warranties on those vehicles, thus forcing Plaintiffs and the Settlement Class to bear significant monetary losses.

### 4.    Rule 23(a)(4) – Adequacy

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R Civ. P. 23.  In the Third Circuit, this requirement is met when two prongs are satisfied: the plaintiffs have no interests antagonistic to those of the class, and plaintiffs' counsel is qualified, experienced and generally able to conduct the proposed litigation.  *In re Schering Plough Corp.*, 589 F.3d at 602.  The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of the Settlement Class.  The second prong analyzes the capabilities and performance of Class Counsel based

upon factors set forth in Rule 23(g).  *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  Here, Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Class Members.  Plaintiffs seek to hold Defendants accountable for, among other things, manufacturing and distributing Settlement Class Vehicles containing defective Timing Chain Systems that fail prematurely posing safety risks and causing monetary losses.   Further, Plaintiffs have demonstrated their allegiance and commitment to this litigation by consulting with Plaintiffs' counsel, making their vehicles available for inspection, collecting documents for litigation, reviewing the pleadings, responding to discovery propounded by Defendants and keeping informed of the progress of the litigation.  Their interests are aligned with the interests of absent Class Members.

Second, as discussed within, Plaintiffs' counsel are qualified, experienced, and competent in complex class litigation and have an established, successful track record with consumer class cases.[13]   Accordingly, the adequacy requirement is satisfied.

---

[13] *See* Cecchi Decl., at Exhibits B, C, and D.

## B.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23(B)(3)

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiffs now turn to consideration of the Rule 23(b)(3) factors – predominance and superiority.  Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy.  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.,* 521 U.S. at 623.  Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods' of adjudication."  *Prudential II*, 148 F.3d at 316 (citation omitted).  Here, the Settlement Class readily meets both requirements.

First, common questions of both law and fact predominate.  Settlement Class Members' claims arise out of an allegedly common defect in their vehicles, namely an allegedly flawed Timing Chain System (common to all of the Settlement Class Vehicles) that leads to premature failure.  Additionally, Class Members seek remedy of "common legal grievances" – particularly, the applicability of their warranties to cover any failure of the Timing Chain System and any engine damage resulting from such failures. These claims thus present common operative facts and common questions of law that predominate over any factual variations.

31

Second, certification of the Settlement Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R CIV. P. 23(b)(3). The settlement affords benefits to numerous putative Class Members who, absent a class settlement, may not have been aware of their legal rights or may not have had the desire or resources to pursue an individual suit involving the matters at issue. The class settlement also serves the interest of judicial economy by avoiding multiple similar lawsuits. Thus, resolving the Settlement Class Members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims. And, inasmuch as this is a class settlement, the court need not address manageability issues that may otherwise exist in a contested class action. *Amchem Prods, Inc.*, 521 U.S. at 620, 117 S.Ct. at 2248.

## C.   PROPOSED LEAD SETTLEMENT CLASS COUNSEL SATISFY RULE 23(G)

Pursuant to Rule 23(g), Plaintiffs also move to appoint the law firms of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Kessler Topaz Meltzer & Check, LLP, and Kantrowitz Goldhamer & Graifman, P.C. as "Lead Settlement Class Counsel." Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. FED. R. CIV. P. 23. While a court may consider any factor concerning the proposed class counsel's ability to

32

"fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of the Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Lead Settlement Class Counsel adequate. Plaintiffs' Lead Settlement Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints, as shown by the fact that this Court in large part denied the Defendants' motion to dismiss the First Amended Complaint. ECF No. 48. As part of their investigation and work, Plaintiffs' Lead Settlement Class Counsel retained and consulted with multiple experts in different fields, and carefully reviewed public materials along with all documents and information produced by Defendants in discovery.

As reflected in their firm resumes, Plaintiffs' Lead Settlement Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this action. *See* Cecchi Decl. Ex. B, C, and D. Hence, Plaintiffs' Lead Settlement

Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## V.   THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which Class Notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See In re Ocean Power Techs, Inc.,* No. 14-cv-3799, 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016). Plaintiffs adequately satisfy these requirements.

Rule 23(e) requires that notice of a proposed settlement be provided to class members. FED. R. CIV. P. 23. "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016) (citation omitted). Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances" and that such notice contain sufficient information 'to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *In re Ocean Power Techs., Inc.,* 2016 WL 6778218 at *10 (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 435). Further, "[i]t is well settled that in the usual situation first-class mail and

publication fully satisfy the notice requirements of both FED. R. CIV. P. 23 and the due process clause." *Id.* (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)).

Here, the content of the Class Notice satisfies all requirements. The language of the Class Notice was drafted and agreed to by the Parties. The proposed Class Notice is written in plain, simple terminology, and includes: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for exercising the right to opt-out; (5) the identity of counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice provides Settlement Class Members with clear and accurate information as to the nature and principal terms of the Settlement Agreement to make an informed and intelligent decision whether to object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Case Contribution Awards that may be sought pursuant to the Settlement Agreement.

The dissemination of the Class Notice likewise satisfies all requirements. Under the Settlement Agreement, the Claims Administrator will send individualized Class Notices and Claims Forms to Settlement Class Members via first class mail.

Mail Notice will be sent to the last known address reflected in the records of IHS Markit for each Class Member.  Additionally, prior to the mailing of Class Notices, an address search through the National Change of Address database will be conducted.  For any Mail Notice that is returned as undeliverable, the Claims Administrator shall re-mail the Class Notice where a forwarding address has been provided.  For any remaining undeliverable notice packets, the Claims Administrator will perform an advanced address search (*e.g.* a skip trace) and re-mail any undeliverable Class Notices to the extent any new and current address are located. In addition, a website will be created so that Class Members can readily have questions answered, obtain additional copies of materials sent by the Claims Administrator, and find instructions on how to submit a Claim for reimbursement either by mail or online submission.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval, and enter the Proposed Order: (1) granting preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interest of the Class Members; (2) preliminarily certifying the proposed

Settlement Class for settlement purposes only; (3) preliminarily appointing Carella,

Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Kessler Topaz Meltzer & Check,

LLP, and Kantrowitz, Goldhamer & Graifman, P.C., as Lead Settlement Class

Counsel; (4) approving the form and content of, and directing the distribution of, the

proposed Class Notice and accompanying Claim Form Instructions and Claim Form,

and authorizing and directing the Parties to retain Epiq Global as Claims

Administrator; (5) scheduling a Final Approval Hearing not earlier than one hundred

and fifty-five days after Preliminary Approval is granted.

Dated:  May 14, 2018                    Respectfully submitted

                                        **CARELLA, BYRNE, CECCHI,
                                        OLSTEIN, BRODY & AGNELLO, P.C.**


                                        s/ James E. Cecchi
                                        James E. Cecchi
                                        Lindsey H. Taylor
                                        Caroline F. Bartlett
                                        5 Becker Farm Road
                                        Roseland, New Jersey 07068
                                        Telephone: (973) 994-1700

                                        **KESSLER TOPAZ
                                          MELTZER & CHECK, LLP**
                                        Joseph H. Meltzer
                                        Peter A. Muhic
                                        Melissa L. Troutner (*Pro Hac Vice*)
                                        Tyler S. Graden
                                        280 King of Prussia Road
                                        Radnor, PA  19087
                                        Telephone: (610) 667-7706

**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000

*Interim Lead Class Counsel*


**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran (*Pro Hac Vice*)
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

**MAZIE SEATER KATZ &
FREEMAN, LLC**
Matthew Mendelsohn
David A. Mazie
Adam M. Slater
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898

**MCCUNEWRIGHT LLP**
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
1055 Westlakes Drive, Suite 300
Berwyn, PA  19312
Telephone: (909) 557-1250

**SEEGER WEISS LLP**
Christopher A. Seeger
David R. Buchanan
Scott Alan George
550 Broad Street

Newark, NJ 07102
Telephone: (973) 639-9100

**BARON & BUDD, P.C.**
Roland Tellis (*Pro Hac Vice*)
Mark Pifko (*Pro Hac Vice*)
Peter Klausner (*Pro Hac Vic*)
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

*Plaintiffs' Executive Committee*