# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE VOLKSWAGEN TIMING CHAIN
PRODUCT LIABILITY LITIGATION

Civil Action No. 16-2765 (JLL)(JAD)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
# FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
# AND AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
# EXPENSES AND PLAINTIFFS' SERVICE AWARDS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND.............................................................................2

    A.  The Timing Chain System Defect in Settlement Class Vehicles ................2

    B.  The Action...........................................................................................3

    C.  Investigation of Claims and Discovery................................................6

    D.  Settlement Discussions .......................................................................7

SUMMARY OF THE SETTLEMENT .........................................................9

    A.  The Proposed Settlement Class...........................................................9

    B.  Monetary Relief .................................................................................9

    C.  Extended Warranty Benefits ............................................................11

    D.  Class Notice Plan .............................................................................12

    E.  Claims Process .................................................................................14

    F.  Release of Claims Against Defendants..............................................15

    G.  Opt-Out Rights.................................................................................15

    H.  Class Counsel Fees and Expenses and Named Plaintiff Service Awards ...........................................................................................16

    I.  Objections and Settlement Approval ................................................16

LEGAL ARGUMENT.................................................................................17

I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED ...........................17

A.  The *Girsh* Factors Weigh in Favor of Approval ............................20

    1.  Continued Litigation Would Be Long Complex and Expensive ............................................................................20

2.   The Reaction of the Class to the Settlement .......................................22

3.   The Stage of the Proceedings .................................................................23

4.   The Risks of Establishing Liability ......................................................26

5.   The Risks of Establishing Damages ......................................................27

6.   The Risks of Maintaining the Class Action through Trial .................27

7.   Defendants' Ability to Withstand Greater Judgment ..........................28

8.   Reasonableness of the Settlement in Light of the Best Possible
     Recovery And All Attendant Risks Of Litigation...............................29

II.  THE NOTICE PROGRAM SATISFIES DUE PROCESS ...............................30

III. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................33

     A.  The Rule 23(a) Factors Are Met .........................................................33

         1.   Numerosity .....................................................................................33

         2.   Commonality ..................................................................................34

         3.   Typicality .......................................................................................35

         4.   Adequacy ........................................................................................36

     B.  The Rule 23(b)(3) Factors Are Met ....................................................37

         1.   Predominance .................................................................................38

         2.   Superiority .......................................................................................39

IV.  THE REQUESTED ATTORNEYS' FEES AND EXPENSES
     SHOULD BE AWARDED ...................................................................................40

     A.  The Requested Attorneys' Fees, Expenses, and Incentive Awards
         Are Reasonable and Should be Awarded.................................................40

     B.  The Requested Award Is Presumptively Fair and Reasonable Since
         It Will Not Diminish the Settlement Fund.................................................42

C.  The Factors Governing Approval Of Attorneys' Fees and Expenses Support The Requested Amount ................................................46

    1.  Class Counsel Obtained a Substantial Benefit for Settlement Class Members ..........................................................................46

    2.  Skill and Efficiency of Counsel:  Class Counsel Brought This Matter to an Efficient Conclusion ........................................49

    3.  The Complexity and Duration of the Litigation.................................51

    4.  Class Counsel Undertook the Risk of Non-Payment .........................52

    5.  Class Counsel Devoted Significant Time to This Case ......................53

    6.  Awards in Similar Cases ...................................................................54

D.  The Lodestar Cross-Check Supports That the Requested Fees and Expenses Are Fair and Reasonable ............................................................55

E.  The Class Representative Service Awards Should be Approved ...............58

F.  Class Counsels' Expenses are Reasonable and Should Be Approved........60

CONCLUSION ...................................................................................................61

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alin v. Honda Motor Co., Ltd.*,
  2012 WL 8751045 (D.N.J. Apr. 13, 2012)........................................................17

*In re Am. Family Enters.*,
  256 B.R. 377 (D.N.J. 2000) ......................................................................19, 20

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices
  Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009).........................................................................59

*Amchem Prods, Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................33, 36, 38, 39

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013)..........................................................................38

*In re Apple Comput., Inc. Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .....................................................45

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)............................................................................49

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) .....................................................................46, 56

*Bell Atlantic Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...............................................................18, 23, 48

*Beneli v. BCA Fin. Servs., Inc.*,
  324 F.R.D. 89 (D.N.J. 2018)...............................................................................47

*Bernhard v. TD Bank, N.A.*,
  2009 WL 3233541 (D.N.J. 2009) .......................................................................59

*Bezio v. Gen. Elec. Co.*,
  655 F. Supp. 2d 162 (N.D.N.Y. 2009)..........................................................43, 60

*Bredbenner v. Liberty Travel, Inc*.,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011) ..........................................19, 21, 24, 29

*Carroll v. Stettler*,
    2011 U.S. Dist. LEXIS 121185 (E.D. Pa. Oct. 19, 2011) ...................................60

*In re Cendant Corp. Sec. Litig*.,
    109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir.
    2001) ............................................................................................20, 24, 27, 31

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig*.,
    269 F.R.D. 468 (E.D. Pa. 2010)....................................................................18, 28

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ............................................................................24

*In re Cmy. Bank of N. Virginia*,
    418 F.3d 277 (3d Cir. 2005) ........................................................................33, 38

*Cohn v. Nelson*,
    375 F. Supp. 2d. 844 (E.D. Mo. 2005) ............................................................45

*Matter of Cont'l Ill. Sec. Litig*.,
    962 F.2d 566 (7th Cir. 1992) ............................................................................44

*In re Corrugated Container Antitrust Litig*.,
    643 F.2d 195 (5th Cir. 1981) ............................................................................24

*Danvers Motor Co, Inc. v. Ford Motor Co.*,
    543 F.3d 141 (3d Cir. 2008) ............................................................................39

*DeHoyos v. Allstate Corp*.,
    240 F.R.D. 269 (W.D. Tex. 2007)....................................................................44

*Demmick v. Cellco P'ship*,
    2015 WL 13643682 (D.N.J. May 1, 2015)..................................................49, 58

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010)..............................................................28, 56

*Dewey v. Volkswagen of Am.*,
    909 F. Supp. 2d 373 (D.N.J. 2012), *aff'd*, 558 F. App'x 191 (3d
    Cir. 2014) ........................................................................................................55

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................43

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ..............................................................................18

*Falco v. Nissan N. Am.*,
   2016 WL 1327474 (C.D. Cal. April 5, 2016)......................................................39

*Falco v. Nissan North America, Inc.*,
   Civ. Action No. 13-cv-00686 (DDP) (C.D. Cal.)..............................................30

*In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*,
   1992 WL 226321 (C.D. Cal. June 10, 1992).......................................................45

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)..........................................................................18

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.
   Litig.*,
   55 F.3d 768 (3d Cir. 1995) .........................................................................*passim*

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ......................................................................*passim*

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ......................................................................*passim*

*Handschu v. Special Servs. Div.*,
   605 F. Supp. 1384 (S.D.N.Y. 1985) ...................................................................24

*Hensley v. Eckhart*,
   461 U.S. 424 (1983)......................................................................................41, 42

*In re Ikon Office Sol., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................51

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................45

*In re Ins. Brokerage Antitrust Litig.*,
   2007 WL 1652303 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3d
   Cir. 2009) ............................................................................................................43

*Johnson v. Georgia Hwy. Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................42

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) .......................................................................35, 36

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995)....................................................................21

*In re LG/Zenith Rear Projection Television Class Action Litig.*,
   2009 WL 455513 (D.N.J. Feb. 18, 2009) ...............................................41, 43, 56

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
   149 F.R.D. 65 (D.N.J. 1993)......................................................................33, 34

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
   671 F. Supp. 819 (D. Mass. 1987)....................................................................43

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) ..........................................................43, 45, 46

*McLennan v. LG Elecs. USA, Inc.*,
   2012 WL 686020 (D.N.J. Mar. 2, 2012) ...........................................................57

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003).........................................................................38

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................................22

*Mirakay v. Dakota Growers Pasta Co., Inc.*,
   2014 WL 5358987 (D.N.J. Oct. 20, 2014) .........................................................41

*Molwitz v. Volkswagen Group Of America, Inc., Volkswagen Of
   America, Inc., Audi Of America, Inc., Audi Aktiengesellschaft, and
   Volkswagen Aktiengesellschaft*,
   No. 2:16-cv-03120 (D.N.J.) ..........................................................................3, 4

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)......................................................................................31

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   2018 WL 1635648 (E.D. Pa. Apr. 5, 2018)........................................................50

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  2018 WL 1658808 (E.D. Pa. Apr. 5, 2018)......................................................58

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ...............................................................35

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ......................................................52

*Officers for Justice v. Civ. Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................19

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)......................................................................56

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)......................................................................30

*Pro v. Hertz Equip. Rental Corp.*,
  2013 WL 3167736 (D.N.J. June 20, 2013)....................................................41

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d Cir. 1998) ...............................................................22, 27, 40

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)19, 23, 34, 35

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  106 F. Supp. 2d 721 (D.N.J. 2000).........................................................43

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
  1994 WL 202394 (E.D. La. May 18, 1994) ..................................................53

*Reyes v. Netdeposit, LLC*,
  802 F.3d 469 (3d Cir. 2015) ...............................................................34

*Rossi v. Procter & Gamble Co.*,
  2013 WL 5523098 (D.N.J. Oct. 3, 2013) ..................................................41, 42, 56

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001)..........................................................26, 60

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    2012 WL 1964451 (D.N.J. 2012) ........................................................................53

*In re Schering-Plough/Merck Merger Litig.*,
    2010 WL 1257722 (D.N.J. Mar. 26, 2010) .................................................45, 47

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 941 (E.D. Tex. 2000)..................................................................51

*Skeen v. BMW of N. Am., LLC*,
    2016 WL 4033969 (D.N.J. July 26, 2016) .........................................................17

*Slade v. Shearson, Hammill & Co.*,
    79 F.R.D. 309 (S.D.N.Y. 1978) .........................................................................21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    2008 WL 1956267 (S.D.N.Y. May 1, 2008) ......................................................43

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ...............................................................................34

*Stoetzner v. U. S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ...............................................................................23

*Sullivan v. DB Invs.*,
    667 F.3d 273 (3d Cir. 2011) (*en banc*) ........................................................18, 49

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005).............................................................................39

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007).................................................................55

*In re Viropharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016).........................................................52

*In re Volkswagen & Audi Warranty Extension Litig.*,
    692 F.3d 4 (1st Cir. 2012)...................................................................................54

*In re Volkswagen & Audi Warranty Extension Litig.*,
    89 F. Supp. 3d 155, 166-71 (D. Mass. 2015) ......................................................55

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004) ...................27

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...........................................................*passim*

*In re Warner Comm'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .............................................51, 52

*Weiss v. Mercedes- Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995).....................................21, 23, 24, 26

*Yaeger v. Subaru of Am., Inc.*,
2016 WL 4541861 (D.N.J. Aug. 31, 2016) ......................................16

**State Cases**

*In re AXA Fin., Inc.*,
2002 WL 1283674 (Del. Ch. May 22, 2002)....................................45

**Federal Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .........................................32

**Rules**

Fed. R. Civ. P. 23 ......................................................................*passim*

Fed. R. Civ. P. 26 ...........................................................................6

## INTRODUCTION

This case is about an alleged defect in the Timing Chain System[1] of the Settlement Class Vehicles.  The defect can cause serious damage not only to the Timing Chain System itself but also to the engine.

On June 14, 2018,[2] this Court entered an Order:  (i) preliminarily approving the Settlement between Plaintiffs,[3] on behalf of themselves and all others similarly situated, and Defendants Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen AG ("VWAG") and Audi AG ("Audi") (collectively "Defendants" or "VW/Audi"), and (ii) conditionally certifying the following class for settlement purposes:

> All persons and entities who purchased or leased a Settlement Class Vehicle, defined as certain 2008 through 2014 model and model year VW and Audi vehicles, as more particularly designated by the Vehicle Identification Numbers ("VIN") listed on Exhibit 4 to the Settlement Agreement imported and distributed by Defendant Volkswagen Group

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

[2] ECF Doc. No. 83.

[3] Lloyd Artola, Dawn Stanton Blanchard, Katrina Calihan, Hamza Deib, Umar Ellahie, Angel Esquijarosa, Allison Fleck, William Fleck, Allan Gaudet, Zachariah Gossman, Jason Hosier, Demetrie Hylick, Garrett Johnson, Pamela K. Kane, Hannah LeMoine, Shimelesse Mekbeb, Neel Mody, Karl Molwitz, Anoushirvan Nadiri, Suzanne Noyes, Debra J. Oles, Jeffrey Pipe, Jennifer Piumarta, John Schaffranek, Erika Sensnovis, Robby Smith, Michael Spencer, Dena Stockalper, William R. Swihart, David Zhao, Bartosz Zielezinski, and David Zimand (collectively, "Plaintiffs").

1

of America, Inc. for sale or lease in the United States and Puerto Rico (the "Settlement Class").[4]

Class Members have embraced the Settlement and have submitted thousands of claims for reimbursement in just a few weeks since Notice was issued. Plaintiffs now move for final approval of the Settlement so that the substantial monetary relief to the Settlement Class along with equally substantial equitable relief can be delivered without delay. Plaintiffs also seek to certify the Settlement Class and for approval of an award of attorneys' fees and reimbursement of expenses.[5]

As set forth below, the Settlement satisfies all of the elements for final approval.

## FACTUAL BACKGROUND

### A. The Timing Chain System Defect in Settlement Class Vehicles

Plaintiffs allege that Defendants knew the Timing Chain System installed in the Settlement Class Vehicles is defective and likely to fail, well before any service or maintenance should even be necessary.

---

[4] As set forth in the Settlement Agreement (ECF No. 80), the Settlement Class is defined as "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I(R) of this Agreement, in the United States of America and Puerto Rico."

[5] Reference herein to Exhibits are to the documents attached to the Declaration of James E. Cecchi ("Cecchi Decl.") in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement And Award of Attorneys' Fees and Reimbursement of Expenses, filed contemporaneously with this brief.

Failure of the Timing Chain System can lead to the need for repairs costing thousands of dollars.  Defendants have consistently maintained that the Settlement Class Vehicles are not defective, that the Timing Chain System and its components function safely and properly, and that they were properly designed, manufactured, distributed, marketed, advertised, warranted, and sold.  Defendants have maintained that no applicable warranties were breached, and no applicable statutes or common law duties were violated.  Defendants also maintain that the durational limits of the warranties must be enforced and that such warranty limitations were not unconscionable.

### B. The Action

This Settlement involves seven class action lawsuits, now consolidated, on behalf of a nationwide class and state subclasses, comprised of all persons and entities who purchased or leased a Settlement Class Vehicle.[6]

---

[6] The cases were originally captioned *Zimand v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 2:16-cv-02765 (the "*Zimand* Action"); *Gaudet v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Volkswagen Aktiengesellschaft, Audi Aktiengesellschaft, and Audi Of America, Inc.*, No. 2:16-cv-02872 (the "*Gaudet* Action"); *Molwitz v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Audi Of America, Inc., Audi Aktiengesellschaft, and Volkswagen Aktiengesellschaft*, No. 2:16-cv-03120 (D.N.J.) (the "*Molwitz* Action"); *Fleck v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 2:16-cv-03296 (the "*Fleck* Action"); *Ellahie v. Volkswagen Group Of America, Inc., Volkswagen Of America, Inc., Volkswagen Aktiengesellschaft, Audi Aktiengesellschaft, and Audi*

The first action filed in this District, was *Zimand*, filed on May 16, 2016, by Plaintiff David Zimand, asserting eight counts on behalf of a nationwide class and state subclasses.[7]  *Gaudet*, *Molwitz*, *Fleck*, *Ellahie*, and *Stockalper* were also filed in this District, alleging substantially similar facts and causes of action.  *See Gaudet*, ECF No. 1; *Molwitz*, ECF No. 1; *Fleck*, ECF No. 1; *Ellahie*, ECF No. 1; *Stockalper*, ECF No. 1.

On August 16, 2016, the above actions were consolidated under the caption *In re Volkswagen Timing Chain Product Liability Litigation*, No. 2:16-cv-02765 (D.N.J.).  On August 22, 2016, plaintiffs in the *Zimand, Gaudet, Molwitz, Fleck, Ellahie*, and *Stockalper* Actions, along with additional plaintiffs Garrett Johnson, Neel Mody, John Schaffranek, and Robby Smith, filed a First Consolidated Class Action Complaint (the "Complaint") in this Action.  *See* ECF No. 6.  The Complaint asserted thirty-four (34) counts on behalf of nationwide classes and state subclasses for fraud, breaches of contract, breach of express and implied

---

*Of America, Inc.*, No. 2:16-cv-03319 (the "*Ellahie* Action"); *Stockalper et al. v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 2:16-cv-04346 (the "*Stockalper* Action"); and *Artola v. Volkswagen Aktiengesellschaft, Volkswagen Group Of America, Inc., Audi Aktiengesellschaft and Audi Of America, Inc.*, No. 2:17-cv-03805 (the "*Artola* Action").

[7] A prior action filed in the Eastern District of New York, *Panepinto, et al. v. Volkswagenwerk Aktiengesellschaft, et al.*, No. 16-cv-07908 was filed on April 21, 2016.  The plaintiffs in that action voluntarily withdrew the action and were included as plaintiffs in the Consolidated Amended Complaint herein.

warranties, negligent misrepresentation, unjust enrichment, the Magnuson-Moss Warranty Act, and various violations of state consumer protection statutes. *See* ECF No. 6.

On December 12, 2016, Defendant VWGoA filed a comprehensive Motion to Dismiss and to Compel Arbitration Pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(6) and 9(b). ECF No. 36. Defendants raised numerous complex issues of law and argued forcefully for the dismissal of all of Plaintiffs' claims. On February 7, 2017, Plaintiffs filed their eighty (80) page brief in opposition (ECF No. 40), and Defendant VWGoA filed its Reply in Support on February 28, 2017. ECF No. 42. The Court issued a lengthy and well-reasoned ruling on the Motion on May 8, 2017 upholding substantially all of Plaintiffs' claims. *See* ECF Nos. 48 and 50. Thereafter, Defendant VWGoA filed its Answer to the Consolidated Complaint on June 1, 2017. ECF No. 57.

The Court issued the operative Pretrial Scheduling Order on July 13, 2017. On August 31, 2017, Defendants Audi AG and VWAG filed their Answers to the Consolidated Complaint. ECF Nos. 70-71. Meanwhile, on April 6, 2017, the *Artola* Action was filed by Plaintiffs Lloyd Artola, Angel Esquijarosa, Demetrie Hylick, and Michael Spencer in the Southern District of Florida asserting substantially similar claims. *See Artola*, ECF No. 1. On September 12, 2017, the *Artola* Action was consolidated into the above-captioned action. ECF No. 73. A

5

Stipulated Protective Order regarding discovery was entered on September 18, 2017, and thereafter the Parties commenced discovery efforts in earnest.  ECF No. 76.

### C. Investigation of Claims and Discovery

Prior to filing the Complaints in each of the actions, Plaintiffs' counsel conducted a thorough legal and factual investigation into the Plaintiffs' claims and allegations.  Plaintiffs' counsel interviewed numerous putative Class Members and consulted with multiple experts as part of their investigation.  Because VWAG and Audi AG, refused to accept service, a lengthy and complicated process to serve them through the Hague Convention on Service Abroad of Judicial and Extra-Judicial Documents eventually culminated in service upon VWAG through the Convention and eventual acceptance of service by Audi AG's counsel after compliance with certain rules that were requested by the Bavarian Court were met by Plaintiffs. During this Action, the Parties engaged in meaningful discovery, beginning shortly after the Court's ruling on the Motion to Dismiss.  In particular, Plaintiffs and Defendants exchanged Initial Disclosures as required by FED. R. CIV. P. 26, negotiated Electronically Stored Information ("ESI") search queries, and exchanged comprehensive sets of Interrogatories, Requests for Admissions and Requests for Production throughout July, August, and September of 2017.  The Parties began responding to discovery requests in September 2017.

Plaintiffs and Defendants also negotiated and agreed to a Vehicle Inspection Protocol, and one of the Plaintiffs' vehicles was selected and inspected by Defendants' experts. As the litigation continued, Plaintiffs vetted numerous additional experts, retained and extensively consulted with multiple experts, including a metallurgist, a mechanical engineer, and a warranty valuation expert.

**D. Settlement Discussions**

After the Parties had an opportunity to thoroughly consider the Court's ruling on the Motion to Dismiss, and after the Parties began responding to discovery and reviewing discovery responses, the potential for settlement negotiations was discussed between Co-Lead Class Counsel and defense counsel. Within the context of these settlement discussions, Defendants produced additional data in order to provide Co-Lead Class Counsel with more complete information regarding the Settlement Class Vehicles, the composition of the putative Class, and data pertinent to damages and potential forms of relief. This exchange of information enabled the Parties to commence substantive, meaningful settlement negotiations.

Over the course of more than a year, the Parties held multiple in-person negotiation sessions, and in between such sessions, communicated extensively via telephone and email as terms and conditions of the Settlement were debated and negotiated. Ultimately, after vigorous arm's length negotiations, the Parties agreed

in late April 2018 upon the material terms and conditions set forth in the Settlement Agreement.   Of significance, before execution of the Settlement Agreement, and even through the Preliminary Approval motion stage, there was no negotiation or discussion of the attorneys' fees beyond the fact that they would be the subject of separate negotiation.   Indeed, only shortly before Plaintiffs' Motion in Support of the Settlement and Application for an Award of Attorney's Fees and Expenses did the parties finally agree upon the amount of the fee request that Plaintiffs would submit unopposed by Defendants.   *See* Point IV, *infra*.

This Litigation has been vigorously contested for nearly two years.   Class Counsel have significant experience litigating numerous consumer and other high-stakes class actions.   Based on the extensive investigation, exchange of discovery, in-depth analysis of the factual and legal issues presented, consultations with experts, and arm's-length negotiations with Defendants, Class Counsel believe the Settlement provides outstanding monetary relief to the Settlement Class along with equally substantial equitable relief.   Class Counsel firmly believe that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are eminently fair, reasonable and adequate, especially when compared to similar settlements and in light of the risks of continued litigation.

## SUMMARY OF THE SETTLEMENT

### A. The Proposed Settlement Class

The Settlement provides relief to all persons and entities who purchased or leased a Settlement Class Vehicle in the United States and Puerto Rico, as defined by Section I(R) of the Settlement Agreement.  Specifically, this includes the owners/lessees of certain 2008 through 2014 model and model year VW and Audi vehicles, as more particularly designated by the Vehicle Identification Numbers ("VIN") listed on Exhibit 4 of the Settlement Agreement.[8]

### B. Monetary Relief

The Settlement delivers outstanding relief to the Class.  As set forth in detail in the Settlement Agreement, Settlement Class Members will be entitled to reimbursement for up to 100% of their losses, subject to certain requirements and limitations set forth in the Settlement Agreement, as follows:

---

[8] Excluded from the Class are:  (a) anyone claiming personal injury, property damage, and/or subrogation; (b) all Judges who have presided over the Actions and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendants or any Released Parties from any Released Claims; and (k) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class

1. **100%** refund of the paid dealer invoice amount for the covered part(s) and labor repairs or replacement of the Timing-Chain Tensioner at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an Independent Service Center ("ISC"), the Settlement Class Member will receive a refund of the paid invoice amount for the covered parts and labor, up to $1,100.

2. **100%** refund of the paid dealer invoice amount for the covered part(s) and labor repairs or replacement of the Timing Chain at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an ISC, the Settlement Class Member will receive a refund of the paid invoice amount for the covered parts and labor, up to $1,500. This includes coverage for oil change, oil filter, and cleaning of the oil pan.

3. **100%** refund of the paid dealer invoice amount for the simultaneous covered part(s) and labor for repairs or replacement of the Timing Chain and the Timing-Chain Tensioner at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an ISC, the Settlement Class Member will receive a reimbursement of the paid invoice amount for the covered parts and labor, up to $2,000.

4. If the Timing Chain or Timing Chain Tensioner fails more than thirty (30) days after the Notice Date, repair or replacement must be done at an authorized VW or Audi dealer pursuant to the terms of the Warranty Extension.

5. **Up to 100%** refund of the invoice amount subject to time/mileage parameters and percentage of reimbursement limits in Table One, below, for the covered parts and labor for the repair or replacement of a damaged or failed engine determined to be directly caused by a Timing Chain or Timing Chain Tensioner failure at an authorized Audi or Volkswagen dealer within 10 years or 100,000 miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date. If repaired at an ISC, the Settlement Class Member will received a reimbursement of no more than $6,500, subject to

the time/mileage parameters and percentage of reimbursement limits in Table One.

6.  If the damage or failed engine determined to be directly caused by a failed Timing Chain or Timing Chain Tensioner occurs more than thirty (30) days after the Notice Date and within 10 years or 100,000 miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle, the Class Member must take the vehicle to an authorized VW or Audi dealer for repair/replacement, pursuant to the terms of the Warranty Extension and subject to the following time/mileage percentage limits:

**TABLE 1: REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES FOR DAMAGED OR FAILED ENGINE DUE TO TIMING CHAIN TENSIONER/TIMING CHAIN FAILURE**

| Time from in-service date | Less than 60,000 miles | 60,001 to 75,000 miles | 75,001 to 85,000 miles | 85,001 to 100,000 miles |
| --- | --- | --- | --- | --- |
| 5 years or less | 100% | 70% | 60% | 45% |
| 5-7 years | 70% | 60% | 50% | 35% |
| 7-10 years | 60% | 50% | 40% | 25% |

To obtain the monetary benefits, the Settlement Class Member must submit a simple Claim form (Exhibit 1 to the Settlement Agreement) showing, among other things, the amount paid for the repairs necessitated by a failed timing chain/timing chain tensioner and Proof of Adherence to the Vehicle's Maintenance Schedule.

**C. Extended Warranty Benefits**

The Settlement Agreement further provides substantial benefit to Settlement

Class Members by extending the New Vehicle Limited Warranty applicable to the Settlement Class Vehicles to cover repair or replacement of a failed Timing Chain and/or Timing Chain Tensioner by an authorized VW or Audi dealer for a period of ten (10) years or one hundred thousand (100,000) miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle.  The Warranty Extension will include the Timing Chain, the Timing Chain Tensioner, and all parts and labor necessary to effectuate that repair, with the Settlement Class Member to show Proof of Adherence to the Vehicle's Maintenance Schedule.

In addition, if the Class Vehicle suffers engine damage as a direct result of the Timing Chain or Timing Chain Tensioner failure, more than thirty (30) days after the Notice Date and within 10 years or 100,000 miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle, the Settlement Class Member will be covered pursuant to Table 1 set forth above at a VW or Audi dealer.

Lastly, the Warranty Extension is fully transferable to subsequent owners.

### D. Class Notice Plan

The Settlement Agreement and the Preliminary Approval Order provided for the Settlement Administrator to mail individual Class Notice to Settlement Class Members by first-class mail to the current or last known address of all reasonably identifiable Settlement Class Members.  The Notice was sent in the form set forth

in Exhibit 5 to the Settlement Agreement.   Class Notice was timely sent to Settlement Class Members.   *See* Affidavit of Ryan Kao ("Kao Aff."), the Project Manager for Epiq Global, dated September 13, 2018, annexed as Exhibit 1 to Cecchi Decl.   The addresses for the Notices were compiled from records in the same manner as recall information is obtained, from the same vendor whom automobile manufacturers use for recall notices, HIS Markit/Polk ("Polk").   (Kao Aff. ¶6.)   The total number of Settlement Class Vehicles was 477,222.   (*Id.*)   As outlined in the Kao Affidavit, there were **631,243** VW Notices sent to Settlement Class Members with VW Class Vehicles, and **375,175** Audi Notices sent to Class Members with Audi Settlement Class Vehicles, totaling **1,006,418** class Notices sent.   (Kao Aff. ¶10.)[9]   With respect to any returned Notices, efforts were made to locate updated address information and remail such Notices.   (Kao Aff. ¶¶11-12.)

In addition, the Settlement Administrator has established a Settlement website (www.TimingChainLitigation.com) containing (1) instructions on how to submit a Claim for reimbursement either by mail or online submission; (2) a portal through which a person can enter the VIN number of a vehicle to confirm if it is a

---

[9] As noted in the Kao Aff. (¶8), the New Hampshire Dept. of Motor Vehicles has delayed release of the registration records for vehicles registered in New Hampshire.   Polk has informed Epiq that there are approximately 7,544 New Hampshire records which they are waiting for release.   As a result, Notice could not be sent to those Class Members for reasons beyond the control of the Parties and Epiq and despite the best efforts of Epiq.

Settlement Class Vehicle; (3) instructions on how to contact the Settlement Administrator, Defendants and Lead Settlement Class Counsel for assistance; (4) a copy of the Claim Form, Class Notice, and the Settlement Agreement; and (5) other relevant information agreed upon by counsel for the Parties.

Additionally, Defendants have advised each of its VW and Audi Dealers of the material terms of the Settlement relating to the Extended Warranty, so that authorized dealers may effectively communicate with Settlement Class Members and repair Settlement Class Vehicles under the terms of the Extended Warranty.

### E. Claims Process

If finally approved, the Settlement's Extended Warranty shall apply to any Settlement Class Vehicle without the need for a claim form.  Settlement Class Members need only take the Settlement Class Vehicle to an authorized dealer to receive any Timing Chain or Timing Chain Tensioner repair before 100,000 miles/10 years from the In-Service Date of the vehicle.

To receive reimbursement for previous repairs, Settlement Class Members will submit a Claim Form, along with Proof of Adherence to the Vehicle's Maintenance Schedule[10] and Proof of Repair Expense.  The Settlement Agreement

---

[10] In the event maintenance records cannot be obtained despite a good faith effort, the Settlement Class Member may submit a sworn Declaration which is a document accessible on the website, detailing what efforts were made to obtain the records, including why the records are not available, and attesting to adherence to

also sets forth a detailed disputed claim procedure, by which Settlement Class Members may cure any defects in their submission and contest a denial of their claim.  Exhibit A, Settlement Agreement, at § I(M).

The Settlement Administrator shall mail to the Settlement Class Member a reimbursement check to the address on the Claim Form within seventy-five (75) days of the date of the receipt of the Claim, or within seventy-five (75) days of the Effective Date of the Settlement, whichever is later.  Defendants bear all costs of the Notice and Claims process.

### F.  Release of Claims Against Defendants

As set forth in the Settlement Agreement, including Section I(O) and I(P), Settlement Class Members will release all Released Claims against the Released Parties.

### G. Opt-Out Rights

A Settlement Class Member who wishes to opt out of the Settlement Class must do so according to the terms in the Settlement Agreement, as set forth in Section V(B).  The deadline to do so has not passed.  However, to date, of the potential 1,006,418 Class Members, only 77 have chosen to opt out of the Settlement – a minuscule percentage of the Class.  A complete list of Opt-Outs will be annexed to the Reply papers to be submitted on or before November 14, 2018

---

the relevant aspects of the Settlement Class Vehicle's maintenance schedule as set forth in the Settlement Agreement.

("Exclusions List").   The [Proposed] Final Order and Judgment sets forth that those Settlement Class Members on the Exclusions List shall not be bound by the Settlement and shall not be entitled to any benefits of the Settlement.

Any Settlement Class Member who does not opt out of the Settlement shall be deemed to be part of the Settlement Class and shall be bound by all applicable proceedings, orders and judgments.

## H. Class Counsel Fees and Expenses and Named Plaintiff Service Awards

The application for an award of Attorneys' Fees and Reimbursement of Expenses and Named Plaintiff Service Awards is addressed at Point IV, *infra*.

## I. Objections and Settlement Approval

Under the Settlement Agreement, any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in the Settlement Agreement.

To date, relatively few objections have been received, and those received primarily challenged the 10 year/100,000 mile cutoff for reimbursement and extended warranty coverage.  Notably, these reasons have not been considered as valid grounds to reject a settlement.[11]  Because the bar date for filing objections has

---

[11] *See Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) ("Like any compromise, a case could be made for the longer warranty period

16

not yet occurred, Plaintiffs will address the objections completely in a brief filed

on or before November 14, 2018, under the Preliminary Approval Order.

## **LEGAL ARGUMENT**

### I.    **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED**

Rule 23(e) requires a determination by the district court that the proposed

settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e); *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("*Warfarin Sodium*").

There is a strong judicial policy in favor of resolution of litigation before trial

---

advocated by these objectors, or for the status quo that Subaru might achieve if the settlement were rejected and it ultimately prevails on its legal and factual arguments. . . .  Of course, for those in aggravated situations there was the opportunity to opt out of this class and to pursue one's own remedies. That the proposed settlement does not provide a second 100,000 mile warranty upon the remedial parts is not reason for this Court to reject it."); *Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) ("Plaintiffs do not deny that the warranty on Ms. Williams's vehicle . . . has already expired even under the extended terms of the settlement. . . . The Court agrees with Plaintiffs, however, that the Court's job is 'not to determine whether the settlement is the *fairest possible* resolution.' . . .  With regard to the amount of relief offered under the settlement and the Class members receiving that relief, 'lines must be drawn somewhere.' . . . Ms. Williams does not convince the Court that the seven-year warranty provided by the settlement, though perhaps not the fairest possible resolution, is unreasonable. The limited warranty extension reflects the reality that cars decline in value over time. . . .  A warranty extension need not be indefinite to be reasonable.") (citations omitted); *Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045, at *12 (D.N.J. Apr. 13, 2012) (finding that class settlement with auto manufacturer was reasonable where the "largest category of objections comes from customers whose cars were too old, or had too many miles to be eligible for recovery according to the lines drawn in the agreement").

particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Truck*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). The *Ehrheart* court held:

> This presumption is especially strong in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GMC Truck,* 55 F.3d at 784. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart*, 609 F.3d at 594-95; *see also Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arms'-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *See, e.g.*, *GMC Truck*, 55 F.3d at 785; *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011) (*en*

18

*banc*); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("A class settlement is entitled to an 'initial presumption of fairness' when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'") (quoting *GMC Truck*, 55 F.3d at 785); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.641 (2004).

A fair, reasonable and adequate settlement need not be the "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("*Prudential I*") (citations omitted). As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982);

*see also In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir. 2001).

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GMC Truck*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *Am. Family*, 256 B.R. at 418. Here, the Settlement meets each of these factors, and thus, should be approved.

## A. The *Girsh* Factors Weigh in Favor of Approval

### 1. Continued Litigation Would Be Long Complex and Expensive

The first *Girsh* factor is whether the Settlement avoids a lengthy, complex and expensive continuation of litigation. This factor "captures the probable costs,

20

in both time and money, of continued litigation." *Cendant II*, 264 F.3d at 233-34 (internal quotation marks omitted).  "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner*, 2011 WL 1344745, at *11.  Courts consistently have held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement.  *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978).  *See also GMC Truck*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense).  This factor undoubtedly weighs in favor of Settlement.

Here, due to the factual and legal complexities involved in this case, continued litigation necessarily would be extremely expensive and time-consuming and would involve substantial factual and expert discovery around the country (and likely Germany) as well as significant motion practice.  Trial would involve extensive pretrial motions involving complex questions of law and fact, and the trial itself would be lengthy and complicated.  This favors the settlement of the litigation.  *See Warfarin Sodium*, 391 F.3d at 536 (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation); *Weiss v. Mercedes-*

*Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) ("*Weiss*") (approving settlement that was the "result of an arm's length negotiation between two very capable parties" and where "Mercedes was prepared to contest this class action vigorously."). Post-trial motions and appeal would further delay resolution and increase costs. *Id*. at 536 ("it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement). Even if Plaintiffs were successful, Defendants would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated.

Under all of the circumstances, a certain result now, as the mileage and years in service continue to accumulate, or cars go out of service as a matter of course, rather than an uncertain result occurring years in the future, weighs in favor of approval of the Settlement. For these reasons, the first *Girsh* factor weighs in favor of final approval of the Settlement

### 2. The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 148

22

F.3d 283, 318 (3d Cir. 1998) ("*Prudential II*").   To properly evaluate it, "the number and vociferousness of the objectors" must be examined.  *GMC Truck*, 55 F.3d at 812.  Generally, "silence constitutes tacit consent to the agreement."  *Id.* (quotation omitted).  A "paucity of protestors . . . militates in favor of the settlement," *See Bell Atl.*, 2 F.3d at 1314; *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential I*, 962 F. Supp. at 537 (small number of negative responses to settlement favors approval); *Weiss*, 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

Here, there are approximately 477,222 Class Vehicles.  Because vehicles may go through second and third owners, the actual number of mailed Notices exceeded one million. (Kao Aff. ¶10.)  Although there are many hundreds of thousands of members of the Settlement Class, to date there have been just 77 requests for exclusion and ***only 27 objections***, lodged.  This represents an extremely small fraction of Settlement Class Members.  Under *Girsh*, such a small number of exclusions and objections supports approval of the settlement.

### 3.  The Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness, and

adequacy of a settlement. *GMC Truck*, 55 F.3d at 785; *Girsh*, 521 F.2d at 157. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745 at *12. "Through this lens . . . courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *GMC Truck*, 55 F.3d at 813.

Nevertheless, even settlements reached before formal discovery may be appropriate if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g.*, *Weiss*, 899 F. Supp. at 1301 ("Admittedly, the case is still in the early stages of discovery.")

In *Weiss*, this Court addressed the Third Circuit's recognition:

> [T]hat early settlements could maximize the value for the class members while adhering to class action requirements. That court noted that a class member was better able to gauge his or her individual benefit to being a member of the class when a settlement offer accompanied the certification notice.

*Id.* (citations omitted).

Most importantly, the appropriateness of a class settlement is not measured by the thickness of the file or an assessment of the amount of formal discovery taken. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *Handschu v. Special Servs. Div.*, 605 F. Supp. 1384, 1394 (S.D.N.Y. 1985); *Cendant*, 264 F.3d at 235-36; *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982). Such a rule, of course, would offend public policy –

which encourages the early and effective resolution of complicated cases such as this.

Here, although the case resolved relatively early, Class Counsel possessed sufficient information to assess the relative strengths and weaknesses of their case and negotiate a favorable settlement. Class Counsel examined Class Vehicle engines and retained and consulted with multiple experts to identify the suspected defect and also reviewed discovery received from Defendants. Class Counsel possessed a thorough understanding of the potential liability, damages and class certification issues, which helped inform the Parties' negotiations and shape the Settlement. Class Counsel have substantial experience in automotive defect class action cases. With a vast wealth of experience, they were able to understand the strengths and weaknesses of the current litigation and gauge the resources, time, and expenses required to litigate this action through trial instead of a settlement that provides immediate and significant benefits to hundreds of thousands of vehicle owners.

Automotive defect class cases present unique issues, as the cars continue to age and put on miles. Therefore, early settlement is in the best interests of the class, as it enables the maximum number of Settlement Class Members to receive the tangible benefits of the Settlement.

### 4.  The Risks of Establishing Liability

 "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC Truck*, 55 F.3d at 814.  "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001).

Although Class Counsel believe that the claims presented in this litigation are meritorious, they are experienced counsel who understand that the "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301.  Defendant has zealously defended against these claims, and would surely continue to do so if the litigation were to proceed.   The Settlement here presents the Class with immediate, substantial, guaranteed relief.   Further, although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree.  These risks include the potential denial of class certification, the granting of summary judgment, and loss at trial.  Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement, particularly here, where the Settlement provides the Class with valuable monetary and equitable relief now.

### 5.  The Risks of Establishing Damages

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant*, 264 F.3d at 238.  The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement.  *Prudential II*, 148 F.3d at 319.   In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'"  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004).  Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement.  264 F.3d at 239.  The same is true here.  The risks of establishing damages favor final approval.

### 6.  The Risks of Maintaining the Class Action through Trial

The Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial.  *Girsh*, 521 F.2d at 157.  Class Counsel believe that this case is wholly appropriate for class certification in the

litigation context.  However, there is always a risk that this Court would find this action not suitable for class certification, or find it not suitable for litigation on a multi-state basis.  Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative."  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010).  Finally, even if a class is certified, there is no sure bet that Plaintiffs would prevail at trial.  In other words, class litigation is inherently uncertain and subject to many twists and turns.  Experienced counsel know this and, consequently, this factor weighs in favor of final approval.

### 7.  Defendants' Ability to Withstand Greater Judgment

Although there is no dispute that Defendants have ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval.  *See, e.g.*, *Warfarin Sodium*, 391 F.3d at 538.  This factor is generally neutral when the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations.  *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Warfarin Sodium*, 391 F.3d at 538 ("fact that [defendant] could afford to pay more does not mean that it is obligated

to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"); *Bredbenner*, 2011 WL 1344745, at *15 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts").

### 8. Reasonableness of the Settlement in Light of the Best Possible Recovery And All Attendant Risks Of Litigation

The final two *Girsh* factors are the reasonableness of the Settlement in light of the best possible recovery, and all the attendant risks of litigation. These factors, too, support approval of this Settlement and its benefits.  This Settlement offers real and robust economic benefits to Class Members.  VW/Audi will refund 100% of the cost incurred by a Settlement Class Member to have a failed Timing Chain and/or Timing Chain Tensioner replaced by an authorized dealer, provided the failure occurs within ten years and 100,000 miles from the In-Service Date of the vehicle.  There is no cap.  For repairs or replacement of the Timing Chain and/or Timing Chain Tensioner previously performed by an Independent Service Center, VW/Audi will refund the Class Member up to $2,000 (which amount was calculated based on the highest repair labor rates in the country).  This degree of reimbursement is unquestionably robust in comparison with other automobile defect class settlements.  Also, as detailed above, Class Members can recover up to 100% of the cost of engine repairs associated with a Timing Chain failure and receive Extended Warranty protection under the Settlement.

By comparison, in *Falco v. Nissan North America, Inc.*,[12] a recent timing chain settlement in California involving certain Nissan vehicles on behalf of California and Washington State owners only, the matter was settled and finally approved after approximately five years of litigation. The settlement provided for a sliding scale recovery with a maximum reimbursement of 80% of the first $900 of a timing chain repair or a voucher of $1500. No reimbursement for related engine damage was included.[13]

If this Action continued, Class Members might have received nothing if future rulings were unfavorable to the Class. Cecchi Decl. ¶ 10. In summary, this factor weighs in favor of approval of the Settlement.

## II.   THE NOTICE PROGRAM SATISFIES DUE PROCESS

To protect the rights of absent members of the Class, the Court must ensure that all Class Members who would be bound by a class settlement are provided the best practicable notice. *See* Fed. Rule Civ. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of

---

[12] Civ. Action No. 13-cv-00686 (DDP) (C.D. Cal.).

[13] To be clear, Plaintiffs are not suggesting that the settlement consideration in *Falco* was not fair, reasonable and adequate—each case must be judged on its own merits. However, the point is that the settlement consideration in the within action is more than fair, reasonable and adequate by any measure.

the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Both the content and the means of dissemination of the notice must satisfy the "best practicable notice" standard.

The notice of a class settlement should: define the class; describe clearly the options open to the class members and the deadlines for taking action; describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees; indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement; explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; provide information that will enable class members to calculate or at least estimate their individual recoveries; and prominently display the address and phone number of class counsel and the procedure for making inquiries. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004); *see also Cendant*, 109 F. Supp. at 254. The form and manner of Notice approved by this Court meets all of these requirements.

As detailed above and in the Kao Affidavit, the direct Notice program here involved sending 1,006,418 Notices directly to Settlement Class Members or

potential class members.  (Kao Aff. ¶10.)  Notice of the proposed Settlement was also served on the Attorney General of the United States and to the Attorneys General of the states where Class Members reside, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  The Settlement Administrator also established a national toll-free number so class members could hear instructions, request a notice to be mailed out to them, or to speak with a live operator. (Kao Aff. ¶15.) The Settlement Administrator also established a dedicated address and email address, and a Settlement Website featuring copies of the Class Notices, the Claim Form, the Settlement Agreement, and other information relating to the terms and benefits of the Settlement.  (Kao Aff. ¶¶ 13-17.)  Thus, the Notice program that the Court initially and preliminarily approved was fully implemented and has informed the Class fully of their rights and benefits under the Settlement.

As of September 21, 2018, there have been 133,842 page hits for the Settlement website, 9,632 calls to the recorded message, 4,480 live operator calls, and numerous calls directly to Class Counsel by Settlement Class Members. Cecchi Decl. Exh. 2.  In addition, Defendant notified VW/Audi dealers around the country of the Extended Warranty relief so that dealers could properly advise Class Members of the relief being made available.   The Notice to the Class unquestionably satisfies all due process requirements.

## III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Class certification under Rule 23 has two primary components.  First, the party seeking class certification must first establish the four requirements of Rule 23(a):  "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')."  *Warfarin Sodium*, 391 F.3d at 527.  Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b).  *In re Cmy. Bank of N. Virginia*, 418 F.3d 277, 302 (3d Cir. 2005).  In the present case, Plaintiffs seek certification under Rule 23(b)(3), which requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 592-93 (1997).  As detailed below, all of the Rule 23 requirements are met here.

### A. The Rule 23(a) Factors Are Met

#### 1.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993).  For purposes of Rule 23(a)(1), "impracticable"

does not mean impossible, "only that common sense suggests that it would be difficult or inconvenient to join all class members." *See Prudential I*, 962 F. Supp. at 510; *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").

Here, the Settlement Class includes approximately 477,222 Settlement Class Vehicles identified precisely by VIN numbers in Exhibit 4 to the Settlement Agreement.   The potential number of Settlement Class Members, in this nationwide class, is approximately 1,006,418.  Given the number and geographic distribution of the Settlement Class Members, joinder of all Class Members would be impracticable, and the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. *Liberty*, 149 F.R.D. at 73.

### 2. Commonality

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium*, 391 F.3d at 527-28.  "Commonality does not require perfect identity of questions of law or fact among all class members.  Rather, even a single common issue will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (internal quotation marks omitted).  Here, the Settlement Class Members share many common issues of law and fact.

34

In the context of consumer fraud and warranty-based class actions, a class asserting claims based on a common course of conduct and common warranty satisfies the commonality requirement. *Prudential*, 962 F. Supp. at 511-14. The common questions of whether the Timing Chain Systems in Class Vehicles are or were defective, whether Defendants were aware of the defects, and of whether the Plaintiffs and the Class were harmed by VW/Audi's course of conduct are capable of class wide resolution. Accordingly, all Class Members share the same causes of action and suffered the same or similar harm and all are entitled to pursue claims for damages. Rule 23(a)(2)'s requirement of a common question of law or fact is satisfied.

### 3.  Typicality

In considering typicality under Rule 23(a)(3), the court must determine whether "the named plaintiffs['] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims. *Id.* So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

35

Typicality is readily established here.  The proposed Class Representatives each possessed a Class Vehicle with the same warranty and experienced the same failure—the failure of their Timing Chain System as a result of the alleged defect. Moreover, of the numerous Class Representatives herein, multiple vehicle models and years are covered and Class Representatives own in the aggregate both Audi and VW Settlement Class Vehicles affected. Accordingly, they allege the same injury as the other Class Members, and the typicality requirement is satisfied.

### 4.  Adequacy

The adequacy requirement has two components intended to ensure that the absent class members interests are protected: (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the class, and (b) the plaintiffs' counsel must be qualified to represent the class. *GMC Truck*, 55 F.3d at 800. Here, the requirements for adequacy are satisfied.

As for the first component, the Court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185.  There is no conflict between the proposed Class Representatives and the Class, because, as with all members of the Class, Plaintiffs seek compensation for the same allegedly defective Class Vehicles.  Plaintiffs have no interests that are antagonistic to or in conflict with the Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class members. *See Amchem*,

521 U.S. at 625-27 (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members).

As far as the adequacy of counsel is concerned, the Class is represented by Carella Byrne Cecchi Olstein Brody & Agnello, P.C., Kessler Topaz Meltzer & Check, LLP, Kantrowitz, Goldhamer & Graifman, P.C., as Co-Lead Class Counsel, and the six (6) other highly qualified and experienced firms in this matter, who comprise the Executive Committee appointed by the Court.[14]

All of these firms are renowned in the class action field generally, and many more so within automotive defect class litigation specifically, as demonstrated by the firm resumes submitted in connection with the Motion for Approval of An Award of Attorneys' Fees and Reimbursement of Expenses.  (*See* Declarations of various Firms annexed to the Cecchi Decl. as Exhibits 6 through 13.)  Accordingly, both prongs of the adequacy inquiry are satisfied.

### B.    The Rule 23(b)(3) Factors Are Met

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3).  The rule is satisfied here.  Questions of law or fact common to the Class Members predominate over any questions affecting only individual Class Members, especially in light of the proposed Settlement, which eliminates

---

[14] The Executive Committee firm members are: Thomas P. Sobran, P.C.; Mazie, Slater Katz & Freeman, LLC; Seeger Weiss LLP; Baron & Budd, P.C.; Podhurst Orseck, P.A.; and Lite DePalma Greenberg LLC.

any individual issues.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### 1.    Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer fraud . . . ."  521 U.S. at 625.  "Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members."  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof.") (internal quotation marks and alterations omitted); *Cmty. Bank*, 418 F.3d at 309 (predominance requirement satisfied where "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme"; "[t]he presence of potential state or federal claims that were not asserted by the named plaintiffs does not defeat a finding of predominance").

Here, all of the Class Members allege they have been injured by the same wrongful course of conduct.  The common legal and factual questions, such as the existence of a design defect and/or materials defect in connection with the

Settlement Class Vehicles' Timing Chain System and VW/Audi's knowledge of it, are at the core of the litigation and are focused on the actions of VW/Audi, not Plaintiffs. *See Falco v. Nissan N. Am.*, 2016 WL 1327474 (C.D. Cal. April 5, 2016) (finding predominance satisfied in case alleging a similar defect). Accordingly, predominance is satisfied.

### 2. Superiority

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

*Id.*; *Danvers Motor Co, Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

The superiority inquiry is simplified in the settlement context, because when certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems; one purpose of the settlement is not to have a trial. *Amchem*, 521 U.S. at 620. Moreover, "[f]or the purposes of settlement, concentrating litigation in one forum is desirable." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005). In making this analysis, the

district court may take the proposed settlement into consideration. *Prudential II*, 148 F.3d at 308; *Warfarin Sodium*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

Here, a class action is the superior method of resolving the Class Members' claims.  All of the Class Members' claims are based upon the same basic operative facts and legal standards.  Further, the Settlement provides Class Members the ability to obtain predictable, certain, and definite compensatory relief promptly and contains well-defined claim and administrative procedures to assure due process for each Class Member.  By contrast, individualized litigation carries with it great uncertainty, risk, and costs, and provides no guaranty that injured Class Members will obtain necessary and timely compensatory relief at the conclusion of the litigation.

## IV.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES SHOULD BE AWARDED

### A.   The Requested Attorneys' Fees, Expenses, and Incentive Awards Are Reasonable and Should be Awarded.

Class Counsel seek $8.6 million in fees and reimbursement of up to $150,000 in costs.  Defendant has agreed not to oppose that request up to the $8.6 million cap.  Correspondingly, Plaintiffs have agreed not to seek a fee greater than

the maximum fee of $8.6 million.  Cecchi Decl. ¶¶ 17, 29.  The fee and cost award is entirely separate from and does not diminish in any way the class relief or Class Representative Service Awards.  For the reasons set forth below, this award of attorneys' fees, expenses, and service awards is reasonable and should be approved by the Court.

The award of attorneys' fees in a class action settlement is within the Court's discretion.  *Rossi v. Procter & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013).  In addition, as was done here, the Supreme Court has recognized a preference of allowing litigants to resolve fee issues through agreement.  *Hensley v. Eckhart*, 461 U.S. 424, 437 (1983).  In this District, courts routinely approve agreed-upon attorneys' fees when the amount is independent of the class recovery and does not diminish the benefit to the class.  *E.g.*, *Mirakay v. Dakota Growers Pasta Co., Inc.*, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *Rossi*, 2013 WL 5523098, at *9; *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *6 (D.N.J. June 20, 2013); *In re LG/Zenith Rear Projection Television Class Action Litig.*, 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009).  Where the attorneys' fees are paid independent of the award to the class, the Court's fiduciary role in overseeing the award is greatly reduced because there is no potential conflict between the attorneys and class members.  *Mirakay*, 2014 WL 5358987, at *11; *Rossi*, 2013 WL 5523098, at *9 (citing *McBean v. City of New York*, 233 F.R.D. 377, 392

41

(S.D.N.Y. 2006)).

"While the Court is not bound by the agreement between the parties, the fact that the award was the product of arms-length negotiations weighs strongly in favor of approval." *Rossi*, 2013 WL 5523098, at *10. "[T]he benefit of a fee negotiated by the parties at arm's length is that it is essentially a market-set price— [Defendants] ha[ve] an interest in minimizing the fee and Class Counsel have an interest in maximizing the fee to compensate themselves for their work and assumption of risk." *Id.* Here, these standards counsel in favor of approving the requested fee. It was the product of a long and difficult negotiation, which occurred only after the parties had reached agreement on the substantive relief to the Class.

### B. The Requested Award Is Presumptively Fair and Reasonable Since It Will Not Diminish the Settlement Fund

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437; *see also Johnson v. Georgia*

*Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). Accordingly, courts regularly approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount does not decrease the benefit obtained for the class. *See LG/Zenith Rear Projection*, 2009 WL 455513, at *8-9 (approving agreed upon attorneys' fee award that did not diminish settlement fund); *In re Ins. Brokerage Antitrust Litig*., 2007 WL 1652303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009)); *In re Prudential Ins. Co. of Am. Sales Practice Litig*., 106 F. Supp. 2d 721, 732 (D.N.J. 2000) (finding it significant that attorneys' fees would not diminish settlement fund); *see also McBean*, 233 F.R.D. at 392 (granting class counsel full amount of fees agreed to by defendant where attorneys' fees were separate from class settlement and did not diminish class settlement); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (same); *Bezio v. Gen. Elec. Co*., 655 F. Supp. 2d 162, 167-68 (N.D.N.Y. 2009) (same); *In re Sony SXRD Rear Projection Television Class*

*Action Litig.*, 2008 WL 1956267, at \*15-16 (S.D.N.Y. May 1, 2008) (same); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (same).

Here, Defendants have agreed not to object to paying Class Counsel a fixed sum of $8.6 million in attorneys' fees and expenses in connection with the relief obtained for the Class, subject to the Court's approval.  This award of attorneys' fees and costs is completely separate and apart from the relief available to the Class and, thus, will not reduce the relief to the Class in any manner.  Furthermore, attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement. Cecchi Decl. ¶¶ 15, 17, 29.

Moreover, the fee arrangement was negotiated under the best of market conditions—an arm's-length negotiation—a process which the courts have encouraged.  *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by negotiating parties themselves, should determine the quantum of attorneys' fees).  The virtue of a fee negotiated by the parties at arm's-length is that it is, essentially, a market-set price.  Defendants have an interest in minimizing the fee; Class Counsel have an interest in maximizing the fee to compensate themselves (as the case law encourages) for their risk, innovation, and creativity; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the Court

may award if the attorneys' fees award were litigated.

Because experienced counsel negotiated the fee arrangement in this case at arm's-length, judicial deference to the parties' fee agreement is warranted. *See In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("[W]ith regard to attorneys' fees[,] . . . the presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval,' even if it is 'not binding on the court.'") (quoting *Weber v. Gov't. Emps. Ins. Co.,* 2009 U.S. Dist. LEXIS 91322, *53 (D.N.J. Sep. 30, 2009)).[15]

Additionally, as explained in *McBean*, 233 F.R.D. at 377, a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a

---

[15] *See also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Comput., Inc. Deriv. Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelson*, 375 F. Supp. 2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *In re AXA Fin., Inc.*, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees."); *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (stating that the court should be reluctant to disturb agreed-upon attorneys' fees where class counsel negotiated the fee with sophisticated defense counsel who were familiar with the case, risks, amount and value of class counsel's time, and nature of the result obtained for class).

common fund.  "If money paid to the attorneys comes from a common fund, and is, therefore, money taken from the class," the court reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." *Id.* at 392.  "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced because there is no conflict of interest between attorneys and class members."  *Id.*  The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's-length negotiations.  *Id.*  In short, Class Counsel's requested award of $8,600,000 in connection with conferring a substantial benefit on the Class is presumptively reasonable where that award will not diminish the settlement fund.

### C. The Factors Governing Approval Of Attorneys' Fees and Expenses Support The Requested Amount

#### 1. Class Counsel Obtained a Substantial Benefit for Settlement Class Members

The reasonableness of attorney fee awards in class action cases is traditionally viewed under the factors enunciated in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006).[16]  Moreover, "'[a]ttorneys' fees are awardable even though the

---

[16]  Those factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections to the settlement

benefit conferred is purely nonpecuniary in nature.'" *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *15 (quoting *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 169-70 (3d Cir. 1975)).

The first *Gunter* factor, as relevant here (*i.e.*, the number of persons benefitted), plainly weighs in favor of approving the requested attorneys' fees and expenses. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 108 (D.N.J. 2018) ("The first *Gunter* factor 'consider[s] the fee request in comparison to . . . the number of class members to be benefitted.'") (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). Over 1,006,418 individuals received direct notice, and there have been over 27,000 visits to the Settlement website, which informed Class Members of their settlement rights. Cecchi Decl. ¶¶ 23-28. As further detailed above, in Class Counsel's declaration (Cecchi Decl. ¶¶ 19-28), and in the proposed Settlement, at pp. 10-15, this Settlement provides a substantial benefit to the Class. Class Members will

_____

terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See Gunter*, 223 F.3d at 195 n.1. Two of these factors—the size of the fund created and the presence or absence of objectors — are irrelevant at this juncture. There is no common fund involved in this settlement and the deadline for filing objections is not until October 12, 2018—15 days after the deadline for filing the instant motion. As such, Plaintiffs will respond separately to any objections and/or opt-outs with supplemental memoranda filed pursuant to the deadlines set in the Preliminary Approval Order (*i.e.*, by November 14, 2018).

receive an extension of warranties on the timing chain systems for their Class Vehicles, including reimbursement for out-of-pocket costs for repair or replacement of their systems.  The extension period shall be a period of ten years or 100,000 miles from their Class Vehicles In-Service Date, whichever occurs first, and covers repair and replacement of timing-chain tensioners and/or timing chains, as discussed above.  In addition, if Class Members suffered engine damage to their Class Vehicles as a result of failure of the timing chain tensioners and/or timing chains, more than thirty (30) days after the Notice Date and within 10 years or 100,000 miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle, they will receive extended warranty coverage at an authorized VW or Audi dealer, subject to the time/mileage percentage limits shown in Table One of the Settlement Agreement.

Class Counsel negotiated a meaningful Settlement for the Class and conferred an immediate and real benefit on the Settlement Class.  "Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement." *Bell Atl.*, 2 F.3d at 1311.  Given the inherent litigation risks in this putative nationwide class action, the benefit is highly significant as it provides tangible benefits without the risks and delays of continued litigation.  This factor, therefore, favors settlement.

Further, although the second factor will be addressed in a subsequent brief,

to date, only 77 requests for exclusion and 27 objections have been received. These low numbers indicate a highly positive response to the proposed Settlement, which favors settlement. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) ("minimal number of objections and requests for exclusion are consistent with class settlements we have previously approved" and "favor settlement"); *Demmick v. Cellco P'ship*, 2015 WL 13643682, at *7 (D.N.J. May 1, 2015).  Silence from the overwhelming majority of class members is presumed to indicate agreement with the Settlement terms. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).  The lack of any meaningful negative response to the Settlement evinces the quality and value of the Settlement. Class Counsel will provide a final tally of the exclusions and will respond fully to the substance of the objections in a separate brief.  The data to date, however, reflects overwhelming support from the Class.  Class Counsel should, accordingly, be compensated for their achievement.

### 2.   Skill and Efficiency of Counsel:   Class Counsel Brought This Matter to an Efficient Conclusion

Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of the class counsels' services to the class are the results obtained").  The quality of the work which has been presented to the

Court, the undersigned believe, speaks for itself.  Facing the substantial risk of further litigation, as discussed above, Class Counsel's results here are substantial. Class Counsel have delivered a significant benefit to the Class in the face of numerous potentially fatal obstacles.

The fact that a case settles as opposed to proceeding to trial "in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Gunter*, 223 F.3d at 198.  Further, to achieve the Settlement, Class Counsel invested significant time and worked for several years.  *See* Cecchi Decl. ¶¶ 7-15.

In addition, Class Counsel has substantial experience litigating large-scale class actions and multidistrict litigations, and the Settlement Agreement is an extremely favorable resolution for the Settlement Class Members given the risks attendant with continued litigation.  Both sides litigated this case aggressively and professionally.  Also, no Objector has taken issue with the skill or efficiency of Class Counsel in securing this Settlement Agreement, nor could they.  *See In re Nat'l Football League Players' Concussion Injury Litig*., 2018 WL 1635648, at *5 (E.D. Pa. Apr. 5, 2018) ("No one has taken issue with the skill or efficiency of Class Counsel in securing this Settlement Agreement, nor could they. This factor weighs heavily in Class Counsel's favor.").

50

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel.  *See*, *e.g*., *In re Ikon Office Sol., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 941, 970 (E.D. Tex. 2000). Defendants were ably represented by counsel from Chase Kurshan Herzfel & Rubin, LLC, who are highly experienced and seasoned attorney known for success in civil litigation matters, and specifically including automobile-related litigation.

Class Counsel's ability to obtain the Settlement for the Class in the face of a formidable opponent further confirms the high quality of Class Counsel's representation.  Accordingly, Class Counsel respectfully submit that the third *Gunter* factor, the skill and efficiency of the attorneys involved, strongly supports their application.

### 3.      The Complexity and Duration of the Litigation

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation."  *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). Plaintiffs here faced considerable legal and factual hurdles absent settlement. "[E]ven [though] Plaintiffs' Complaint survived Defendants' motion to dismiss,

their case would have faced additional legal and factual hurdles on summary judgment, at trial, and potentially on appeal." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) (citation omitted). Continued litigation likely would have been very costly for both parties. Even if Plaintiffs would have recovered a large judgment at trial on behalf of the Settlement Class Members, their actual recovery would likely be postponed for years. There is also the possibility that Plaintiffs would recover nothing. The Settlement Agreement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016). Thus, the fourth *Gunter* factor weighs in favor of approval.

### 4. Class Counsel Undertook the Risk of Non-Payment

Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no, or very little, recovery and leave them uncompensated for their time as well as for their substantial out-of-pocket expenses. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Comm'ns.*, 618 F. Supp. at 747-49 (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious

risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994); *see also In re Ocean Power Techs, Inc.*, 2016 WL 677218, at *28 ("Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.") (citation omitted); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.") (citations omitted). Class Counsel has litigated this case for more than two years without pay, and has shouldered the risk that the litigation would yield little to no recovery.  Despite the litigation risks, Class Counsel were able to forge a resolution that provides significant relief to the Class.  Thus, there is little doubt that Class Counsel undertook a significant risk here and the fee award, respectfully, should reflect that risk.  Accordingly, the fifth *Gunter* factor weighs in favor of approving the attorneys' fees request.

### 5.   Class Counsel Devoted Significant Time to This Case

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199.  Since the inception of this case, 7,431.50 hours of attorney and other professional or paraprofessional time were expended on this

case.  Cecchi Decl. ¶ 39.  This includes, *inter alia*: the time spent in the initial factual investigation of the case and interviewing clients about their experiences; researching complex issues of law; preparing and filing the initial and amended complaints; responding to Defendants' comprehensive motion to dismiss; drafting discovery requests; reviewing documents produced by Defendants; extensive consulting with multiple expert witnesses; hard-fought settlement negotiations; documenting the Settlement; researching and briefing issues relating to the preliminary and final approval of the Settlement; working with the Settlement Administrator to effectuate Notice; and responding to numerous Class Member inquiries.  *See id*.  These hours are reasonable for a complex class case like this one.  Further, Class Counsel's submission today does not include time to be spent going forward—both in preparing and presenting arguments on final approval, defending the settlement from any appellate or other attacks that may result, and assisting class members with further inquiries and the claims process.

Thus, the sixth *Gunter* factor also weighs in favor of approving the attorneys' fees request.

### 6.    Awards in Similar Cases

With regard to the seventh *Gunter* factor, the $8,600,000 attorneys' fee award sought by Plaintiffs' proposed lodestar calculations are similar to awards approved in similar cases.  *See, e.g*, *In re Volkswagen & Audi Warranty Extension*

*Litig.*, 692 F.3d 4, 22 (1st Cir. 2012) (in engine defect case, circuit court directed lower court on remand to use "the base lodestar figure of $7,734,000" for calculating fees for class counsel where settlement offered, among other benefits, payment for engine repair or replacement costs and warranty extension for vehicles); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 166-71 (D. Mass. 2015) (on remand, granting enhanced fees of $15,468,000, using base lodestar of $7,734,000, where settlement resolved claims of improprieties in automobile manufacturer's warranty extension and reimbursement program, and involved allegations of engine defects); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 390-94, 400 (D.N.J. 2012) (granting attorney fees of $9,207,248.19 where settlement involved Volkswagen and Audi automobiles with allegedly defectively designed sunroofs that leaked and primary claim was for breach of express warranty), *aff'd*, 558 F. App'x 191 (3d Cir. 2014); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 750-51 (E.D. Tex. 2007) (granting adjusted lodestar of $9,500,000.00 where proposed settlement provides class members with lease and warranty extensions based on defective odometer claim).

### D. The Lodestar Cross-Check Supports That the Requested Fees and Expenses Are Fair and Reasonable

Even though the fact that a fee is negotiated weighs in favor of approval, the Court may also perform a lodestar cross-check to determine the reasonableness of

the fee.  *Rossi*, 2013 WL 5523098, at \*10; *LG/Zenith Rear Projection*, 2009 WL 455513, at \*8.  In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry."  *In re AT&T Corp.*, 455 F.3d at 169 n.6.  Indeed, where there have been no objections to the lodestar calculations, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources."  *Dewey*, 728 F. Supp. at 592.  To calculate the lodestar amount, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Here, the lodestar method confirms the reasonableness of the percentage fee being sought as the lodestar represents negative multiplier.

Class Counsel and their staff have expended 7,431,50 hours on this case. Cecchi Decl. ¶ 39.  The hours recorded were incurred on matters for the benefit of the litigation and representation of their clients as detailed *supra* regarding the sixth *Gunter* factor.  Given the effort expended and the complexity of the legal and factual issues involved, the hours incurred are entirely reasonable.

Moreover, the hourly rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of the particular attorney.  *Id*. ¶¶ 32-33, 38 n.5.; Cecchi Decl. Exhs. 6-13.  The rates for each attorney and paralegal are set forth in Class Counsel's Declarations and the charts and exhibits to the Declarations.  *Id*., Exhs. 6-13.  The lodestar rates are

based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the lawyer. *Gunter*, 223 F.3d at 195.

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable in this case. Altogether, this yields a collective lodestar based solely on the time for Class Counsel, of nearly $ 4,749,356.25 million in lodestar, and a total of 134,375.34 in expenses which will be paid entirely by the defendant. Notably, the fee sought represents a modest multiplier of 1.81 which is well within the range of appropriate multipliers for complex contingent litigation such as this. *See McLennan v. LG Elecs. USA, Inc*., 2012 WL 686020, at *10 (D.N.J. Mar. 2, 2012) (awarding multiplier of 2.93 and citing cases noting that range of multipliers in this circuit is between 1 and 4).

The reasonableness of the negotiated fee is also illustrated by comparing the fee to the monetary relief already claimed in this settlement. The claim rate to date has been particularly strong and if history is a gauge will increase as the claim deadline approaches. According to Epiq, if historical claim patterns repeat in this case, it is reasonable to anticipate that the monetary relief claimed will be at least $50,000,000 without valuing the warranty extension benefit. But if the fee is

measured solely by the anticipated monetary claim rate, it represents a modest 17.2 percent of the economic claims.  As the Court is well aware, this percentage is well below the norm of 33.3 percent which is frequently utilized in this Circuit.  *See Demmick*, 2015 WL 13646311, at *3 ("Many district courts in this Circuit have chosen to award attorneys' fees at the 33.33% level—which is the approximate median of the range recognized as acceptable by the Third Circuit.") (citing cases); *cf. In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1658808, at *3 & n.3 (E.D. Pa. Apr. 5, 2018).

### E.   The Class Representative Service Awards Should be Approved

Service awards for class representatives promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The efforts of the Class Representatives were instrumental in achieving the Settlement on behalf of the Class and justify the awards requested here.  The Class Representatives came forward to prosecute this litigation for the benefit of the class as a whole.  They sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow class members.  The Class Representatives provided a valuable service to the class by: (a) providing information and input in connection with the drafting of the complaints; (b) overseeing the prosecution of the litigation; (c) participating in discovery and preparing for their depositions; (d) making their Class Vehicles available for

inspection; (e) consulting with counsel during the litigation; and (f) offering advice and direction at critical junctures, including the Settlement of the litigation. A $2,500 incentive award for each of the Class Representatives in recognition of their services to the Class is modest under the circumstances, and well in line with awards approved by federal courts in New Jersey and elsewhere. *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *McGee*, 2009 WL 539893 at *18 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)) ("Incentive awards are 'not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.' "); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (awarding representative plaintiffs incentive payments in the amounts of $10,500 and $5,000, for a total of $115,000, finding those amounts to be "reasonable compensation considering the extent of the named plaintiffs' involvement and the sacrifice of their anonymity."); *Bezio*, 655 F. Supp. 2d at 168 (incentive awards in the amount of $5,000 each are "within the range of awards found acceptable for class representatives."). Here, as with the negotiated fee-and-expense award, the

incentive awards of $2,500 to each Class Representative are particularly uncontroversial as no Settlement Class Member has objected to the incentive awards. Plaintiffs and Class Counsel respectfully request that the incentive awards provided for in Section VIII(C) of the Settlement Agreement be approved.

### F.   Class Counsels' Expenses are Reasonable and Should Be Approved

In addition to being entitled to reasonable attorneys' fees, it is well-settled that prevailing Plaintiffs' attorneys are "entitled to reimbursement of reasonable litigation expenses." *E.g.*, *Carroll v. Stettler*, 2011 U.S. Dist. LEXIS 121185, at *26 (E.D. Pa. Oct. 19, 2011) (citing *GMC Truck*, 55 F.3d at 820 n.39); *see also In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 108 (3d Cir. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

Class Counsel's out-of-pocket expenses incurred in this litigation currently total approximately $134,375.34. Cecchi Decl. ¶ 42; Exhs. 6-13. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as copying fees, expert fees, computerized research, travel in connection with this litigation, translation and certification of documents in connection with service of process upon the foreign-entity Defendants under the

60

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, fees in connection with such process under the Hague Convention, and discovery expenses. All of the expenses were reasonable and necessary for the successful prosecution of this case and should be approved.

Finally, Class Counsel will incur additional expenses on this case going forward, including working with Epiq (the Claims Administrator), communicating with Settlement Class Members, and attending the Final Approval Hearing. As a part of their Settlement Agreement, the parties agreed that Plaintiffs would seek attorneys' fees of $8,600,000 and reimbursement of expenses not to exceed a total of $150,000.00. Class Counsel respectfully requests that the Court approve this amount.

## CONCLUSION

Because the Settlement that Plaintiffs reached with Defendants is fair, reasonable, and adequate, and because the Settlement Class meets all requirements of Rule 23(a) and 23(b)(3), Plaintiffs respectfully submit that certification of the class, payment of the incentive awards, and final approval of the Settlement is warranted. In addition, because the award of attorneys' fees and reimbursement of expenses are justified, Plaintiffs respectfully submit that they should be approved. A proposed Final Order and Judgment is submitted herewith.

Dated: September 27, 2018            Respectfully submitted

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**

s/ James E. Cecchi
James E. Cecchi
Lindsey H. Taylor
Caroline F. Bartlett
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner (*Pro Hac Vice*)
Tyler S. Graden
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000

*Co- Lead Class Counsel*

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran (*Pro Hac Vice*)
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

**MAZIE SLATER KATZ &
FREEMAN, LLC**

62

Matthew Mendelsohn
David A. Mazie
Adam M. Slater
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898

**SEEGER WEISS LLP**
Christopher A. Seeger
David R. Buchanan
550 Broad Street
Newark, NJ 07102
Telephone: (973) 639-9100

**BARON & BUDD, P.C.**
Roland Tellis (*Pro Hac Vice* to be filed)
Mark Pifko (*Pro Hac Vice* to be filed)
Peter Klausner (*Pro Hac Vice* to be filed)
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

**PODHURST ORSECK, P.A**.
1 S.E. 3rd Avenue
Suite 2300
Miami, Florida 33131

***Plaintiffs' Executive Committee***